UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
ALBERTO CONCEPCION,                         )
                                            )
          Plaintiff,                        )
                                            )
               v.                           )          Civil Action 07-1766 (RMU)
                                            )
FEDERAL BUREAU OF INVESTIGATION,            )
et al.,                                     )
                                            )
          Defendants.                       )
_____)

## DEFENDANTS' MOTION FOR AN EXTENSION OF TIME
## TO RESPOND TO THE COMPLAINT

Defendants—the Federal Bureau of Investigation (the "FBI") and the Executive Office of

the United States Attorney (the "EOUSA")—by and through their undersigned counsel,

respectfully move this Court, pursuant to Federal Rule of Civil Procedure 6(b)(1), for an

extension of time to respond to Plaintiff's Complaint in this action.  The details of the requested

extension are described below.  (See infra Part C.)  Plaintiff is a pro se prisoner who is seeking

the disclosure of documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552.  Because Plaintiff is incarcerated and appearing pro se, it is unnecessary for the

undersigned counsel to confer with him about this motion.  See Local Civ. R. 7(m).  As

demonstrated below, there is good cause to grant this motion.  Indeed, the requested extension

will allow for the production of documents to Plaintiff and thus may obviate the need for—and,

at the very least, will narrow the scope of—this litigation.[1]

_____

[1] This is Defendants' second request for an extension of time to respond to the
Complaint.  Counsel for Defendants had intended to file this motion four days in advance of
Defendants' current deadline to respond to the Complaint, but was unable to do so because his
key contact at the FBI took ill and was unreachable for several days.

On December 17, 1999, Plaintiff and a number of other individuals were charged with, inter alia, conspiracy to distribute narcotics (heroin). (See Hardy Decl. ¶5.)[2] Plaintiff ultimately pleaded guilty to that charge, and was sentenced to 325 months in prison. (Id.) Plaintiff has now instituted this FOIA action to obtain all documents in the possession of the FBI and the EOUSA relating to the criminal case brought against him. (See Compl. ¶68; see also Hardy Decl. ¶¶8, 10, 12, 18, 19 (describing Plaintiff's various FOIA requests to the FBI); Stearns Decl. ¶¶20-23 (same with respect to the EOUSA).)[3] Among other things, Plaintiff seeks the production of lab reports, search warrants, wiretap authorizations and witness statements. (See Compl. ¶68.)

## A.    The FBI

Plaintiff submitted his initial FOIA request to the FBI in September 2005, seeking in substance all FBI records relating to the criminal case brought against him.[4] (See Compl. Ex. F-6.) The FBI determined that the release of documents responsive to Plaintiff's FOIA request could reasonably be expected to interfere with ongoing law enforcement proceedings. (Hardy Decl. ¶13, 37.) Thus, the FBI withheld all such documents pursuant to FOIA exemption 7(A), 5 U.S.C. § 552(b)(7)(A). (Id. at ¶37.) In June 2007, the FBI concluded that exemption 7(A) could no longer be applied to Plaintiff's FOIA request and, therefore, began to process that request.

---

[2] Citations in the form "(Hardy Decl. ¶__)" refer to the declaration of David M. Hardy, attached hereto. Mr. Hardy's declaration refers to a number of exhibits (totaling more than 70 pages), which reflect correspondence between the FBI and Plaintiff. The undersigned counsel does not believe that the Court will need to refer to those exhibits in deciding this motion, and thus, they are not being filed at this time. However, the exhibits are available for filing upon the Court's request.

[3] Citations in the form "(Stearns Decl. ¶__)" refer to the declaration of Dione J. Stearns, attached hereto. Like Mr. Hardy's declaration, Ms. Stearns' declaration refers to a number of exhibits (totaling more than 50 pages), which reflect correspondence between the EOUSA and Plaintiff and which are available for filing upon the Court's request.

[4] Thereafter, and up through 2007, Plaintiff sent the FBI numerous additional, overlapping FOIA requests. (See, e.g., Hardy Decl. ¶¶10, 12, 18.) For purposes of this litigation, the FBI is construing Plaintiff's many, overlapping FOIA requests as a single request for all documents relating to the criminal case brought against him.

(Id. at ¶17.)  That same month, the FBI located 51 pages of documents responsive to Plaintiff's

FOIA request (the "51 pages") and released 28 of those pages to Plaintiff.  (Id. at ¶¶23, 38.)

The 51 pages were located within FBI investigative file 245D-NK-97240.[5]  (Id. at ¶38.)

Investigative file 245D-NK-97240 was created in connection with the investigation that led to

Plaintiff's arrest and subsequent incarceration.  (See id. at ¶¶5, 37-39.)  That file contains

information regarding not only Plaintiff, but also Plaintiff's co-conspirators.  (See id. at ¶38.)  As

such, there are multiple sub-files within investigative file 245D-NK-97240.  (Id.)  The 51 pages

were located in a sub-file labeled with Plaintiff's name.  (Id.)  After Plaintiff initiated this action,

the FBI discovered that there are additional documents responsive to Plaintiff's FOIA request

within the remainder of investigative file 245-NK-97240.  (Id. at ¶39.)

