**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Alberto Concepcion,<br><br>         Plaintiff/Sovereign,<br><br>   <u>vs</u>.<br><br><br>FEDERAL BUREAU OF INVESTIGATION;<br>EXECUTIVE OFFICE OF THE UNITED<br>STATES ATTORNEYS; &<br>U.S. DEPARTMENT OF JUSTICE;<br>        Defendants/Corporations. | **MOTION FOR**<br>**SUMMARY JUDGMENT**<br><br><br><br><br><br><br>CIVIL ACTION NO. <u>07-1766(RMU)</u> |

**MOTION/AFFIDAVIT/DECLARATION/MEMORANDUM OF LAW/APPLICATION/**
**BRIEF IN SUPPORT OF PLAINTIFF'S REQUEST**
**FOR SUMMARY JUDGMENT**

**NOW COMES,** Pro Se Plaintiff, <u>Alberto Concepcion</u>, the Sovereign, Secured Party, Creditor, Holder-In-Due-Course, Trade Name Owner, & Record Owner on behalf of STRAW-MAN, & DEBTOR <u>ALBERTO CONCEPCION</u>, hereinafter **"Concepcion, or CONCEPCION"**, waiving no powers, rights, and/or immunities by the use of said **"private copyrighted statutes"** in the above entitled case.

1. Concepcion, is of full age, & familiar with the **"FACTS"** stated herein, with many incorporated exhibits, the filed Civil [COMPLAINT] Action, incorporated with its own exhibits [F-1 - F-128], the filed Motion to Compel, incorporated with its own exhibits [D-1 - D-15], & the Plaintiff's, Second **"Additional"** Request for the Production of Different Records, Documents, & etc., & Requests for Admissions herewith, being duly sworn, deposes, & says under penalty of perjury as follows;

**2.** CONCEPCION, is without Counsel, & is relying on <u>Haines v. Kerner</u>, 30 L.Ed 2d 652, at ¶ 1 (1972), in which the U.S. Supreme Court held: Pro Se Complaint to less stringent standard.

**3.** The named Defendants, and/or Counsel(s) of Record for said Defendants, **"are not"** involved in any military services, and/or activities; **"& are not"** infants, and/or incompetent individuals.

<u>**STATEMENT OF THE CASE**</u>

**4.** This is a Cause of Action for the amount of Six Hundred Million [$600,000,000.00] U.S. Dollars, under the Freedom of Information Act, hereinafter FOIA, pursuant to title 5 U.S.C. § 552 [ET SEQ.], as Amended, & the Privacy Act of <u>1974</u>, pursuant to title 5 U.S.C. § 552(a), for the **"full disclosure"** of the above agencies, offices, corporations, sub-agencies, and/or otherwise records, documents, files, data, & etc., **"for wrongfully withholding"** exculpatory records, documents, files, data, & etc., & for falsification of public records, documents, files, data, & etc., containing fraud, deceit, false information, & false pretenses, inter alia by the named Defendants/Corporations, herein. In this Motion the Plaintiff, seeks Summary Judgment, pursuant to the <u>Fed.R.Civ.P.</u>, Rule 56(C), **"in good faith"** on his claims, & facts, in which are mentioned herein with the incorporated exhibits, in his filed Civil Complaint Action, incorporated with its own exhibits [F-1 - F-128], & in his filed Motion to Compel, incorporated with its own exhibits [D-1 - D-15]. <u>SEE</u>, Plaintiff's, Comp., at ¶ 74.

**5.** The Defendants/Corporations, are agencies, corporations, & etc., that can be sued under title 5 U.S.C. § 552(a)(4)(B), inter alia; & for damages, inter alia, **"for wrongfully withholding non-exempt records, documents, files, data, & etc., under the FOIA"**. The Defendants/Corporations,

are agencies, offices, corporations, & etc., within the meaning of title

5 U.S.C. § 552(c), & (e), & are in possession, and/or control of the

soughted records, documents, files, data, & etc., of which have been re-

quested by the Plaintiff/Sovereign, & are the subject of this Cause of

Action. SEE, Plaintiff's, Motion to Compel, Exhibits D-1 - D-15, specifi-

cally Ex: D-6 - D-13, at ¶ 1 - ¶ 34, therewith; Fed.R.Civ.P., 28 § 3002

(15)(A); Penhollow v. Doane's Administrators, 3 U.S. 54, 1 L.Ed 57, 3

Dall. 54; & Haines v. Kerner, supra.

## STATEMENT OF FACTS

6. The Plaintiff's, Civil Complaint Action, & Summons were served

upon the named Defendants/Corporations, among others inbetween Dec. 4,2007,

through Dec. 10,2007. SEE, Clerk's docket entry sheet for Civil Action

#07-1766(RMU), at ¶ 10.

7. Answer to the Plaintiff's, Civil Complaint Action, was due on

Feb. 8,2008; of which said due date is not including the five [5] addition-

al days that was granted by the District Court in regard to Counsel(s) of

Record "first" filed Motion for an Extention of Time, in which said new

answer date was then due on Feb. 13,2008. SEE, Clerk's docket entry sheet

for Civil Action #07-1766(RMU), at ¶ 15.

8. Then on Feb. 5,2008, Counsel(s) of Record for said Defendants/

Corporations, filed a Motion for Protective Order, in which said Motion

contained "knowing false information, & bad faith acts, inter alia, made

by Counsel(s) of Record". e.g., Counsel(s) of Record "did not" place said

Motion in the mail to the Plaintiff, until Feb. 14,2008 [9 DAYS AFTER

FILING WITH COURT. SEE, EX: C-1], in which prison officials "did not" give

the Motion for Protective Order to the Plaintiff, until Feb. 26,2008 [SEE,

EX: C-2], of which said filed Motion by Counsel(s) OF Record "did not"

3

come with [ANY] exhibit A, as stated by the Clerk's docket entry sheet [**SEE**, DOCKET SHEET, AT ¶ 14], of which Counsel(s) of Record are **"in violation"** of Rule 5(a), & (d), pursuant to the Fed.R.Civ.P. The Plaintiff, **"is respectfully"** requesting presiding Honorable Judge RMU, **"to keep mindful"** that when any prisoner is moved from one prison to another, said last prison would forward said **"legal mail"** to the prisoner at his new location of imprisonment; **"also keeping mindful"** that all of CONCEPCION'S, Cert. Return Receipt Mail Signature Cards had the address of F.C.I FORT DIX P.O. Box 2000, Fort Dix, New Jersey 08640, on them. Also see Clerk's docket entry sheet for Civil Action #07-1766(RMU), at ¶ 7, & ¶ 9.

Furthermore, Counsel(s) of Record **"did not"** provide the Plaintiff, with a copy of their first filed Motion for an Extention of Time, **"in violation"** once again of Rule 5(a), & (d), pursuant to the Fed.R.Civ.P. These acts that have been committed by Counsel(s) of Record constitute **"bad faith act, inter alia"**, in their attempt(s) to delay, mislead, & otherwise the Plaintiff, & presiding Judge RMU, in this Cause of Action.

9. The Plaintiff, attest that Counsel(s) of Record **"filed a frivolous"** Motion for Protective Order, in which it is what it is, a frivolous Motion, inter alia, that was met to mislead presiding Judge RMU, & thats because the named Defendants/Corporations, herein **"were served directly"** by the Plaintiff, with the same discovery requests for the production of records, & documents, & requests for admission, in which **"ALL"** the named Defendants, received on Jan. 2,2008 [**SEE**, EX: D-1 - D-3, D-5, & D-14, ATTACHED TO THE PLAINTIFF'S, FILED MOTION TO COMPEL], **"thereby, waiving their objections, & rights by their failure to respond to the requested records, & documents, & answer the requests for admission within the 30 days of service of said requests... pursuant to Rules 34(a), & (b), & 36 (a), & (b)"**. Therefore, said Defendants/Corporations, have admitted, &

4

stipulated **"by way of Contract"** to the Plaintiff's, requests for admis-
sions. See, Art. I, § 10, of the Const. for the United States; Art. IV,
§ VII, ¶ 3, of the Const. for the State of New Jersey;& Ex: D-5, & D-6, &
Ex: D-10 - D-14, ¶ 20 - ¶ 34, attached to Plaintiff's, Motion to Compel.

10. Furthermore, in Counsel(s) of Record Motion for Protective Or-
der, at fn. 1, said Counsel(s) **"claimed that they"** received the Plain-
tiff's, discovery request [OF WHICH IS IRRELEVANT HERE, DO TO THE DEFEN-
DANTS/CORPORATIONS, ADMITTING, & STIPULATING TO THE FACTS THEREFORE. SEE,
¶ 9, HEREIN] on Jan. 28,2008; **"contrary to what the U.S. Postal Service**
**track, & confirm search results held: Your item was delivered at 4:59 a.m.,**
**on Jan. 14,2008, in Washington, D.C".** SEE, Plaintiff's, Motion to Compel,
Ex: D-5, therewith.

11. Then on Feb. 13,2008, Counsel(s) of Record for said named Defen-
dants/Corporations, filed a **"SECOND"** Motion for an Extention of Time,
along with **"two sworn Declarations"**, hereinafter Motion 2, for Extention.

12. Counsel(s) of Record **"claimed"** [SEE, MOTION 2, FOR EXTENTION, AT
TOP OF PG. 2] that the Plaintiff/Sovereign, Alberto Concepcion, **"was**
**charged with inter alia"**, conspiracy to distribute narcotics **"(heroin)".**
Plaintiff/Sovereign, Alberto Concepcion, ultimately pleaded guilty to that
charge [21 U.S.C. §§ 841, & 846], & was sentence to 325 months in prison,
**"in which those falsehood statements, testimonies, & information"** that
were made by Counsel(s) of Record are consider knowing acts of perjury
generally to presiding Judge RMU, & acts of false declarations before the
District Court of Columbia, inter alia. These acts of perjury generally
were also made knowingly, intentionally, & willingly by both David M. Har-
dy, & Dione J. Stearns, in the **"SWORN DECLARATIONS"** attached to Motion 2,
for Extention. Here CONCEPCION, attest, & asserts **"that he was not indict-**

ed for heroin, as Counsel(s) of Record, & others claimed in their state-

ments before this Court; but CONCEPCION, in fact was indicted on PURE LAC-

TOSE", a part from said criminal complaints, & arrest warrants for Case

#99-753(AJL), among other cases being **"forged";** therefore, lacking prob-

able cause, inter alia. SEE, Plaintiff's, Comp., at ¶ 46 - ¶ 48, & ¶ 50 -

¶ 56, therewith; Hardy's, Decl., at ¶ 5; & Stearns, Decl., pg. 1, at top

left hand corner.

13. Furthermore, Counsel(s) of Record **"did not"** [AS OF APRIL 22,2008]

provide CONCEPCION, with any documentation as **"they mentioned"** to presid-

ing Judge RMU, in their Motion 2, for Extention, at pg. 3, above fn. 5, in

which held: Indeed, the first such production **"will likely be made within**

**the next two weeks".** The Plaintiff, contends that Counsel(s) of Record

have been spinning both the Plaintiff, & presiding Judge RMU, in this mat-

ter, of which is a common practice by the U.S. Attorneys Office nationwide.

14. Furthermore, Counsel(s) of Record in their Motion 2, for Exten-

tion, at the top of pg. 4, stated: During its recent review... FBI located

approximately 650 pgs. of lab reports... **"THOSE LAB REPORTS** WERE CREATED

**BY THE DRUG ENFORCEMENT ADMINISTRATION, HEREINAFTER DEA...";** as in Hardy's,

Decl., attached to the Motion 2, for Extention stated: A review of investi-

gation file 245D-NK-97240, **"revealed approximately 650 pgs. of DEA lab re-**

**ports..."** In response.., **"FBIHQ"** will refer these requests to the DEA,

**"THE ORIGINATING AGENCY",** for direct response to the Plaintiff. Here the

Plaintiff, **"is respectfully"** requesting Honorable presiding Judge RMU, to

take **"judicial notice"** of the following facts:

A) That the DEA, **"WAS NOT"** the originating investigating agency in

the **FABRICATED FEDERAL CRIMINAL CASE [#99-753(AJL)] AGAINST CONCEPCION [ET**

**AL.],** in which Counsel(s) of Record, & others are trying to shift the bur-

den of omissions, inter alia, upon the DEA. **SEE**, Plaintiff's, Comp., at ¶
46, & ¶ 48, therewith; in which said criminal complaints were signed by
**"A ESSEX COUNTY BUREAU OF NARCOTICS SHERIFF OFFICER; [PERTENDING TO BE**
**A SPECIAL FBI AGENT] JOHN F. MURPHY JR.";**

   . **B)** That **"prior"** to CONCEPCION, filing his FOIA requests with the
named Defendants/Corporations, in this Cause of Action, CONCEPCION, re-
quested by way of  Cert. Return Receipt Mail, & by way of his FOIA forms,
& applications **"to the DEA"**,  for copys of any, & all records, documents,
& etc., in regards to CONCEPCION, and/or Federal Criminal Case #<u>99-753</u>
<u>(AJL)</u>, **"in which it has been confirmed by the DEA"**, that no such records,
documents, and/or otherwise as the **"lab reports"**  exist with the DEA, of
which the lab reports, inter alia, **"ARE NOT"** records, documents, files,
data, & etc., that are protected by any provisions within title 5 U.S.C.
§ 552 et seq. Therefore, said DEA, agency **"NEVER HAD POSSESSION OF ANY**
**LAB REPORT(S)"**, as Counsel(s) of Record, & Hardy's, Decl. [**SEE**, ¶ 14,
HEREIN], claimed that approximately 650 pgs. of lab reports existed with
said DEA; even **"if"** Counsel(s) of Record, and/or otherwise **"fabricate any**
**lab report records, documents, & etc."**, for the purpose of producing said
records, documents, & etc., to this Court, said [FABRICATED] lab reports
**"are not"**  going to collaborate with serveral other **"unfiled documents"**,
of which came directly from the N.J U.S. Attorneys Office, & will be pre-
sented as additional evidence to this Court, & the requested trial by
jury for this Cause of Action.

    Here the Plaintiff, is in good faith withholding these specific DEA,
exhibits **[12 IN TOTAL]** known as Ex: C-3 - C-14, for the purpose of shut-
ting down Counsel(s) of Record, & others **"continuing lies in whole"** to
the Court-presiding Judge RMU, & the Plaintiff. However, said exhibits are

on stand-by for filing, **"ONLY IF THE COURT REQUESTS FOR THEM"**; &

**C)** The Plaintiff, asserts that there was an investigation [BASED ON THE PROVIDED DOCUMENTS TO CONCEPCION, BY THE DEA] that was conducted by the DEA, agancy against CONCEPCION, of which started on, or about <u>Oct. 18</u>, <u>1994</u>, but was closed sometime in <u>1997</u>, in which was **"COMPLETELY UNRELATED"** to CONCEPCION'S, **"FBI INVESTIGATION-CONVICTION, IN CASE #99-753(AJL)"**. The Plaintiff, in this Cause of Action, can prove beyond a reasonable doubt, by way of clear, & convincing proof of evidence that the DEA **"WAS NOT"** the initial investigating agency during the 19 months [FROM 1998, TO DEC. 15,1999, DAY OF CONCEPCION'S, FALSE ARREST] of the alleged federal investigation, nor was the DEA, the complainant in Federal Criminal Case # <u>99-753(AJL)</u>. **SEE**, Ex: F-107 - F-109, attached to Plaintiff's Complaint.

### POINT  I
#### OF THE FINDING OF FACTS FOR SUMMARY JUDGMENT
#### OF THE SOVEREIGNTY ESTABLISHMENT OF
#### <u>THE FEDERAL COURTS INTER ALIA</u>

**15.** SOVEREIGN DEFINED: The Sovereign, is a nonjuristic human being, a member of **"We The People"**. All of the Sovereign's, Rights come from **"<u>GOD</u>"**, & not the State, and/or Federal Government. The **"Sovereign"**, does not quality as a **"person"** as defined by [STATUTES] Law. The Sovereign, is independent, self-governing, & Lawful. The term Sovereign, & to this particular extent means **"property"** herein, being the [SECURED PARTY'S] Plaintiff's, body, mind, & all of his material possessions, & ownership thereof.

**16.** Here Plaintiff/Sovereign, Alberto Concepcion, is proving **"beyond a reasonable doubt"** that he was not indicted by any Grand Jury as required by Law, & as Counsel(s) of Record mentioned in their Motion 2, for Extention, & as said Declarations attached therewith claimed; in which the 5th

Amend. for the Const. of the United States held: No **"PERSON"** shall be held to answer for a capital, or otherwise infamous crime, unless on present- ment, or indictment of a Grand Jury... nor be deprived of life, liberty, or property without due process of Law.. In Kansas v. Colorado, 51 L.Ed 956 (1907), The Supreme Court held: The three Sovereigns as [1] the Uni- ted States, as the Federal Government; [2] the State Government(s); **"& [3] We The People".** While Sovereign, powers are delegated to... the Gov- ernment, Sovereignty itself remains with the people. Also see Yick Wo. v. Hopkins, 118 U.S. 356, at 370 (1886)(Emphasis added).

17. Furthermore, the Plaintiff, asserts that if the U.S. DISTRICT COURT OF [NEWARK] NEW JERSEY, hereinafter NJDC, presupposing that it is duly constituted; were charging this Sovereign, nonjuristic man, it should have either served notice that it intended to do so, or served this Sover- eign, with the **"proper service of process".** Concepcion, asserts, & con- tends that the **"person"** named in the NJDC charging commercial instruments, is just what it presumes to be, that of a **"federal government creation, & fiction existing ONLY in the contemplation of Law",** of which this man does not propose to ignore his birth, life, nor his future. However, **"re- spectfully"** to the Honorable Judge in this Cause of Action, it must be made clear that as a **"SOVEREIGN",** the NJDC, if it were a Court of Law other than de facto, it should have served this Sovereign, within the man- date Rules, & Procedures of the Law.

The Plaintiff, herein asserts that STRAW-MAN [OF WHICH IS A COMMER- CIAL NAME], & DEBTOR, ALBERTO CONCEPCION, is a fiction; however, that en- tity does, & is, the solo personal property of the Plaintiff/Sovereign, known herein as Alberto Concepcion.

18. It is also contended, & at issue that the **"SOVEREIGN, CANNOT BE**

9

**NAMED MERELY AS A PERSON, OR ANY PERSON IN A STATUTE"**, but MUST be specified within the language of the statute, as it was held **"by the U.S. Supreme Court"** in <u>Will v. Michigan State Police</u>, 105 L.Ed 2d 45, at 1c (1989), of which held: In common usage, the term **"person does not"** include the **"Sovereign"**, & statutes employing the [WORD] are ordinarily construed **"to exclude it"**. Citing <u>Wilson v. Omaha Indian Tribe</u>, 61 L.Ed 2d 153, at ¶ 10-11; <u>U.S. v. Cooper Corporation</u>, 312 U.S. 600, at 604 (1941); & <u>U.S. v. United Mine Worker of America</u>, 91 L.Ed 884 (1947).

19. More importantly,this Sovereign, now being a Secured Party, has declared, & certified his birthright on the public record, although it is true that Concepcion, came into this world as a Sovereign, & is now being asserted. e.g., In <u>Church of Sci. v. U.S. Dept. of Juctice</u>, 612 F.2d 417, at 425 (1978), The Cir. Court held: The word **"person"** in legal terminology is preceived as a general word... includes in its scope a variety of entities... citing title 1 U.S.C. § 1. Also see <u>U.S. v. Fox</u>, 94 U.S. 315, 24 L.Ed 192 (1877).

20. Here the Plaintiff/Sovereign, asserts, & contends that a Court [AS THE NJDC, **SEE**, COUNSEL(S) MOTION 2, FOR EXTENTION, AT PG. 2, TOP, HARDY'S, DECL., AT ¶ 5, & STEARNS, DECL., AT ¶ 25] has **"no jurisdiction"** over a party not properly indicted by a Grand Jury; of which there can be no action, or criminal prosecution, and/or otherwise until someone has been formally accused of the act(s) constituting a criminal offense. See, Art. V, for the Const. of the United States; the N.J State Const. Art. I, § I, ¶ 8; & <u>Hale v. Hankel</u>, 50 L.Ed 652 (1906).

21. The Plaintiff, asserts that he requested in his requests for the production of records, & documents, & requests for admission [**SEE**, EX: D-9, ¶ 17 - ¶ 19], of which are attached to his Motion to Compel,

that said discovery requests were made directly [RECEIVED ON JAN. 2,2008] to the Defendants/Corporations, in which they have **"failed"** to produce evidence by way of said **"non-exempted requested FOIA records, documents, files, data, & etc.",** in which Concepcion, asserts that the special provisions have been placed in the Const. for the United States for cession of jurisdiction, & it is only in those places, or in those territories of the United States where the federal government **"in any capacity"** can exercise general jurisdiction. e.g., In <u>U.S. v. Bevans</u>, 4 L.Ed 404 (1818), The Court held: It is not the offense committed, but the place, in which it was committed. It has been well established in Law that all legislation is **"prima facie territorial".** Also see <u>America Banana Co. v. United Fruit Co.</u>, 213 U.S. 347, at 357-58 (1909).

22. In <u>Pollard v. Hagan</u>, 44 U.S. 212, at 221 (1845), The Court held: The **"<u>UNITED STATES</u>"** has no Constitutional capacity to exercise municipal Sovereignty, or eminent domain within the limits of a State, except in cases, in which it is expressly granted. Id. at 223, special provisions is made in the Constitution for cession of jurisdiction, & it is only in these places, or in territories of the United States where it can exercise general jurisdiction; as in <u>New Orleans v. United States</u>, 35 U.S. 622 (1836), The Court held: Unless there has been a transfer of jurisdiction... **"THE FEDERAL GOVERNMENT POSSESSES NO LEGISLATIVE JURISDICTION OVER ANY AREA WITHIN A STATE";** as in <u>Battle v. United States</u>, 209 U.S. 36 (1908), The Supreme Court held: The United States has exclusive jurisdiction of the offense committed **"<u>UPON LAND OVER WHICH THE STATE CEDED JURISDICTION</u> [OF WHICH ARE SOME OF THE NON-EXEMPTED RECORDS, & ETC., SOUGHTED BY THE PLAINTIFF, IN THIS CAUSE OF ACTION]. <u>SEE</u>,** Ex: D-9, ¶ 17 - ¶ 19, attached to the Motion to Compel; & title 18 U.S.C. § 7.

The above soughted records, & etc., are a part from the Defendants/ Corporations, **"failure"** to produce a certified copy of the **"mandatory required non-exempt records, & etc.",** of the Notice of Acceptance of Criminal Jurisdiction with the Governor of the State of New Jersey, for Case # 99-753(AJL), rendering falsification of public records, inter alia, by the Defendants/Corporations. In <u>U.S. v. King</u>, 781 F.Supp. 315, at 317, ¶ 1 (NJDC 1991), The Court held: Second, & more importantly, the U.S. Government **"has not"** shown that it has exerted such jurisdiction by filing the requisite notice with the Governor under 40 U.S.C. § 255, **<u>"WHICH HAS BEEN REQUIRED BY CONGRESS, SINCE 1940"</u>;** as in <u>Adams v. United States</u>, 319 U.S. 312 (1943), The U.S. Supreme Court held: Since the Government **"has not"** accepted jurisdiction in the manner required by the act of 40 U.S.C. § 255; the Federal Court had **"no jurisdiction"** in Adams, proceeding. The Court further held: Unless, & until the United States had accepted jurisdiction over lands hereafter to be acquired as aforesaid, **"IT <u>SHALL</u> BE CONCLUSIVELY PRESUMED THAT NO SUCH JURISDICTION HAS BEEN ACCEPTED..."**

In <u>Oppenheimer Fund Inc. v. Sander</u>, 57 L.Ed 2d 253, at ¶ 6-7 (1978), The U.S. Supreme Court held: Parties may obtain discovery regarding any matter not privilege, **"which is relevant"** to the subject matter involved in the pending action... Also see <u>Bender v. Williamsport Area School District</u>, 89 L.Ed 2d 501, at pg. 511, ¶ 2-4 (S.Ct. 1986).

23. In Short, Concepcion, **"has never"** knowingly, intentionally, and/ or voluntarily surrendered his original status as a Sovereign, Common Law [C]itizen of the several States [New Jersey], for the purpose of becoming a so-called 14th Amendment federal [c]itizen who is subject to the jurisdiction of the United States; or a person, or a straw-man, or a debtor, and/or any affiliation(s) with the State, and/or Federal Government-Corpo-

ration(s).

## POINT II

24. The Plaintiff, is also pointing out to Honorable presiding Judge RMU, that in Counsel(s) Motion 2, for Extention, at the top of pg. 2, in which also referred to Mr. Hardy's, Decl., ¶ 5, in which both the Motion, & Decl., held: Plaintiff.., was charged with possession with intent to distribute **"heroin..."**; as in Hardy's, Decl., at ¶ 5, held: Plaintiff.., was charge with possession... conspiracy to distribute narcotics, & narcotics sell, distribute, or dispense. Plaintiff, plea guilty to conspiracy [21 U.S.C. § 846] to distribute narcotics **"in violation of 21 U.S.C. § 841(a)(1)...".** Here the Plaintiff/Sovereign, bring's to the Court's attention that Counsel(s) of Record [& OTHERS] **"KNEW"** that the Controlled Substance Act, hereinafter CSA, established commercial regulatory statutes that were, & are still designed for legitimate businesses.