For the last several weeks, the FBI has been reviewing the entirety of investigative file

245-NK-97240 for documents responsive to Plaintiff's FOIA request.  (See id.)  However, this

review is time and labor intensive, as investigative file 245-NK-97240 is quite large—it contains

approximately 3,900 pages of documents, at least 1,300 of which it is believed relate to Plaintiff

and require additional processing.  (Id.)  The FBI anticipates that it will need an additional 60

days to (1) complete its review of investigative file 245-NK-97240; (2) make disclosure

determinations and any necessary redactions; and (3) produce all responsive and releasable

documents to Plaintiff.  (Id. at ¶43.)  During the course of those 60 days, the FBI will be able

to—and will—produce responsive documents to Plaintiff on a rolling basis.  (Id.)  Indeed, the

first such production will likely be made within the next two weeks.  (Id.)

---

[5] The FBI located investigative file 245D-NK-97240 by conducting a search of its
Central Records System ("CRS") and Electronic Surveillance Indices ("ESI") for documents
responsive to Plaintiff's FOIA request.  (See Hardy Decl. ¶¶26-36.)  The CRS and ESI are the
only sources of information maintained by the FBI that are likely to contain materials responsive
to Plaintiff's FOIA request.  (See id.)

During its recent review of investigative file 245-NK-97240, the FBI located approximately 650 pages of lab reports (id. at ¶42)—the documents Plaintiff appears to be most interested in receiving (see, e.g., Compl. ¶¶10, 13, 15-16, 18-21). Those lab reports were created by the Drug Enforcement Administration (the "DEA"), an independent federal agency. (Hardy Decl. ¶42.) Accordingly, the FBI will refer those documents to the DEA for a disclosure determination and direct response to Plaintiff. (Id.) When the FBI completes its document production, it will report to the Court on the status of the DEA's disclosure determination.

B.    The EOUSA

In March 2006, Plaintiff sent the EOUSA a FOIA request for certain specified records relating to the criminal case brought against him (the "March 2006 FOIA request").[6] (Stearns Decl. ¶20.) That request sought, inter alia, lab reports and Plaintiff's criminal indictment. (Id.) Thereafter, the EOUSA requested and received Plaintiff's criminal case file from the United States Attorney's Office for the District of New Jersey—the District in which the criminal case against Plaintiff was brought. (Id. at ¶25.) That criminal case file is the only source of information within the possession, custody or control of the EOUSA that is likely to contain documents relevant to the criminal case brought against Plaintiff. (Id.) By letter dated September 26, 2006, the EOUSA released in full all documents from Plaintiff's criminal case file that were responsive to his March 2006 FOIA request. (Id. at ¶26.)

Subsequent to March 2006, Plaintiff sent the EOUSA numerous additional FOIA requests for records relating to the criminal case brought against him (the "ensuing FOIA requests"). (See id. at ¶¶21-23, 27-29.) The ensuing FOIA requests were largely duplicative of the March 2006

_____

[6] Prior to March 2006, Plaintiff had sent the EOUSA a FOIA request for information concerning "criminal bonds, and any other unmentioned bonds, and etc., for [certain specified] Assistant United States Attorneys." (Stearns Decl. ¶5; see id. at ¶¶6-19.) That FOIA request is not at issue in this litigation. (See Compl. ¶68.)

FOIA request.  However, some did request documents that were not mentioned in the March

2006 FOIA request.  For example, one ensuing FOIA request sought the production of search

warrants; the March 2006 FOIA request did not.  (Compare id. at ¶20 with id. at ¶21.)  The

EOUSA did not conduct additional searches of Plaintiff's criminal case file in connection with

his ensuing FOIA requests.[7]  Under the circumstances, it believes it was justified in not doing so.

However, in an effort to streamline this litigation, it will do so now.  Specifically, within the next

60 days, the EOUSA will:  (1) conduct a new search of Plaintiff's criminal case file for all

documents relating to the criminal case brought against him (regardless of whether the

documents were specifically referenced in any of his prior FOIA requests); and (2) produce to

Plaintiff any previously undisclosed and releasable documents that it locates.

### C.    The Particulars of the Requested Extension

Consistent with the foregoing, Defendants request that this Court extend their deadline to

respond to Plaintiff's Complaint, and specifically that the Court Order that:

- Defendants shall have an additional 60 days, up to and including April 11, 2008, to complete their searches for, and disclosure of, documents responsive to Plaintiff's FOIA requests.

- Prior to April 11, 2008, Defendants shall produce responsive documents to Plaintiff on a rolling basis.

- By April 30, 2008, Defendants shall file with the Court and serve on Plaintiff an index describing any responsive documents that have been withheld from disclosure and the basis for any such withholding.

- By May 30, 2008, Defendants shall file a motion for summary judgment.

---

[7] The only exception to this statement occurred with respect to a January 23, 2006 FOIA request in which Plaintiff sought only lab reports relating to the criminal case brought against him.  (See Stearns Decl. ¶¶27, 30.)  In response to that request, the EOUSA again searched Plaintiff's criminal case file, and again found that it does not contain any lab reports.  (See id. at ¶31.)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court GRANT their motion for an extension of time to respond to Plaintiff's Complaint and adopt the schedule for further proceedings set forth herein.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2008, I caused a copy of the foregoing to be served

via first class prepaid postage as follows:

ALBERTO CONCEPCION
#22853-050
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640


               /s/
               Christopher B. Harwood

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ALBERTO CONCEPCION,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　Civil Action No. 07-CV-1766 (EHS)
　　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
FEDERAL BUREAU OF INVESTIGATION　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)　　　I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation, Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)　　　In my current capacity as Section Chief of RIDS, I supervise approximately 206

1

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's treatment of the numerous FOIA/Privacy Act requests of plaintiff Alberto Concepcion starting on September 13, 2005, for records concerning himself at FBIHQ and the FBI's Newark Field Office.