25. e.g., Said CSA, applys to physicians, manufactures, distributors, retailers, & all registrants, & such. See, the legislative history House of Representatives, hereinafter H.O.R, Report No. <u>91-1444</u>, U.S. Cong., & the Administration News at pgs. 4566, 4571-72, & 4590. The purpose of the CSA, 21 U.S.C. § 801 et seq., is to provide a more flexible penalty structrue that existed under prior Law. Thus, Concepcion, avers that § 801 et seq., is for a **"person"**, or people registered, or people residing, and/or doing business within the jurisdiction of the United States, in which Concepcion, a Sovereign, & Common Law [C]itizen of the State of New Jersey, **"is not included"**.

26. Accordingly, §§§ 841, 846, & 853, under which the Plaintiff/Sovereign, Alberto Concepcion, **"WAS MISTAKENLY"** convicted of, contains language, in which its application is limited. The phrase as authorized by

subchapters §§§ 841, 846, & 853, among others specifically reflects
to those who are registered, or a person(s), and/or [c]itizens of the Uni-
ted States. Concepcion, asserts, & contends that he **"IS NOT"** licensed, or
registered as doctors are required to be, nor is he a **"person"**, nor did he
ever live within the jurisdiction of the United States. <u>SEE</u>, Plaintiff's,
Comp., at pg. 2, ¶ 5; ¶ 17 - ¶ 19, herein; & the <u>Fed.R.Crim.P.</u>, 21 §§ 841
(a)(1), & 846.

   **27.** Here Concepcion, thus, advances with supporting authorities that
no documentation can be shown by the named Defendants/Corporations, and/or
Counsel(s) of Record for said Defendants, to say that the enumerated sub-
sections, in which CONCEPCION, ET AL., were charged with is an **"unpromul-
gated published regulation"**, thus these particular federal statutory pro-
visions known as §§§ 841, 846, & 853, among others **"lack's the force, &
affect of Law when mis-applied beyond the parameters of the United
States"**, of which said named Defendants/Corporations, have admitted, &
stipulated **[BY WAY OF CONTRACT]** to these facts in the Plaintiff's, re-
quests for admission. <u>SEE</u>, Ex: D-12, ¶ 31, & D-13, ¶ 32, & ¶ 33, attached
to the Plaintiff's, Motion to Compel; the <u>Fed.R.Crim.P.</u>, Rule 54(c); 21 §
802(28); & Art. I, § 8, Cls. 17, of the Const. for the United States.

   **28.** In <u>Foley Brothers v. Filardo</u>, 93 L.Ed 680 (1949), the U.S. Su-
preme Court held: It is well established as a principal of Law that all
federal legislation **"applies only within the territorial jurisdiction of
the United States"**, unless contrary intent appears. In order for a con-
trary intent to be facilitated, delegations of authority, & implementing
regulations **"MUST"** be published in the Federal Register, & Code of Federal
Regulations, hereinafter C.F.R. Fortunetely, there is readily available
method for discerning which statutes are at Large, & which statutes con-
tained within the 50 titles of the United States possess either restricted

14

application, or general applicability to the several States of the Union, & Population at Large. This method is through consulting the paralled table of authorities, & rules which begins at pg. 709, of the 1998, index volume to the C.F.R.

29. The facts in this section are that the named Defendants/Corporations, Counsel(s) of Record,  & others **"KNEW"** that §§ 841, 846, & other statutes **"HAVE NOT BEEN PROMULGATED"** in the Federal Register, & C.F.R, & possess no published implementing authorities, of which publication is required pursuant to title 5 U.S.C. § 552(a)(1)(D), & (a)(2), among others.

30. The Administrative Procedures Act located at title 5 U.S.C. § 552 et seq., & the Federal Register Act located at 44 U.S.C. § 1505 et seq., has provided the means for determining statutes in any given **"Act of Congress, & which act's are applicable within federal areas, & which statutes have general applicability within the territories, enclaves, & insular possessions belonging to the United States".** The Plaintiff, asserts, & contends that the United States Code in totality, were put together in the District of Columbia as **"COPYRIGHTED PRIVATE INTERNATIONAL LAW"**, & is applicable **"ONLY"** in the District of Columbia, & any other jurisdiction within the purview of its Military Dictatorship.

31. Pursuant to title 44 U.S.C. § 1505(a)(1), it is found **"that if a statute IS NOT PUBLISHED in the Federal Register, & C.F.R, the application of the statutory provision IS RESTRICTED to federal agencies, or persons acting in there capacity as agents, officers, employees, & etc., of the federal government".** Furthermore, positive Law is the Law of the United States. However, when federal statutory provisions **"ARE NOT DULY, & PROPERLY PROMULGATED IN ACCORDANCE WITH THE LAW"**, then such statutes lack the force of Law, & may not be applied capriciously, or arbitrarily.

See, <u>U.S. v. Caudle</u>, 828 F.2d 1111 (1987); <u>U.S. v. Widdowson</u>, 723 F.Supp. 583 (1989); & <u>U.S. v. Birnbaum</u>, 55 F.Supp. 356 (1944).

32. In <u>Hotch v. United States</u>, 212 F.2d 280, at 283 (1954), The Court held: Under our system of Law **"NO ACT IS PUNISHABLE AS A CRIME"**, unless it is specifically condemned by the Common Law, or by a statutory enhancement of the legislative. Citing 22 C.F.R Criminal Law, at 17. Therefore, the Administrative Procedures Act, & the Federal Register Act **"MUST"** be read as a part of every Congressional delegation of authority, unless specifically mentioned. These acts **"require publication"** irrespective of actual notice as a prerequisite to the issuance of a regulation making certain acts criminal.

If certain acts have not been made crimes by a duly enacted Law, the knowledge of their contemplated administrative prescription **"CANNOT"** subject the informed **"PERSON [AS STRAW-MAN & DEBTOR ALBERTO CONCEPCION]"** to criminal prosecution. While ignorance of the Law is no defense for these highly educated Defendants/Corporations, Counsel(s) of Record for said Defendants, & others; it is conversely true that a Law, in which **"has not been duly enacted into positive Law, IS NOT a Law of general applicability"**, & therefore, a person who does not comply with its provisions **"CANNOT BE GUILTY OF ANY CRIME(S)"**. **SEE**, Ex: C-15, & C-16, herewith; Counsel(s) Motion 2, for Extention at top of pg. 2; & Art. IV, § VII, ¶ 8, of the Const. for the State of New Jersey.

33. In <u>U.S. v. Mursky</u>, 4 L.Ed 2d 423, at ¶ 6 (1960), The U.S. Supreme Court held: Once promulgated the regulations called for by the statutes itself, have the force of Law, & violations thereof incur criminal prosecution, just as if all the details have been incorporated into the Congressional language. **"THE RESULT IS THAT NEITHER THE STATUTE, NOR THE**

16

REGULATION ARE COMPLETE WITHOUT THE OTHER, & ONLY TOGETHER DO THEY HAVE ANY FORCE, & EFFECT". Therefore, the construction of one necessarily involves the construction of the other; & in the context of a criminal prosecution the Rules of strict construction "MUST" be applied in the interpretation of any administrative regulation to which the consequences attached under the statutes authorizing the promulgation of the regulation, as well as the construction of the statutes. SEE, Ex: D-12, ¶ 31, attached to the Plaintiff's, Motion to Compel; & Oppenheimer Fund Inc. v. Sander, supra.

34. In U.S. v. Two Hundred Thousand Dollars, 590 F.Supp. at ¶ 9 (1984), The Court held: The publication of a Rule in the Federal Register made "obligatory" by title 5 U.S.C. § 553(d), relates back to title 5 U.S.C. § 552(a)(1)(D), "which requires that each agency [AS THE DEA] SHALL" separately state, & currently publish in the Federal Register "ALL" substantive Rules of general applicability... citing Rowell v. Andrus, 631 F.2d 699, at ¶ 1 (1980). SEE, Ex: C-17 - C-30, herewith.

POINT  III

35. Here the Plaintiff/Sovereign, obtained evidence from his extensive research [SEE, PLAINTIFF'S, COMP., AT ¶ 39, & ¶ 74; & HIS SECOND ADDITIONAL REQUEST FOR THE PRODUCTION OF DIFFERENT RECORDS, DOCUMENTS, & ETC., & REQUESTS FOR ADMISSIONS, KNOWN HEREIN AS EX: C-31 - C-36, HEREINAFTER PLAINTIFF'S, 2ND REQUESTS, OF WHICH WERE DIRECTLY CERT. MAILED TO COUNSEL(S) OF RECORD ON MARCH 6,2008, & RECEIVED AT THEIR ADDRESS ON MARCH 11,2008], in which indicated that the Statute that the NJDC, used to attain its "bogus jurisdiction", inter alia, "were never" enacted into positive Law, "& ARE IN FACT UNCONSTITUTIONAL ON THEIR FACE"; therefore, being void ab initio, in which the named Defendants/Corporations, Coun-

17

sel(s) of Record for said Defendants, & others are aware of these facts in this section as well as in points one, & two herein. The evidence-unrebuttable exhibits herewith, & the Court decisions herein, inter alia, supports these facts, & established Law, as well as this Motion/Affida-vit/Declaration/Memorandum of Law/Application/Brief In Support for Plain-tiff's, Request for Summary Judgment, pursuant to the <u>Fed.R.Civ.P.</u>, Rule 56(c). Both Concepcion, & CONCEPCION, are being held **"against there will in violation"** of both the Const. of the United States, & the Const. of the State of New Jersey, inter alia, **"of which they had not committed no crime as a matter of Law"**. <u>SEE,</u> Plaintiff's, Comp., at ¶ 39, & ¶ 74.

36. The Plaintiff, asserts that the NJDC, exceeded its jurisdiction over CONCEPCION, & had no authority to indict, hold, impose a prison sen-tence, and/or otherwise against him. Said <u>**"FACTS"**</u> are, because Public Law <u>80-772</u>, **"was never enacted into positive Law"**, in which the NJDC, relied upon the <u>Fed.R.Crim.P.</u>, 18 § 3231, for its **[BOGUS]** jurisdiction over CON-CEPCION, & Case <u>#99-753(AJL)</u>, of which is the **"only"** statute, in which gave the NJDC jurisdiction to entertain said bogus criminal prosecution in Case <u>#99-753(AJL)</u>. Therefore, since 18 § 3231, gave the NJDC, juris-diction over CONCEPCION'S, **"fabricated federal criminal case";** said Court had no business convicting him, even under a statute that is, and/or was enacted later such as the **"unpublished"** <u>1970</u>, drug statutes **[OF WHICH ARE UNCONSTITUTIONAL. <u>SEE,</u> ¶ 24 - ¶ 34, HEREIN]** under title 21 §§§§ 841, 846, 851, & 853, among others.

37. Whereas, a plea agreement as CONCEPCION'S, is automatically **"invalid"** when said NJDC, <u>**"DID NOT"**</u> have jurisdiction **[<u>SEE,</u> HARDY'S, DECL., AT ¶ 5, ATTACHED TO MOTION 2, FOR EXTENTION]**; in which the Defen-dants/Corporations, known herein as the Federal Bureau of Investigation,

Executive Office of the U.S. Attorneys, & U.S. Department of Justice [AMONG OTHERS] directly, & indirectly knowingly, intentionally, & willingly were holding, & providing inter alia, the Plaintiff, the Public, this Court, & others with falsify records, documents, files, data, & etc., in regards to numerous statutes, **"of which are known to be unconstitutional"**. SEE, Ex: C-15, & C-30, herein; the Plaintiff's, Comp., at ¶ 39, & ¶ 74, therein; Counsel(s) Motion for Protective Order, pgs., 3 - 5; & Counsel(s) Motion 2, for Extention, at the top of pg. 3.

### HISTORY, & FACTS
### OF PUBLIC LAW 80-772

38. The Plaintiff, asserts, & contents for the purpose of this Motion for Summary Judgment, inter alia; that pursuant to Public Law 80-772 [THE CODIFICATION OF TITLE 18], that it was introduced, & passed by the H.O.R, during the 1st Session of the 80th Congress as House Report Number, hereinafter H.R. 3190, entitled as Crimes, & Criminal Procedures, of which H.R. 3190, differed from five... Bills which... preceded it.., because it constituted a revision, as well as a codification of the Federal Laws relating to said crimes, & criminal procedure. SEE, Ex: C-37, & C-38, herewith.

The Bill prior to being known as the federal crimes, & criminal procedure-Public Law 80-772, **"was first introduced"** in the H.O.R, as H.R. 2200, during the 79th Congress, & passed the H.O.R, unanimously, & was referred to the Senate Committee on the Judiciary on July 16,1946, in said 2nd Session of the 79th Congress, **"but never passed said Senate, & died when the 79th Congress adjourned sine die"**. See, 92nd Congressional Record, hereinafter Cong. Rec. pgs. 9122, & 1067 (FOR JULY 16,1946); & Ex: C-38.

19

**39.** Said H.R. Bill 3190, was intended [1] to revise, & compile "**ALL**" of the criminal Law(s), [2] to "**restate, & consolidate**" existing statutes, [3] to repeal, absolete, supersede, redundant, & repitious statutes, [4] to coordinate the criminal code with the Fed.R.Crim.P., formerly enacted, & [5] to clarify, & harmonize penalties of the "**many acts**" passed by Congress, of which were found to be almost identical. Id. The Bill was ordered to be engrossed, & read a "**third Time, & finally passed the House on May 12,1947**". SEE, Journal of the H.O.R, for May 12, 1947, at pgs. 343-44; & Ex: C-39, & C-40.

Said Bill [WITH SOME ADMENDMENTS] passed the H.O.R, 38 to 6, on May 12,1947, & was referred to the Senate Committee on the Judiciary the next day in the 1st Session of the 80th Congress. SEE, C-37, & C-38, SPECIFI-CALLY EX: C-38 (SHOWING H.R. 3190'S, ONLY PASSAGE BY THE H.O.R, ON MAY 12, 1947; OF WHICH WAS SENT TO THE SENATE, & REFERRED... TO THE COMMITTEE ON THE JUDICIARY). **ALSO SEE,** Ex: C-41, herewith; 93rd Cong. Rec. 5121 (FOR MAY 13,1947); Journal of the Senate, at pg. 252; & fn. 1, below.

As passed, & enrolled by the H.O.R, H.R. 3190, included at § 3231, "Subtitled District Courts", in which held as follows: "**Offenses against the United States shall be cognizable in the District Courts of the UNITED STATES**", but nothing in this title shall be taken away, or impair the jurisdiction of the Courts of the several States under the Laws there-

_____

FN. 1/ The Senate Journal [AT PG. 259] for May 13,1947, was ap-proved by the Senate on May 14,1947, & the House Journal for May 12,1947, was approved by the House on May 13,1947. See, House Juurnal, at pg. 346. The Journals of the Two Houses are "**admissible as evidence when properly certified**". Also see 28 U.S.C. § 1736; 28 U.S.C. § 2072(a), & (b); House Doc. No. 355; 59th Cong., 2nd Session; & Hinds Precedents of the H.O.R, § 2810, at pg. 34 (G.P.O 1907).

of. See, H.O.R, at pg. 367, § 3231; & <u>U.S. v. Sasscer</u>, 558 F.Supp. 33, at pg. 34 (1982).

40. The Plaintiff, in this Cause of Action, attest, & asserts that there is a clear distinction between a <u>C</u>itizen of the 50 States [American <u>C</u>itizen], & a <u>c</u>itizen of the United States [Federal <u>c</u>itizen], in which the U.S. Supreme Court has Ruled on **"THIS FACT"** more than once, & have came up with the same result. As in Law each word, & each use of the word including its capitalization as ALBERTO CONCEPCION [<u>SEE</u>, ¶ 17 - ¶ 23, HEREIN], or lack of capitalization **"has a distinct legal meaning"**. Concepcion, asserts, & contends that the State Citizenship carries with it the full protections of the Const. of the United States, & the Const. of the State of New Jersey, in this matter, of which said Sovereignty is a **"GOD-GIVEN"** unalienable Right to life, liberty, & the pursuit of happiness, inter alia; **"of which do not come from the State, and/or Federal Governments-Corporations"**. The case Law surrounding the 13th, & 14th Amendments all ring with the same massage; these amendments **"DID NOT"** change the status of the Common Law Citizenship of the <u>C</u>itizen of the several States of the Union. See, <u>Slaughter-House Cases</u>, 21 L.Ed 394 (1873); <u>Twining v. New Jersey</u>, 53 L.Ed 97 (1908); <u>People v. Washington</u>, 36 C. 658, at 661 (1869); <u>French v. Barber</u>, 45 L.Ed 879 (1901); & <u>Mackenzie v. Hare</u>, 60 L. Ed 297 (1915).

41. The Plaintiff, asserts that upon President Truman's, proclamation, Congress reconvened on <u>Nov. 17,1947</u>, & the 1st Congress of the 80th Congress adjourned sine die on <u>Dec. 19,1947</u>, **"without the Senate passing H.R. 3190"**. In <u>Kennedy v. Sampson</u>, 511 F.2d 430, at pg. 444, fn. 4 (1979), The Cir. Court held: The Senate, & the H.O.R, adjourned on <u>July 27,1947</u>,

under a **"conditional final adjournment resolution"**, S. Con. Res. 33; 93rd Cong. Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until <u>Jan. 2,1948</u>, unless recalled in Session earlier by specified Senate, & House leaders. In effect, the adjournment was a sine die adjournment, **"& not an intrasession adjournment"**. On <u>Nov. 17, 1947</u>, Congress convened pursuant to proclamation of President Truman, & adjourned sine die on <u>Dec. 19,1947</u>. The President pocket vetoed 19 Bills presented to him after the adjournment of <u>July 27,1947</u>. <u>SEE</u>, Ex: C-42 - C-47.

## H.R. 3190, IN THE SECOND SESSION
## OF THE 80TH CONGRESS

42. The Plaintiff, asserts pursuant to numerous records, documents, case Law, & etc., that the Senate Committee [OF WHICH NUMEROUS RECORDS, DOCUMENTS, & ETC., WERE REQUESTED BY THE PLAINTIFF, IN HIS 2ND REQUESTS KNOWN HEREIN AS EX: C-31 - C-36] on the Judiciary reports of the amendments to H.R. <u>3190</u>, dated <u>June 14,1948</u>, under Senate Report 1620 [<u>SEE</u>, FN. 2, BELOW], in which contained **"a large volume of amendments"**, & the new <u>Fed.R.Crim.P.</u>, in which keyed to the Bill, & were reflected in part II, of title 18; heralding that, upon passage of the amended Bill, **"uncertainty will be ended"**, of which the Sanate wanted **"the amendments adopted en bloc"**, including a new jurisdiction § for title 18, of which the report contained only the proposed amendments. See, 94th Cong. Rec. 8721; & Senate Report No. <u>1620</u>, at pgs, 1, & 4.

Mysteriously, however, near the end of the 2nd Session of the 80th

---

FN. 2/ The Senate Journal [AT PGS. 461-62] was approved on <u>June 14, 1948</u>.

Congress on June 14, 1948, H.R. 3190, surfaced in the Judiciary Committee Amendments, in the Senate, **"as if it had never died with the sine die adjournment in 1947"**; or as if it was passed once again by the H.O.R, in 1948. See, 94th Cong. Rec. 8075 (FOR JUNE 18, 1948); & Senate Journal, for June 14, 1948, at pg. 452.

43. The amendments were considered, & agreed to an en bloc, & from there **"ordered to be engrossed"**. See, 94th Cong. Rec. pgs. 8721-22 (FOR JUNE 18, 1948); & Senate Journal, for June 18, 1948, at pg. 506 [OF WHICH H.R. 3190, "AS AMENDED", PASSED THE SENATE]. It was moved that **"the Senate insist upon its amendments"** by the House [IN THE 94TH CONG. REC. 8722]; **"& ordered that the Secretary request the concurrence of the H.O.R, in the amendments"**. See, House Journal, for June 18, 1948, at pg. 688; Senate Journal, at pg. 506; & fn. 3, below.

44. At that time the House received the proposed amendments, **"& the Clerk read the Senate amendments"** collectively into the record [SEE, 94TH CONG. REC. 8864-65, FOR JUNE 18, 1948; & HOUSE JOURNAL, FOR JUNE 18, 1948, AT PG. 704 (IN WHICH SAID SENATE AMENDMENTS WERE CONCURRED IN)] with which the House concurred. Even though the House agreed to the amendments of... H.R. 3190 [SEE, SENATE JOURNAL, FOR JUNE 18, 1948, AT PG. 510]; **"no action was taken in regards to H.R. 3190, as amended [SEE, EX: C-48 - C-53]"**. The Journal of the H.O.R, is devoid of any veto on H.R. 3190, it-

---

FN. 3/ The House Journal [AT PG. 714] was approved on June 18, 1948 (ON JUNE 19, 1948, APPROVING JOURNAL FOR **"LEGISLATIVE DAY OF... JUNE 17, 1948"**. E.G., CALENDAR DAY OF JUNE 18, 1948); Id. at pg. 669 (SHOWING FRIDAY JUNE 18, 1948,  **"AS LEGISLATIVE DAY OF THURSDAY, JUNE 17, 1948"**); & The Senate approved its Journal for June 18 - 20, 1948. See, Senate Journal, for July 26, 1948, at pg. 593.

self on <u>June 18,1948</u>, & thereafter through adjournment on <u>June 20,1948</u>. Moreover, the official historical chart of H.R. <u>3190</u>, clearly shows the **"ONLY"** passage by the H.O.R, occurring on <u>May 12,1947</u>, & specifically references to by the Plaintiff, in the exhibits attached herewith, of the recorded date, in which the House passed the Bill. <u>SEE</u>, Ex: C-38; & C-54 - C-57.

In <u>Oppenheimer Fund. Inc. v. Sander</u>, 57 L.Ed 2d 253, at ¶ 6-7 (1978), The U.S. Supreme Court held: Parties may obtain discovery regarding any matter [OF WHICH THE PLAINTIFF, HAS PROVIDED SOME EXHIBITS HEREIN FOR HIS REQUEST FOR SUMMARY JUDGMENT] not privilege, **"which is relevant"** to the subject matter involved in the pending action...

**CONGRESS AGREED BY RESOLUTION, TO CONTINUE
LEGISLATIVE BUSINESS BY A SINGLE OFFICER OF EACH HOUSE
DURING ADJOURNMENT IN VIOLATION, OF THE CONSTITUTION
OF THE UNITED STATES, INTER ALIA**

**45.** On <u>June 19,1948</u>, the House submitted, & agreed to concurrent resolutions H. Con. Rec. 218, & 219, & requested concurrence by the Senate House Journal, of <u>June 19,1948</u> [AT PGS. 771-72, THEREIN], & Senate Journal, of <u>June 18,1948</u> [AT PG. 577]. The Senate then passed without amendment, these concurrent resolutions of the House [SEE, 94TH CONG. REC. 9349, & FN. 4, BELOW]; of which H. Con. Rec. 218, provided adjournment of the two Houses of Congress until <u>Dec. 31,1948</u>. See, H. Con. Res. 218, 2nd Session, 80th Congress (FOR JUNE 20,1948), 62 Stat. at pgs. 1435-36; H. Con. Res. 219, **"authorized the signing of enrolled Bills following adjournment..."**

_____ **FN. 4/** The House sat from <u>June 19</u>, through <u>June 20,1948</u>, adjourning at 6:56 a.m., House Journal, of <u>June 19,1948</u>, at pg. 775, & approved by the Journal. See, House Journal, for <u>July 26,1948</u>, at pgs. 792-93 (RE-CONVENTION BY PRESIDENTIAL PROCLAMATION).

24

46. The Plaintiff, asserts pursuant to numerous exhibits filed in his Cause of Action, & in this Motion for Summary Judgment now before this Court, & H. Con. Res. 218, that Congress adjourned on June 20,1948 [SEE, 94TH CONG. REC. 9169, 9348; & THE HOUSE JOURNAL, FOR JUNE 20,1948, AT 775]; both Houses reconvened on July 26,1948, pursuant to a proclamation of President Truman. See, Senate Journal, for July 26,1948, at pg. 598 (SHOWING RECONVENTION); House Journal, for July 26,1948, at pgs. 792-93; & fn. 5, below. **Also see,** Ex: C-58, & C-59.