(4)     As of this date, the FBI has processed a total of 51 pages responsive to plaintiff's requests, and has released a total of 28 pages. The purpose of this declaration is to provide the Court and plaintiff with an explanation of the handling of plaintiff's requests.

## CRIMINAL HISTORY OF ALBERTO CONCECPCION

(5)     Based on the investigation contained in FBI Investigative file number 245D-NK-97240, on December 17, 1999, plaintiff, along with several co-defendants, was charged with possession with intent to distribute heroin, conspiracy to distribute narcotics, and narcotics sell,

2

distribute or dispense. Plaintiff pled guilty to conspiracy to distribute narcotics in violation of

21 U.S.C. § 841 (a) (1) and on July 7, 2000, was sentenced to 325 months with 5 years

supervised release with the special condition that plaintiff refrain from all gambling activities.

Plaintiff was also fined $10,000, forfeited a car, a tow truck and was required to pay $100 special

assessment.

## CORRESPONDENCE REGARDING UNPERFECTED REQUEST

(6)    By letter dated July 19, 2005, plaintiff submitted a FOIA/Privacy request to

FBIHQ for the following:

"DISCLOSURE OF ALL COMPLAINTS OF MISCONDUCT; SANCTIONS;
DISCIPLINARY ACTIONS; DISCHARGE FROM EITHER THE STATE,
AND/OR FEDERAL GOVERNMENT AS EMPLOYEES; INTERNAL
AFFAIRS RECORDS; and any other unmentioned documents from day one
of employment under any State, and/or Federal authority, and/or otherwise.

The records soughted [sic] specifically, but not limited to are the complied
files of: **A.** Misconduct Complaint(s); **B.** Sanctions(s); **C.** Disciplinary
Actions; **D.** Discharge from Government Employment for both the State(s),
and/or Federal Government; **E.** Internal Affairs Records; and any, and all
records, and data concerning the Complaints filed by Victims's, co-workers,
associates, and/or otherwise not EXEMPT by title 5 U.S.C. Section (a) (b) (c),
and (b) (7); 5 U.S.C. Secton (a) (j) (2), and (k) (2)......" **(See Exhibit A.)** .

(7)    By letter dated August 16, 2005, FBIHQ acknowledged receipt of plaintiff's

request and advised:

" The FOIA provides for access to Government records where the records
sought are "reasonably described" [Title 5, United States Code,
Section 552 (a)(3)(A)]. Your letter does not contain enough descriptive
information to permit a search of our records. In accordance with Title 28,
Code of Federal Regulations, Part 16.3(b), please provide us more specific
information. Any information that would help locate the records with a
reasonable amount of effort would be appreciated, such as complete names

3

of individuals, organizations or events, dates and places of birth and the
approximate time frame of the information sought, etc." **(See Exhibit B.)**

## CORRESPONDENCE REGARDING FOIPA NO. 1030134

(8)    By letter dated September 13, 2005, plaintiff submitted a FOIA/Privacy request to

the FBI Newark Field Office ("NKFO") for the following:

> "...all of the records in possession of this agency pertained to me and/or
> to any form of identification that make reference to myself.
>
> I am requesting copy **[sic]** of all records wherein my name is utilized,
> and this request is conclusive. I will expect information or myself and
> any retrievable source, that is but not limited to, this agency's records." **(See**

**Exhibit C.)**

(9)    By letter dated October 3, 2005, FBIHQ acknowledged receipt of plaintiff's

request and advised plaintiff his request had been assigned FOIPA Request Number 1030134.

**(See Exhibit D.)**

(10)    By letter dated December 20, 2005, plaintiff submitted to FBIHQ a second

FOIA/Privacy Act request for:

> "...a copy of the lab report for federal criminal case #99-6144-01-01/99-753
>
> (AJL)."

Plaintiff also stated he had been waiting more than three months for copies of certain federal

documents and that this request was in place of the first if needed. **(See Exhibit E.)**

(11)    By letter dated December 28, 2005, plaintiff submitted to NKFO a FOIA/Privacy

Act request entitled "Letter Requesting......" Plaintiff asked for the following:

4

"....A FULL DISCLOSURE, AND RELEASE OF ALL RECORDS, and/or data contained in the files of this Department, and/or Agency, or any other State, or Federal Department of Agencies listed above, and below under my name, and/or identifier to my name. This request soughted **[sic]** herein is for COMPLAINTS OF MISCONDUCT, SANCTIONS, DISCIPLINARY ACTIONS, DISCHARGE FROM EMPLOYMENT FROM EITHER THE STATES, AND/OR FEDERAL GOVERNMENT AS EMPLOYEES, INTERNAL AFFAIRS RECORDS, and etc., pursuant to title 5 U.S.C.§ 552(a)(2)(A), and (B), records which are secured, and maintained by this Department, and/or Agency.