47. In accordance with the H. Con. Res. 218, the 2nd Session of the 80th Congress [CONDITIONALLY] adjourned on June 20,1948, with H.R. 3190, still to be signed by the Speaker of the House, & the President pro tempore of the Senate after the adjournment by the H. Con. Res. 219. After the adjournment of June 20,1948, that Bill die, because the adjournment was a sine die adjournment, & Congress didn't return within the time required, in order to pass the alleged Bill. In Art. I, § 5, Cls. 1, of the Const. for the United States held: Each House **"shall"** be the Judges of the Elections, Returns, & Qualifications of its own Members, **"& Majority of each shall constitute a Quorum to do Business";** but a smaller Number may adjourn from day to day, & may be authorized to compel the Attendance of absent Members... The 80th Congress had some **"435 Members"**. On May 12, 1947, when H.R. 3190, was alleged to had been in the H.O.R, there were **"only 44 Members present",** of which this number [44 MEMBERS] **"does not constitute a Quorum of Votes for the passage of a Bill".**

48. In Art. I, § 5, Cls. 4, of the Const. for the United States

---

FN. 5/ The House Journal [AT PG. 797], was approved on July 27, 1948; & the Senate Journal [AT PG. 593], was approved on July 27,1948.

held: Neither House, during the Session of Congress "shall", without the Consent of the other, "adjourn for more than three days", nor to any other Place then that, in which the two Houses "shall" be sitting. The Plaintiff, asserts, & contends that H.R. 3190, was alleged to have been passed [ON JUNE 25,1948] after the June 20,1948, adjournment, "meaning that said Bill [H.R. 3190] was passed five days after it died, & on a day [ JUNE 25,1948] when Congress WAS NOT in Session to do business [SEE, EX: C-51, DATE AT BOTTOM LEFT HAND CORNER]"; a part from this fact, H.R. 3190, is now even more suspicious, do to my understanding, that each of the H.R. number's are "only" used once by members [SEE, PLAINTIFF'S, 2ND REQUESTS, AT PGS. 3 - 5, ¶ 9 - ¶ 17, ADMITTED, & STIPULATED BY COUNSELS OF RECORD, KNOWN HEREIN AS EX: C-31 - C-36] of the H.O.R, & the U.S. Senate; of which it is "unconstitutional" for either, and/or both Houses to sign a Bill, specifically H.R. 3190, "after the final adjournment of the 80th Congress on June 20,1948". In Kennedy v. Simpson, 511 F.2d 430, at pg. 444, fn. 5 (1974), The D.C Cir. Court held: The Senate, & H.O.R, adjourned on June 20,1948, under a "conditional final adjournment resolution", H. Con. Res. 218; 94th Cong. Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until Dec. 31,1948, unless recalled into Session earlier by specified Senate, & House leaders.

In effect the adjournment was a sine die adjournment, "not an intra-session adjournment". On July 26,1948, Congress convened pursuant to a proclamation of President Truman. The President pocket vetoed 14 Bills presented to him after the adjournment of June 20,1948. See, 94th Cong. Rec. 8075 (FOR JUNE 14,1948); 94th Cong. Rec. 9349 (FOR JUNE 19,1948); & Art. I, § 7, Cls. 2, for the Const. of the United States.

It was only after this [CONDITIONAL] final adjournment of the 2nd

Session of the 80th Congress, & as authorized by the H. Con. Res. 219, that the speaker of the House, & President pro tempore of the Senate signed the enrolled H.R. 3190, & presented it to President Truman, on June 23, 1948, for the President to sign, & enrolled the Bill into Law on June 25, 1948. It is alleged that title 18, was to have been enacted on "Friday June 25,1948". The issue is that, there are "no actual records" that can prove that this statute was in fact voted into positive Law [OF WHICH IT HAS BEEN CONFIRMED THAT TITLE 21, "WAS NOT" ENACTED INTO POSITIVE LAW. SEE, ¶ 34, HEREIN, & COUNSELS MOTION 2, FOR EXTENTION, TOP OF PG. 3]. The records are stating that the Bill of H.R. 3190, was originally introduced in the H.O.R, on April 24,1947, & enacted into positive Law on Friday June 25,1948; but what if this Bill was voted on by one House, & not the other, but was still allowed to become a Public Law, would that be a violation of Art. I, § 7, Cls. 2, of the Const. of the United States, "of course". SEE, Ex: C-38; & 94th Cong. Rec. 9354, 9365, & 9367.

49. The face of the engrossed Bill, as signed by the 80th Congress, shows that the engrossed Bill was passed, & signed in the 80th Congress in the 1947, Session by the H.O.R. However, the enrolled Bill, in which actually placed Public Law 80-772, into Law was "altered" from the engrossed Bill [IN WHICH SHOWED A DATE OF ENROLLMENT IN 1947 [IN THE 1ST SESSION OF THE 80TH CONGRESS], "as to make it appear as if it passed with both Houses in 1948", during the 2nd Session of Congress, thus, rendering it a "fraud, forgery, & unconstitutional, inter alia". See, National Archives, & Records Administration; Engrossed Bill; Enrolled Bill; Public Law 80-772; & the mentioned Congressional Records herein, inter alia.

50. The PLaintiff, asserts, & contends that "no valid enactment clause exists for Public Law 80-772", pursuant to title 1 U.S.C. § 101, of

which held: The enacting clause of all Acts of Congress "shall" be in the following forms; "be it enacted by the Senate, & H.O.R, of the united States of America, in Congress assembled". H.R. 3190, died sine die in the 1st Session of the 80th Congress, "& was not reintroduced as a new Bill, or even as the old Bill in the House in the 2nd Session of the 80th Congress". Therefore, title 18 "DID NOT" lawfully pass both Houses. It was also not enacted in the Congress assembled, "as it was signed into Law" by the President pro tempore of the U.S. Senate, & Speaker of the House, "ONLY AFTER CONGRESS ADJOURNED". The Plaintiff, asserts that a review of the Congressional records of the 80th Congress shows that no record vote occurred by the House in 1948. Therefore, no Law exists under title 18; in which there exists "no certificate" showing that the Bill was truely enrolled, as was required by the President pro tempore of the Senate, & as shown by the Congressional Records.

51. Here the Plaintiff/Sovereign, asserts, & contends that statute 18 § 3231 [SEE, ¶ 36, HEREIN], was introduced in the 1st Session of the 80th Congress as part of a "faulty" H.R. 3190, & Public Law 80-772. The in toto Rule for legislation requires that when "ANY PART" of a Bill is dead, "the entire Bill is dead, in which there are no exceptions". Since § 3231, "IS DEAD", the only possible jurisdiction for the Court, as the NJDC, to hear "any criminal prosecution", must vevert back to the 1940 statute of 18 U.S.C. §§ 546, & 547 [SEE, FN. 6, BELOW]. However, that statute "only

_____

FN. 6/ The Fed.R.Crim.P., 18 § 3231, held: The Dist. Courts of the United States "shall" have original jurisdiction exclusive of the Courts of the States, of all offenses against Laws of the United States. Nothing in this title "shall" be held to take away, or impair the jurisdiction of the Couts of the several States under the Laws thereof (JULY 25,1948, CH. 645, 62 STAT. 825). REVISION NOTE THEREIN HELD: This Section was formed by combining §§ 546, & 547, of title 18 U.S.C., (CONTINUE FN. 6 ON PG. 29)

allows" the prosecution(s) to prosecute the crimes defined in those statutes, & since CONCEPCION [ET AL.] **"was not"** given fair warning [AS RE-QUIRED BY BOTH THE STATE OF NEW JERSEY, & U.S. CONSTITUTIONS] related to that, and/or those specific statutes [<u>SEE</u>, PLAINTIFF'S, COMP., AT ¶ 5]; his indictment, & conviction [<u>SEE</u>, COUNSEL(S) MOTION 2, FOR EXTENTION, TOP OF PG. 3] are void ab initio. The Plaintiff, asserts pursuant to the report of the House Committee on Judiciary [80TH CONGRESS, 1ST SESSION], in which held: This § 3231, was formed by combining §§ 546, & 547, of title 18 U.S.C., 1940 ed., with § 588(d), of title 12.

**DEFENDANT U.S. DEPT. OF JUSTICE & OTHERS**
**KNEW THAT THE ENACTING CLAUSE OF**
**PUBLIC LAW 80-772, WAS FALSE WHEN SIGNED**

52. Public Law <u>80-772</u>, stated that the enactment proceeded **"by the Senate, & H.O.R"**, of the united States of America, in Congress assembled [SEE, NATIONAL ARCHIVES, & RECORDS ADM., H.R. <u>3190</u>, AS SIGNED INTO PUBLIC LAW]; each signatory knew that neither House legislatively existed at the time, & that the legislative process had ceased within the terms of Art. I, § 5, Cls. 7 [ON JUNE 20,1948], of the Const. for the United States. Moreover, that Bill as just mentioned was never certified as enrolled, & was surreptitiously signed by the Speaker of the House, & President pro tempore of the Senate under the purported authority of a concurrent reso-lution agreed to by a Congress denounced by President Truman, as a **"body dominated by men with a dangerous lust of power, & privilege** [SEE, ENCY-

---

**FN. 6/** 1940 ed., with section 588(d), of title 12 U.S.C., Banks, & Banking, with no charge of substance. Also see Jurisdiction over Federal Areas within the States; the New Jersey State Annotate for Jurisdiction, 52:30-1, & 2; title 40 U.S.C. § 255; pgs. 10 - 12, ¶ 20 - ¶ 23, herein; & Ex: D-6 - D-13, ¶ 1 - ¶ 34, attached to Plaintiff's, Motion to Compel.

CLOPEDIA AMERICANA 175 (2005)]", without Quorums of the respective Houses sitting; "of which that Bill was mistakenly signed by the President of the United States, after it was misrepresented to him" by solitary officers as a Bill passed by both Houses, "of which was impossible, since Congress was not in Session".

52. The Plaintiff/Sovereign, asserts for the purpose of this Motion for Summary Judgment, that H.R. 3190, "is unconstitutional" on its face, & the NJDC, "never had jurisdiction" [A PART FROM THE NAMED DEFENDANTS, IN THIS CAUSE OF ACTION, & THE INITIAL FEDERAL GOVERNMENT IN CASE #99-753 (AJL), FAILURE TO PRODUCE THE NON-EXEMPTED REQUIRED NOTICE OF ACCEPTANCE OF CRIMINAL JURISDICTION, PURSUANT TO 40 U.S.C. § 255, OF WHICH WERE SOME OF THE REQUESTED RECORDS, DOCUMENTS, FILES, DATA, & ETC., BY THE PLAIN-TIFF], because it only provided for jurisdiction for crimes in that title [SEE, ¶ 51, HEREIN], for which neither Concepcion, or CONCEPCION [SEE, PGS. 9 - 12, ¶ 9 - ¶ 23, HEREIN], were not charge with in the criminal complaint-affidavit, or by the grand jury-indictment, "in violation" of Amend. IV, V, VI, VII, VIII, IX, X, XI, XIII, & XIV, of the Const. for the United States; the Const. for the State of New Jersey, Art. I, § I, ¶ 7, ¶ 8; & the Article of Confederation Art. I, & II, inter alia.

53. The Plaintiff, asserts that an Act of Congress "does not", become a Law, unless it follows each, & every procedural step chartered in Art. I, § 7, Cls. 2, of the Const. for the United States. See, Landgraf v. USI File Production, 128 L.Ed 2d 229 (S.Ct. 1994); & Clinton v. City of New York, 141 L.Ed 2d 393 (S.Ct. 1998).

THe Constitution requires "three procedural steps, of which are as follows": [A] A Bill containing its exact text was approved by a Majority of the Members of the H.O.R; [B] The Senate approved precisely on the

same text; & **[C]** That the text be signed into Law by the President. If by any chance, any of those three stages are not implemented, the Law [& REQUESTED FOIA NON-EXEMPTED RECORDS, DOCUMENTS, & ETC., IN REGARDS TO TITLE 18, INTER ALIA] would not have been validly enacted. The text of H.R. <u>3190</u>, passed by the H.O.R, was the text as it existed on the date of passage; e.g., on <u>May 12,1947</u>. Whereas, the text of the Bill passed by the Senate on <u>June 18,1948</u>, was H.R. <u>3190</u>, as amended. Thus, the text of the Bill passed by the  respective Houses was grossly different; **"in which neither Bill ever became a Law"**. See, Senate Journal, for <u>June 18,1948</u>, at pg. 506; & <u>Clinton v. City of New York</u>, supra, at pg. 448.

**54.** Since Public Law <u>80-772</u> [THE CODIFICATION OF TITLE 18], was never published in the Federal Register, & is not listed in the C.F.R, the public was never properly notified [AS REQUIRED BY LAW] of the Law, & it is a nullity; in fact a look at the C.F.R, under title 18, showing that it deals with conservation of power, & water resources. <u>**SEE**</u>, pgs. 16, & 17, ¶ 32 - ¶ 34, herein; & 44 U.S.C. §§ 307, & 1507.

**55.** Here the Plaintiff, points out to presiding Judge RMU, that Congress adjourned for 113 days in its first adjournment, & for about two months in its second adjournment; if one House seeks the consent of the other House, & goes out on a recess for more than **"three days"**, you have a **"bicameral action, of which constitutes an adjournment by Congress..."** of which the Const. for the United States implies that any adjournment by Congress, that is, any adjournment of either House for longer than **"three days"**, gives occasion for a pocket veto... In <u>Sellers v. Bureau of Prisons</u>, 959 F.2d 307, at ¶ 4 (1992), The D.C. Cir. Court held: As long as information contained in agency's files is capable of being verified, then under Privacy Act, agency **<u>"MUST"</u>** take reasonable steps to maintain accuracy of

information to assure fairness to individual, & if agency willfully, or intentionally fails to maintain its records in that way, & consequently makes determination adverse to individual, "IT WILL BE LIABLE TO THAT PERSON [CONCEPCION] FOR MONEY DAMAGES". ALSO SEE, Plaintiff's, Comp., at pg. 22, ¶ 74; 5 U.S.C. § 552(a)(e)(5), (g)(1)(c), & (g)(4); & Independent Ins. Agents of America Inc. v. Clarke, 965 2d 1077, at pg. 1078 (D.C. Cir. 1992).

## CONCLUSION

56. By the "United States" own Rules of jurisdiction [SEE, ¶ 22, HEREIN], inter alia, the named Defendants/Corporations, & Counsels of Record "KNEW" that the initial federal prosecutors involved in Case #99-753 (AJL), had no business prosecuting anyone outside of the jurisdiction of the District of Columbia, or Federal Territories; thereby, the named Defendants, & Counsels of Record for said Defendants, in this Cause of Action, knowingly, intentionally, & willingly "wrongfully withheld exculatory records, documents, files, data, & etc. [SEE, EX: C-31 - C-36, HEREIN]", in which the Plaintiff, was specific of his needed FOIA non-exempted requested records, documents, files, data, & etc., especially in his Motion to Compel, with the attached exhibits, & admitted, & stipulated requests for admissions.

Keeping mindful that the requested records, documents, files, & etc., have been requested by CONCEPCION, for over two years. In Trwitt v. Dept. of Justice, 897 F.2d 540, at 542 (1990), The Cir. Court held: Under the FOIA an agency is "obligated to make promptly available" records that are "reasonably described" in a written request therefore, "& are not exempt from disclosure".SEE, Plaintiff's, Motion to Compel, Ex: D-6 - D-15, ¶ 1 - ¶ 34; Ex: C-31 - C-36, ¶ 1 - ¶ 17, herein; 5 U.S.C. § 552(a)(3)

(A), & (d); <u>Counsumer Federation of America v. Dept. of AG.</u>, 455 F.3d 283
(D.C. Cir. 2006); & <u>Oppenheimer Fund Inc. v. Sander</u>, supra.

57. The requested FOIA non-exempted records, documents, files, &
etc., **"are critical, & are relevant in this FOIA Cause of Action",** do to
the fact of CONCEPCION, being indicted on statutes, in which are known to
be unconstitutional, inter alia, as titles 18, & 21, of which said stat-
utes are mentioned in Counsels Motion 2, for Extention, & in their Report,
& Motion to prepare Vaughn [IN WHICH COUNSELS VAUGHN MOTION IS CONTAINING
FALSIFY STATEMENTS, & INFORMATION, INTER ALIA].

The Plaintiff/Sovereign's, facts are mentioned in his FOIA Civil
Complaint Action, with its own attached exhibits, throughout this Motion
for Summary Judgment, with its own attached exhibits, & his Motion to
Compel, with its own attached exhibits for **"ALL"** the requested records,
documents, files, data, & etc., in regards to federal criminal case #<u>99-
753(AJL)</u>, of which **"MUST"** be produced, as a matter of Law.

58. The **"failure"** to produce **"ALL"** of the specified FOIA non-exempt-
ed records, documents, files, data, & etc., constitute the wrongful with-
holding of non-exempted records, & etc., **"& the falsification of public
records, inter alia by the named Defendants/Corporations, & others",** in
which said requested records, documents, files, & etc., are in regards to
titles 18, & 21, & federal criminal case #<u>99-753(AJL)</u>, of which said re-
cords, & etc., for said criminal case are containing fraud, perjury, mis-
leading statements-information, false testimonies, obstruction of justice,
lack of federal jurisdiction,misprison of felony, official misconduct, &
numerous violations of both the State, & Federal Constitutions, inter
alia. See, <u>Sellers v. Bureau of Prisons</u>, supra.

59. **FOR THE RECORD:** The Defendant, herein known as the FBI, & Coun-

sels of Record for said Defendants, are continuing "**to commit false decla-rations before this Court, inter alia**", in their Report, & Motion to pre-pare their Vaughn index. e.g., in their Report, & Motion for Vaughn, at pg. 2, they now claim    the FBI referred 538 pgs. of responsive docu-ments to the DEA, "<u>**CONTRARY TO THE 650 PGS. OF LAB REPORTS ONLY THAT THEY CLAIM THAT THE DEA HAS**</u>. **SEE**, pgs. 6 - 8, ¶ 14, A - C, herein.

60. For the foregoing reasons with facts, exhibits, supporting case Law, & etc., & the attached Statement of Undisputed Facts herewith, the Plaintiff/Sovereign, "**respectfully request**" Honorable presiding Judge RMU, to "<u>**GRANT**</u>" the Plaintiff's, Motion for Summary Judgment now before this Court, "**& void any, & all of the Defendants/Corporations, and/or Counsels of Record for said Defendants, Motion(s), & otherwise**"; of which the De-fendants/Corporations, & Counsels of Record have been leaning on CONCEP-CION's, false imprisonment, & conviction, of which are the records, docu-ments, files, data, & etc., that are being soughted by Concepcion, in this Cause of Action. Keeping mindful that CONCEPCION, attest that he was in-dicted on "<u>**PURE LACTOSE**</u>", in Case #<u>99-753(AJL)</u>, as opposed to heroin, as the Defendants/Corporations, & Counsels of Record, among others claim said lactose to be heroin.

<u>OATH</u>

The undersign declare, certifies, verifies, & state under penalty of perjury, under the Laws of the State of New Jersey, & the United States pursuant to title 28 U.S.C. § 1746, that the foregoing is true, & correct.

Respectfully Requested, &
Submitted By:

34

DATED: <u>April 23,2008</u>

*Alberto Concepcion*

Pro Se Plaintiff,
Alberto Concepcion© the
Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

WITHOUT PREJUDICE U.C.C. 1-207

c.c. File; &

    Cert. Return Receipt Mail to the U.S.
District Court for the District of Columbia
No. <u>7007-3020-0000-1184-5093</u>

ALBERTO CONCEPCION, #22853-050
F.C.I P.O. Box 2000
Fort Dix, New Jersey 08640
(609) 723-1100


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| Alberto Concepcion, : | **PLAINTIFF'S NOTICE OF MOTION** |
|        Plaintiff/Sovereign, : | **FOR SUMMARY JUDGMENT** |
| : | **OR INALTERNATIVE TRIAL BY JURY** |
|    vs. : | |
| : | |
| FEDERAL BUREAU OF INVESTIGATION; : | |
| EXECUTIVE OFFICE OF THE UNITED : | |
| STATES ATTORNEYS; & : | |
| U.S. DEPARTMENT OF JUSTICE; : | CIVIL ACTION NO. 07-1766(RMU) |
|     Defendants/Corporations. : | |

---

TO: U.S. ATTORNEYS OFFICE
    FOR THE DISTRICT OF COLUMBIA
    555 Fourth St., N.W.  [SUITE 4220]
    Washington, D.C. 20001

ATT: CHRISTOPHER B. HARWOOD, ESQ., ET AL.


    PLEASE TAKE NOTICE, that the Plaintiff, "in good faith" will make application to the U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA [AT 333 CONSTITUTION AVE., N.W., WASHINGTON, D.C. 20001], in the above Civil [COMPLAINT] Action, on May 8,2008, at 10:00 a.m., or as soon thereafter as the Plaintiff, may be heard by way of the prison T.V monitor, or other-wise on Concepcion's, filed 23 page Civil Complaint Action, with the attached exhibits known as F-1 - F-128, the filed Motion to Compel the named Defendants/Corporations, to produce records, & documents with the incorporated exhibits known as D-1 - D-15, & the Plaintiff's, Second "AD-

**DITIONAL"** Request for Production of Different Records, Documents, & etc., along with the incorporated Requests for Admissions therein [MADE AS EX-HIBITS, INTER ALIA, IN THE PLAINTIFF'S, MOTION/AFFIDAVIT/DECLARATION/ MEMORANDUM OF LAW/APPLICATION/BRIEF FOR SUMMARY JUDGMENT ATTACHED HEREIN, PURSUANT TO THE FED.R.CIV.P., RULE 56(c); OR INALTERNATIVE A TRIAL BY JURY PURSUANT TO THE FED.R.CIV.P., RULE 38(a)(b), & (c)], at the above U.S. District Court; in which the Plaintiff, repeats, & realleges the **"STATEMENT OF THE UNDISPUTED FACTS"** contained  in the above mentioned documents point by point, & issue by issue for entry of Summary Judgment in favor of the Plaintiff/Sovereign, known herein as Alberto Concepcion, **"& against the Defendants/Corporations, known herein as the Federal Bureau of Investigation, Executive Office of the United States Attorneys, & United States Department of Justice",** in the amount of Six Hundred Million [$600,000,000.00] United States Dollars [TWO HUNDRED MILLION ($200,000,000.00) UNITED STATES DOLLARS PER DEFENDANT]; &

        **PLEASE TAKE FURTHER NOTICE,** that in support of this Motion, the Plaintiff/Sovereign, will rely on the accompanying Motion/Affidavit/Decla-ration/Memorandum of Law/Application/Brief In Support of Plaintiff's, Re-quest for Summary Judgment, & his Statement of Undisputed Facts.

        **PLEASE TAKE FURTHER NOTICE,** that oral argument(s) is not requested, **"unless"** any objection(s) is filed by any of the named Defendants/Corpora-tions, Counsels of Record, and/or anybody on behalf of the Defendants/ Corporations, and/or otherwise in this Cause of Action.

                                        Respectfully Requested, &
                                        Submitted By:

**DATED:** April 23,2008

                                        _Alberto Concepcion_ ®
                                        Alberto Concepcion, the

2

Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

**WITHOUT PREJUDICE U.C.C. 1-207**

**c.c.** File; &

Cert. Return Receipt Mail to the
U.S. Dist. Court for the Dist. of
Columbia No. 7007-3020-0000-1184-5093

3

C. Harwood/Civil
U.S. Department of Justice

United States Attorney
District of Columbia

Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20001

Official Business
Penalty for Private Use $300

Hasler

016H16601053

$00.970

02/14/2008
Mailed From 20001
US POSTAGE

US OFFICIAL MAIL
$300 Penalty
For Private Use

Mr. Alberto Concepcion
#22853-050
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Ex: C-1

FCI Ft. Dix New Jersey
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

***FORT DIX, COMPLAINT #07***
### INFORMAL RESOLUTION FORM BP-8

<u>NOTE TO INMATE:</u>  You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you <u>MUST</u> attempt to informally resolve your complaint through your Correctional Counselor.  Briefly state <u>ONE</u> complaint below and list what efforts you have made to resolve your complaint informally and state names of staff contacted.

Date Form Issued and Initials of Correctional Counselor: 2/28/08  RC

<u>INMATES COMMENT:</u>

1.  Complaint: ON FEB. 26,2008, CONCEPCION, RECEIVED A LETTER POST MARK DATE OF FEB. 14, 2008, FROM THE U.S. ATTORNEYS DIST. OF COLUMBIA [FROM C. HARWOOD] FOR CIVIL ACTION #07-1766(RMU). SAID "LEGAL MAIL" WAS GIVEN TO CONCEPCION, OPEN AT MAIL CALL ON FEB. 26,2008; "12 DAYS LATER" FROM SAID POST MARK DATE ON SAID MAILING ENVELOPE, "IN VIOLATION" OF PROGRAM STATEMENT 5265.09, GENERAL MAIL MUST BE PROCESSED WITHIN 24 HOURS.

2.  Efforts made by you to informally resolve
    SPOKE WITH COUNSELOR E. CENTENO, FROM UNIT 5711, IN REGARD TO THE MAIL
    PROBLEM.