...and any, and all, records, and data concerning the Complaints filed by Victim's co-workers, associates....."

Plaintiff agreed to pay all reasonable costs or fees applicable to this request. **(See Exhibit F.)**

(12)    By letter dated June 13, 2006, plaintiff submitted a FOIA/Privacy Act request to FBIHQ for all records on himself or that make a reference to him. Plaintiff specifically requested the following:

"...Lab Report, Search Warrant(s), & the wire tap Authorized Application for Federal Criminal Case #00-6144-01-01, & 99-753 (AJL)." **(See Exhibit G.)**

(13)    By letter dated August 11, 2006, FBIHQ advised plaintiff that the material located regarding FOIA No. 1030134 was in an investigative file which is exempt from disclosure pursuant to subsection (b)(7)(A) of Title 5, U.S.C. 552. Plaintiff was also advised that he could file an administrative appeal by writing to the Co-Director, Office of Information and Privacy ("OIP"), United States Department of Justice ("DOJ"), 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530. **(See Exhibit H.)**

(14)    By letter dated September 21, 2006, plaintiff appealed the FBI's response. **(See Exhibit I.)**

5

(15)    By letter dated October 19, 2006, plaintiff's sister, Vilma Cruz, advised that she

had made several calls on plaintiff's behalf to FBIHQ and that she had not received a response.

Also enclosed with this letter was a limited power of attorney, another FOIA request and a copy

of the FBI's October 3, 2005 letter. The FOIA request consisted of a request dated October 23,

2006, for the following:

> "The serial numbers, & dates [ONLY] on all the audio tapes for Federal
> Criminal Case #99-6144-01-06, & 99-753 (AJL); & a CERTIFIED AS
> A TRUE, & CORRECT COPY OF THE LAB REPORT' FOR THE
> ABOVE Federal Criminal Case." **(See Exhibit J.)**

(16)    By letter dated February 28, 2007, OIP advised plaintiff that his appeal was

received on February 15, 2007. Plaintiff was also informed of OIP's substantial backlog of

pending appeals and that his appeal was assigned Appeal Number 07-0678. **(See Exhibit K .)**

(17)    By letter dated June 20, 2007, OIP decided to remand plaintiff's request for further

processing. OIP stated that exemption 7(A), which pertains to records or information compiled

for law enforcement purposes, the release of which could reasonably be expected to interfere

with enforcement proceedings, was no longer applicable to withhold all of the responsive records

in the entireties. OIP also informed plaintiff that the FBI anticipated sending responsive records

by approximately June 22, 2007, under FOIA No. 1062945. Plaintiff was advised to seek

judicial review if he was dissatisfied with this response. **(See Exhibit L.)**

6

## CORRESPONDENCE REGARDING FOIPA NO. 1062945

(18)    By letters dated October 20, 2006, November 8, 2006 and November 14, 2006,

plaintiff submitted FOIPA requests to NKFO for all records on himself or which makes a

reference to himself.  Plaintiff also specifically requested a copy of the following:

> "The serial numbers, & dates [ONLY] on all the audio tapes for Federal
> Criminal Case #99-6144-01-06, & 99-753(AJL); & a "CERTIFIED
> COPY OF THE LAB REPORT" for the above Federal Criminal Case."

**(See Exhibit M.)**

(19)    By letters dated October 13 and 24, 2006, and March 14, 2007 plaintiff submitted

FOIPA requests to FBIHQ for all records on himself or which makes a reference to himself.

Plaintiff also specifically requested a copy of the following:

> "The serial numbers, & dates [ONLY] on all the audio tapes for Federal
> Criminal Case #99-6144-01-06, & 99-753(AJL); & a "CERTIFIED
> COPY OF THE LAB REPORT" for the above Federal Criminal Case."

**(See Exhibit N.)**

(20)    By letter dated October 26, 2006, Vilma Cruz requested that all correspondence

be sent to her mailing address.  **(See Exhibit O.)**

(21 )    By letter dated November 17, 2006, FBIHQ acknowledged receipt of plaintiff's

request and advised plaintiff that his request had been assigned FOIPA Number 1062945.

Plaintiff was also advised that the FBI was searching the indices to its central records system at

NKFO.  **(See Exhibit P.)**

(22)    By letter dated May 9, 2007, FBIHQ advised plaintiff that his request was being

reviewed by an analyst and that the analyst would confirm that records were responsive to his

7

request and apply exemptions allowed under FOIPA. Plaintiff was also advised that he could

check the status of his request by calling the FBI's FOIPA Public Information Center at 540-868-

4593. **(See Exhibit Q.)**

(23)    By letter dated June 14, 2007, FBIHQ advised plaintiff 51 pages of material were

reviewed and 28 pages of material were being released to him with deletions pursuant to 5,

U.S.C. § 552 (b)(2), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E) and 5, U.S.C. § 5552a (j)(2).