3.  Name of staff you contacted: SEE, ¶ 2, HEREIN.


Date Returned to Correctional Counselor: _____

Alberto /Concepcion ©
Without Prejudice U.C.C. 1-207    22853-050    FEB. 29,2008
Inmate's Name        Registration Number        Date

<u>CORRECTIONAL  COUNSELOR'S COMMENTS:</u>    Ex: C-2

1.  Efforts made to informally resolve and staff
    contacted:_____

_____
_____
_____
_____

Date informally Resolved: _____        Signature:_____
        or                                                          Counselor
Date BP-229(13) Issued: _____

                                                _____
                                                          Unit Manager

If complaint is <u>NOT</u> informally resolved: Forward original attached to bp-229(13)  form to the Warden's secretary.

<u>FOR UNIT TEAM ONLY</u>
Date Bp-8 returned to a Unit Team Member and initials: _____

**Office of the Law Revision Counsel**
U.S. House of Representatives
Washington, D.C. 20515

March 1, 2000

Ex. C-15

Dear Mr.

This is in response to your letter concerning Title 21 and the legal effect of that title <u>not</u> having been enacted into <u>positive law</u>. You ask two specific questions, the short answers to which are as follows:

1.  You are correct that Title 21 <u>has not been enacted</u> into positive law.
2.  Convictions under particular sections of Title 21 occur because it is the law of the land. Whether a title is positive or non-positive law relates to the ultimate evidentiary source for the text of a law, not to the legal effect of the provision.

Some background will help in clarifying the distinction between positive and non-positive law.

Official compilations of the laws of Congress are found in two sources: the United States Statutes at Large and the United States Code. The United States Statutes at Large, prepared by the Office of the Federal Register, provide a permanent collection of the laws of each session of Congress, chronologically arranged. They are legal evidence of the laws contained in them in any court. However, they are not easy to use because there is no attempt to arrange the laws according to their subject matter or to show the present status of an earlier law as it has been subsequently amended.

The United States Code, prepared by this Office, is a consolidation and compilation of the general and permanent laws of the United States arranged according to subject matter. It presents the permanent laws enacted by Congress in a concise and useable form by grouping them by their subject matter and by showing the present status of laws that have been amended on one or more occasions.

# G A O
**Accountability • Integrity • Reliability**

United States General Accounting Office
Washington, DC 20548

November 22, 2000

Ex: C-16

Dear Mr.

This is in response to your recent letter asking "has Title 21 of the U. S. Codes been enacted into positive law".

Our Office does not provide legal research services to the general public. We note, however, that Title 21 has not been enacted into "positive law", but is a codification of the statutes.

Sincerely yours,

*Kenneth R Schutt*

Kenneth R. Schutt
Supervisory Adjudicator



# National Archives and Records Administration

# code of federal regulations

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [ 40 ]    Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT    CLEAR    Ex:C-17

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 1998** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/26/98 |
| | ☐ 2 | | 100-169 | | 6/29/98 |
| | ☐ 3 | | 170-199 | | 6/26/98 |
| | ☐ 4 | | 200-299 | | 6/26/98 |
| | ☐ 5 | | 300-499 | | 7/7/98 |
| | ☐ 6 | | 500-599 | | 6/29/98 |
| | ☐ 7 | | 600-799 | | 6/26/98 |
| | ☑ 8 | | 800-1299 | | 6/29/98 |

# Title 21--Food and Drugs

1998

(This index contains parts 800 to 1299)

## CHAPTER I--FOOD AND DRUG ADMINISTRATION, DEPARTMENT OF HEALTH AND HUMAN SERVICES

Ex: C-18

| Part | |
|------|---|
| 800 | General |
| 801 | Labeling |
| 803 | Medical device reporting |
| 804 | Medical device distributor reporting |
| 805 | Cardiac pacemaker registry |
| 806 | Medical device corrections and removals |
| 807 | Establishment registration and device listing for manufacturers and distributors of devices |
| 808 | Exemptions from Federal preemption of State and local medical device requirements |
| 809 | In vitro diagnostic products for human use |
| 810 | Medical device recall authority |
| 812 | Investigational device exemptions |
| 813 | [Reserved] |
| 814 | Premarket approval of medical devices |
| 820 | Quality system regulation |
| 821 | Medical device tracking requirements |
| 860 | Medical device classification procedures |
| 861 | Procedures for performance standards development |
| 862 | Clinical chemistry and clinical toxicology devices |
| 864 | Hematology and pathology devices |
| 866 | Immunology and microbiology devices |
| 868 | Anesthesiology devices |
| 870 | Cardiovascular devices |
| 872 | Dental devices |
| 874 | Ear, nose, and throat devices |
| 876 | Gastroenterology-urology devices |
| 878 | General and plastic surgery devices |
| 880 | General hospital and personal use devices |
| 882 | Neurological devices |
| 884 | Obstetrical and gynecological devices |
| 886 | Ophthalmic devices |
| 888 | Orthopedic devices |
| 890 | Physical medicine devices |
| 892 | Radiology devices |
| 895 | Banned devices |



# National Archives and Records Administration

**code of federal regulations**

---

### Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40  Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT  CLEAR  Ex: C-19

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** Revised April 1, 1999 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/25/99 |
| | ☐ 2 | | 100-169 | | 6/23/99 |
| | ☐ 3 | | 170-199 | | 5/31/99 |
| | ☐ 4 | | 200-299 | | 7/13/99 |
| | ☐ 5 | | 300-499 | | 7/1/99 |
| | ☐ 6 | | 500-599 | | 8/2/99 |
| | ☐ 7 | | 600-799 | | 6/21/99 |
| | ☑ 8 | | 800-1299 | | 8/2/99 |

## Title 21--Food and Drugs

### (This index contains parts 800 to 1299)

1999

## CHAPTER I--FOOD AND DRUG ADMINISTRATION, DEPARTMENT OF HEALTH AND HUMAN SERVICES

*Part*

| | |
|---|---|
| 800 | General |
| 801 | Labeling |
| 803 | Medical device reporting |
| 804 | Medical device distributor reporting |
| 805 | Cardiac pacemaker registry |
| 806 | Medical devices; reports of corrections and removals |
| 807 | Establishment registration and device listing for manufacturers and initial importers of devices |
| 808 | Exemptions from Federal preemption of State and local medical device requirements |
| 809 | In vitro diagnostic products for human use |
| 810 | Medical device recall authority |
| 812 | Investigational device exemptions |
| 813 | [Reserved] |
| 814 | Premarket approval of medical devices |
| 820 | Quality system regulation |
| 821 | Medical device tracking requirements |
| 860 | Medical device classification procedures |
| 861 | Procedures for performance standards development |
| 862 | Clinical chemistry and clinical toxicology devices |
| 864 | Hematology and pathology devices |
| 866 | Immunology and microbiology devices |
| 868 | Anesthesiology devices |
| 870 | Cardiovascular devices |
| 872 | Dental devices |
| 874 | Ear, nose, and throat devices |
| 876 | Gastroenterology-urology devices |
| 878 | General and plastic surgery devices |
| 880 | General hospital and personal use devices |
| 882 | Neurological devices |
| 884 | Obstetrical and gynecological devices |
| 886 | Ophthalmic devices |
| 888 | Orthopedic devices |
| 890 | Physical medicine devices |
| 892 | Radiology devices |
| 895 | Banned devices |
| 897 | Cigarettes and smokeless tobacco |

Ex: C - 20



# National Archives and Records Administration

# code of federal regulations

TURN THIS
PAGE OVER →

## Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40    Default is 40. Maximum is 200.

**Search Terms:**

SUBMIT  CLEAR  Ex: C-21

| Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21** Food and Drugs | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/20/00 |
| | ☐ 2 | | 100-169 | | 5/19/00 |
| Revised April 1, 2000 | ☐ 3 | | 170-199 | | 6/22/00 |
| | ☐ 4 | | 200-299 | | 6/23/00 |
| | ☐ 5 | | 300-499 | | 8/1/00 |
| | ☐ 6 | | 500-599 | | 6/22/00 |
| | ☐ 7 | | 600-799 | | 7/1/00 |
| | ☑ 8 | | 800-1299 | | 7/5/00 |



# National Archives and Records Administration

# code of federal regulations

TURN THIS
PAGE OVER
↓

## Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

Maximum Records Returned: [40] Default is 40. Maximum is 200.

Search Terms: [                                    ]

[SUBMIT] [CLEAR] Ex: C-22

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs**<br><br>**Revised April 1, 2001** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 5/21/01 |
| | ☐ 2 | | 100-169 | | 6/5/01 |
| | ☐ 3 | | 170-199 | | 6/2/01 |
| | ☐ 4 | | 200-299 | | 5/11/01 |
| | ☐ 5 | | 300-499 | | 5/25/01 |
| | ☐ 6 | | 500-599 | | 5/16/01 |
| | ☐ 7 | | 600-799 | | 7/23/01 |
| | ☑ 8 | | 800-1299 | | 6/06/01 |



# National Archives and Records Administration

## code of federal regulations

TURN THIS PAGE OVER →

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40    Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT   CLEAR   Ex: C-23

| Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21** Food and Drugs | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/18/02 |
| | ☐ 2 | | 100-169 | | 05/31/02 |
| Revised April 1, 2002 | ☐ 3 | | 170-199 | | 5/30/02 |
| | ☐ 4 | | 200-299 | | 6/13/02 |
| | ☐ 5 | | 300-499 | | 5/30/02 |
| | ☐ 6 | | 500-599 | | 06/13/02 |
| | ☐ 7 | | 600-799 | | 5/30/02 |
| | ☑ 8 | | 800-1299 | | 6/17/02 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER ↓*

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40] Default is 40. Maximum is 200.

**Search Terms:** [                              ]

[SUBMIT] [CLEAR]   *Ex: C-24*

| Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|-------|---------------|---------|--------------|-------------------|--------------|
| ☑ **Title 21 Food and Drugs** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 04/24/2003 |
| | ☐ 2 | | 100-169 | | 05/22/03 |
| **Revised April 1, 2003** | ☐ 3 | | 170-199 | | 05/07/2003 |
| | ☐ 4 | | 200-299 | | 05/6/03 |
| | ☐ 5 | | 300-499 | | 05/6/03 |
| | ☐ 6 | | 500-599 | | 5/15/03 |
| | ☐ 7 | | 600-799 | | 04/24/03 |
| | ☑ 8 | | 800-1299 | | 06/04/03 |



# National Archives and Records Administration

## code of federal regulations

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40    Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT   CLEAR   Ex: C-25

| Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** <br><br> **Revised April 1, 2004** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 7/12/04 |
| | ☐ 2 | | 100-169 | | 6/23/04 |
| | ☐ 3 | | 170-199 | | 6/4/04 |
| | ☐ 4 | | 200-299 | | 7/12/04 |
| | ☐ 5 | | 300-499 | | 6/7/04 |
| | ☐ 6 | | 500-599 | | 5/28/04 |
| | ☐ 7 | | 600-799 | | 7/12/04 |
| | ☑ 8 | | 800-1299 | | 6/16/04 |



# National Archives and Records Administration

# code of federal regulations

TURN THIS PAGE OVER →

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [ 40 ]  Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT    CLEAR    Ex: C-26

| Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|-------|---------------|---------|--------------|-------------------|--------------|
| ☑ **Title 21 Food and Drugs**<br><br>**Revised April 1, 2005** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/3/05 |
| | ☐ 2 | | 100-169 | | 6/20/05 |
| | ☐ 3 | | 170-199 | | 5/16/05 |
| | ☐ 4 | | 200-299 | | 5/11/05 |
| | ☐ 5 | | 300-499 | | 5/11/05 |
| | ☐ 6 | | 500-599 | | 5/20/05 |
| | ☐ 7 | | 600-799 | | 5/5/05 |
| | ☑ 8 | | 800-1299 | | 7/21/05 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER* ↓

---

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40] Default is 40. Maximum is 200.

**Search Terms:** [                    ]

[SUBMIT] [CLEAR]   *Ex: C-27*

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21** Food and Drugs<br><br>Revised April 1, 2006 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 5/17/06 |
| | ☐ 2 | | 100-169 | | 5/16/06 |
| | ☐ 3 | | 170-199 | | 5/17/06 |
| | ☐ 4 | | 200-299 | | 5/16/06 |
| | ☐ 5 | | 300-499 | | 5/17/06 |
| | ☐ 6 | | 500-599 | | 5/23/06 |
| | ☐ 7 | | 600-799 | | 5/16/06 |
| | ☑ 8 | | 800-1299 | | 6/7/06 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER →*

---

### Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

Maximum Records Returned: 40    Default is 40. Maximum is 200.

Search Terms: [                    ]

SUBMIT    CLEAR    *Ex: C-28*

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** Revised April 1, 2007 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 5/23/07 |
| | ☐ 2 | | 100-169 | | 6/19/07 |
| | ☐ 3 | | 170-199 | | 05/15/07 |
| | ☐ 4 | | 200-299 | | 5/16/07 |
| | ☐ 5 | | 300-499 | | 5/30/07 |
| | ☐ 6 | | 500-599 | | 6/20/07 |
| | ☐ 7 | | 600-799 | | 5/15/07Under development |
| | ☑ 8 | | 800-1299 | | 6/19/07 |

# Title 21—Food and Drugs

2007

## (This index contains parts 800 to 1299)

## CHAPTER I—FOOD AND DRUG ADMINISTRATION, DEPARTMENT OF HEALTH AND HUMAN SERVICES (CONTINUED)

Ex: C-29

| Part | |
|------|---|
| 800 | General |
| 801 | Labeling |
| 803 | Medical device reporting |
| 806 | Medical devices; reports of corrections and removals |
| 807 | Establishment registration and device listing for manufacturers and initial importers of devices |
| 808 | Exemptions from Federal preemption of State and local medical device requirements |
| 809 | In vitro diagnostic products for human use |
| 810 | Medical device recall authority |
| 812 | Investigational device exemptions |
| 813 | [Reserved] |
| 814 | Premarket approval of medical devices |
| 820 | Quality system regulation |
| 821 | Medical device tracking requirements |
| 822 | Postmarket surveillance |
| 860 | Medical device classification procedures |
| 861 | Procedures for performance standards development |
| 862 | Clinical chemistry and clinical toxicology devices |
| 864 | Hematology and pathology devices |
| 866 | Immunology and microbiology devices |
| 868 | Anesthesiology devices |
| 870 | Cardiovascular devices |
| 872 | Dental devices |
| 874 | Ear, nose, and throat devices |
| 876 | Gastroenterology-urology devices |
| 878 | General and plastic surgery devices |
| 880 | General hospital and personal use devices |
| 882 | Neurological devices |
| 884 | Obstetrical and gynecological devices |
| 886 | Ophthalmic devices |
| 888 | Orthopedic devices |
| 890 | Physical medicine devices |
| 892 | Radiology devices |
| 895 | Banned devices |
| 898 | Performance standard for electrode lead wires and patient cables |
| 900 | Mammography |



# National Archives and Records Administration

## Office of the Federal Register

December 18, 2000

# Ex: C-30

Mr.

Title 21 of the United States Code (USC) has at no time been published, in part or in its entirety, in the Federal Register. The USC is maintained by the Law Revision Council, a Congressional entity. The content of the USC is comprised of permanent laws enacted and codified by Congress. To find the original laws that added or amended any of the codified material, consult the reference notes included in the volume relating to the parts or chapters you are interested in. These notes will assist you in finding the original law included in the U.S. Statutes at Large.

Both the USC and US Statutes at Large are available through a Federal Depository Library. If you do not have access to such a library, please consult your facility librarian to seek an interlibrary loan.

Due to personnel shortages, office policy precludes our staff from conducting lengthy research requests.

If our office can be of further assistance to you, please contact us again.

Sincerely,

Brian Swidal
Customer Service Unit
Office of the Federal Register

ALBERTO CONCEPCION, #22853-050
F.C.I FORT DIX P.O. Box 2000
Fort Dix, New Jersey 08640
(609) 723-1100

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alberto Concepcion, : | |
| Plaintiff/Sovereign, : | |
| : | |
| vs. : | |
| : | |
| FEDERAL BUREAU OF INVESTIGATION; : | |
| EXECUTIVE OFFICE OF THE UNITED : | |
| STATES ATTORNEYS; & : | |
| U.S. DEPARTMENT OF JUSTICE; : | CIVIL ACTION NO. 07-1766(RMU) |
| Defendants/Corporations. : | |

PLAINTIFF'S SECOND ADDITIONAL REQUEST FOR THE
PRODUCTION OF DIFFERENT RECORDS, DOCUMENTS, & ETC., &
REQUESTS FOR ADMISSIONS

NOW COMES, Pro Se Plaintiff, Alberto Concepcion, the Sovereign, Se-
cured Party, Creditor, Holder-In-Due-Course, Trade Name Owner, & Record

Owner on behalf of STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, hereinafter

**"Concepcion, or CONCEPCION"**, waiving no powers, rights, and/or immunities

by the use of said **"private copyrighted statutes"**; pursuant to the Fed.R.

Civ.P., Rules 34 et seq., 36(a), & Art. I, § 10, of the Const. for the Uni-

ted States, submitting the **"additional"** following requests for the produc-

tion of records, documents, files, data, & etc., & the requests for admis-

sions, & stipulations making said admissions, & stipulations **"ANOTHER CON-**

**TRACT"** by the Plaintiff, with the Defendants/Corporations [KNOWN HEREIN AS

Ex: C-31

FEDERAL BUREAU OF INVESTIGATION, EXECUTIVE OFFICE OF THE UNITED STATES ATTORNEYS, & U.S. DEPARTMENT OF JUSTICE], Counsel(s) of Record for said Defendants/Corporations in this Cause of Action. Counsel(s) of Record for said named Defendants, are **"respectfully"** directed to produce each of the requested records, documents, files, data, & etc., for inspection, & copying purposes; & answer **"in your own words"** each of the questions in the requests for admissions herewith **"in writing, & under oath"**. If Counsel(s) of Record, and/or whomever it may concern **"do not produce, & rebut"** said facts herewith by way of the requested records, documents, & etc., in its entirety within 30 days of this Cert. Return Receipt Mail #<u>7006-2150-0004-7651-5801</u>, Service; said Counsel(s) of Record **"will be admitting, & stipulating"** to the answers below the questions provided by the Plaintiff, **"in good faith"** in his requests for admissions therewith.

**ADDITIONAL REQUEST FOR THE PRODUCTION
OF RECORDS, DOCUMENTS, FILES, DATA, & ETC.,
<u>PURSUANT TO FED.R.CIV.P., RULE 34</u>**

1) ANY, & ALL RECORDS, DOCUMENTS, FILES, DATA, & ETC., IN REGARD TO THE CALENDARS OF THE UNITED STATES, HOUSE OF REPRESENTATIVES, & HISTORY OF LEGISLATION, 80TH CONGRESS FOR BOTH FIRST, & SECOND SESSIONS, FROM <u>JAN. 2, 1947</u>, THROUGH <u>DEC. 31,1948</u>, INCLUDING ANY OTHER UNMENTIONED RECORDS, DOCUMENTS, FILES, DATA, & ETC., IN REGARD TO THIS REQUEST.

2) ANY, & ALL RECORDS, DOCUMENTS, FILES, DATA, & ETC., IN REGARD TO THE BILL(S) ON FEDERAL CRIMES, & CRIMINAL PROCEDURES, IN WHICH BECAME PUBLIC LAW <u>80-772</u>, OF WHICH WAS INITIALLY INTRODUCED IN THE HOUSE OF REPRESENTATIVES AS H.R 2200, DURING THE SECOND SESSION OF THE 79TH CONGRESS, ALONG WITH THE U.S. SENATE REPORT(S) FOR <u>JULY 16,1946</u>, INCLUDING ANY OTHER UNMENTIONED RECORDS, DOCUMENTS, FILES, DATA, & ETC., IN REGARD TO THIS RE-



2

QUEST.

**3)** ANY, & ALL RECORDS, DOCUMENTS, FILES, DATA, & ETC., IN REGARD TO PUBLIC LAW 80-772 [THE CODIFICATION OF TITLE 18], THAT WAS INTRODUCED TO THE HOUSE OF REPRESENTATIVES DURING THE FIRST SESSION OF THE 80TH CON-GRESS KNOWN AS H.R 3190, INCLUDING ANY OTHER UNMENTIONED RECORDS, DOCU-MENTS, FILES, DATA, & ETC., IN REGARD TO THIS REQUEST.

**4)** ANY, & ALL RECORDS, DOCUMENTS, FILES, DATA, & ETC., THAT CAN PROVE THAT TITLE 18, WAS IN FACT VOTED BY BOTH THE HOUSE OF REPRESENTA-TIVES, & THE U.S. SENATE, INCLUDING ANY OTHER UNMENTIONED RECORDS, DOCU-MENTS, FILES, DATA, & ETC., IN REGARD TO THIS REQUEST.

**5)** 92ND CONGRESSIONAL RECORD-HOUSE, PGS. 9122-23, & 9067-68.

**6)** 93RD CONGRESSIONAL RECORD-HOUSE, PGS. 5048-5050, 5121-22, 10400, & 10401.

**7)** 94TH CONGRESSIONAL RECORD-HOUSE, PGS. 568-69, 8075-76, 8721-22, 8864-8866, 9158-59, 9349-50, 9354-55, & 9365-9368.

**8)** HOUSE BILLS, INDEX KEY, & HISTORY OF BILL PGS. 142-144.

### REQUESTS FOR ADMISSIONS
### PURSUANT TO RULE 36(b), & ART. I, § 10, FOR THE
### CONST. OF THE UNITED STATES

**9)** WOULD IT BE A VIOLATION OF ART. I, § 7, CLS. 2, OF THE CONST. FOR THE UNITED STATES, IF ANY BILL(S) IS PASSED BY THE HOUSE OF REPRESENTA-TIVES, BUT DOES NOT PASS THE U.S. SENATE ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-TRACT] THAT THE ANSWER IS **"YES"**.

**10)** **IS IT TRUE,** THAT IF A STATUTE IN WHICH VIOLATES THE CONSTITUTION

Ex: C-33

3

OF THE UNITED STATES, IS VOID, REGARDLESS OF THE PURPOSES OF ITS RECI-
TALS ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**.

11) **IS IT TRUE,** THAT ON MAY 12,1947, THERE WAS **"ONLY"** 44 MEMBERS PRE-
SENT AT THE TIME THE HOUSE OF REPRESENTATIVES VOTED ON H.R 3190 ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**

12) **IS IT TRUE,** THAT PUBLIC LAW 80-772 [OF JUNE 25,1948, CH. 645, § 1,
62 STAT. 683 ER SEQ.], IS UNCONSTITUTIONAL, & VOID, BECAUSE THE HOUSE OF
REPRESENTATIVES H.R 3190, **"NEVER PASSED"** BOTH HOUSES AS REQUIRED BY ART. I,
§ 7, CLS. 2, OF THE CONST. OF THE UNITED STATES ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**.

13) **IS IT TRUE,** THAT IT IS **"UNCONSTITUTIONAL"** FOR A BILL TO BE SIGN
BY THE HOUSE OF REPRESENTATIVES, AND/OR THE PRESIDENT PRO TEMPORE OF THE
SENATE, WHEN SAID HOUSES ARE NOT IN SESSION ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**.

14) **IS IT TURE,** THAT ANYTIME SOMEONE IS CHARGED IN A CRIMINAL CASE
UNDER THE COMMON LAW, THAT THERE **"MUST"** BE A INJURED PARTY ?

Ex:C-34                    4

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**.

15) **IS IT TRUE**, THAT EACH OF THE HOUSE REPORT NUMBERS THAT ARE USED,
**"ARE ONLY USED ONCE"** ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THIS ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**.

16) **IS IT TRUE**, THAT THERE IS A DISTINCTION BETWEEN A [c]ITIZEN OF
THE UNITED STATES, & A [C]ITIZEN OF THE SEVERAL STATES [50 IN NUMBER] ?

IF NO ANSWER IS PROVIDED BY COUNSELS OF RECORD FOR SAID NAMED DEFEN-
DANTS, SAID COUNSELS ARE ADMITTING, & STIPULATING [TO THE ANSWER, & CON-
TRACT] THAT THE ANSWER IS **"YES"**.

17) Your **"failure"** to produce the above **"additional"** specific FOIA
requested records, documents, files, data, & etc., as well as Counsels of
Record **"failure"** to answer the specific questions in detail, & in whole
will result in the admissions, & stipulations of these facts; in which si-
lence can only be aquated with fraud [INTER ALIA], where there is a legal,
& moral duty to speak, or where an inquiry left unanswered would be know-
ingly, intentionally, & willingly misleading, inter alia. In Oppenheimer
Fund. Inc. v. Sander, 57 L.Ed 2d 253, at ¶ 6-7 (S.Ct. 1978), The Supreme
Court held: Parties may obtain discovery regarding any matter not privi-
lege, which is relevant to the subject matter involved in the pending
action... SEE, Counsel(s) of Record Second Motion For Extention of Time,
at pg. 2, & 3, in whole; U.S. v. Tweel, 550 F.2d 297-300 (1977); & America
National Ins. Co. v. Murray, 383 F.2d 81 (1967).



## CERTIFICATION OF SERVICE, & OATH

I, <u>Alberto Concepcion</u>, certify that on this date, the original re-
quest for the production of "additional" records, documents, files, data,
& etc.; & the requests for admissions, & stipulations were served Cert.
Return Receipt <u>#7006-2150-0004-7651-5801</u>, Mail to Counsel of Record Chris-
topher B. Harwood, at 555 4th Street, N.W. Washington, D.C 20001, on
<u>March 6,2008</u>.