Plaintiff was also advised that this was a multiple subject file and that only those documents

responsive to his request were considered for processing. **(See Exhibit R.)**

(24)    By letter dated June 29, 2007, plaintiff appealed the FBI response. **(See Exhibit**

**S.)**

(25)    By letter dated July 11, 2007, OIP advised plaintiff that his appeal was received

on July 10, 2007 and his appeal was assigned Appeal Number 07-1867. **(See Exhibit T.)**

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(26)    The Central Records System ("CRS") enables the FBI to maintain all information

which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.

The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and

other files compiled for law enforcement purposes. CRS is organized into a numerical sequence

of files, called FBI "classifications," which are broken down according to subject matter. The

subject matter of a file may correspond to an individual, organization, company, publication,

activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained

at FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those

8

field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI

utilizes the CRS to conduct searches that are likely to yield documents responsive to

FOIA/Privacy Act requests. The mechanism that the FBI uses to search the CRS is the

Automated Case Support System ("ACS").

(27)    The ACS was implemented for all Field Offices, Legal Attaches ("Legats"), and

FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be

described as an internal computerized subsystem of the CRS. Because the CRS cannot

electronically query the case files for data, such as an individual's name or social security

number, the required information is duplicated and moved to the ACS so that it can be searched.

More than 105 million records from the CRS were converted from automated systems previously

utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated

more economic and expeditious access to records maintained in the CRS.

(28)    The retrieval of data from the CRS is made possible through the ACS using the

General Indices, which are arranged in alphabetical order.[1] The entries in the General Indices fall

into two categories:

>  (a) A "main" entry --- A "main" entry, or "main" files, carries the name
>  corresponding with a subject of a file contained in the CRS.
>
>  (b) A "reference" entry --- "Reference" entries, sometimes called
>  "cross-        references," are generally only a mere mention or reference to an
>  individual, organization, or other subject matter, contained in a document
>  located in another "main" file on a different subject matter.

---

[1]  The General Indices are not only automated but also include index cards which allow a
manual search for records that pre-date the implementation of ACS on October 16, 1995.

(29)    Searches made in the General Indices to locate records concerning a particular subject, such as Alberto Concepcion, are made by searching the subject requested in the index.

(30)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LO"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using file number "245-NK-97240" as an example, an explanation of the UCFN is as follows: "245" indicates the classification for the specific type of investigation, in this case Organized Crime Drug Enforcement; "NK" is the abbreviated form used for the OO of the investigation, which in this case is Newark; and "97240" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 100.4 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(31)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Alberto Concepcion.

## SURVEILLANCE ("ELSUR") INDICES

(32)    The Electronic Surveillance ("ELSUR") indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records.

(33)    The ELSUR indices are a separate system of records from the CRS. Prior to automation, the ELSUR indices consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance. In addition to the names of individuals in the above categories, the cards in the ELSUR index contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring.

(34)    The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the General Index and CRS. See 52 Fed. Reg. 8482 (1992).

(35)    The FBI field offices that have conducted electronic surveillance at any time from

12

1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices – and reporting to FBIHQ for inclusion in its index – the names of all persons whose voices have been monitored through a FBI microphone installation or a telephone surveillance. The names of monitored subjects are retrievable through the FBIHQ or local field office ELSUR indices.

(36)    Until 1969, FBI field offices were also required to forward the names of all persons mentioned during monitored conversations to FBIHQ for inclusion in the FBIHQ ELSUR index. Although FBIHQ discontinued this requirement in 1969, some field offices still include the names of individuals mentioned in monitored conversations in the field office's ELSUR index. However, the names of such persons cannot be retrieved through the FBIHQ ELSUR index.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(37)    Plaintiff requested a search of NKFO records on September 13, 2005. The FBI conducted a search of the NKFO indices of the CRS and located two investigative files, 245D-NK-97240 and another file that were responsive to plaintiff's request. FBIHQ contacted NKFO and requested the two files. After review by NKFO, it was determined that both files were active investigations and exempt from disclosure. By letter dated August 11, 2006, plaintiff was advised that the material he requested was exempt from disclosure pursuant to 5 U.S.C § 552 (b)(7)(A). Plaintiff appealed the FBI action in this case.

(38)    As a result of the appeal, NKFO file 245D-NK-97240 was remanded by OIP to be reprocessed since it had determined that the criminal investigation was now closed. FBIHQ

13

requested that NKFO send the file to FBIHQ for review and processing. Once this file was received by FBIHQ, it was reviewed for responsiveness. Since this was a multi subject file, with multiple sub-files, only the documents in the plaintiff's sub-file were reviewed for processing. All other documents and sub-files were excluded as out of scope of the request. On June 14, 2007, 51 pages were reviewed with 28 pages being released to plaintiff.

(39)    After receipt of plaintiff's civil complaint, the entire NKFO 245 file was re-reviewed for processing. Currently documents from this file are being reviewed and processed. After reviewing approximately 3,900 pages, FBIHQ estimates that approximately 1,300 pages relate to the plaintiff and require additional processing. The other NKFO file is still considered an active investigation. As such, this file is exempt from disclosure pursuant to 5 U.S.C. § 552 (b)(7)(A). Although the other investigative file reviewed relates to the plaintiff, it is unrelated to his criminal conviction for which he is currently incarcerated, and thus, would not contain any of the documents referenced in plaintiff's complaint.