I, <u>Alberto Concepcion</u>, declare under penalty of perjury that the
foregoing statements are true, & correct pursuant to title 28 U.S.C. §
1746.

Respectfully Requested, &
Submitted By:

DATED: <u>March 6,2008</u>

Alberto Concepcion© the
Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

WITHOUT PREJUDICE U.C.. 1-207

c.c. file

Ex: C-36

6

Case 1:67-cv-01760-RMC   Document 19-2   Filed 04/28/2008   Page 25 of 58

## HISTORY OF BILLS ENACTED INTO PUBLIC LAW (80TH CONG., 2D SESS.)—Continued

| Title | Bill No. | Date introduced | Committees—hearings House | Committees—hearings Senate | Date reported House | Date reported Senate | Report No. House | Report No. Senate | Page of Congressional Record of passage House | Page of Congressional Record of passage Senate | Date of passage House | Date of passage Senate | Public law Date approved | Public law No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| To amend the Railroad Retirement Act of 1937, to increase certain annuities, and the Railroad Unemployment Insurance Act with respect to taxes levied thereunder. | H. R. 6766 (S. 2782) | June 1 | IFC* | LPW | June 2 | June 9 | 2154 | 1574 | 7436 | 7933 | June 8 | June 12 | June 23 | 744 |
| Amending District of Columbia Code, relative to admissibility of testimony. | S. 1266 | May 12, 1947 | DC | DC | June 3 | May 29, 1947 | 2188 | 212 | 7455 | 7010 | June 8 | June 16, 1947 | June 24 | 745 |
| Vesting salary of Coordinator of Federal Agencies in Puerto Rico. | S. 2508 | Apr. 15 | PL | IIA | June 4 | May 12 | 2208 | 1279 | 8484 | 6294 | June 16 | May 24 | June 24 | 746 |
| Permitting mining locations under United States mining laws within the game sanctuary of the Harney National Forest. | H. R. 2867 | Mar. 31, 1947 | PL | IIA | July 14, 1947 | June 11 | 912 | 1597 | 9596 | 7944 | July 21, 1947 | June 12 | June 24 | 747 |
| To amend Veterans Regulation No. 1 (a), part I and II, to establish a presumption of service connection for chronic and tropical diseases. | H. R. 3889 | June 18, 1947 | VA | Fin* | July 8, 1947 | June 7 | 808 | 1536 | 9609 | 7924 | July 21, 1947 | June 12 | June 24 | 748 |
| To amend the Food and Drug Act, to authorize the seizure of adulterated or misbranded products. | H. R. 4071 | July 2, 1947 | IFC | IFC* | July 8, 1947 | Apr. 30 | 807 | 1221 | 134 | 8239 | Jan. 13 | June 15 | June 24 | 749 |
| To permit free entry of crude or broken limestone to be used in manufacture of fertilizer. | H. R. 5275 | Feb. 4 | WM | Fin | Feb. 23 | Apr. 15 | 1415 | 1129 | 1610 | 8238 | Feb. 24 | June 15 | June 24 | 750 |
| Conferring jurisdiction over Fort Des Moines Veterans Village upon the State of Iowa. | H. R. 6188 | Apr. 12 | PW* | PW | May 3 | June 10 | 1747 | 1385 | 5199 | 7941 | May 3 | June 12 | June 24 | 751 |
| Relative to admission of Filipinos to the U. S. Naval Academy. | H. R. 6698 | May 25 | AS* | AS | June 8 | June 17 | 2258 | 1766 | 8489 | 8755 | June 16 | June 18 | June 24 | 752 |
| Navy appropriations for 1949. | H. R. 6772, S. J. Res. 203 | June 1 | App* | App* | June 2 | June 14 | 2135 | 1621 | 7073 | 8301 | June 3 | June 15 | June 15 | 753 |
| To ratify contract for purchase of certain Indian land from the Choctaw and Chickasaw. | (H. J. Res. 361) | Apr. 2 | PL | IIA | May 5 | May 10 | 1868 | 1266 | 8214 | 6290 | June 14 | May 24 | June 15 | 754 |
| Providing for a National Institute of Dental Research. | H. R. 6726 (S. 176) | May 27 | IFC* | LPW | June 2 | July 7, 1947 | 2158 | 436 | 7415 | 7934 | June 8 | June 12 | June 24 | 755 |
| To provide for the issuance of free passes on railroads to official watch inspectors. | S. 2191 | Feb. 20 | IFC | IFC | June 17 | June 3 | 2394 | 1538 | 8954 | 7924 | June 18 | June 12 | June 24 | 756 |
| To increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act. | S. 2237 (H. R. 6647) | Feb. 27 | E&L | LPW* | June 1 | May 17 | 2095 | 1315 | 7397 | 6302 | June 8 | May 24 | June 24 | 757 |
| To clarify the position of Air Force Secretary and to authorize Secretaries of Army, Navy, Air Force, and Secretary of Defense to establish certain positions in professional and scientific service. | S. 2505 | Apr. 15 | POCS | AS | June 11 | May 26 | 2306 | 1408 | 8494 | 6778 | June 16 | June 1 | June 24 | 758 |
| Selective Service Act of 1948. | S. 2655 (H. R. 6401) | May 12 | AS | AS* | May 7 | May 12 | 1881 | 1268 | 8828 | 7681 | June 18 | June 10 | June 24 | 759 |
| To authorize lease of certain space in Lafayette Building in the District of Columbia by VFW. | S. 2706 | May 19 |  | PW |  | June 12 |  | 1614 | 8947 | 8721 | June 18 | June 18 | June 24 | 760 |
| Relative to consolidation of the Lighthouse Service with the Coast Guard. | H. R. 239 | Jan. 3, 1947 | MMF | IFC | Apr. 23, 1947 | June 11 | 294 | 1594 | 5055 | 7942 | May 12, 1947 | June 12 | June 24 | 761 |
| Providing pensions for certain widows of Spanish-American War veterans. | H. R. 4962 | Jan. 14 | VA | Fin | June 11 | June 17 | 2316 | 1747 | 8495 | 8754 | June 16 | June 18 | June 24 | 762 |
| To authorize Marine Band to attend 1948 national assembly of the Marine Corps League. | H. R. 5036 (S. 2064) | Jan. 20 | AS* | AS | June 2 | June 8 | 2150 | 1541 | 7414 | 7926 | June 8 | June 12 | June 24 | 763 |

Ex: C-37

1948

## CONGRESSIONAL RECORD—DAILY DIGEST

D557

| Description | Bill No. | Date | Comm. | Comm. | Date | Date | No. | No. | No. | No. | Date | Date | Date | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Addition of certain surplus Federal lands to the Chickamauga and Chattanooga Military Park, Ga., and Tenn. | H. R. 5936 | Mar. 22 | PL | IIA | May 5 | June 11 | 1862 | 1600 | 5995 | 7944 | May 18 | June 12 | June 24 | 764 |
| To amend the Standard Time Act relative to placing a certain portion of the State of Idaho in the third time zone. | H. R. 6318 (S. 1547) | Apr. 22 | IFC* | IFC | May 12 | May 13 | 1948 | 1037 | 6010 | 8239 | May 15 | June 15 | June 24 | 765 |
| National military appropriations for 1949. | H. R. 6771 | June 2 | App* | App* | June 2 | June 17 | 2135 | 1763 | 6957 | 8618 | June 2 | June 17 | June 24 | 766 |
| To extend for 1 year the terms of two additional military Assistant Secretaries of State. | H. R. 6821 (S. 2669) | June 7 | HA | FR | June 8 | June 15 | 2257 | 1683 | 6989 | 8727 | June 18 | June 18 | June 24 | 767 |
| To provide annuities for certain surviving spouses of annuitants retired prior to Apr. 1, 1948. | H. R. 6641 (S. 2740) | May 20 | POCS | POCS | June 11 | June 15 | 1309 | 1685 | 8494 | 6728 | June 16 | June 18 | June 25 | 768 |
| To authorize free entry of certain railroad equipment under certain conditions from France. | H. J. Res. 433 | June 18 | WM | …… | …… | …… | …… | …… | 9222 | 9096 | June 19 | June 19 | June 25 | 769 |
| Confirming certain oil contracts negotiated by Treasury. | H. R. 4659 (S. 1857) | Dec. 8, 1947 | Jud | BC | May 28 | June 9 | 2077 | 1560 | 7390 | 7930 | June 8 | June 12 | June 25 | 770 |
| To codify Title 3 of the United States Code, entitled "The President." | H. R. 6412 | Apr. 30 | Jud | Jud | May 10 | June 14 | 1898 | 1613 | 6000 | 8721 | May 18 | June 18 | June 25 | 771 |
| To codify and enact into positive law Title 18 of the United States Code, entitled "Crimes and Criminal Procedure." | H. R. 3190 | Apr. 24, 1947 | Jud | Jud | Apr. 24, 1947 | June 14, 1947 | 304 | 1620 | 5048 | 8722 | May 12, 1947 | June 18 | June 25 | 772 |
| To codify Title 28 of the United States Code, entitled "Judicial Code and Judiciary." | H. R. 3214 | Apr. 25, 1947 | Jud | Jud | Apr. 25, 1947 | June 9 | 908 | 1559 | 8392 | 7930 | July 7, 1947 | June 12 | June 25 | 773 |
| To authorize admission of displaced persons. | S. 2242 (S. 6396) | Mar. 2 | Jud* | Jud. | May 4 | Mar. 2 | 1854 | 950 | 7888 | 6916 | June 11 | June 2 | June 25 | 774 |
| To provide for military justice within the Air Force. | (H. R. 2401) (H. R. 5937) | Mar. 29 | AS | AS | June 8 | June 8 | 2263 | 1542 | 8492 | 7925 | June 16 | June 12 | June 25 | 775 |
| To amend the Organic Act of Puerto Rico. | S. 2675 | May 17 | PL | IIA | June 4 | May 27 | 2210 | 1418 | 8484 | 6782 | June 16 | June 1 | June 25 | 776 |
| Fixing the rank of the assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements. | S. 2770 (H. R. 6751) | May 28 | AS | AS | June 8 | June 2 | 2256 | 1451 | 8498 | 7696 | June 16 | June 10 | June 25 | 777 |
| Increasing the sum to $30,000 for statue of Commodore John Barry for presentation to Eire. | H. J. Res. 297 | Jan. 15 | EA | FR | May 18 | June 17 | 1972 | 1760 | 7381 | 8754 | June 8 | June 18 | June 25 | 778 |
| Relative to pay of jurors in the United States courts. | H. R. 945 (S. 19) | Jan. 14, 1947 | Jud | Jud* | June 2 | June 7 | 2162 | 1510 | 7418 | 7945 | June 8 | June 12 | June 25 | 779 |
| Relative to probation system in United States courts. | H. R. 2766 | Mar. 25, 1947 | Jud | Jed | May 11 | June 8 | 1923 | 1544 | 6007 | 7926 | May 18 | June 12 | June 25 | 780 |
| Authorizing certain expenditures from appropriations of the Public Health Service. | H. R. 4114 | July 8, 1947 | IFC | LPW | May 11 | June 9 | 1927 | 1578 | 6008 | 7931 | May 18 | June 12 | June 25 | 781 |
| Army-civil functions appropriations for 1949. | H. R. 5524 | Feb. 24 | App* | App* | Feb. 24 | Apr. 23 | 1420 | 1167 | 1772 | 6996 | Feb. 26 | May 19 | June 25 | 782 |
| To amend the Naturalization Act of 1940 relative to petition for citizenship. | H. R. 5886 | Mar. 17 | Jud | Jud | Apr. 23 | June 15 | 1661 | 1641 | 6012 | 6723 | May 18 | June 16 | June 25 | 783 |
| Providing that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives. | H. R. 6293 | Apr. 21 | POCS | POCS | May 11 | June 15 | 1938 | 1687 | 7380 | 8727 | June 8 | June 18 | June 25 | 784 |
| Second deficiency appropriations for 1948. | H. R. 6935 | June 15 | App* | App* | June 15 | June 19 | 2348 | 1769 | 9461 | 9054 | June 16 | June 19 | June 25 | 785 |
| Authorizing the Coast Guard to maintain aids to navigation. | S. 1853 | Dec. 10, 1947 | MMF | IFC* | May 7 | Mar. 31 | 1878 | 1043 | 5996 | 4288 | May 18 | Apr. 12 | June 26 | 786 |
| Relating to yachts belonging to yacht clubs. | S. 2186 | Feb. 20 | MMF | IFC | June 17 | May 27 | 2397 | 1415 | 8957 | 6781 | June 18 | June 1 | June 26 | 787 |
| Acceptance of statue of Gen. Jose Gervasio Artigas from Uruguay. | S. 2591 | Apr. 30 | HA | PW | June 18 | June 2 | 2401 | 1439 | 8837 | 7695 | June 18 | June 2 | June 26 | 788 |
| Authorizing the printing and binding of Cannon's House Procedure. | H. J. Res. 190 | May 6, 1947 | HA | RAdm | May 14, 1947 | June 19 | 382 | 1770 | 5279 | 9056 | May 14, 1947 | June 19 | June 26 | 789 |
| To authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems. | H. R. 3218 | Apr. 25, 1947 | PL | IIA | July 10, 1947 | June 4 | 860 | 1493 | 317 | 7701 | Jan. 19 | June 10 | June 26 | 790 |
| Authorizing permanent appointment in each the Regular Army and Regular Air Force of one officer in the grade of general. | H. R. 6039 | Mar. 30 | AS | AS | Apr. 14 | June 17 | 1734 | 1764 | 4644 | 8755 | Apr. 20 | June 18 | June 26 | 791 |

*Printed hearings.

Ex. C-38

amount each year for the development of farm-to-market roads. The Commissioner of Public Roads, Mr. Thomas H. MacDonald, spoke in favor of the bill. Mr. General Fleming, Commissioner of Public Works, favored the bill. No one appeared in opposition to the bill. It was reported unanimously by the Public Works Committee. Three identical bills have been introduced in the other body by three different Senators. The President recommended the passage of such measure in his message to the Congress on January 3 of this year. This bill will not require a single dollar of appropriations from the Federal Treasury.

Mr. CASE of South Dakota. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. CASE of South Dakota. Does the extension apply to the farm-to-market roads as well as to the primary system?

Mr. CUNNINGHAM. It certainly does, as well as the development of the highways in the urban areas.

Mr. CASE of South Dakota. The bill is very much in order for two reasons. One is that the time when the Japanese war expired, creating the resolution which the gentleman has referred to before, came along in the fall, which gave the States a short year the first year.

Mr. CUNNINGHAM. Yes. No States started building highways prior to October of 1945. They lost 4 months to start with. Then, there was a lack of material and shortage of labor and high prices, which caused the program to be held up. The whole program will be retarded and the States will lose some of this appropriation and there will be tremendous waste if this bill is not enacted. Possibly 12 months' grace period is not sufficient, but if it is not sufficient we can bring up another bill later.

Mr. CASE of South Dakota. If I remember correctly prior to this authorization the old Federal-aid authorization gave the States 2 years in which to act.

Mr. CUNNINGHAM. I think the gentleman is right.

Mr. H. CARL ANDERSEN. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. H. CARL ANDERSEN. I wish to state at this time that in my opinion this is very necessary legislation. As a previous member of the Committee on Roads, I would like to compliment the gentleman for bringing this bill up at this time.

Mr. CUNNINGHAM. I thank the gentleman.

Mr. DONDERO. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield to the chairman of the committee.

Mr. DONDERO. I think the gentleman has already covered the ground, but is it not a fact that because of the conditions enumerated by the gentleman, many of the States have been unable to comply with the provisions of this act, which makes this bill mandatory in order to protect the States?

Mr. CUNNINGHAM. That is absolutely true. In addition, there would be tremendous waste, because the highway program would be stopped, and highways partly completed would be left in status quo until the Congress took some additional action.

Mr. COLE of New York. Mr. Speaker, I withdraw my reservation of objection.

Mr. ANGELL. Mr. Speaker, reserving the right to object, as one of the members of this committee, I had an opportunity to study this bill very carefully. The people in my particular area in the Northwest are very, very much in sympathy with this bill. I think what the chairman has said and what the gentleman from Iowa [Mr. CUNNINGHAM] has said is absolutely true, that this bill is essential for our road-building program.

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill, as follows:

Be it enacted, etc., That paragraph (d) of section 4 of the Federal-Aid Highway Act of 1944, Public Law 521, Seventy-eighth Congress, approved December 20, 1944, is hereby amended by striking out the term "one year" where it appears in said paragraph and inserting in lieu thereof the term "two years."

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

TO CODIFY TITLE 18 OF THE UNITED STATES CODE, CRIMES AND CRIMINAL PROCEDURE

The Clerk called the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code entitled "Crimes and Criminal Procedure."

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill the second time.

Mr. WALTER. Mr. Speaker, I offer an amendment.

The Clerk read as follows:

Amendment offered by Mr. WALTER: On page 434, line 11, after the word "of", strike out "three" and insert "five."

Mr. WALTER. Mr. Speaker, the amendment you have just heard reported would have the effect, if adopted, of increasing the membership of the parole board from three to five.

At the last session of the Congress one of the subcommittees of the Committee on the Judiciary, in studying the legislation which we hoped might have the effect of cutting down the criminal rate in this country, found a perfectly appalling situation in the parole board. That board of three members actually interviews upward of 10,000 prisoners each year. That is, personal interviews. In addition to that, they have to review the cases acted on after personal interviews.

There are 21 criminal institutions in the United States that must be visited by this Board at regular intervals. So they have a perfectly impossible job with the result that men are paroled according to formula who should be compelled to serve their full sentence. I am not thinking about those men who are eligible for parole and in whose cases no action can be taken because the Board has not the time to reach their cases;

that is bad enough, but, significantly enough, over 50 percent of the criminals in the Federal institutions are repeaters. It seems to me that the least we can do is to make it possible or probable for a Board intelligently to pass on applications for parole in order to determine whether or not men should be released from their incarceration.

Mr. CARROLL. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. CARROLL. Would the gentleman's amendment change existing law?

Mr. WALTER. It does not change existing law at all.

Mr. COLE of New York. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. COLE of New York. If it does not change existing law, and this bill is designed to codify existing law, what is the necessity of offering the amendment?

Mr. WALTER. It changes existing law in that it changes the number of members on the Board. It does not, however, in any way affect the purpose of the law establishing the parole system; it merely changes the number of members of the Board. This is not different from what has been done by this committee in this very bill. The period of sentence has been changed in order to make different crimes fit the sentences that have been fixed by Congress from time to time. That is done throughout this entire title 28.

Mr. GRAHAM. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. GRAHAM. As I understand the gentleman's amendment it increases the number of members from three to five.

Mr. WALTER. That is right.

Mr. GRAHAM. But it does not increase the rate of compensation of the members.

Mr. WALTER. That is right, exactly.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. ROBSION. I may say this to the gentleman, this matter came up before our Judiciary Committee and former Senator George Wharton Pepper, who is tremendously interested in this subject, and others felt they had to have additional authorization to increase the number from three to five. Otherwise we are not amending the law. I think there is no objection to it. We have a bill which can be called up to do this thing.

Mr. WALTER. The gentleman is correct, but we are this far. I do not think there is any doubt but that the Judiciary Committee would unanimously approve a separate bill, but we have gotten this far with this legislation and it certainly seems to me the situation is so critical that we ought to act as quickly as we possibly can. That is the reason I have offered this amendment at this time.

The SPEAKER. The time of the gentleman from Pennsylvania has expired.

Mr. ROBSION. Mr. Speaker, this bill differs from the five codification bills which have preceded it on this calendar in that it constitutes a revision, as well as a codification, of the Federal laws

Case 1:07-cv-01766-RMU    Document 19-2    Filed 04/28/2008    Page 28 of 58

Ex: C-40

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two law-publishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and, in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.

XCIII——319

This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of the procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that

they were purely a codification. But there are some changes in this bill (H. R. 3198), I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6.

So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

Ex: C-41

142

No.

| No. | Index Key and History of Bill |
| --- | --- |

### HOUSE BILLS—Continued

H. R. 3175.—**Shasta National Park, Calif.** Reported from Public Lands June 24, 1947; Report No. 680. Union Calendar. Passed House July 21, 1947. Reported in Senate Feb. 25, 1948; Interior and Insular Affairs; Report No. 928. Passed Senate Mar. 3, 1948. Approved Mar. 19, 1948. Public Law No. 449.

H. R. 3189.—**Parry, Joe.** Reported from Judiciary Apr. 1, 1948; Report No. 1638. Private Calendar. Passed House Apr. 6, 1948. Reported in Senate Apr. 30, 1948; Judiciary; Report No. 1203. Passed Senate May 10, 1948. Approved May 17, 1948. Private Law No. 204.

H. R. 3190.—**U. S. Code, Crimes and Criminal Procedure.** Reported from Judiciary Apr. 24, 1947; Report No. 304. Union Calendar. Passed House May 12, 1947. Reported in Senate June 14, 1948; Judiciary; Report No. 1620. Passed Senate, amended, June 18, 1948. House agrees to Senate amendments June 18, 1948. Approved June 25, 1948. Public Law No. 772.

H. R. 3191.—**Missing Persons Act, Philippines.** Reported from Armed Services June 3, 1947; Report No. 509. Union Calendar. Rules suspended and passed House June 16, 1947. Reported in Senate July 10, 1947; Armed Services; Report No. 570. Passed Senate July 23, 1947. Approved July 25, 1947. Public Law No. 241.

H. R. 3194.—**Reclamation Project of 1939, amend.** Reported from Public Lands Apr. 29, 1948; Report No. 1833. Union Calendar. Passed House June 8, 1948.

H. R. 3197.—**Mancos project, repayment period.** Reported from Public Lands May 20, 1947; Report No. 402. Union Calendar. Passed House June 2, 1947. Reported in Senate June 10, 1947; Public Lands; Report No. 255. Passed Senate June 16, 1947. Approved June 25, 1947. Public Law No. 109.

H. R. 3203 (S. 1017; H. Con. Res. 53).—**Housing, rent control.** Reported from Banking and Currency Apr. 25, 1947; Report No. 317. Minority views pt. 1. Union Calendar. Passed House May 1, 1947. In Senate read twice and placed on calendar May 2, 1947. Passed Senate, amended, June 2, 1947. House agrees to a conference June 4, 1947. Senate agrees to conference report June 19, 1947. Approved June 30, 1947. Public Law No. 129.

H. R. 3214.—**U. S. Code, Judicial Code and Judiciary.** Reported from Judiciary Apr. 25, 1947; Report No. 308. Union Calendar. Rules suspended. Passed House July 7, 1947. Reported in Senate June 9, 1948; Judiciary; Report No. 1559. Passed Senate, amended, June 15, 1948. House agrees to Senate amendments June 16, 1948. Approved June 25, 1948. Public Law No. 773.

H. R. 3215.—**Army-Navy Medical Services Corps Act of 1947.** Reported from Armed Services May 14, 1947; Report No. 387. Union Calendar. Passed House June 2, 1947. Reported in Senate July 9, 1947; Armed Services; Report No. 464. Passed Senate, amended, July 23, 1947. House agrees to Senate amendments July 25, 1947. Approved Aug. 4, 1947. Public Law No. 337.

### HOUSE BILLS—Continued

H. R. 3218.—**Bureau of Reclamation.** Reported from Public Lands July 10, 1947; Report No. 860. Union Calendar. Passed House Jan. 19, 1948. Reported in Senate June 4, 1948; Interior and Insular Affairs; Report No. 1493. Passed Senate, amended, June 10, 1948. House agrees to Senate amendments June 18, 1948. Approved June 26, 1948. Public Law No. 790.

H. R. 3219.—**Federal Works Agency, special policemen.** Reported from Public Works June 12, 1947; Report No. 582. Union Calendar. Passed House July 7, 1947. Reported in Senate Apr. 30, 1948; Public Works; Report No. 1176. Passed Senate, amended, May 10, 1948. House agrees to Senate amendments May 18, 1948. Approved June 1, 1948. Public Law No. 566.

H. R. 3224.—**Durante, Frank, and wife.** Reported from Judiciary Dec. 17, 1947; Report No. 1215. Private Calendar. Passed House Jan. 20, 1948. Reported in Senate Apr. 30, 1948; Judiciary; Report No. 1186. Passed Senate May 10, 1948. Approved May 19, 1948. Private Law No. 308.

H. R. 3227 (S. 1174) (H. Res. 486).—**Organized Reserve Corps.** Reported from Armed Services July 17, 1947; Report No. 971. Union Calendar. Laid on table Mar. 9, 1948. S. 1174 passed in lieu.

H. R. 3229.—**Hawaii and Alaska Cargo Manifest Laws.** Reported from Ways and Means Mar. 2, 1948; Report No. 1478. Union Calendar. Passed House Mar. 15, 1948. Reported in Senate Mar. 26, 1948; Finance; Report No. 1029. Passed Senate Mar. 29, 1948. Approved Apr. 7, 1948. Public Law No. 476.