(40)    While FBIHQ was handling the original FOIPA requests to NKFO and FBIHQ, numerous requests from plaintiff were continually being received by NKFO and FBIHQ. These new requests were not opened inasmuch as it was determined that they were duplicate requests to plaintiff's earlier FOIPA requests.

(41)    On February 7, 2008, the FBI conducted an ELSUR search which located no records responsive to plaintiff's request.

(42)    A review of Investigative file 245D-NK-97240 revealed approximately 650 pages of DEA lab reports. In response to plaintiff's requests for copies of lab reports, FBIHQ will

14

refer these requests to the Drug Enforcement Agency ("DEA"), the originating agency, for direct response to the plaintiff.

## CONCLUSION

(43)    FBIHQ will process and release all segregable information from the responsive documents pursuant to Privacy Act and FOIA Exemptions. The FBI intends to make disclosures of processed materials on a rolling basis and anticipates making the first such production within the next two weeks. The FBI estimates that it will need an additional 60 days to complete its review and processing of all potentially responsive pages.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that **Exhibits A through T** attached hereto are true and correct copies.

Executed this 13th day of February, 2008.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALBERTO CONCEPCION                    )
                    Plaintiff,        )
                                      )
                                      ) Civil Action No. 07-1766
        V.                            )
                                      )
FEDERAL BUREAU OF INVESTIGATION       )
                                      )
                    Defendant         )

DECLARATION OF DIONE JACKSON STEARNS

I, Dione J. Stearns declare the following to be a true and correct statement of facts:

1)      I am an Attorney Advisor with the Executive Office for United States Attorneys

(EOUSA ), United States Department of Justice.  In that capacity, my responsibilities include:

acting as liaison with other divisions and offices of the Department of Justice ("DOJ") in

responding to requests and the litigation filed under both the Freedom of Information Act

("FOIA"), 5 U.S.C. §552 (1988), and the Privacy Act of 1974, 5.U.S.C. §552a (1988) ("PA");

the review of FOIA/PA requests for access to records located in this office and 94 United States

Attorney's offices (USAO's) and the case files arising therefrom; the review of correspondence

related to requests; the review of searches conducted in response to requests; the location of

responsive records; and preparation of responses thereto by EOUSA to assure that determinations

to withhold (or to release) such responsive records are in accordance with the provisions of both

the FOIA and the PA, as well as the Department of Justice regulations (28 C.F.R. §§ 16.3 et.seq.

and §16.40 et.seq.).

2)      As an Attorney Advisor of the FOIA/PA unit, EOUSA, I have authority to release and /or withhold records requested under the FOIA/PA, and to advocate the position of the EOUSA in actions brought under the FOIA/PA.  The statements I make hereinafter are made on the basis of my review of the official files and records of EOUSA, on my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

3)      Due to the nature of my official duties, I am familiar with procedures followed by this Office in responding to the FOIA/PA request(s).

### OVERVIEW

4)      This declaration explains the procedures that were followed in responding to Alberto Concepcion (Mr. Concepcion) requests from 2005 to 2007, referenced in Mr. Concepcion's complaint filed October 3, 2007 in the District Court for the District of Columbia.

5)      By letter dated July 8, 2005 and received by EOUSA FOIA/PA on July 12, 2005, Mr. Concepcion made a request for information contained in the United States District Court of New Jersey (DNJ).  This request sought access to the following information:

> "All information on criminal bonds, and any other unmentioned bonds, and etc., for Assistant United States Attorneys Scott A. Resnik; George S. Leone; James B. Clark III; Susan J. Steele; Stuart A. Minkowitz; and for former U.S. Attorneys Lee H. Vilker; Carolyn A. Murray; and John W. Bissell." (*See* Exhibit 1.)

6)      By letter dated August 30, 2005, EOUSA FOIA/PA office acknowledged Mr. Concepcion's request.  EOUSA also had bifurcated his request for processing purposes.  Each file was assigned a separate request number, for which Mr. Concepcion would receive a separate response.  Specifically, Request Numbers 05-2149 and Request Number 05-2150 were assigned

2

to his request.  (*See* Exhibit 2.)

**Request Number 05-2149**

      7)      Request Number 05-2149 was assigned to the portion of his request pertaining to currently employed Assistant United States Attorneys (AUSAs) in the DNJ.

## ADEQUACY OF THE SEARCH

      8)      Upon receipt of Mr. Concepcion's request, a search to determine the location of any and all responsive files relating to bonding information was undertaken by the DNJ.  By letter dated May 5, 2006, EOUSA informed Mr. Concepcion that a search for responsive records in the DNJ were not located.  The DNJ further stated that the Department of Justice does not "take out" nor "issue" bonds and/or securities when it investigates and prosecutes alleged violators of federal criminal law.  (*See* Exhibit 3.)

      9)      Pursuant to Mr. Concepcion's October 3, 2007 complaint, EOUSA's search for bonding information is not at issue in this case, and therefore the specific computer database used in searching for responsive records is not discussed in detail in this Declaration.

## ADMINISTRATIVE APPEAL

      10)      By letter dated June 28, 2006 and received on July 13, 2006, Mr. Concepcion filed an appeal with the Office of Information and Privacy (OIP) for access to any records pertaining to any criminal bonds posted by the AUSAs in the DNJ.