H. R. 3235.—**District of Columbia, condemnation proceedings.** Reported from District of Columbia May 20, 1947; Report No. 403. Union Calendar. Passed House May 26, 1947. Reported in Senate June 26, 1947; District of Columbia; Report No. 375. Passed Senate July 3, 1947. Approved July 11, 1947. Public Law No. 177.

H. R. 3239.—**United States Employees' Compensation Act, amend.** Reported from Education and Labor Apr. 15, 1948; Report No. 1750. Union Calendar Union 833

H. R. 3243 (S. 1674).—**Toporow, Roman.** Reported from Judiciary July 17, 1947; Report No. 984. Private Calendar. Passed House July 22, 1947. Passed Senate July 23, 1947. Approved July 25, 1947. Private Law No. 90.

H. R. 3244.—**Clark, Nellie M.** Reported from Judiciary Mar. 2, 1948; Report No. 1464. Private Calendar. Passed House Mar. 16, 1948.

H. R. 3245 (H. Res. 201).—**Appropriations, Second Deficiency, 1947.** Reported from Appropriations Apr. 29, 1947; Report No. 323. Union Calendar. Passed House May 2, 1947. Reported in Senate May 15, 1947; Appropriations; Report No. 175. Passed Senate, amended, May 16, 1947. Senate asks for a conference May 19, 1947. House agrees to a conference May 20, 1947. House agrees to conference report May 22, 1947. House recedes and concurs in Senate amendment Nos. 12; recedes and concurs in Senate amendment Nos. 7 and 13, each with an amendment. May 22, 1947. Senate agrees to conference report May 22, 1947. Senate agrees to House amendments to Senate amendments Nos. 7 and 13, May 22, 1947. Approved May 26, 1947. Public Law No. 76.

| No. | |
| --- | --- |

H. R. 324... Reporte... June 30... Passed... July 14... Report... Approv...

H. R. 3... from A... Union... Reporte... Report... Approv...

H. R. 325... lands... 1947; 1... House... 1947; ... Senate... Public...

H. R. 3... Judicia... Calend... in Sena... Passed... agrees... proved...

H. R. 32... from ... Private... Report... No. 16... July 2,...

H. R. 32... Judicia... Calend... in Sen... Passed... 1948.

H. R. 3... Repor... No. 6... 1947.

H. R. ... Judici... Calend... in Sen... Passed... 1948.

H. R. ... Repor... port... June... 1947.... House... agree... agree... June ...

H. R. 3... No. 3... 1947;... 4, 19...

# EIGHTIETH CONGRESS

FIRST SESSION {CONVENED JANUARY 3, 1947
{ADJOURNED DECEMBER 19, 1947

SECOND SESSION {CONVENED JANUARY 6, 1948
{ADJOURNED DECEMBER 31, 1948

# CALENDARS

## OF THE UNITED STATES
## HOUSE OF REPRESENTATIVES

—AND—

# HISTORY OF LEGISLATION

ALL PENDING LEGISLATION FAILING FINAL
ENACTMENT PRIOR TO DECEMBER 31, 1948,
DIES WITH THE EIGHTIETH CONGRESS

Ex: C-42

# FINAL EDITION

PREPARED UNDER THE DIRECTION OF JOHN ANDREWS, CLERK OF THE HOUSE OF REPRESENTATIVES
CURTIS A. CHRISTIANSON, TALLY CLERK, WILLIAM H. HICKSON, ASSISTANT TALLY CLERK

*Calendars shall be printed daily—*]     *Index to the Calendars will be printed on Monday of each week the House is in session,*
*Rule XIII, clause 5*     ]     *otherwise first day of session thereafter*

70238

U. S. GOVERNMENT PRINTING OFFICE: 1948

80TH CONGRESS
1ST SESSION

# S. CON. RES. 33

## IN THE SENATE OF THE UNITED STATES

JULY 26 (legislative day, JULY 16), 1947

Mr. TAFT submitted the following concurrent resolution; which was considered
and agreed to

# CONCURRENT RESOLUTION

1  *Resolved by the Senate (the House of Representatives*

2  *concurring),* That when the two Houses adjourn on Sunday,

3  July 27, 1947, they shall stand adjourned until 12 o'clock

4  meridian on Friday, January 2, 1948, or until 12 o'clock

5  meridian on the third day after their respective Members

6  are notified to reassemble in accordance with section 2 of

7  this concurrent resolution, whichever event first occurs.

8    SEC. 2. The President pro tempore of the Senate, the

9  Speaker of the House of Representatives, the majority leader

10  of the Senate and the majority leader of the House of Repre-

11  sentatives, all acting jointly, shall notify the Members of the

12  Senate and the House, respectively, to reassemble whenever

13  in their opinion the public interest shall warrant it.

\* Ex: C-43

| | | | |
|---|---|---|---|
| | 128. Oct. 19, 1973-Oct. 23, 1973 | 4 | 0 |
| | 129. Nov. 22, 1973-Nov. 26, 1973 | 4 | 0 |
| 93/2 | 130. Feb. 9, 1974-Feb. 13, 1974 | 4 | 0 |
| | 131. Mar. 14, 1974-Mar. 19, 1974 | 5 | 0 |
| | 132. Apr. 12, 1974-Apr. 22, 1974 | 10 | 0 |
| | 133. May 24, 1974-May 28, 1974 | 4 | 0 |
| | | | -- |
| | | | 38 |

1. Source: 1974 Congressional Directory 392; Presidential Vetoes, Record of Bills Vetoed and Action Taken Thereon by the Senate and House of Representatives, 1789-1968 (Compiled by Senate Library, 1969); Calendar, 93rd Cong. (June 24, 1974).

2. The date of the beginning of each adjournment is the first day on which neither House was in session; the date of the end of each adjournment is the day on which one or both Houses resumed the session.

3. There was additional adjournments in this session, from July 27, 1868, to September 21, to October 16, and to November 10. No business was transacted subsequent to July 27, 1868, and the session adjourned sine die on November 10. In effect, the adjournment on July 27 was a sine die adjournment. President Andrew Johnson pocket vetoed two bills presented to him after the adjournment of July 27, 1868.

4. The Senate and the House of Representatives adjourned on July 27, 1947 under a "conditional final adjournment" resolution, S.Con.Res. 33; 93 Cong.Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a sine die adjournment, not an intrasession adjournment. On November 17, 1947, Congress convened pursuant to proclamation of President Truman, and adjourned sine die on December 19, 1947. The President pocket vetoed 19 bills presented to him after the adjournment of July 27, 1947.

5. The Senate and the House of Representatives adjourned on June 20, 1948, under a "conditional final adjournment" resolution, H.Con.Res. 218; 94 Cong.Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until December 31, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a sine die adjournment, not an intrasession adjournment. On July 26, 1948, Congress convened pursuant to a proclamation of President Truman. The President pocket vetoed 14 bills presented to him after the adjournment of June 20, 1948.

6. The House adjourned sine die on August 20, 1954. Thereafter President Eisenhower pocket vetoed twenty-five bills. Although the Senate remained in session until December 2, 1954, these were not intrasession pocket vetoes since the House had already finally adjourned.

[7] In summary, we hold that the Christmas recess of 1970 did not prevent the return of S. 3418-a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Ex: C-44

Ex: C-45

Kennedy v. Sampson, 511 F.2d 430 (C.A.D.C. 1...)

1. Source: 1974 Congressional Directory 392;
Presidential Vetoes, Record of.

Bills Vetoed and Action Taken Thereon by the
Senate and House of

Representatives, 1789-1968 (Compiled by
Senate Library, 1969); Calendar, 93rd

Cong. (June 24, 1974).1/5

2. The date of the beginning of each
adjournment is the first day on which

neither House was in session; the date of the end
of each adjournment is the

day on which one or both Houses resumed the
session.1/5

3. There was additional adjournments in this
session, from July 27, 1868, to

Septembeer 21, to October 16, and to November
10. No business was transacted

subseqeuent to July 27, 1868, and the session
adjourned sine die on November 10.

In effect, the adjournment on July 27 was a sine
die adjournment.

Presidennt Andrew Johnson pocket vetoed two
bills presented to him after the

adjournmment of July 27, 1868.1/5

4. The Senate and the House of Representatives
adjourned on July 27, 1947

under a "conditional final adjournment"
resolution, S.Con.Res. 33; 93

Cong.Rec. 10400. Pursuant to the resolution, the
two Houses were to stand in

adjournmment until January 2, 1948, unless
recalled into session earlier by

specifieed Senate and House leaders. In effect,
the adjournment was a sine die

adjournmment, not an intrasession adjournment.
On November 17, 1947, Congress

convenedd pursuant to proclamation of President
Truman, and adjourned sine die

on December 19, 1947. The President pocket
vetoed 19 bills presented to him

after the adjournment of July 27, 1947.1/5

5. The Senate and the House of Representatives
adjourned on June 20, 1948,

under a "conditional final adjournment"
resolution, H.Con.Res. 218; 94

Cong.Rec. 9158. Pursuant to the resolution, the
two Houses were to stand in

adjournment until December 31, 1948, unless
recalled into session earlier by

specifieed Senate and House leaders. In effect,
the adjournment was a sine die

adjournmment, not an intrasession adjournment.
On July 26, 1948, Congress

convenedd pursuant to a proclamation of
President Truman. The President pocket

vetoed 14 bills presented to him after the
adjournment of June 20, 1948.1/5

6. The House adjourned sine die on August 20,
1954. Thereafter President

Eisenhowwer pocket vetoed twenty-five bills.
Although the Senate remained in

session until December 2, 1954, these were not
intrasession pocket vetoes

since the House had already in ally
adjourned.1/5

fastcase

Ex: C-46

BUREAU OF MINES

The legislative clerk read the nomination of James Boyd, of Colorado, to be Director of the Bureau of Mines.

Mr. TAFT. Mr. President, I ask that the nomination be passed over.

The PRESIDING OFFICER. Without objection, the nomination will be passed over.

Mr. REVERCOMB. Mr. President, I join in the request that the nomination of James Boyd to be Director of the Bureau of Mines be passed over. I do that not for any personal reason whatsoever, but solely on the ground of doubt as to whether this nominee is fitted for the position and whether he has had the training and experience to fill the position.

The position of Director of Mines is becoming an increasingly important one. More and more he is a director of safety in the mines of this country.

At this session we passed a law with respect to continuing mine inspection in the Bureau of Mines. That law did not contain all that I wanted it to contain, but it indicates that there is a continued interest by the Federal Bureau of Mines in mine inspection. There are approximately 820,000 miners in the Nation, and of that number approximately 400,000 are engaged in coal mining. The preservation of safety has become one of the foremost duties of the Bureau of Mines. I find that Mr. Boyd is absolutely devoid of any experience in the coal-mining industry.

I want to read two questions which he very frankly and fairly answered when he was before the committee. This question was asked by the Senator from Montana [Mr. MURRAY]:

Senator MURRAY. Mr. Boyd, what study have you given to the coal-mining industry?

Mr. BOYD. Senator, I have never worked in the coal-mining industry directly. I have, as a member of the faculty of the Colorado School of Mines, been instrumental in training men who have gone into the coal-mining industry. I have been on inspection trips myself to various coal mines in the West. As I have said, we had direction of coal operations in Europe, and I know something of the operations there. I have never myself been engaged in the coal-mining industry.

And then this question was asked by the Senator from Montana:

Senator MURRAY. You admit that you are not familiar with the conditions in the coal mines in this country, especially here in the eastern section of the country.

Mr. BOYD. Senator, I admit that I have never been employed in coal mines. I have studied the situation for many years, and I know the basic problems in the coal-mining industry.

Mr. President, in view of the fact that more than half of the miners in this country are engaged in the mining of coal, and in view of the fact that the safety of those miners has become the primary duty and interest of the Federal Bureau of Mines, I feel that it is entirely fair to raise the question of the training and competency of Mr. Boyd to fill this position; and I join in the request that the nomination go over.

The PRESIDING OFFICER. The nomination will be passed over.

The clerk will state the next nomination on the calendar.

NATIONAL LABOR RELATIONS BOARD

The legislative clerk proceeded to read the nominations of two members and the general counsel of the National Labor Relations Board.

Mr. TAFT. Mr. President, I ask that the Labor Relations Board nominations go over.

The PRESIDING OFFICER. Without objection, it is so ordered.

UNITED STATES PUBLIC HEALTH SERVICE

The legislative clerk proceeded to read sundry nominations in the United States Public Health Service.

Mr. TAFT. Mr. President, I ask that the nominations in the Public Health Service be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

THE ARMY

The legislative clerk proceeded to read sundry nominations in the Army.

Mr. TAFT. Mr. President, I ask that the nominations in the Army be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

Mr. TAFT. The Senator from South Dakota [Mr. GURNEY] has additional nominations.

Mr. GURNEY. Mr. President, I submit the nominations of 120 captains, 307 first lieutenants, 123 lieutenant colonels, and also certain nominations in the Navy, and ask that they be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

POSTMASTERS

The legislative clerk proceeded to read sundry nominations of postmasters.

Mr. TAFT. Mr. President, I ask that the postmaster nominations be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the postmaster nominations are confirmed en bloc.

Mr. TAFT. I ask that the President be notified of the confirmations in all of these instances.

The PRESIDING OFFICER. Without objection, the President will be notified forthwith.

CONDITIONAL ADJOURNMENT JANUARY 2, 1948

Mr. TAFT. Mr. President, in accordance with the terms of Senate Concurrent Resolution 33, adopted earlier today, I move that the Senate do now adjourn.

The motion was agreed to; and (at 3 o'clock and 50 minutes a. m., Sunday, July 27, 1947) the Senate adjourned, the adjournment being, under the provision of Senate Concurrent Resolution 33, to January 2, 1948, at 12 o'clock meridian.

NOMINATIONS

Executive nominations received by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, of New York, to be Secretary of Defense.

COLLECTOR OF INTERNAL REVENUE

John T. Jarecki, of Chicago, Ill., to be collector of internal revenue for the first district of Illinois, in place of Nigel D. Campbell, resigned.

CONFIRMATIONS

Executive nominations confirmed by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, to be Secretary of Defense.

DEPARTMENT OF JUSTICE

Philip B. Perlman, to be Solicitor General of the United States.

DIPLOMATIC AND FOREIGN SERVICE

TO BE ENVOY EXTRAORDINARY AND MINISTER PLENIPOTENTIARY OF THE UNITED STATES OF AMERICA TO RUMANIA

Rudolf E. Schoenfeld

TO BE FOREIGN SERVICE OFFICERS OF CLASS 6, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

John A. Bovey, Jr.          James R. Ruchti
Ernest E. Ramsaur, Jr.     Ralph S. Saul
Miss Louise Schaffner      Robert M. Winfree
Richard W. Sterling        Robert W. Zimmermann

TO BE FOREIGN SERVICE OFFICERS OF CLASS 2, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Charles F. Baldwin
John Lammey Stewart
Ben H. Thibodeaux

TO BE FOREIGN SERVICE OFFICERS OF CLASS 3, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Ralph B. Curren          Oscar E. Heskin
Jerome T. Gaspard        Philip W. Ireland

TO BE FOREIGN SERVICE OFFICERS OF CLASS 4, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Turner C. Cameron,       Eric Kocher
Jr.                      William Henry Lawrence
Harry Conover            Frank G. Siscoe
Robert C. Creel
Ridgway B. Knight

TO BE A FOREIGN SERVICE OFFICER OF CLASS 5, A VICE CONSUL OF CAREER, AND SECRETARY IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

James R. Gustin.

TO BE FOREIGN SERVICE OFFICERS OF CLASS 6, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Robert A. Aylward        Francis N. Magliozzi
Howard L. Boorman        Parke D. Massey, Jr.
William D. Brewer        Everett K. Melby
Edward West Burgess      Alfred E. Moon
Stephen A. Comiskey      Curtis W. Prendergast
William B. Dunn          Herbert F. Propps
Seymour M. Finger        Lowell G. Richardson
Walter P. Houk           Jordan T. Rogers
Vernon V. Hukee          Howard René Stephenson
Joseph E. Jacques        son
Robert L. James          Kenneth P. T. Sullivan
Edward J. Krache, Jr.    Edward J. Trost
Edward T. Long           Wayland B. Waters

Ex: C-47

of those which duplicate or conflict with each other or with activities carried on by the Government of Puerto Rico. He shall report through the Secretary of the Interior to the President and to Congress concerning the administration of all Federal civilian functions and activities in Puerto Rico, specifying the recommendations made by him to the Federal agencies and the results of such recommendations. He shall advise the Secretary of the Interior, who shall advise the Bureau of the Budget and the Congress with respect to all appropriation estimates submitted by any civilian department or agency of the Federal Government to be expended in or for the benefit of Puerto Rico. He shall confer with the Governor of Puerto Rico with respect to the correlation of activities of Federal and insular agencies and all plans and programs and other matters of mutual interest.

"'(3) The President of the United States may, from time to time, after hearing, promulgate Executive orders expressly excepting Puerto Rico from the application of any Federal law, not expressly declared by Congress to be applicable to Puerto Rico, which is contemplated by section 9 of this act is inapplicable by reason of local conditions. The Coordinator of Federal Agencies may, from time to time, make recommendations to the President for such purpose. Any such recommendation shall show the concurrence or dissent of the Governor of Puerto Rico.

"'(4) The Coordinator of Federal Agencies, in the name of the President of the United States, shall have authority to request from the Governor of Puerto Rico, and the Governor shall furnish to him all such reports pertaining to the affairs, conditions, and government of Puerto Rico as the Coordinator of Federal Agencies shall from time to time request for transmission to the President through the Secretary of the Interior.

"'(5) The President of the United States shall prescribe such rules and regulations as may be necessary to carry out the provisions of this section.'

"Sec. 7. Section 2 of said Organic Act (48 U. S. C., sec. 737) is amended by adding at the end thereof the following new paragraph:

"'The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of article IV of the Constitution of the United States.'"

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Senate amendments were concurred in.

A motion to reconsider was laid on the table.

RECESS

The SPEAKER. The Chair declares the House in recess at this time subject to the call of the Chair.

Accordingly (at 12 o'clock and 10 minutes a. m.), the House stood in recess, subject to the call of the Chair.

AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 12 o'clock and 31 minutes a. m.

FURTHER MESSAGE FROM SENATE

A further message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate agrees to the amendment of the House to a concurrent resolution of the Senate of the following title:

S. Con. Res. 33. Concurrent resolution providing for the adjournment of the two Houses of Congress until January 2, 1948.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

The SPEAKER announced his signature to enrolled bills and joint resolutions of the Senate of the following titles:

S. 609. An act conferring jurisdiction upon the United States District Court for the Western District of Arkansas to hear, determine, and render judgment upon any claims arising out of the deaths of Norman Ray Pedron and Carl Franklin Morris;

S. 758. An act to promote the national security by providing for a Secretary of Defense; for a National Military Establishment; for a Department of the Army, a Department of the Navy, and a Department of the Air Force; and for the coordination of the activities of the National Military Establishment with other departments of the Government concerned with the national security.

S. 794. An act to authorize the sale of a small tract of land on the Cherokee Indian Reservation, N. C.;

S. 892. An act for the payment of claims of one Fidelity Trust Co., of Baltimore, Md., and others, covered by findings of fact made by the United States Court of Claims, dated June 5, 1944, and contained in Senate Document No. 229, Seventy-eighth Congress, second session;

S. 907. An act to provide for the orderly transaction of the public business in the event of the death, resignation, or separation from office of regional disbursing officers of the Treasury Department;

S. 1070. An act to provide for the cancellation of the capital stock of the Federal Deposit Insurance Corporation and the refund of moneys received for such stock, and for other purposes;

S. 1181. An act for the relief of Robert F. Parks;

S. 1350. An act to authorize relief of accountable officers of the Government, and for other purposes;

S. 1361. An act to amend the United States Housing Act of 1937 so as to permit loans, capital grants, or annual contributions for low-rent housing and slum-clearance projects where construction costs exceed present cost limitations upon condition that local housing agencies pay the difference between cost limitations and the actual construction costs;

S. 1463. An act to amend section 13 of the Immigration Act of 1917;

S. 1480. An act authorizing the conveyance to the State of Delaware of a portion of Pea Patch Island;

S. 1494. An act to amend section 14 of the Veterans' Preference Act of June 27, 1944;

S. 1505. An act authorizing the Secretary of Agriculture to convey certain lands in Boise, Idaho, to the Boise Chamber of Commerce;

S. 1582. An act relating to the sale of Paxon Field, Duval County, Fla.;

S. 1590. An act to amend the District of Columbia rent-control law so as to provide that schools and universities may recover possession of housing accommodations in certain cases;

S. 1633. An act to authorize the attendance of the Marine Band at the National Convention of the American Legion to be held in New York, N. Y., August 28 to 31, 1947, and the National Convention of the Veterans of Foreign Wars of the United States to be held in Cleveland, Ohio, September 4 to 9, 1947;

S. 1561. An act to provide additional inducements to physicians, surgeons, and den-

tists to make a career of the United States military, naval, and public-health services, and for other purposes;

S. J. Res. 112. Joint resolution to establish a commission to formulate plans for the erection, in Grant Park, Chicago, Ill., of a Marine Corps memorial.

S. J. Res. 130. Joint resolution relating to safety in bituminous-coal and lignite mines of the United States;

S. J. Res. 138. Joint resolution to provide for return of Italian property in the United States, and for other purposes; and

S. J. Res. 148. Joint resolution to authorize the temporary continuation of regulation of consumer credit.

ADJOURNMENT

Mr. HALLECK. Mr. Speaker, I move that the House do now adjourn.

The motion was agreed to; accordingly (at 12 o'clock and 32 minutes a. m.), pursuant to Senate Concurrent Resolution 33, the House adjourned until Friday, January 2, 1948, at 12 o'clock noon.

EXECUTIVE COMMUNICATIONS, ETC.

Under clause 2 of rule XXIV, executive communications were taken from the Speaker's table and referred as follows:

993. A letter from the Attorney General, transmitting request for withdrawal of the case of Juan Hernandez Ayala from those 139 cases involving suspension of deportation referred to in letter of June 15, 1947; to the Committee on the Judiciary.

994. A letter from the Clerk, House of Representatives, transmitting the motion to dismiss of the contestee in the contested election case of Lawrence Michael against Howard W. Smith for a seat in the House of Representatives from the Eighth Congressional District of the State of Virginia (H. Doc. No. 418); to the Committee on House Administration and ordered to be printed.

995. A letter from the Executive Secretary, Air Coordinating Committee, transmitting a draft of a proposed bill to encourage the development of a safe United States flag international air transportation system properly adapted to the present and future needs of foreign commerce of the United States, of the postal service, and of the national defense, and to meet certain of the obligations incumbent upon the United States by virtue of its membership in the International Civil Aviation Organization, by providing for the transfer, establishment, operation, administration, and maintenance of airport and airway property located outside the continental United States, for the training of foreign nationals in aviation activities, and for other purposes; to the Committee on Interstate and Foreign Commerce.

996. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for the performance of certain functions and activities of the Department of Commerce, and for other purposes; to the Committee on Interstate and Foreign Commerce.

997. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for certain functions and activities of the Weather Bureau, and for other purposes; to the Committee on Interstate and Foreign Commerce.

998. A letter from the Secretary of the Interior, transmitting interim report on the status of investigations of potential water resource developments in the Colorado River Basin in Arizona, California, Colorado, Nevada, New Mexico, Utah, and Wyoming (H. Doc. No. 419); to the Committee on Public Lands and ordered to be printed, with illustrations.


Case 1:07-cv-01766-RMU    Document 19-2    Filed 04/28/2008    Page 36 of 58



OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS

SECOND SESSION

## VOLUME 94—PART 7

JUNE 15, 1948, TO JUNE 19, 1948
(PAGES 8229 TO 9352)

Ex:C-48

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948



# Congressional Record



**United States of America**    PROCEEDINGS AND DEBATES OF THE *80th* CONGRESS, SECOND SESSION

EX-49

## SENATE

### TUESDAY, JUNE 15, 1948

The Senate met at 11 o'clock a. m.

Rev. Bernard Braskamp, D. D., pastor of the Gunton Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

Almighty God, who are the guiding wisdom in the life of men and nations, we pray that Thy servants may be blessed with clear minds and courageous hearts as they take counsel together for the building of a better world. Grant unto them insight and inspiration as they frame policies and enact laws which shall lift our own beloved country into nobler and happier ways of living.

Help us to put forth a more heroic effort in behalf of a social order in which there shall be a finer spirit of brotherhood and all the members of the human family shall seek one another's welfare.

Hear us in Christ's name. Amen.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Chaffee, one of its reading clerks, announced that the House had passed the following bill and joint resolution of the Senate, each with an amendment in which it requested the concurrence of the Senate:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes; and

S. J. Res. 117. Joint resolution providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States.

The message also announced that the House had agreed to the concurrent resolution (S. Con. Res. 56) welcoming the Inter-American Bar Association to the United States for its conference in Detroit, Mich., in May 1949.