      11)      By letter dated September 20, 2006, OIP affirmed EOUSA's action on his request.  More specifically, EOUSA stated the following:

        "EOUSA informed you that it could locate no responsive records maintained by the United States Attorney's Office for the District of New Jersey."

(See Exhibits 4 and 5.)

**Request Number 05-2150**

12)      Request Number 05-2150 was assigned to the portion of his request pertaining to former United States Attorneys.

13)      By letter dated September 12, 2005, EOUSA FOIA/PA Office acknowledged Mr. Concepcion's request and advised Mr. Concepcion that the requested information is not maintained by EOUSA or by the individual United States Attorney's Offices, but is maintained by the National Personnel Records Center. The letter further advised that this is the final action that EOUSA will take on his request. (See Exhibit 6.)

**ADMINISTRATIVE APPEAL**

14)      By letter dated November 7, 2005 and received November 15, 2005, Mr. Concepcion appealed to OIP on his request for access to records pertaining to himself and eight EOUSA employees. (See Exhibit 7.)

15)      By letter dated November 15, 2006, OIP informed Mr. Concepcion that it was remanding his request to EOUSA for a search for "bonding information" pertaining to Assistant United States Attorneys George S. Leone, James Clark, Susan Steele, and Stuart Minkowitz of the United States Attorney's Office for the DNJ and Assistant United States Attorney Lee Vilker for the United States Attorney's Office for the District of Rhode Island. (See Exhibit 8.)

**Request Number 06-3779**

16)      Upon receipt of OIP's remand letter, EOUSA opened a new file to address Mr. Concepcion's July 12, 2005 letter. By letter dated November 20, 2006, EOUSA informed Mr. Concepcion that Request Number 06-3779 had been assigned to the portion of his request

pertaining to Assistant United States Attorney (AUSA) Lee Vilker and bonds. Request Number 06-3779 only addressed a portion of Mr. Concepcion's old file, Request Number 06-2150. (See Exhibit 9.)

## ADEQUACY OF THE SEARCH

17)    Upon receipt of OIP's August 2, 2007 letter, EOUSA commenced a search in the District of Rhode (DRI) for responsive records pertaining to AUSA Lee Vilker. EOUSA searched the DRI, because Vilker was an AUSA in DRI.

18)    By letter dated February 22, 2007, EOUSA informed Mr. Concepcion that a search for records located in the DRI has revealed no responsive records regarding the above subject. EOUSA further informed Mr. Concepcion that if he is alleging that the Department of Justice (DOJ) must be bonded and secured before initiating prosecution, please be informed that DOJ does not "take out" nor "issue" bonds and or securities when it investigates and prosecutes alleged violators of federal criminal law. (See Exhibit 10.)

19)    Pursuant to Mr. Concepcion's October 3, 2007 complaint, EOUSA's search for bonding information in the DRI is not at issue in this case, and therefore the specific computer database used in searching for responsive records is not discussed in detail in this Declaration.

## Request Number 06-1738

20)    By letter dated March 8, 2006, and received by EOUSA on March 15, 2006, Mr. Concepcion requested records pertaining to himself. This request sought access to the following specific information:

> "Lab report, indictment, the Rule 11, application of which was signed by Alberto Concepcion, & the recorded FBI tapes series numbers with the dates of recordings, & if possible please proved me with the locations of the said

recordings."

(*See* Exhibit 11.)

21)    EOUSA assigned request number 06-1738 to Mr. Concepcion's March 8, 2006

request.  By letter dated June 13, 2006 and received by EOUSA on June 22, 2006, Mr.

Concepcion requested the following:

> "Lab report, search warrant(s), & the wire tap authorized application for federal
> criminal case #99-6144-01 & 99-753."

(*See* Exhibit 12.)

22)    By letter dated July 31, 2006 and received by EOUSA on August 14, 2006, Mr.

Concepcion requested the following:

> "Lab report for federal criminal case # 99-6144-01, & 99-753(AJL)."

23)    By letter dated August 29, 2006 and received by EOUSA on September 12, 2006,

Mr. Concepcion requested the following:

> "Lab report for federal criminal case #99-6144-01 & 99-753(AJL).  Please include
> any other unmentioned tests, and/or documents regarding the lab results."

(See Exhibit 13.)

24)    Accompanying the August 29, 2006 request letter was Mr. Concepcion's

authorization for power of attorney which he gave to his sister, Vilma Cruz, for the purpose of

getting any, and all documents in the above identified federal criminal cases.

### ADEQUACY OF SEARCH

25)    EOUSA located Mr. Concepcion criminal case file 99-753 in the District of New

Jersey.  Specifically, EOUSA located Mr. Concepcion's indictment and Rule 11 application,

which were two of the specific items that he requested in his March 8, 2006 request letter.  Lab

reports and audio tapes that he sought were not contained in his criminal file in the DNJ.

Although he submitted subsequent request letters, which would have enlarged the scope of his

initial March 8, 2006 request, EOUSA only searched for documents referenced in his initial

request letter dated March 8, 2006. The criminal case file that was searched, 99-753[1], is the only

source of information within the possession, custody or control of the EOUSA that is likely to

contain documents relevant to Plaintiff's criminal conviction. The DNJ forwarded his indictment

and Rule 11 application to EOUSA for processing.