The message further announced that the House had passed the following bills, in which it requested the concurrence of the Senate:

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 5553. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 6247. An act to provide for the air security and defense of the United States, to establish the composition of the Air Force, and for other purposes; and

H. R. 6411. An act to provide for the issu-

ance of national safety against traffic and other accident hazards.

### ENROLLED BILL AND JOINT RESOLUTION SIGNED

The message also announced that the Speaker had affixed his signature to the following enrolled bill and joint resolution, and they were signed by the President pro tempore:

S. 2642. An act to amend the District of Columbia Motor Vehicle Parking Facility Act of 1942, approved February 16, 1942; and

S. J. Res. 54. Joint resolution to provide for the restoration and preservation of the Francis Scott Key Mansion, to establish the Francis Scott Key National Memorial, and for other purposes.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that the Journal of the proceedings of yesterday be approved without reading.

Mr. RUSSELL. Mr. President, I desire to expedite in every possible way the business of the Senate, but I have examined the Record this morning, and there is considerable confusion as to the exact parliamentary status, as to what shall transpire this morning in the morning hour. I dislike to invoke the consequences of the application of rule VIII, but unless there can be arranged an appropriate unanimous-consent agreement, which will carry out the seeming understanding of the Senate as to the order of business, I shall feel constrained to object to dispensing with the reading of the Journal. I should dislike very much to take that step.

Mr. WHERRY. If the Senator will yield, as I understand the parliamentary situation, the unfinished business is the so-called long-range agricultural bill. It was definitely made the unfinished business yesterday afternoon by unanimous consent, no objection being registered. So certainly the status of that bill has been cleared up. The intention this morning is to have a call of the calendar from the beginning. The reason why I did not ask unanimous consent for a call of the calendar was the fact that there are some Senators on both sides of the aisle who have bills they would like to ask to have considered and voted on, and following the adjournment taken last night the calendar would be called automatically during the morning hour. We may just as well be frank about it; that is why an adjournment was taken last night.

Mr. TAFT. I understand the Senator from Georgia has the floor. Will he yield?

Mr. RUSSELL. I have the floor, and

Mr. TAFT. Is the Senator's objection based on the fact that this is not Monday, and would the Senator be satisfied with a unanimous-consent agreement that the calendar be called as if this were Monday?

Mr. RUSSELL. If the calendar may be called for the consideration of measures to which there is no objection, with the understanding that no motion may be made to proceed to the consideration of a bill to which there is objection, I shall not insist upon the reading of the Journal.

Mr. TAFT. What is the Senator's objection to such a motion? After all, the consideration of a measure taken up on motion would come to an end at 1 o'clock. Certainly I think the Senator would have no difficulty with an agreement that the unfinished business would not be displaced during that time, if that is what the Senator is concerned about.

Mr. RUSSELL. There may be some doubt, from a reading of the Record of yesterday, as to what is the unfinished business. I am perfectly aware of the fact that the Chair ruled last evening that the unfinished business, or at least the business that would be before the Senate, would be the long-range agricultural bill. The Senator from Georgia was present last evening when the Senate proceeded to the consideration of the Government corporations appropriation bill, and that bill was brought before the Senate by motion. The Chair ruled last evening—not the present occupant of the chair, but the presiding officer at the time—that inasmuch as he heard no "no" votes, he considered that as being a unanimous-consent agreement. But, Mr. President, there is a great deal of difference, in parliamentary effect, between a unanimous vote of the Senate and a unanimous-consent agreement.

This matter might be submitted to the Members of the Senate on an appeal, in the present situation. I prefer to have the business of the Senate, during this period, conducted by unanimous consent. I think it will expedite the business of the Senate to a very great extent if we proceed as we have recently done, under unanimous-consent orders.

The PRESIDENT pro tempore. The situation at the moment is that the Senator from Nebraska has asked unanimous consent for approval of the Journal. The Senator from Georgia has objected, and requests the reading of the Journal.

Mr. RUSSELL. I have reserved the right to object.

Mr. HATCH. Mr. President, will the Senator from Georgia yield?

Mr. RUSSELL. I yield.

Mr. HATCH. I have just come into the Chamber, and I heard the Senator

Ex: C-50

Southeastern Sand & Gravel Co. and Robert Blount arising out of the construction of the aforementioned sewer at Anniston, Ala., can ...

... and ... ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

## NATHAN B. DIAMOND

Mr. SPRINGER. Mr. Speaker, I ask unanimous consent to return to Calendar No. 1019 the bill (H. R. 2120) for the relief of Raleigh B. Diamond, the first name ... on the table.

Mr. SPRINGER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

The Clerk read the title of the bill.

## FREE HIGHWAY BRIDGE ACROSS SUS-QUEHANNA RIVER IN LUZERNE COUNTY, PA.

... CONSENT CALENDAR OF PENNSYLVANIA

Mr. McCORMACK. Mr. Speaker, ...

### CRIMES AND CRIMINAL PROCEDURE

Mr. KEOGH. Mr. Speaker, I ask unanimous consent for the immediate consideration of ... bill ... title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

The SPEAKER. Is there objection to the request of the gentleman from New York?

There was no objection.

PRESIDENT EXECUTIVE AGENCIES APPRO-PRIATION, 1947

Mr. WHITTEN. Mr. Speaker, I ask immediate ...

### GOVERNMENT CORPORATIONS AND APPRO-PRIATION, 1947

The Clerk read the title of the bill.

**8722** CONGRESSIONAL RECORD—SENATE

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Page 415, line 10, after "Zone," insert "District of Columbia."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 49, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert "Title 1 of the United States Code."

Page 446, strike out lines 3 to 21, inclusive.

Page 446, line 22, strike out "19" and insert "18."

Page 457, line 3, after "at" and insert "18."

Page 457, strike out lines 8 to 13, inclusive, and insert:

"Sec. 30. This act shall take effect September 1, 1948."

Page 457, line 16, strike out "32" and insert "31."

Page 463, about middle of page, strike out:

[table of figures — illegible]

And insert:

[table of figures — illegible]

Page 470, after

[illegible]

Page 471, at the end of the schedule of repeals on this page, insert:

[table of figures — illegible]

The amendments were ordered to be engrossed and the bill to be read a third time.

The bill was read the third time and passed.

Mr. WILEY. Mr. President, I move that the Senate insist upon its amendments, request a conference with the House thereon, and that the Chair appoint the conferees on the part of the Senate.

The motion was agreed to.

The PRESIDENT pro tempore. The Chair will presently name the conferees.

Mr. WILEY subsequently said: Mr. President, I have been credibly informed that the House will accept our amendments. In view of that information, I ask that the action taken to rescind on any motion to appoint conferees in respect to the bill (H. R. 3190) be rescinded.

The PRESIDENT pro tempore. Without objection, it is so ordered.

## AMENDMENT OF TRADING WITH THE ENEMY ACT

The bill (S. 2764) to amend the Trading With the Enemy Act was announced as next in order.

The PRESIDENT pro tempore. Is there objection to the present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

Mr. COOPER. Mr. President, I offer an amendment.

Mr. PEPPER. I should like an explanation of the bill.

The PRESIDENT pro tempore. The Senator from Kentucky offers an amendment which the clerk will state.

The CHIEF CLERK. On page 3, line 14, after the word "buy", it is proposed to strike out "July 31, 1948", and insert "April 30, 1949."

The PRESIDENT pro tempore. The question is on agreeing to the amendment submitted by the Senator from Kentucky.

Mr. PEPPER. Mr. President, I request an explanation of the bill.

Mr. COOPER. Mr. President, the bill proposes to amend section 32 of the Trading With the Enemy Act. That section, among other things, authorizes the Alien Property Custodian to return property to an alien if he deems that the alien was a persecutee. It has developed that some of these persons to whom property would be returned are dead, and there are no known heirs. In such case I assume the property would escheat to this country.

The bill provides that the President may designate approved organizations under certain limitations and conditions, and that such organizations may receive the property of a deceased persecutee alien and use it for the benefit of the group to which the persecutee belonged. I think it is a very humane measure. It was introduced by the Senator from Ohio [Mr. TAFT].

The PRESIDENT pro tempore. The question is on agreeing to the amendment offered by the Senator from Kentucky.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed, as follows:

Be it enacted, etc., That section 32 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended by adding at the end thereof the following subsection:

"(h) The President may designate one or more organizations as successors in interest to deceased persons, who, if alive, would be eligible to receive returns under the provisions of subdivision (C) or (D) of subsection (a) (2) hereof. An organization so designated shall be deemed a successor in interest by operation of law for the purposes of subsection (a) (1) hereof. Return may be made to an organization so designated (a) prior to July 31, 1949, or 2 years from the vesting of the property or interest in question, whichever is later, if the President of such officer or agency as he may designate determines from all relevant facts of which he is then advised that it is probable that the former owner is dead and is survived by no person eligible under section 32 to claim as successor in interest by inheritance, devise, or bequest; and (b) after such later date, if no claim for the return of the property or interest is pending.

"No return may be made to an organization so designated unless it files a claim on or before January 1, 1953, and unless it gives assurances satisfactory to the President that (i) it will use the property or interest returned to it for the rehabilitation and resettlement of persons who suffered substantial deprivation of liberty or failed to enjoy the full rights of citizenship within the meaning of subdivisions (C) and (D) of subsection (a) (2) hereof, by reason of their membership in the political, racial, or religious group of which the former owner was a member; (ii) it will transfer, at any time within 2 years from the time that return is made,

such property or interest or the equivalent value thereof to any person designated as entitled thereto pursuant to this act by the President or such officer or agency as he designates, and it will make such reports and permit such examination of its books as the President or such officer or agency may from time to time require.

"The filing of a claim by an organization so designated shall not bar the payment of debt claims under section 34 of the act."

SEC. 2. The first sentence of section 32 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended to read as follows:

"SEC. 32. No return may be made pursuant to section 9 or 32 [illegible] of claim has been filed, (a) in the case of any property or interest acquired by the United States prior to December 18, 1941, by August 9, 1948, or (b) in the case of any property or interest acquired by the United States on or after December 18, 1941, by April 30, 1949, or 2 years from the vesting of the property or interest in respect of which the claim is made, whichever is later: Provided, That return may be made to successor organizations designated pursuant to section 32 (h) hereof if notice of claim is filed by January 1, 1953."

## PHILADELPHIA NATIONAL HISTORICAL PARK

The bill (S. 2030) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, was announced as next in order.

The PRESIDENT pro tempore. This bill is identical with Calendar No. 1764, House bill 5053.

Mr. BUTLER. Mr. President, I ask that the House bill be substituted for Senate bill S. 2080, and that the Senate proceed to the consideration of the House bill.

The PRESIDENT pro tempore. Is there objection to the substitution of the House bill for the Senate bill and its present consideration?

There being no objection, the bill (H. R. 5053) to provide for the establishment of the Independence National Historical Park, and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

The PRESIDENT pro tempore. Without objection, Senate bill 2080 is indefinitely postponed.

## CODIFICATION OF TITLE 3 OF THE UNITED STATES CODE

The bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," was considered, ordered to a third reading, read the third time, and passed.

## TRANSFER OF CERTAIN ARMY EQUIPMENT TO NEW MEXICO MILITARY INSTITUTE

The Senate proceeded to consider the bill (S. 2688) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, which had been reported from the Committee on Armed Services, with amendments, on page 1, line 4, after the word "authorized", to insert "upon the request of the institution"; in line 1, after the word "institution", to insert "to Cornell University, Ithaca, N. Y., to Norwich University, Norwich, Vt., and to Virginia Military Institute, Lexington, Va."; on page 2, line 1, before the word

BROOKS] may be excused as a conferee on the bill, S. 2655.

The SPEAKER. Is there objection to the request of the gentleman from New York?

There was no objection.

The SPEAKER. The Chair appoints the gentleman from North Carolina [Mr. DURHAM] to fill the vacancy.

The Clerk will notify the Senate of the action of the House.

## PROVIDING FOR WATER POLLUTION CONTROL ACTIVITIES

Mr. DONDERO. Mr. Speaker, I call up the conference report on the bill (S. 418) to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes, and ask unanimous consent that the statement of the managers on the part of the House be read in lieu of the report.

The Clerk read the title of the bill.

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Clerk read the statement.

The conference report and statement are as follows:

### CONFERENCE REPORT

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) "An act to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes", having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House, and agree to the same with amendments, as follows:

Page 2, line 12, of the amendment of the House, strike out the words "hereinafter declared to be a public nuisance".

Page 2, lines 13 and 14, of the amendment of the House, strike out the words "such interstate water and tributaries thereof", and insert the following words "surface and underground waters".

Page 9, line 11, of the amendment of the House, strike out the figure "$200,000" and insert the figure "$250,000".

Page 11, line 25, of the amendment of the House, strike out the figure "$20,000,000" and insert the figure "$22,500,000".

Page 12, line 22, of the amendment of the House, after the words "study of" insert the word "water", and strike out the word "of" after the word "pollution".

Page 13, line 1, of the amendment of the House, strike out the words "interstate waters".

Page 13, line 2, of the amendment of the House, before the word "pollution" insert the word "water", and after the word "pollution" strike out the words "of interstate waters".

Page 14, line 17 through line 25, of the amendment of the House, strike out all after the words "SEC. 9. (a)" and insert the following: "Five officers may be appointed to grades in the Regular Corps of the Public Health Service above that of senior assistant, but not to a grade above that of director, but the number shall be counted as part of the 10 per centum of the original appointments authorized to be made in such year in carrying out the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made

in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b)."

And the House agree to the same.

GEO. A. DONDERO,
J. HARRY McGREGOR,
PAUL CUNNINGHAM,
JAMES G. AUCHINCLOSS,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

GEO. W. MALONE,
CHAPMAN REVERCOMB,
JOHN L. McCLELLAN,
*Managers on the Part of the Senate.*

### STATEMENT

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) submit the following statement in explanation of the effect of the action agreed upon and recommended in the accompanying conference report as to each of such amendments, namely:

The first two amendments apply to Sec. 2 (a), lines 4, 5, and 6, on page 12 of the bill. The language substituted more clearly defines the authority of the Surgeon General with respect to the preparation and adoption of comprehensive programs for eliminating or reducing the pollution of surface and underground waters.

The amendment to Sec. 3 (line 3, page 25), increases by $50,000 the maximum individual loan which may be made under the Act.

The amendment to Sec. 7 (line 18, page 27), increases by $2,500,000 the maximum authorized to be appropriated to the Federal Security Agency for each of the five fiscal years during the period beginning July 1, 1948, and ending June 30, 1953, for the purpose of making loans under Section 3 of the Act.

The purpose of the amendments to Sec. 8 (b) (lines 16, 17, and 18, page 28), is to expand the service of the Public Health Service station authorized to be erected at Cincinnati, Ohio, in connection with research and study of water pollution and the training of personnel in work related to control of water pollution.

The amendment with reference to Sec. 9 (a), (lines 19 to 18, page 30), substitutes a new Sec. 9 (a), which is required for the purpose set forth in the following letter:

FEDERAL SECURITY AGENCY,
*Washington, Zone 25, May 14, 1948.*

DEAR MR. CHAIRMAN: This is in reference to S. 418, which your committee reported out, with amendments, on April 23, 1948.

Section 9 (a) of S. 418 as reported authorizes additional appointments to be made at higher grades in the Regular Corps of the Public Health Service pursuant to section 208 (b) of the Public Health Service Act to assist the Service in carrying out its new or expanded activities under S. 418. Since our letter of January 19, 1948, to you on this bill, however, the Congress has enacted Public Law 425, which amends the provisions of the Public Health Service Act in several respects, primarily in the matter of appointment and promotion of commissioned officers of the Public Health Service. As a result of Public Law 425, the authority to make additional appointments at higher grades in the Regular Corps of the Public Health Service, formerly contained in section 208 (b) of the Public Health Service Act, is now contained in section 207 (b) of that Act, in a somewhat revised form. In order, therefore, to accomplish the purposes for which section 9 (a) of S. 418 was intended, the following is suggested in lieu of such section 9 (a):

(a) Five officers may be appointed to grades in the Regular Corps of the Service above that of senior assistant, but not to a grade

above that of director, but the number shall be counted as part of the 10 per centum of the original appointments authorized to be made in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b).

The short time available for necessary action on the amendment suggested by this letter has not permitted us to obtain advice from the Bureau of the Budget as to the relationship of this amendment to the program of the President.

Sincerely yours,
J. DONALD KINGSLEY,
*Acting Administrator.*

Hon. GEORGE A. DONDERO,
*Chairman, Committee on Public Works,
House of Representatives,
Washington 25, D. C.*

GEO. A. DONDERO,
J. HARRY McGREGOR,
JAMES G. AUCHINCLOSS,
PAUL CUNNINGHAM,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

The conference report was agreed to.

A motion to reconsider was laid on the table.

## UNITED STATES CODE, TITLE 18

Mr. REED of Illinois. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure", with Senate amendments thereto, and concur in the Senate amendments.

The Clerk read the title of the bill.

The Clerk read the Senate amendments, as follows:

Page 3, following:

"13. Laws of States adopted for areas within Federal jurisdiction." "

Insert:

"14. Applicability to Canal Zone."

Page 5, line 4, after "States" insert ", except the Canal Zone."

Page 9, after line 10, insert:

" 16. Applicability to Canal Zone."

"In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 351, 371, 472, 474, 478, 479, 480, 481, 452, 483, 485, 486, 489, 490, 499, 502, 506, 594, 595, 598, 600, 601, 604, 605, 606, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 912, 917, 951, 953, 956, 958, 957, 958, 959, 960, 961, 962, 963, 964, 956, 957, 917, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1545, 1581, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2100, 2231, 2234, 2234, 2274, 2275, 2277, 2384, 2055, 2056, 2388, 3051, 2421, 2422, 2423, 2424, 3056, 3104, 3105."

Page 21, strike out

"50. Contributions by national banks or corporations."

And insert:

"50. Contributions or expenditures by national banks, corporations, or labor organizations."

Page 104, strike out lines 4 to 21, inclusive, and insert:

"§ 610. Contributions by national banks, corporations, or labor organizations

"It is unlawful for any national bank or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political con-

of the Federal Communications Commission.

The PRESIDING OFFICER. Is there objection?

Mr. YOUNG. I object.

Mr. WHERRY. Then, Mr. President, I move that the nomination of Frieda B. Hennock, of New York, be confirmed.

The PRESIDING OFFICER. The question is on agreeing to the motion of the Senator from Nebraska.

Mr. BALL. Mr. President, what kind of procedure is this? We are not in executive session.

Mr. WHERRY. I asked for unanimous consent.

Mr. BALL. I did not hear any motion.

Mr. WHERRY. I understand that. I asked for unanimous consent.

The PRESIDING OFFICER. The Senator asked unanimous consent, and unanimous consent was granted.

Mr. BALL. I am sorry.

The PRESIDING OFFICER. The Chair did not understand that that is what it was for.

Mr. WHERRY. If there is any doubt about it—

The PRESIDING OFFICER. Consent was granted.

Mr. WHERRY. Very well.

Mr. BALL. Are we in executive session, then?

The PRESIDING OFFICER. We are.

Mr. WHERRY. We are, for the consideration of the nomination of Miss Frieda B. Hennock.

Mr. BALL. May we proceed in the regular order, then, and have the nomination stated, so that we will know what we are doing? I do not like to have the Senate doing things by unanimous consent. I am not going to hold up the Senate—

Mr. WHERRY. That is the very thing that is done after the Executive Calendar is taken up, and I ask that the nomination be stated.

The PRESIDING OFFICER. The clerk will state the nomination.

The LEGISLATIVE CLERK. Nomination passed over. Frieda B. Hennock, of New York, to be a member of the Federal Communications Commission.

The PRESIDING OFFICER. The question is, Will the Senate advise and consent to the nomination?

Mr. BALL. Mr. President, I do not intend to make a lengthy speech about this nomination. I am opposed to it, and I want the RECORD to show that. So far as I can discover, the only investigation, the only hearing, regarding this nomination, was a brief executive session of the subcommittee of the Committee on Interstate and Foreign Commerce. For several weeks the reports were, that the nomination would never get out of committee. Then all of a sudden it was reported, with, I may say, somewhat suspicious haste. It is for a 7-year term on the Federal Communications Commission. In my opinion that is a tremendously important Commission. I think it is up to the Senate to satisfy itself—and frankly I am not satisfied; I do not know about the wisdom of the nomination one way or the other—that appointments to this Commission will really serve the best interests of the Nation.

I myself have observed some rather disturbing things about the Federal Communications Commission. I have heard more disturbing reports since this nomination was reported. I have heard a report, on what I consider reliable authority—and obviously in the past few days I have not had any opportunity to investigate it, I do not know whether it is true or not—which indicates that certain interests, groups, who are greatly interested in this nomination, have a direct pipe line to the Federal Communications Commission, which we certainly would not want to have occur. What the score is I do not know. So far as I can determine, Miss Hennock is a lawyer from New York, and I might point out that the late President Roosevelt never appointed a member of the Federal Communications Commission from New York City, for the simple reason that New York City is the center of the radio industry, and he wanted to avoid any possibility of the industry itself having too much influence on the Commission. So far as I can discover, she has had no experience in radio matters, and from what I can learn of her background, frankly I do not think she is qualified for the job, and I want to be on record as opposed to her confirmation.

Mr. BREWSTER. Mr. President, I think the Senator from Minnesota has been very fair in his statement. As chairman of the subcommittee which investigated this nomination for the Senate Committee on Interstate and Foreign Commerce, which reported it by a vote of 8 to 0, with another member voting "present," I think the Senate should know what we have learned as to the circumstances.

Miss Hennock has been a member of the New York bar for 20 or 25 years. I hesitate to estimate the age of a lady, but I should say she is between 40 and 50 years old, so she is reasonably mature. She has had quite a brilliant record at the bar. She is a member now, which is somewhat unusual for a woman, of the third largest law firm in New York City, one of the most highly respected and distinguished, one composed almost exclusively of Republicans. She has had no experience in radio, as the Senator from Minnesota has said, which, it seemed to many of us, was perhaps most fortunate, because one who had been active in radio work, representing radio clients, would by that very fact come in under somewhat of a cloud. The committee took into consideration her breadth of experience and training and recognized abilities.

I may say that one of her most earnest sponsors was John W. Davis, of New York, who certainly is a leader of the New York bar, and who vouched most earnestly for her capacity and character. And from many other quarters there have come most earnest testimonials as to the character and competency of this woman.

Obviously only the future can tell how well she can fulfill these responsibilities. I can say that we in our committee

share the concern which the Senator from Minnesota has experienced concerning the functioning of the Federal Communications Commission. We think it needs new blood, and it was the consensus of those of us who became familiar with this matter through contact with many who were acquainted with her and through various representations, that she would be well qualified to fit into this position, and we believed her confirmation was warranted and wise.

The PRESIDING OFFICER. The question is, will the Senate advise and consent to this nomination?

The nomination was confirmed.

## POSTMASTERS

EXECUTIVE REPORT OF A COMMITTEE

The following favorable report of a committee was submitted:

By Mr. LANGER, from the Committee on Post Office and Civil Service:

The nomination of Jack Bostwick to be postmaster at Bastrop, in the State of Louisiana.

On motion by Mr. LANGER, and by unanimous consent, it was

Ordered, That the said nomination be considered with those postmasters appearing on today's calendar.

Mr. BARKLEY. Does the Senator intend that the nominations of postmasters shall be considered?

Mr. WHERRY. Yes.

The PRESIDING OFFICER. The clerk will state the nominations of postmasters on the calendar.

The legislative clerk proceeded to read the nominations of postmasters on the calendar.

The PRESIDING OFFICER. Without objection, the nominations of postmasters will be confirmed en bloc.

Without objection the President will be notified of all nominations this day confirmed on the Executive Calendar.

Mr. WHERRY. Mr. President, are there any measures any Senator desires to bring up at this time, or is there any other matter that is desired to be considered?

Mr. O'MAHONEY. Mr. President, may I ask the majority leader whether there is any intention to proceed with Calendar No. 1253, Senate Joint Resolution 76?

Mr. WHERRY. That is the equal-rights amendment?

Mr. O'MAHONEY. Yes.

Mr. WHERRY. I believe the Senator who was particularly interested in the legislation stated that it would not be taken up at this time. I would not undertake to take it up.

Mr. O'MAHONEY. Very well.

## CONDITIONAL ADJOURNMENT TO DECEMBER 31, 1948

Mr. WHERRY. I move that the Senate do now adjourn.

The motion was agreed to; and (at 7 o'clock and 14 minutes a. m., Sunday, June 20, 1948) the Senate adjourned, the adjournment being under the provision of House Concurrent Resolution 218, to Friday, December 31, 1948, at 12 o'clock meridian.

Ex: C-54

80TH CONGRESS
1ST SESSION



# H. R. 3190

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the
United States Code, entitled "Crimes and Criminal Pro-
cedure".