26)    By letter dated September 26, 2006, EOUSA released in full Mr. Concepcion's

indictment and Rule 11 application. Mr. Concepcion did not file an appeal for Request Number

06-1738.

**Request Number 07-49**

27)    By letter dated January 23, 2006, Mr. Concepcion made a request to EOUSA for

the following:

> "Lab report, certified as a true & correct copy of the original. This request is for
> Federal Criminal case #99-6144-01 & 99-753 (AJL)."

(See Exhibit 14.)

EOUSA assigned Request Number 07-49 to his request.

28)    By letter dated October 24, 2006 and received by EOUSA on February 12, 2007,

Mr. Concepcion made a request to EOUSA for the following:

> "Serial numbers, & dates [only] on all the audio tapes for Federal Criminal case
> #99-6144-01-06 & 99-753(AJL); & certified copy of the lab report for the above
> federal criminal case."

---

[1] Federal criminal case file #99-6144-01 was a magistrate file number that subsequently
became criminal case #99-753.

(See Exhibit 15.)

29)    By letter dated December 28, 2006 and received by EOUSA on January 12, 2007,

Mr. Concepcion requested the following:

"A copy of the lab report for federal criminal case # 99-6144-01, & 99-753(AJL).

## ADEQUACY OF SEARCH

30)    The DNJ located criminal case file 99-753 in their office because of Mr.

Concepcion's prior FOIA requests. Although he submitted subsequent request letters, which

would have enlarged the scope of his initial January 23, 2006 request, EOUSA only searched for

documents referenced in his initial request letter dated January 23, 2006. Criminal case file, 99-

753, that was searched is the only source of information within the possession, custody or control

of the EOUSA that is likely to contain documents relevant to Plaintiff's criminal conviction.

31)    By letter dated May 16, 2007, EOUSA once again informed Mr. Concepcion that a

search of the DNJ has revealed no responsive records regarding his January 23, 2006 request for

lab reports. (See Exhibit 16.)

## ADMINISTRATIVE APPEAL

32)    By letter dated June 13, 2007 and received on June 28, 2007, Mr. Concepcion

filed an appeal to OIP for failure to provide him with lab reports. By letter dated August 31,

2007, OIP affirmed EOUSA's action on Mr. Concepcion's request.

(See Exhibit 17 and 18.)

### Request Number 07-593

33)    By letter dated July 8, 2005 and received by EOUSA on February 1, 2007, Mr.

Concepcion resubmitted the identical request letter processed in Request Number 05-2149 and 05-2150. As such, the subject of his request pertained to bonding information for specific Assistant United States Attorneys and former United States Attorneys in the DNJ. (See Exhibit 19.)

## ADEQUACY OF SEARCH

34)    By letter dated May 16, 2007, EOUSA again informed Mr. Concepcion that a search of the DNJ has revealed no responsive records regarding the above subject. The DNJ further stated that the Department of Justice does not "take out" nor "issue" bonds and/or securities when it investigates and prosecutes alleged violators of federal criminal law. Pursuant to Mr. Concepcion's October 3, 2007 complaint, EOUSA's search for bonding information is not at issue in this case, and therefore the search methods used to locate responsive records is not discussed in detail in this Declaration.

## ADMINISTRATIVE APPEAL

35)    By letter dated June 11, 2007 and received on June 19, 2007, Mr. Concepcion filed an administrative appeal to OIP for failure to provide him with certain "bond" information. By letter dated September 28, 2007, OIP affirmed EOUSA's action on Mr. Concepcion's request. (See Exhibits 20 and 21.)

## CONCLUSION

36)    Each step in the handling of Mr. Concepcion's request has been entirely consistent with the EOUSA and the United States Attorney's Office procedures which were

adopted to insure an equitable response to all persons seeking access to records under the

FOIA/PA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the _13th_ day of February 2008 at Washington, D.C.

Dione Jackson Stearns
Attorney Advisor
EOUSA FOIA/PA Staff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                 )
ALBERTO CONCEPCION,                              )
                                                 )
        Plaintiff,                               )
                                                 )
        v.                                       )        Civil Action 07-1766 (RMU)
                                                 )
FEDERAL BUREAU OF INVESTIGATION,                 )
et al.,                                          )
                                                 )
        Defendants.                              )
_____)

### <u>ORDER</u>

Having considered Defendants' Motion for an Extension of Time to Respond to the

Complaint ("Defendants' Motion"), and the entire record herein, it is, this _____ day of

_____, 2008, hereby

ORDERED that Defendants' Motion is GRANTED; and it is

FURTHER ORDERED that the following schedule shall govern further proceedings in

this case:

- Defendants shall have an additional 60 days, up to and including April 11, 2008, to complete their searches for, and disclosure of, documents responsive to Plaintiff's FOIA requests.

- Prior to April 11, 2008, Defendants shall produce responsive documents to Plaintiff on a rolling basis.

- By April 30, 2008, Defendants shall file with the Court and serve on Plaintiff an index describing any responsive documents that have been withheld from disclosure and the basis for any such withholding.

- By May 30, 2008, Defendants shall file a motion for summary judgment.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Copy to:

ECF Counsel

ALBERTO CONCEPCION
#22853-050
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640