*Be it enacted by the Senate and House of Representa-
tives of the United States of America in Congress assembled,
That Title 18 of the United States Code, entitled "Crimes
and Criminal Procedure", is hereby revised, codified, and
enacted into positive law, and may be cited as "Title 18,
U. S. C. § —, as follows:*

CS

Ex. C-55

471

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1948—July 10 | 547 | ----- | 60 | 524, 525 | 18 | 641 |
| July 21 | 606 | ----- | 60 | 556 | 18 | 409–411 |
| Aug. 2 | 735 | ----- | 60 | 789 | 18 | 408o |
| Aug. 14 | 944 | *3 | 60 | 1064 | 7 | 1028 |

* Only the provisions amending section 15 of Act July 22, 1937, ch. 517, title II, 50 Stat. 521, 522.

Passed the House of Representatives May 12, 1947.

Attest:

*John Andrews*

Clerk.

C6

Ex: C-56

80TH CONGRESS
1ST SESSION

# H. R. 3190

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

JUN 17 1948

(CALENDAR DAY)
JUN 18 1948

Ordered reprint to Senate Amendments.

### In the Senate of the United States,

JUN 18     LEG. DAY JUN 15 48

Resolved, That this bill pass with amendments.

Attest:

Carl A. Loeffler
Secretary

C7

## STATUS OF MAJOR BILLS—SECOND SESSION

| No. of bill | Title | Reported | Passed House | Reported in Senate | Passed Senate | Sent to conference | Conference report agreed to in— | | Date approved | Law No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | House | Senate | | |
| | | 1948 | 1948 | 1948 | 1948 | 1948 | 1948 | 1948 | 1948 | |
| H.R. 4790 | Taxation, individual income. (Report No. 1274) | Jan. 27 | Feb. 2 | Mar. 16 | Mar. 22 | (House agrees to Senate amendments Mar. 24, 1948) | | | Over veto Apr. 2 | 471 |
| S. 2202 | Foreign aid, recovery (Marshall plan) | Mar. 20 | Mar. 31 | Feb. 18 | Mar. 13 | Apr. 1 | Apr. 2 | Apr. 2 | Apr. 3 | 472 |
| S. 2182 | Housing and Rent Act of 1948. (Report No. 1560) | Mar. 13 | Mar. 16 | | Feb. 24 | Mar. 25 | Mar. 25 | Mar. 25 | Mar. 30 | 464 |
| S. 2655 | Selective Service Act of 1948 (Report 1881) | May 7 | June 18 | | June 10 | June 19 | June 19 | June 19 | June 24 | 759 |
| H.R. 6556 | Reciprocal trade agreements, extend | May 24 | May 26 | June 8 | June 14 | (House agrees to Senate amendments June 16, 1948) | | | June 26 | 792 |
| | **APPROPRIATION BILLS** | | | | | | | | | |
| H.R. 5214 | Independent offices, 1949. (Report No. 1288) | Jan. 30 | Feb. 4 | Feb. 12 | Mar. 15 | Mar. 22 | Apr. 8 | Apr. 8 | Apr. 20 | 491 |
| H.R. 5524 | Civil functions, 1949. (Report No. 1420) | Feb. 24 | Feb. 26 | Apr. 22 | May 19 | May 20 | June 12 | June 14 | June 25 | 782 |
| H.R. 5525 | Urgent deficiency, 1948. (Report No. 1421) | Feb. 24 | Feb. 24 | Feb. 26 | Feb. 27 | Feb. 27 | Feb. 27 | Mar. 3 | Mar. 3 | 430 |
| H.R. 5607 | State, Justice, and Commerce, 1949. (Report No. 1433) | Feb. 27 | Mar. 4 | Apr. 22 | Apr. 26 | May 20 | June 9 | June 9 | June 3 | 597 |
| H.R. 5728 | Labor and Federal Security, 1949. (Report No. 1519) | Mar. 9 | Mar. 5 | Apr. 24 | Apr. 28 | Apr. 28 | June 8 | June 10 | June 14 | 639 |
| H.R. 5770 | Treasury-Post Office, 1949. (Report No. 1532) | Mar. 16 | Mar. 11 | May 12 | May 25 | June | June 8 | June 14 | June 19 | 640 |
| H.R. 5883 | Agriculture, 1949. (Report No. 1571) | Mar. 22 | Mar. 18 | Mar. 25 | May 29 | June 4 | June 14 | June 14 | June 19 | 712 |
| H.J. Res. 355 | Foreign aid, Indiana, tax returns. (Report No. 1586) | | Mar. 22 | Apr. 30 | Apr. 29 | Apr. 27 | | | Mar. 31 | 470 |
| H.R. 6055 | First Deficiency, 1948. (Report No. 1618) | Mar. 30 | Apr. 1 | Apr. 22 | Apr. 26 | May 5 / May 10 | Apr. 29 / May 9 | Disagrees Apr. 30 / May 6 / May 11 | May 10 | 519 |
| H.R. 6226 | Supplemental National Defense, 1948. (Report No. 1729) | Apr. 14 | Apr. 15 | Apr. 30 | May 6 | May 10 | May 11 | May 11 | May 21 | 547 |
| H.R. 6355 | Federal Security Agency supp., 1949. (Report No. 1821) | Apr. 27 | Apr. 29 | June 2 | June 3 | June 3 | June 9 | June 9 | (Became Law) | 646 |
| H.R. 6430 | District of Columbia, 1949. (H. Rept. No. 1851) | May 4 | May 5 | June 2 | June 3 | June 8 | June 12 | June 14 | June 19 | 724 |
| H.R. 6481 | Government corporations. (Report No. 1880) | May 7 | May 4 | June 12 | June 3 | June 4 | June 19 | June 19 | June 30 | 860 |
| H.R. 6500 | Legislative, 1949. (H. Rept. No. 1900) | May 26 | May 11 | June 12 | June 3 | June 18 | June 18 | June 18 | June 16 | 841 |
| H.R. 6705 | Interior, 1949. (H. Rept. No. 2038) | June 1 | May 27 | June 12 | June 14 | June 15 | June 19 | June 19 | June 29 | 727 |
| H.R. 6758 | Treasury and Post Office supp., 1949. (Rept. No. 2089) | | June 1 | June 12 | June 12 | (House agrees to Senate amendments June 14, 1948) | | | June 19 | |
| H.R. 6771 | National Military, 1949. (Report No. 2135) | June 2 | June 2 | June 17 | June 17 | June 18 | June 19 | June 19 | June 24 | 766 |
| H.R. 6772 | Navy, 1949. (Report No. 2136) | June 2 | June 3 | June 15 | June 15 | June 16 | June 17 | June 17 | June 24 | 753 |
| H.R. 6801 | Foreign aid, 1949. (Report No. 2173) | June 3 | June 4 | June 14 | June 14 | June 16 | June 19 | June 19 | June 28 | 793 |
| H.R. 6829 | Independent offices supp. (Report No. 2245) | June 8 | June 9 | June 18 | June 18 | June 18 | June 19 | June 19 | June 30 | 862 |
| H.R. 6935 | Second Deficiency, 1948. (Report No. 2348) | June 15 | June 16 | June 18 | June 19 | June 19 | June 19 | June 19 | June 25 | 785 |



Ex: C-57

Congressional Record Volume 94 Part 8
2 Pages
Case 1:07-cv-01766-RMU    Document 19-2    Filed 04/28/2008    Page 46 of 58



F AMERICA

# ongressional Record

PROCEEDINGS AND DEBATES OF THE 80*th* CONGRESS

SECOND SESSION

## VOLUME 94—PART 8

JULY 26, 1948, TO DECEMBER 31, 1948
(PAGES 9353 TO 10316)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

Ex: C-58

Case No. 5:03766-RMU    Document 19-2    Filed 04/05/2006    Page 1 of 2

# Congressional Record

**United States of America**   PROCEEDINGS AND DEBATES OF THE 80ᵗʰ CONGRESS, SECOND SESSION

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber, at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good-will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
G. C. MARSHALL,
Secretary of State.

### CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Ferrel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. McCARRAN], the Senator from Tennessee [Mr. McKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 596. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc., Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

Alberto Concepcion,        :

       Plaintiff/Sovereign,   :

                       :

     <u>vs</u>.                    :

                       :

FEDERAL BUREAU OF INVESTIGATION;  :

EXECUTIVE OFFICE OF THE UNITED    :

STATES ATTORNEYS; &               :

U.S. DEPARTMENT OF JUSTICE;      : CIVIL ACTION NO. <u>07-1766(RMU)</u>

       Defendants/Corporations. :

---

## STATEMENTS OF UNDISPUTED FACTS

---

     **NOW COMES,** Pro Se Plaintiff, Alberto Concepcion, the Sovereign, Se-cured Party, Creditor, Holder-In-Due-Course, Trade Name Owner, & Record Owner on behalf of STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, hereinafter **"Concepcion, or CONCEPCION"**, waiving no powers, rights, and/or immunities by the use of said **"private copyrighted statutes"**; respectfully moving this Court pursuant to the <u>Fed.R.Civ.P.</u>, Rule 56, in which the Plaintiff, submits the following list of undisputed facts, in which entitled him to the requested Summary Judgment on all of his claims.

### POINT ONE
#### OF THE STATEMENTS OF UNDISPUTED FACTS
#### <u>IN THE PLAINTIFF'S, CAUSE OF ACTION</u>

     1. The named Defendants/Corporations, and/or Counsels of Record for said Defendants, **"did not"** deny, and/or otherwise any of the Plaintiff's, **<u>FACTS</u>"** in his filed Civil Complaint Action, known as Case Number <u>1:07-CV-</u>

1766(RMU); therefore, the Defendants, & Counsels of Record **"have conceded"** to all the issues herein by their failure to respond to the Plaintiff's, Civil Complaint Action, in which held in ¶ 4: That Essex County Sheriff Bureau of Narcotics Police Officer JOHN F. MURPHY JR., was the arresting Police Officer in Federal Criminal Case #99-753(AJL), hereinafter Case #99-753(AJL), of which Officer MURPHY, **"was pretending to be a Special Agent for the Federal Bureau of Investigation"**. SEE, Comp. at ¶ 4;

2. That the **"PERSON"** being targetted was, STRAW-MAN, & DEBTOR ALBERTO CONCEPCION. SEE, Comp. at ¶ 4, therein;

3. That the Grand Jury for Case #99-753(AJL), indicted CONCEPCION, in the State of New Jersey, pursuant to title 21 U.S.C. §§§ 841(a)(1), 846, & 853. SEE, Comp. at ¶ 5, therein;

4. That CONCEPCION, plea guilty to the indictment. SEE, Comp. at ¶ 7, therein;

5. That from July 5,2005, through July 30,2007, CONCEPCION, made numerous good-faith efforts by way of Certified Mail to obtain FOIA non-exempted records, documents, files, data, & etc., from the named Defendants/Corporations, of which were withheld by the named Defendants. SEE, Comp. at ¶ 10 - ¶ 44, therein;

6. That CONCEPCION, **"was provided"** with a indictment bearing no signatures of the foreperson, and/or the U.S. Attorney for the State of New Jersey. SEE, Comp. at ¶ 22, therein;

7. That the New Jersey, U.S. Attorneys Office has **"NO LAB REPORTS"** in their files. SEE, Comp. at ¶ 39, therein;

8. That title 21 U.S.C. §§§ 841, 846, & 853, among other statutes **"are not promulgated"**. SEE, Comp. at top of pg. 9, therein;

2

9. That the **"FBI HAS NO RECORDS"**, responsive to the requested FOIA. **SEE**, Comp. at ¶ 42, therein;

10. That one at minimum, or more of the N.J-FBI recorded tape(s) was altered, & edited in Case #99-753(AJL). **SEE**, Comp. at ¶ 45, therein;

11. That Police Officer MURPHY, the initial A.U.S.A, & others who were involved in Case #99-753(AJL), **"introduced, & added 45.00 to 50.00 grams of a powder substance"** to CONCEPCION'S, fabricated federal criminal case, & presented said powder substance to a federal grand jury. **SEE**, Comp. at ¶ 49, therein;

12. That the criminal complaints, & arrest warrants were signed by unknown individual's, & not by the presiding Magistrate Judge in Case #99-753(AJL). **SEE**, Comp. at ¶ 46, ¶ 48, ¶ 50, & ¶ 52 - ¶ 56, therein;

13. That Concepcion, **"was kidnap, arrested, & robbed"** by arresting Police Officer MURPHY, & his partner. **SEE**, Comp. at ¶ 47, therein;

14. That the criminal complaint-affidavit for Case #99-753(AJL), contained false statements, & information, inter alia, based on the discovery requests in Civil Action #1:07-CV-1766(RMU). **SEE**, Comp. at ¶ 61, therein;

15. That CONCEPCION, was out of the State of New Jersey, when the alleged **"heroin transaction(s) occurred for Case #99-753(AJL)"**. **SEE**, Comp. at ¶ 62, & ¶ 64, therein;

16. That CONCEPCION, was knowingly, intentionally, & willingly indicted on **"pure lactose"**. **SEE**, Comp. at ¶ 65, therein;  &

17. That the named Defendants/Corporations, herein are entitled to pay Concepcion, Six Hundred Million [$600,000,000.00] United States Dollers **"for wrongfully withholding exculpatory evidence, inter alia"**. **SEE**,

3

Comp. at ¶ 74, therein.

POINT TWO
ATTACHED TO MOTION TO COMPEL
REQUEST FOR PRODUCTION OF RECORDS, &
ADMITTED, & STIPULATED REQUESTS FOR ADMISSIONS
PURSUANT TO THE U.S. CONSTITUTION ART. I, § 10, CONTRACT

18. That on Jan. 2,2008, the named Defendants/Corporations, "direct-ly" received Concepcion's, Request for the Production of Records, & Documents, & Requests for Admission. SEE, Ex: D-1 - D-3, attached to the Plaintiff's, Motion to Compel;

19. That in the Request for the Production of Records, & Documents, & Requests for Admission, attached to the Plaintiff's, Motion to Compel, known as Ex: D-10 - D-13, ¶ 20 - ¶ 34, therewith; numerous requests, & questions were presented, admitted, & stipulated to pursuant to the Fed.R. Civ.P., Rule 36(a), & Art. I, § 10, of the Const. for the United States [CONTRACT], in which are relevant to the soughted non-exempted withheld FOIA requested records, documents, files, data, & etc., for Case #99-753 (AJL);

20. e.g., the Defendants/Corporations, admitted, & stipulated to ¶ 21, therein, in which the question presented was; Is the State of New Jersey, a State within the meaning of title 18 U.S.C. § 921(a)(2), & title 21 U.S.C. § 802(26) ? Answer was "NO". SEE, Ex: D-10, ¶ 21, therein;

21. The Defendants/Corporations, admitted, & stipulated to ¶ 24, therein, in which the question presented was; Can an out of State "foreign prosecutor" from the District of Columbia [UNITED STATES] prosecute a Defendant, in any of the 50 States [SPECIFICALLY IN THE STATE OF N.J], of which is consider outside of [THE FEDERAL ZONE] his jurisdiction ? Answer was "NO". SEE, Ex: D-10, ¶ 24, therein;

4

22. The Defendants/Corporations, admitted, & stipulated to ¶ 26, therein, in which the question presented was; Can the initial federal prosecutor(s) from Newark, N.J-USA, & others who were presecuting Case #<u>99-753(AJL)</u>, knowingly, intentionally, & willingly have CONCEPCION, **"indicted on pure lactose, as opposed to heroin"**; of which said N.J-USA, & others claim said lactose to be heroin to the Federal Grand Jury, Court, & others [IN CASE 99-753(AJL)] in which the requested lab report(s) results would prove the Plaintiff's, facts herein, & in his filed Civil FOIA Complaint ? Answer was **"<u>NO</u>"**. **<u>SEE</u>**, Ex: D-11, ¶ 26, therein;

23. The Defendants/Corporations, admitted, & stipulated to ¶ 28, therein, in which the question presented was; **<u>IS IT TRUE</u>**, that the effect of <u>Oct. 9,1940</u> [PURSUANT TO TITLE 40 U.S.C./U.S.C.A. § 255], is to provide that as to lands within a **"State"** therefore acquired by the **"United States, that no jurisdiction exist"**, unless, & until a Notice of Acceptence of criminal jurisdiction is filed with the Governor of said State [SPECIFICALLY NEW JERSEY] for where the allege federal crime(s) occurred ? Answer was **"<u>YES</u>"**. **<u>SEE</u>**, Ex: D-12, ¶ 28, therein.

24. The Defendants/Corporations, admitted, & stipulated to ¶ 30, therein, In which the question presented was; **<u>IS IT TRUE</u>**, that a Sovereign **"cannot"** be named merely as a **"person"** in a statute; but **"must"** be specified [WITHIN THE CONTRACT(S), OR COMMERCIAL INSTRUMENT(S)] within the language of the statute, as it was held by the U.S. Supreme Court in <u>Will v. Michigan State Police</u>, 105 L.Ed 2d 45, at 1C (1989) ? Answer was **"<u>YES</u>"**. **<u>SEE</u>**, Ex: D-12, ¶ 30, thereIn;

25. The Defendants/Corporations, admitted, & stipulated to ¶ 31, therein, in which the question presented was; **<u>IS IT TRUE</u>**, that a statute that **"is not"** published [AS TITLE 21 U.S.C. §§§ 841, 846, & 853, AMONG

5

OTHERS] in the Federal Register-Code of Federal Regulations **"is not"** a
Law of general applicability, & therefore, is restricted to federal
agencies, or person's acting in there capacity as agents, officers, em-
ployees, & etc., of the **"United States"** federal government; **"& a person"**
who does not comply with its provisions **"cannot be guilty of any
crime(s)"**? Answer was **"<u>YES</u>"**. <u>SEE</u>, Ex: D-12, ¶ 31, therein.

POINT   THREE

**ATTACHED TO MOTION FOR SUMMARY JUDGMENT IN REGARDS TO
PLAINTIFF'S SECOND ADDITIONAL REQUEST FOR
PRODUCTION OF DIFFERENT RECORDS, DOCUMENTS, & ETC., &
<u>ADMITTED & STIPULATED REQUESTS FOR ADMISSIONS</u>**

26. That on <u>March 07, 2008</u>, the Plaintiff, Cert. Return Receipt #
<u>7006-2150-0004-7651-5801</u>, Mail his second additional request for the pro-
duction of different records, documents, & etc., & requests for admissions
to Counsels of Record, at 555 Fourth St., N.W. [SUITE 4220] Washington,
D.C. 20001, of which they received at the above address on <u>March 11,2008</u>,
in which said documents are known in the Plaintiff's, Motion for Summary
Judgment as Ex: C-31 - C-36, therewith; in which numerous additional re-
quests, & questions were presented, admitted, & stipulated to pursuant to
the <u>Fed.R.Civ.P.</u>, Rule 36(a), & Art. I, § 10, of the Const. for the Uni-
ted States [CONTRACT], in which **"are relevant"** to the soughted non-exemped
**"wrongfully withheld FOIA requested records, documents, files, data, &
etc."**, for Case #<u>99-753(AJL)</u>, in which the requested records, & etc.,
are mentioned in Ex: C-32, & C-33, ¶ 1 - ¶ 8, therein;

27. e.g., Counsels of Record admitted, & stipulated to ¶ 9, therein,
in which the question presented was; Would it be a violation of Art. I, §
7, Cls. 2, of the Const. for the United States, if any Bill(s) is passed
by the House of Representatives, but does not pass the U.S. Senate ? Ans-

6

wer was **"YES"**. **SEE**, Ex; C-33, ¶ 9, therein;

28. Counsels of Record admitted, & stipulated to ¶ 12, therein, in which the question presented was; **IS IT TRUE**, that Public Law 80-772 [OF JUNE 25,1948, CH. 645, § 1, 62 STAT. 683 ET SEQ.], **"is unconstitutional, & void"**, because the House of Representatives H.R. 3190, **"never passed'** both Houses as required by Art. I, § 7, Cls. 2, of the Const. of the United States ? Answer was **"YES"**. **SEE**, Ex: C-34, ¶ 12, therein;

29. Counsels of Record admitted, & stipulated to ¶ 13, therein, in which the question presented was; **IS IT TRUE**, that it **"is unconstitution-al"** for a Bill to be sign by the House of Representatives, and/or the Pre-sident pro tempore of the Senate, when said Houses are not in Session ? Answer was **"YES"**. **SEE**, Ex: C-34, ¶ 13, therein;  **&**

30. Counsels of Record admitted, & stipulated to ¶ 16, therein, in which the question presented was; **IS IT TRUE**, that there is a distinction between a [c]itizen of the United States, & a [C]itizen of the several States [50 IN NUMBER] ? Answer was **"YES"**. **SEE**, Ex: C-35, ¶ 16, therein.

31. Counsels of Record **"failure"** to produce the above additional non-exempted specified FOIA requested records, documents, files, data, & etc., as well as their **"failure"** to answer the specified questions in de-tail, & in whole have resulted in the admissions, & stipulations of these facts; in which silence can only be aquated with **"fraud, inter alia"**, where there was a legal, & moral duty to speak, & where an inquiry left unanswered would be knowingly, intentionally, & willingly misleading, in-ter alia. See, Oppenheimer Fund. Inc. v. Sander, 57 L.Ed 2d 253, at ¶ 6-7 (S.Ct. 1978); U.S. v. Tweel, 550 F.2d 297-300 (1977); & America National Ins. Co. v. Murray, 381 F.2d 81, at ¶ 2, ¶ 3, & ¶ 7 (1967).

## CONCLUSION

For the foregoing reasons of facts herein, & in the Plaintiff/Sovereign's, Motion for Summary Judgment; the Plaintiff/Sovereign, respectfully request Honorable Judge <u>Ricardo M. Unbina</u>, to <u>GRANT</u> the Plaintiff/Sovereign's, Motion for Summary Judgment.

## OATH

The undersigned declare, certifies, verifies, & state under penalty of perjury, under the Laws of the State of New Jersey, & of the United States, pursuant to title 28 U.S.C. § 1746, that the foregoing is true, & correct.

Respectfully Requested, &
Submitted By:

**DATED:** <u>April 23,2008</u>

Pro Se Plaintiff,
Alberto Concepcion© the
Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

WITHOUT PREJUDICE U.C.C. 1-207

**c.c.** File; &

Cert. Return Receipt Mail to the U.S.
District Court for the District of Columbia
No. <u>7007-3020-0000-1184-5093</u>

8

## PROOF OF SERVICE

I, <u>Alberto Concepcion</u>, certify that on <u>April 25,2008</u>, I mailed this document, along with the Notice of Motion for Summary Judgment, the Motion/Affidavit/Declaration/Memorandum of Law/Application/Brief In Support of Plaintiff's, Request for Summary Judgment, the Statement of Undisputed Facts, & the Order by Court, to the following address by way of Cert. Return Receipt #<u>7007-3020-0000-1184-5284</u>, Mail:

> U.S. ATTORNEYS OFFICE FOR
> THE DISTRICT OF COLUMBIA
> 555 Fourth St., N.W. [SUITE 4220]
> Washington, D.C 20001
> <u>ATT</u>: CHRISTOPHER B. HARWOOD, ESQ. [ET AL.]

## OATH

I, <u>Alberto Concepcion</u>, certify that these documents were given to prison officials on <u>April 25,2008</u>, for forwarding to Counsel(s) of Record at the above address. I, certify under penalty of perjury that the foregoing is true, & correct, pursuant to 28 U.S.C. § 1746.

Respectfully Submitted By:

DATED: <u>April 23,2008</u>

*Alberto Concepcion* ©
Pro Se Plaintifff,
Alberto Concepcion© the
Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

WITHOUT PREJUDICE U.C.C. 1-207

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Alberto Concepcion,                  :
       Plaintiff/Sovereign,      :
                         :
    vs.                          :
                         :
FEDERAL BUREAU OF INVESTIGATION;     :
EXECUTIVE OFFICE OF THE UNITED       :
STATES ATTORNEYS; &                  :
U.S. DEPARTMENT OF JUSTICE;          :  CIVIL ACTION NO. 07-1766(RMU)
      Defendants/Corporations. :

---

**ORDER BY COURT**

---

Having considered Pro Se Plaintiff/Sovereign, Alberto Concepcion's, FOIA Civil Complaint Action, with the attached exhibits, the Notice of Motion for Summary Judgment, the Motion/Affidavit/Declaration/Memorandum of Law/Application/Brief In Support of Plaintiff's, Request for Summary Judgment, the Statement of Undisputed Facts, & the entire record for the above Civil Action, it is this _____, day of _____, 2008; ADJUDGE, ORDERED, & DECREED, that the Motion for Summary Judgment pursuant to the Fed.R.Civ.P., Rule 56(c), be **"ENTERED, & GRANTED IN GOOD FAITH AGAINST"** the named Defendants known herein as the Federal Bureau of Investigation, Executive Office of the United States Attorneys, & United States Department of Justice, & in favor of the Plaintiff/Sovereign, Alberto Concepcion, in this Cause of Action, known as Civil Action #07-1766 (RMU).

UNITED STATES DISTRICT COURT
JUDGE RICARDO M. URBINA


Copy to: Plaintiff/Sovereign, Alberto Concepcion; &

        Counsel(s) of Record for said Defendants,
        Christopher B. Harwood, ESQ. [ET AL.],
        Assistant United States Attorney(s)
        555 Fourth St., N.W.
        Washington, D.C. 20001

2