UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————————

| | |
|---|---|
| ALBERTO CONCEPCION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action 07-1766 (RMU) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

———————————————————————————

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Alberto Concepcion ("Plaintiff"), a prisoner appearing pro se, brought this case under the Freedom of Information Act ("FOIA") and the Privacy Act ("PA") to obtain all records relating to himself and the criminal case brought against him in the possession of the Federal Bureau of Investigation ("FBI") and the Executive Office for United States Attorneys ("EOUSA") (collectively, "Defendants"). Plaintiff had previously submitted FOIA/PA requests to the FBI and the EOUSA for those records. As demonstrated in the attached Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment, as well as in the declarations submitted in support thereof, Defendants have responded fully and adequately to Plaintiff's FOIA/PA requests. Thus, Defendants respectfully move this Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in their favor in this FOIA/PA case.

The declarations on which Defendants rely in support of their Motion for Summary Judgment are: (1) the Declaration of David M. Hardy, dated February 13, 2008 (which appears at Docket No. 15); (2) the Second Declaration of David M. Hardy, dated May 16, 2008 (which appears at Docket No. 23); (3) the Third Declaration of David M. Hardy, dated May 30, 2008

(which is attached hereto); (4) the Declaration of Dione J. Stearns, dated February 13, 2008

(which appears at Docket No. 15); (5) the Revised Version of the May 19, 2008 Declaration of

Dione J. Stearns, dated May 29, 2008 (which is attached hereto); (6) the Revised Version of the

April 30, 2008 Declaration of Dione J. Stearns, dated May 29, 2008 (which is attached hereto);

(7) the Declaration of Mark Hanson, dated May 16, 2008 (which appears at Docket No. 24); and

(8) the Declaration of William C. Little, Jr., dated May 21, 2008 (which appears at Docket

No. 24).  Plaintiff should take notice that any factual assertions contained in the above

declarations (or in the attachments thereto) will be accepted as true by this Court unless Plaintiff

submits his own declarations or other documentary evidence contradicting those factual

assertions.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992); see also Fed. R. Civ. P. 56(e)

("When a motion for summary judgment is properly made and supported, an opposing party may

not rely merely on allegations or denials in its own pleading; rather, its response must—by

affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for

trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be

entered against that party.").

      Wherefore, Defendants respectfully request that this Court enter judgment in their favor

with respect to the claims asserted in this FOIA/PA case.

          Respectfully submitted,


              /s/
          JEFFREY A. TAYLOR, D.C. BAR #498610
          United States Attorney

              /s/
          RUDOLPH CONTRERAS, D.C. BAR #434122
          Assistant United States Attorney

_____/s/_____

CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
ALBERTO CONCEPCION,                            )
                                               )
            Plaintiff,                         )
                                               )
            v.                                 )    Civil Action 07-1766 (RMU)
                                               )
FEDERAL BUREAU OF INVESTIGATION,               )
et al.,                                        )
                                               )
            Defendants.                        )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Alberto Concepcion ("Plaintiff"), a prisoner appearing pro se, brought this case

pursuant to the Freedom of Information Act ("FOIA") and the Privacy Act ("PA") to obtain all

records relating to himself and the criminal case brought against him in the possession of the

Federal Bureau of Investigation ("FBI") and the Executive Office for United States Attorneys

("EOUSA") (collectively, "Defendants").  Plaintiff had previously submitted FOIA/PA requests

to the FBI and the EOUSA for those same records.  In response to Plaintiff's FOIA/PA requests,

Defendants searched for and located thousands of pages of responsive records.  Defendants

released many of those records to Plaintiff.  Defendants also:  (1) withheld responsive records in

whole or in part pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D)

and (b)(7)(E), and PA exemption (j)(2); and (2) referred responsive records to other government

agencies for a disclosure determination and direct response to Plaintiff.  The government

agencies to which Defendants referred records released some of the referred records to Plaintiff

and withheld in whole or in part other of the referred records pursuant to FOIA exemptions

(b)(2), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E).

As demonstrated below, Defendants (and the other government agencies to which they referred records) have satisfied their obligations under FOIA and the PA. The withholdings comply with the governing law, as does the search Defendants performed to identify responsive records. There are no material facts in dispute and Defendants are entitled to judgment in their favor as a matter of law. Accordingly, summary judgment should be granted for Defendants pursuant to Federal Rule of Civil Procedure 56.

## **BACKGROUND**

On December 17, 1999, Plaintiff and others were charged with, inter alia, conspiracy to distribute narcotics (heroin). (Hardy Decl. ¶5.)[1] Plaintiff ultimately pleaded guilty to that charge and was sentenced to 325 months in prison. (Id.) Plaintiff is currently incarcerated and is appearing pro se.

From September 2005 through March 2007, Plaintiff sent numerous (and largely duplicative) FOIA/PA requests to the FBI and the EOUSA seeking in substance all records in the possession of those agencies relating to himself and the criminal case brought against him. (See, e.g., Hardy Decl. ¶¶8, 10, 12, 15, 18, 19; Stearns Decl. ¶¶20-23; Second Stearns Decl. ¶4.)[2] Dissatisfied with the responses he received to those requests, on October 3, 2007, Plaintiff instituted this FOIA/PA action to obtain all such records. (See Compl. ¶68 (seeking all "documents on myself . . . and/or Case #99-753").)

---

[1] Citations in the form "(Hardy Decl. ¶__)" refer to the Declaration of David M. Hardy, which is dated February 13, 2008, and which appears at entry number 15 on the electronic docket of this case.

[2] Citations in the form "(Stearns Decl. ¶__)" refer to the Declaration of Dione J. Stearns, which is dated February 13, 2008, and which appears at entry number 15 on the electronic docket of this case. Citations in the form "(Second Stearns Decl. ¶__)" refer to the Revised Version of the April 30, 2008 Declaration of Dione J. Stearns, which is dated May 29, 2008, and which is attached hereto.

A.       The FBI's Actions in Response to Plaintiff's FOIA/PA Requests

In response to Plaintiff's FOIA/PA requests, the FBI searched its Central Records System ("CSR") and Electronic Surveillance Indices ("ELSUR") for records relating to Plaintiff (using Plaintiff's name as the search term).  (Second Hardy Decl. ¶4; Hardy Decl. ¶41.)[3]  That search revealed 2,094 pages of what appeared to be responsive records.[4]  (Second Hardy Decl. ¶5.) After reviewing the 2,094 pages, the FBI:  (1) released 890 pages to Plaintiff in full or in part; (2) referred 631 pages to three other government agencies—the Bureau of Customs and Border Protection ("CBP") (3 pages), the EOUSA (20 pages)[5] and the Drug Enforcement Agency ("DEA") (608 pages)—for a disclosure determination and direct response to Plaintiff; and (3) withheld the remaining pages pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E), and PA exemption (j)(2).  (See id. at ¶¶5, 14, 16-17.)

As to the referred pages:  (1) the CBP released the three pages referred to it to Plaintiff in part and withheld information pursuant to FOIA exemptions (b)(2), (b)(6) and (b)(7)(C) (see Hanson Decl. ¶¶9, 11, 14, Ex. A)[6]; (2) the EOUSA released 10 of the 20 pages referred to it to

---

[3] Citations in the form "(Second Hardy Decl. ¶__)" refer to the Second Declaration of David M. Hardy, which is dated May 16, 2008, and which appears at entry number 23 on the electronic docket of this case.

[4] The search of the CRS uncovered two FBI investigative case files relating to Plaintiff. (See Second Hardy Decl. ¶4; Hardy Decl. ¶39.)  One of those files pertains to a presently ongoing criminal investigation.  (Id.)  That file was not searched as:  (1) it does not relate to the criminal case brought against Plaintiff that is the subject of his FOIA/PA requests; and (2) its contents are protected from disclosure by FOIA exemption (b)(7)(A) and PA exemption (j)(2). (Id.)  The other file was searched (as it relates to the criminal case brought against Plaintiff), and it was in that file that the FBI located the 2,094 pages referenced above.  The search of the ELSUR did not reveal any responsive records.  (Hardy Decl. ¶41.)

[5] The FBI initially referred the 20 pages referenced above to the Department of Justice ("DOJ").  (Second Hardy Decl. ¶5.)  The DOJ, however, referred those 20 pages to the EOUSA. (Id.)

[6] Citations in the form "(Hanson Decl. ¶__)" refer to the Declaration of Mark Hanson, which is dated May 16, 2008, and which appears at entry number 24 on the electronic docket of this case.

Plaintiff in full and withheld in full the other 10 pages pursuant to FOIA exemptions (b)(2), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) (see Stearns Referral Decl. ¶5 & Ex. D)[7]; and (3) the DEA determined that 74 of the 608 pages referred to it were responsive to Plaintiff's FOIA/PA requests, redacted certain information from the 74 pages pursuant to FOIA exemptions (b)(6) and (b)(7)(C) and returned the 74 pages to the FBI so that the FBI could redact information from the 74 pages before releasing them to Plaintiff (Little Decl. ¶¶11, 15 & n.2, 16).[8]  The FBI has made its redaction determinations with respect to those 74 pages and will soon be releasing them to Plaintiff.  (Third Hardy Decl. ¶¶10, 11.)[9]

The 608 pages that the FBI referred to the DEA are copies of DEA lab reports.  (See Little Decl. ¶12 & Ex. C.)  The DEA was able to determine that the 74 pages to which it made redactions were responsive to Plaintiff's FOIA/PA requests because those pages indicate (on their face) that they relate to Plaintiff.  (See Little Decl. ¶¶15-16.)  As to the remaining 534 pages, despite a diligent effort, neither the DEA nor the FBI is able to determine whether they relate to Plaintiff or to one or more of the third parties involved in the drug conspiracy with Plaintiff and investigated by the FBI at the same time as Plaintiff.  (See id. at ¶16 n.3 (describing the steps that the DEA took to try to determine whether any of the 534 pages relates to Plaintiff); Third Hardy Decl. ¶9 (same).)  None of the 534 pages identifies the name of the individual to whom it relates.  (See Third Hardy Decl. ¶9.)  Nor does any include any other information that would allow the FBI or the DEA to determine to whom it relates (such as a date of birth or a

---

[7] Citations in the form "(Stearns Referral Decl. ¶__)" refer to the Revised Version of the May 19, 2008 Declaration of Dione J. Stearns, which is dated May 29, 2008, and which is attached hereto.

[8] Citations in the form "(Little Decl. ¶__)" refer to the Declaration of William C. Little, which is dated May 21, 2008, and which appears at entry number 24 on the electronic docket of this case.

[9] Citations in the form "(Third Hardy Decl. ¶__)" refer to the Third Declaration of David M. Hardy, which is dated May 30, 2008, and which is attached hereto.

social security number).  (See id.)  Consequently, the FBI is treating the 534 pages as non-responsive to Plaintiff's FOIA/PA requests.

**B.    The EOUSA's Actions in Response to Plaintiff's FOIA/PA Requests**

In response to Plaintiff's FOIA/PA requests, the EOUSA searched the Legal Information Office Network System ("LIONS") for records pertaining to Plaintiff (using Plaintiff's name as the search term).  (Second Stearns Decl. ¶3.)  That search uncovered the master criminal case file associated with the criminal case brought against Plaintiff:  case file number 99-753.[10]  (Id.)  A search of that case file revealed 3,637 pages of responsive records.[11]  (Id. at ¶5.)  After reviewing those 3,637 pages, the EOUSA:  (1) released 2,418 pages to Plaintiff in full; (2) released 8 pages to Plaintiff in part (citing FOIA/PA exemptions); (3) referred 214 pages to the FBI for a disclosure determination and direct response to Plaintiff; (4) withheld 688 pages on the ground that they were duplicates; (5) withheld Plaintiff's 175-page pre-sentence report ("PSR") pursuant to the D.C. Circuit's decision in Martinez v. Bureau of Prisons, 444 F.3d 620, 624-25 (D.C. Cir. 2006); and (5) withheld the remaining 134 pages in full (citing FOIA/PA exemptions).  (Id. at ¶5 & n.2.)  The 142 pages that the EOUSA withheld in full or in part pursuant to FOIA and the PA were withheld pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6) and (b)(7)(C), and PA exemption (j)(2).  (Id.)

---

[10] In fact, the EOUSA's search uncovered two criminal case files pertaining to Plaintiff: case file numbers 99-753 and 99-6144-01.  (Second Stearns Decl. ¶3.)  However, the two case files relate to the same criminal action, and the records that appear in case file 99-6144-01 were ultimately incorporated into case file 99-753.  (See id.)

[11] Criminal case file number 99-753 contained 3,862 pages relating to the criminal case brought against Plaintiff, but 225 of those pages were entirely unrelated to Plaintiff.  (See Second Stearns Decl. ¶5.)

The FBI has processed the 214 pages that were referred to it by the EOUSA and has released one of those pages to Plaintiff.  (Third Hardy Decl. ¶7.)  It has withheld the remaining pages in full pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(D).  (See id.)

## LEGAL STANDARD

### A.    Standard for Summary Judgment

Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.

### B.    Summary Judgment in FOIA/PA Cases

FOIA/PA cases are typically and appropriately decided on motions for summary judgment.  See Truesdale v. Dep't of Justice, No. 03-1332, 2005 WL 3294004, at *3 (D.D.C. Dec. 5, 2005); Wheeler v. Dep't of Justice, 403 F. Supp. 2d 1, 5-8 (D.D.C. 2005).  An agency is entitled to summary judgment in a FOIA/PA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records and that each responsive record that it has located has been produced or is exempt from disclosure.  See Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet this burden, the agency may rely on reasonably detailed and non-conclusory affidavits and declarations.  See McGehee v. C.I.A., 697 F.2d 1095, 1102 (D.C. Cir. 1983); Wheeler, 403 F. Supp. 2d at 6; Russell v. F.B.I., No. 03-

0611, 2004 WL 5574164, at *4 (D.D.C. Jan. 9, 2004). Such affidavits and declarations (singularly or collectively) are referred to as a Vaughn index. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert denied, 415 U.S. 977 (1974). Here, the FBI, the EOUSA and the agencies to which the FBI and the EOUSA referred documents have each submitted a Vaughn index to justify their respective actions in connection with Plaintiff's FOIA/PA requests.

## ARGUMENT

As demonstrated below, the FBI and the EOUSA conducted adequate searches for records in response to Plaintiffs' FOIA/PA requests. Moreover, the FBI, the EOUSA and the agencies to which the FBI and the EOUSA referred records properly withheld certain records from Plaintiff pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E), and PA exemption (j)(2). There are no material facts in dispute. Thus, Defendants are entitled to summary judgment.

## I.    THE FBI'S SEARCH FOR RECORDS AND FOIA WITHHOLDINGS WERE PROPER; THE FOIA WITHHOLDINGS OF THE AGENCIES TO WHICH THE FBI REFERRED RECORDS WERE ALSO PROPER

### A.    The FBI Conducted an Adequate Search for Records

An agency's search for records in the context of a FOIA case is adequate if it was "reasonably calculated to uncover all relevant documents." Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted); see Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). A search is not inadequate merely because it failed to "uncover[] every document extant," SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991); a search is inadequate only if the agency fails to "show, with

reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents," Oglesby, 920 F.2d at 68. An agency may prove the adequacy of its search through a "reasonab[ly] detail[ed]" declaration. Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (internal quotation marks and brackets omitted).

Here, the FBI's Vaughn declaration establishes that its search method was reasonably calculated to uncover all documents in its possession responsive to Plaintiff's FOIA requests. As stated above, Plaintiff requested that the FBI provide him with all of its records relating to himself and the criminal case brought against him. In response, the FBI searched the CRS (Second Hardy Decl. ¶4), which is a system of records comprised of "administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes" (Hardy Decl. ¶26). The FBI searched the CRS using Plaintiff's name as the search term. (Second Hardy Decl. ¶4.) The FBI also searched the ELSUR database, which contains "information on . . . subject[s] whose electronic and/or voice communications have been intercepted as a result of . . . electronic surveillance conducted by the FBI." (Hardy Decl. ¶¶32, 41.) By searching the CRS and ELSUR, the FBI searched the systems of records within which information responsive to Plaintiff's FOIA/PA requests would reasonably be expected to be located. (See Hardy Decl. ¶¶26, 32-36; Second Hardy Decl. ¶4.) Thus, the FBI's search for records was adequate. See Truesdale, 2005 WL 3294004, at *4 (finding that the FBI's search of the CRS was adequate in response to a prisoner's request for "[a]ll files concerning my case or cases, including any and all records . . . kept, stored, or filed in any of the agency's record-keeping systems"). The fact that the FBI's search yielded the investigative file for the criminal case brought against Plaintiff (see Second Hardy Decl. ¶4) provides strong support for the conclusion that it was adequate.

**B.     The FBI's FOIA Withholdings were Appropriate**

After reviewing the more than 2,000 pages of records that it uncovered through its above-described search, the FBI determined that a substantial number of those pages—more than 1,000—were properly withheld in full or in part pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E).  Thereafter, with this Court's permission (see Apr. 14, 2008 Minute Order), the FBI prepared a Vaughn index consisting of a representative sample of its withholding decisions.[12]  As shown below, the FBI's withholding decisions, as reflected in its sample Vaughn index, were entirely appropriate.

1.     Exemption (b)(2)

Exemption (b)(2) protects from disclosure information that is "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  It has been interpreted to protect two categories of information:  (1) internal agency matters so routine or trivial that they are "of no genuine public interest" (referred to as "low (b)(2)" information); and (2) internal agency matters that, if disclosed, "may risk circumvention" of the law (referred to as "high (b)(2)" information).  Schiller v. N.L.R.B., 964 F.2d 1205, 1207 (D.C. Cir. 1992); see Peay, 2007 WL 788871, at *2; Truesdale, 2005 WL 3294004, at *4; Judicial Watch, Inc. v. Dep't of Commerce, 337 F. Supp. 2d 146, 165 (D.D.C. 2004).  Here, the FBI invoked exemption (b)(2) to protect both low (b)(2) information and high (b)(2) information.

a.     Low (b)(2) Information

The FBI invoked the low (b)(2) exemption to protect the internal telephone numbers of two FBI employees—a special agent and a member of the FBI's support staff.  (Second Hardy

---

[12] This Court may determine the propriety of all of the FBI's withholdings based on its review of the FBI's actions with respect to the representative sample.  See Peay v. Dep't of Justice, No. 04-1859, 2007 WL 788871, at *1 (D.D.C. Mar. 14, 2007); Blanton v. Dep't of Justice, 63 F. Supp. 2d 35, 43 (D.D.C. 1999).

Decl. ¶20.)  The FBI also invoked the low (b)(2) exemption (in conjunction with exemption (b)(7)(D)) to protect the numerical identifiers that it assigned to the confidential sources and informants who provided it with information during the course of its investigation of Plaintiff and his co-conspirators (the "source symbol numbers" and "informant file numbers").  (Id. at ¶¶25-26.)  Source symbol numbers and informant file numbers are administrative tools that the FBI uses internally to identify and track its confidential sources and informants and the information they provide.  (See id.)  The FBI uses source symbol numbers and informant file numbers in lieu of the names of its sources and informants as a means to protect their true identities.  (See id.)

The FBI properly withheld the above information pursuant to the low (b)(2) exemption. All of the information is related to the internal practices of the FBI, and its disclosure would be of no genuine public interest.  See Ray v. FBI, 441 F. Supp. 2d 27, 33 (D.D.C. 2006) (concluding that the FBI properly withheld an internal telephone number pursuant to the low (b)(2) exemption because the "telephone number is related solely to the [FBI's] internal practices, and . . . is of no interest to the general public"); Wheeler, 403 F. Supp. 2d at 12-13 (holding that the FBI properly relied on exemption (b)(2) to withhold source symbol numbers and informant file numbers because they are matters of internal FBI significance of which the public has no interest); see also Truesdale, 2005 WL 3294004, at *5 (internal telephone and fax numbers); Russell, 2004 WL 5574164, at *4 (a source symbol number, an informant file number and internal telephone numbers); Blanton v. Dep't of Justice, 63 F. Supp. 2d 35, 43 (D.D.C. 1999)

(source symbol numbers and informant file numbers); <u>Coleman v. F.B.I.</u>, 13 F. Supp. 2d 75, 79 (D.D.C. 1998) (source symbol numbers and informant file numbers).[13]

        b.      High (b)(2) Information

The FBI invoked the high (b)(2) exemption (in conjunction with exemption (b)(7)(E)) to protect certain information on an internal FBI form—Form FD-515.  (Second Hardy Decl. ¶22.) Form FD-515s are filled out periodically by FBI special agents during the course of their investigations into criminal activity.  (<u>Id.</u>)  The Form FD-515 contains, <u>inter alia</u>, a list of 27 investigative techniques and, next to that list, a column in which the effectiveness of each technique used in a particular investigation is given a numerical rating ("ratings column").  (<u>Id.</u>; <u>see</u> <u>id.</u> Ex. F at 25.)  The FBI released Form FD-515s to Plaintiff, but redacted from each Form FD-515 the ratings column.  (<u>Id.</u>)  If the ratings column were disclosed, it would reveal precisely which investigative techniques the FBI used during its investigation of Plaintiff and his co-conspirators, and the perceived effectiveness of each such technique.  (<u>Id.</u>)  Disclosure of that information would risk circumvention of the law—individuals involved in drug-related activities (<u>i.e.</u>, activities similar to those in which Plaintiff and his co-conspirators were involved) could use that information to predict the ways in which they will be investigated and to tailor their behavior to avoid detection.  (<u>Id.</u>)  Thus, the FBI properly withheld the ratings column pursuant to the high (b)(2) exemption.  <u>See</u> <u>Judicial Watch, Inc.</u>, 337 F. Supp. 2d at 165 (observing that information is properly withheld under the high (b)(2) exemption where "disclosure will benefit those attempting to violate the law and avoid detection" (internal quotation marks omitted)).

---

[13] Alternatively, the source symbol numbers and informant file numbers are also properly withheld under the high (b)(2) exemption.  <u>See</u> <u>Truesdale</u>, 2005 WL 3294004, at *4; <u>Brunetti v. F.B.I.</u>, 357 F. Supp. 2d 97, 104 (D.D.C. 2005).  (<u>See also</u> Supp. Hardy Decl. ¶¶25-26.)

The FBI also invoked the high (b)(2) exemption (in conjunction with exemption (b)(7)(E)) to protect internal FBI records that reference the specific "techniques and procedures" that the FBI used in conducting an undercover operation involving Plaintiff. (Second Hardy Decl. ¶¶23-24.) The withheld records discuss, among other things, the "instructions [that the FBI provided] to cooperating witnesses, the amount of money [that was] used to purchase evidence, [the] specific investigatory techniques used during the investigation[,] . . . the dollar amount of funds paid to an informant [and the] logistical details of [the] undercover operation." (Id.) Because the disclosure of such information would provide those involved in criminal activities with insight into how the FBI conducts and funds its undercover operations, the records were properly withheld pursuant to the high (b)(2) exemption. See Judicial Watch, Inc., 337 F. Supp. 2d at 165.

2.     Exemption (b)(3)

Exemption (b)(3) protects from disclosure records that are "specifically exempted from disclosure by statute . . . provided that such statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . . ." 5 U.S.C. § 552(b)(3). The FBI invoked exemption (b)(3) to withhold records pertaining to a grand jury proceeding— specifically, records that identify (1) individuals who testified before the grand jury, (2) persons who were mentioned during grand jury testimony and (3) evidence that was introduced before the grand jury. (See Second Hardy Decl. ¶28.)

The FBI properly invoked exemption (b)(3) to withhold the above information. Federal Rule of Criminal Procedure 6(e)(2) bars disclosure of "matters occurring before [a] grand jury," and has long been recognized as a statute within the meaning of exemption (b)(3). See, e.g., Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir.

1981); <u>Peay</u>, 2007 WL 788871, at *3.  Moreover, the materials withheld clearly relate to

"matters occurring before [a] grand jury."  Indeed, they identify individuals who testified before

a grand jury and matters that were considered by a grand jury.  (<u>See</u> Second Hardy Decl. ¶28.)

<u>See also</u> <u>Senate of the Commonwealth of Puerto Rico v. Dep't of Justice</u>, 823 F.2d 574, 582

(D.C. Cir. 1987) (holding that records that would reveal, <u>inter alia</u>, "the identities of [grand jury]

witnesses," "the substance of [grand jury] testimony" and "the strategy or direction of the [grand

jury] investigation" are properly withheld under exemption (b)(3)); <u>Peay</u>, 2007 WL 788871,

at *3 (same).

          3.    Exemption (b)(5)

          Exemption (b)(5) protects from disclosure "inter-agency or intra-agency memorandums

or letters which would not be available by law to a party . . . in litigation with the agency."

5 U.S.C. § 552(b)(5).  This exemption applies to materials that would be privileged in the civil

discovery context, including materials that would be protected by the deliberative process

privilege and the attorney work product privilege.  <u>N.L.R.B. v. Sears, Roebuck Bd.</u>, 421 U.S.

132, 149 (1975); <u>Peay</u>, 2007 WL 788871, at *4.

          Here, the FBI invoked exemption (b)(5) to withhold a draft affidavit that was prepared

"in support of an application to seize" evidence.  (Second Hardy Decl. ¶31.)  The withheld draft

affidavit necessarily contained the affiant's strategic recommendations as to what information

should be included in the final version of the affidavit and "had not yet been approved or signed

as a final version of the document" by the affiant's superiors.  (<u>Id.</u>)  The draft affidavit is thus

predecisional (it does not reflect the agency's final decision as to what should be included in the

affidavit) and deliberative (it expresses the affiant's opinions as to what should be included in the

final affidavit).  As such, it qualifies for protection under the deliberative process privilege.  <u>See</u>

Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (to qualify for protection under the deliberative process privilege, information must be "both predecisional and deliberative"); see also Peay, 2007 WL 788871, at *4 (finding that draft FBI affidavits qualify for protection under the deliberative process privilege). Because the draft affidavit qualifies for protection under the deliberative process privilege, it was properly withheld pursuant to exemption (b)(5).

4.    Exemption (b)(7)

Exemption (b)(7) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" could cause one of six enumerated harms. See 5 U.S.C. § 552(b)(7)(A)-(F). Here, all of the withheld records (including, but not limited to, those withheld pursuant to exemption (b)(7)) were compiled in connection with the FBI's "criminal investigation of plaintiff's involvement in [the] illegal trafficking of narcotics." (Second Hardy Decl. ¶46.) Thus, the threshold requirement for invoking exemption (b)(7)—that the withheld records were "compiled for law enforcement purposes"—has been satisfied.

a.    Exemption (b)(7)(C)

Exemption (b)(7)(C) protects from disclosure records compiled for law enforcement purposes where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 5(b)(7)(C). To determine whether disclosure of a record could constitute an unwarranted invasion of personal privacy, a court must balance the privacy interest of the individual referenced in the record against the public interest in disclosure. See Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993); Stern v. F.B.I., 737 F.2d 84, 91 (D.C. Cir. 1984). There is a public interest in disclosure of a record only if the record would "shed[] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the

Press v. Dep't of Justice, 489 U.S. 749, 773 (1989); see Davis v. Dep't of Justice, 968 F.2d 1276,

1282 (D.C. Cir. 1992) ("[T]he only public interest relevant for purposes of Exemption 7(C) is

one that focuses on the citizens' right to be informed about what their government is up to.").

Notably, a prisoner's desire to obtain records to mount a collateral attack on his conviction is not

a public interest.  See Cano v. D.E.A., No. 04-935, 2006 WL 1441383, at *3 (D.D.C. May 24,

2006).

Here, pursuant to exemption (b)(7)(C) (and in conjunction with exemption (b)(6)), the

FBI withheld the following information:

- the names and other identifying information of FBI special agents and support personnel involved in the investigation of Plaintiff and his co-conspirators (Second Hardy Decl. ¶¶50-51);

- the names and other identifying information of non-FBI federal law enforcement personnel and state and local law enforcement personnel who, while acting in their official capacities, assisted the FBI in its investigation of Plaintiff and his co-conspirators (id. at ¶¶55, 58);

- the names and other identifying information of third-party individuals of investigative interest to the FBI and other law enforcement agencies due to their association with Plaintiff and/or his co-conspirators (id. at ¶¶52-53);

- the names and other identifying information of third parties who were not of investigative interest to the FBI but who are nevertheless mentioned in records pertaining to the FBI's investigation of Plaintiff and his co-conspirators due to their interactions with Plaintiff and/or his co-conspirators (id. at ¶54); and

- the names and other identifying information of confidential cooperating witnesses and confidential sources who assisted the FBI during the course of its investigation of Plaintiff and his co-conspirators[14] (id. at ¶¶56-57).

As shown below, the FBI's decision to withhold the above information pursuant to exemption

(b)(7)(C) was appropriate.

---

[14] In addition to exemptions (b)(7)(C) and (b)(6), the FBI also invoked exemption (b)(7)(D) to withhold the names and other identifying information of its confidential cooperating witnesses and confidential sources.

First, the FBI properly withheld the names and other identifying information of the federal, state and local law enforcement officers and support personnel who were involved in the investigation of Plaintiff and his co-conspirators.  Disclosure of such information could subject those individuals to harassment, criticism and reprisal, and would shed no light on the FBI's performance of its statutory duties.  (See id. at ¶¶50-51, 55, 58.)  Courts routinely uphold the redaction of the names and identifying information of law enforcement officers and support personnel for precisely those reasons.  See Lesar v. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980); Russell, 2004 WL 5574164, at *5; Ray, 441 F. Supp. 2d at 34-35; Truesdale, 2005 WL 3294004, at *6; Blanton, 63 F. Supp. 2d at 46.

Second, the FBI properly withheld the names and other identifying information of: (1) the third parties who were of investigative interest to the FBI or other law enforcement agencies due to their association with Plaintiff and/or his co-conspirators; and (2) the third parties who were not of investigative interest to the FBI but who were observed interacting with Plaintiff and/or his co-conspirators.  Disclosure of such information could subject those individuals to harassment, criticism and suspicion of involvement in criminal activities, and would serve no public interest.  (Second Hardy Decl. ¶¶52-54.)  See Russell, 2004 WL 5574164, at *5 ("the names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files have been consistently protected from disclosure") (citing cases); Ray, 441 F. Supp. 2d at 35 ("Exemption 7(C) recognizes that the stigma of being associated with a law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation . . . ."); Blanton, 63 F. Supp. 2d at 45 ("The privacy interests of third parties mentioned in law enforcement files are

substantial, while '[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial.'" (quoting SafeCard Servs., Inc., 926 F.2d at 1205)).

Finally, the FBI properly withheld the names and other identifying information of third parties who provided information to the FBI on a confidential basis. Not only could those individuals face reputational harm if their identities were disclosed, Russell, 2004 WL 5574164 at *6; Blanton, 63 F. Supp. 2d at 46, but they could also face violent acts of reprisal (see Second Hardy Decl. ¶¶56-57). Moreover, the "[d]isclosure of the[ir] identities . . . would not shed light on the FBI's performance o[f] its statutory duties to enforce the law."[15] Russel, 2004 WL 5574164, at *6.

b.    Exemption (b)(7)(D)

Exemption (b)(7)(D) protects from disclosure records compiled for law enforcement purposes where disclosure "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). To properly invoke exemption (b)(7)(D), an

---

[15] In addition to exemption (b)(7)(C), the FBI also invoked exemption (b)(6) to withhold the above, third-party information. (See Second Hardy Decl. ¶¶32-44.) Exemption (b)(6) "protects personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" has been interpreted to include any information that pertains to a particular individual. See Lepelletier v. F.D.I.C., 164 F.3d 37, 46 (D.C. Cir. 1999). In determining whether the disclosure of particular information would result in a "clearly unwarranted invasion of personal privacy," a court must balance the individual's interest in keeping his affairs private against the public's interest in disclosure. See id. There is a public interest in disclosure only if disclosure "would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Id. For the reasons set forth above (in the discussion concerning the FBI's invocation of exemption (b)(7)(C)), the FBI's withholding of the names and other identifying information of the third parties involved in the criminal investigation of Plaintiff and his co-conspirators was plainly appropriate under exemption (b)(6). Disclosure of that information would risk subjecting the third parties to harassment, embarrassment, suspicion of wrongdoing and/or retaliation, and would shed no light on how the FBI performs its statutory duties. (See Second Hardy Decl. ¶¶32-44.) However, this Court need not address the applicability of exemption (b)(6) if it finds that the FBI properly invoked exemption (b)(7)(C). See Truesdale, 2005 WL 3294004, at *7 n.3.

agency must show:  (1) that the release of the withheld information could reasonably be expected to reveal the identity of an undisclosed source, id.; and (2) either that the source provided information to the agency under an express assurance of confidentiality or that the circumstances pursuant to which the source provided information support an inference of confidentiality, Dep't of Justice v. Landano, 508 U.S. 165, 179-81 (1993); Blanton, 63 F. Supp. 2d at 47.  Here, the FBI invoked exemption (b)(7)(D) (in conjunction with exemptions (b)(7)(C) and (b)(6)) to withhold the names and other identifying information of confidential sources and cooperating witnesses.  (Second Hardy Decl. ¶¶63, 66.)  Included within the matters withheld is specific information that the confidential sources and cooperating witnesses provided to the FBI.  (See id.)  The FBI also invoked exemption (b)(7)(D) (in conjunction with exemption (b)(2)) to withhold source symbol numbers and informant file numbers.  (Id. at ¶¶65, 67.)  As shown below, the withholding of the above information was proper under exemption (b)(7)(D).

The confidential sources, the cooperating witnesses and the individuals to whom the source symbol numbers and informant file numbers were assigned all provided information to the FBI pursuant to an express assurance of confidentiality.  (See id. at ¶¶ 64, 65, 66 (heading), 67.)  And, even if those individuals had not been given an express assurance of confidentiality, the fact that they provided information about a conspiracy to distribute heroin means that they provided information under circumstances that would support an inference of confidentiality.  See Mays v. D.E.A., 234 F.3d 1324, 1329-30 (D.C. Cir. 2000) ("[W]e have no doubt that a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential."); Peay, 2007 WL 788871, at *6 (finding an implied grant of confidentiality where the third parties provided information "involving a RICO drug enterprise"); Mendoza v. D.E.A., 465 F. Supp. 2d

5, 13 (D.D.C. 2006) (finding an implied grant of confidentiality where third parties provided information concerning "drug trafficking activity").

Furthermore, disclosure of the withheld information could reasonably be expected to reveal the identities of the confidential sources, the cooperating witnesses and the individuals to whom the source symbol numbers and informant file numbers were assigned.  The confidential sources and cooperating witnesses provided the FBI with information that is "singular in nature," and thus disclosure of that information could allow others to discern their true identities.[16]  (See Second Hardy Decl. ¶¶63, 66.)  As to the source symbol numbers and the informant file numbers, each such number is unique to a particular individual and is used by the FBI to identify (in its records) the individual and the information he or she provided.  (See id. at ¶¶65, 67.)  The disclosure of source symbol numbers and informant file numbers at various times and in various records could enable others to ascertain the identities of the sources and informants because each such disclosure would reveal when a specific source or informant provided information to the FBI, the particular investigation in connection with which the source or informant provided information and the general subject matter of the information that was provided.  (See id.)  See Brunetti, 357 F. Supp. 2d at 107 (finding that source symbol numbers and informant file numbers were properly withheld pursuant to exemption (b)(7)(D)); Blanton, 63 F. Supp. 2d at 48-49 (same).

            c.      Exemption (b)(7)(E)

Exemption (b)(7)(E) allows an agency to withhold information compiled for law enforcement purposes if its release "would disclose techniques and procedures for law

---

[16] Of course, disclosure of the names and other identifying information (e.g., dates of birth and social security numbers) of the confidential sources and cooperating witnesses could allow others to ascertain their identities.

22

enforcement investigations or prosecutions . . . ."  5 U.S.C. § 552(b)(7)(E).  The FBI invoked

exemption (b)(7)(E) (in conjunction with exemption (b)(2)) to withhold the ratings column on

the FBI's Form FD-515.  (Second Hardy Decl. ¶70.)  Courts routinely permit the FBI to withhold

the ratings column on the Form FD-515 pursuant to exemption (b)(7)(E) because disclosure of

the column would:  (1) reveal the specific techniques that FBI special agents used in a particular

investigation; and thus (2) provide criminals with information that they could use to tailor their

activities to avoid future detection.  See Peay, 2007 WL 788871, at *6; Brunetti, 357 F. Supp. 2d

at 108; Perrone v. F.B.I., 908 F. Supp. 24, 28 (D.D.C. 1995).

     The FBI also invoked exemption (b)(7)(E) (in conjunction with exemption (b)(2)) to

withhold internal records that discuss the "specific techniques" that it used in conducting an

undercover operation involving Plaintiff.  (Second Hardy Decl. ¶71.)  The withholding of that

information was proper, as its release would produce the same unacceptable consequences as the

release of the ratings column on the Form FD-515—it would reveal the specific investigatory

techniques used in a particular investigation and, in so doing, provide criminals with information

that they could use to tailor their activities to avoid future detection.  (See id.)

### C.    The Withholdings of the CBP, the EOUSA and the DEA—the Agencies to Which the FBI Referred Records—Were Appropriate

     As stated above, the FBI referred 631 pages of potentially responsive records to the CBP

(3 pages), the EOUSA (20 pages) and the DEA (608 pages) for a disclosure determination and

direct response to Plaintiff.  (See supra.)  As demonstrated below, the withholdings of those

agencies with respect to the referred pages were appropriate.

### 1.    The CBP

     The three pages of records that the FBI referred to the CBP originated from the CBP's

Treasury Enforcement Communications System ("TECS"), an electronic database containing

information obtained during the inspection of individuals at the borders of the United States.

(See Hanson Decl. ¶1 & Ex. A.)  The CBP invoked exemptions (b)(2), (b)(6) and (b)(7)(C) to

withhold portions of those three pages.  (See id. at Ex. A.)

                    a.      Exemption (b)(2)

        The CBP invoked the low (b)(2) exemption—which protects internal agency matters of

no public interest—to withhold "administrative markings" that appear on two of the referred

pages and that relate to "internal agency file control systems, . . . computer system reports, and

computerized property management systems."  (Id. at ¶8 & Ex. A.)  The administrative markings

are "purely internal" in nature and are of no public interest.  (See id. at ¶8 (explaining that the

file and computer systems to which the administrative markings relate are "restricted from the

public").)  Thus, they were appropriately withheld pursuant to the low (b)(2) exemption.  See

NYC Apparel FZE v. C.B.P., 484 F. Supp. 2d 77, 92 (D.D.C. 2007) (approving the withholding

of the administrative markings on CBP records pursuant to the low (b)(2) exemption).

                    b.      Exemption (b)(7)(C)

        The CBP invoked exemption (b)(7)(C)—which protects records compiled for law

enforcement purposes, the disclosure of which would constitute an unwarranted invasion of

personal privacy—(in conjunction with exemption (b)(6)) to withhold the social security

numbers of CBP employees that appear on one of the referred documents.  (See Hanson Decl.

¶14 & Ex. A.)  The redaction of the social security numbers pursuant to exemption (b)(7)(C) was

plainly appropriate.  First, the document at issue was obtained by the FBI in connection with its

investigation of Plaintiff and his co-conspirators for drug-related violations and, thus, was

"compiled for law enforcement purposes."  5 U.S.C. § (b)(7)(C); see Kansi v. Dep't of State, 11

F. Supp. 2d 42, 44 (D.D.C. 1998) ("once [records] are assembled by the FBI for its law

enforcement purposes, [they] qualify for protection under Exemption 7 regardless of their original source"). The fact that the document was obtained "from CBP's TECS system . . . , which contains information and records compiled for law enforcement purposes," provides further support for the conclusion that it was "compiled for law enforcement purposes." (Hanson Decl. ¶13.) Second, disclosure of the social security numbers would constitute an invasion of personal privacy, as it would reveal the identities of government employees involved in the investigation of Plaintiff and would thus risk "the unwarranted attribution of agency actions to the employees and attention to the employees beyond the confines of their job[s] and into their personal life." (Id. at ¶10.) Finally, disclosure of the social security numbers would serve no public interest, as it would shed no light on how the CBP performs its statutory duties.[17] (Id.) See generally Russell, 2004 WL 5574164, at *5 (exemption (b)(7)(C) is properly invoked if the privacy interest of the affected party outweighs the public's interest in disclosure).

### 2.    The EOUSA

The FBI referred 20 pages of records to the EOUSA. Of those 20 pages, the EOUSA released 10 pages in full and withheld 10 pages in full. (See Stearns Referral Decl. ¶5.) The EOUSA properly withheld the 10 pages pursuant to FOIA exemptions (b)(2), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E). The 10 withheld pages are comprised of: (1) a one-page letter from an Assistant United States Attorney ("AUSA") to her third-party client regarding litigation that was brought against the client by Plaintiff (the "letter"); and (2) nine pages of "pre-decisional investigative forms that were prepared by an AUSA and that address, inter alia, the specific

---

[17] In the alternative, the CBP invoked exemption (b)(6) to withhold the social security numbers. Because the disclosure of the social security numbers would risk subjecting the third parties to undue attention and would shed no light on how the CBP performs its statutory duties, the social security numbers were properly withheld pursuant to exemption (b)(6). See Lepelletier, 164 F.3d at 46.

manner in which the government was to conduct its investigation of the individuals involved in the drug conspiracy with [Plaintiff] (i.e., the step-by-step investigative techniques that would be utilized by law enforcement personnel in investigating the drug conspiracy)" (the "investigative forms"). (See id. at ¶¶5, 15 & Ex. D.) The EOUSA (appropriately) invoked exemptions (b)(2), (b)(5), (b)(6) and (b)(7)(C) in withholding the letter, and exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E) in withholding the investigative forms. (See id. at Ex. D.)

a.    Exemption (b)(2)

The EOUSA invoked the low (b)(2) exemption to withhold portions of the letter and the investigative forms, and the high (b)(2) exemption to withhold the investigative forms in their entirety. (See id. at ¶¶11, 12.) Pursuant to the low (b)(2) exemption, the EOUSA redacted the internal telephone number of a United States Attorney's Office ("USAO") paralegal from the letter and the telephone numbers of two AUSAs from the investigative forms. (Id. at ¶11 & Ex. D.) Those withholdings were appropriate, as the telephone numbers relate to internal agency matters of no public interest. See Ray, 441 F. Supp. 2d at 33; Russell, 2004 WL 5574164, at *4. Pursuant to the high (b)(2) exemption, the EOUSA withheld the investigative forms in full, which was appropriate because the forms detail "precisely how the government planned to investigate those thought to be involved in the drug conspiracy with [Plaintiff]" and, thus, their release would provide criminals with information that could help them avoid future detection. (Stearns Referral Decl. ¶12.) See Judicial Watch, Inc., 337 F. Supp. 2d at 165 (information is properly withheld under the high (b)(2) exemption where "disclosure will benefit those attempting to violate the law and avoid detection" (internal quotation marks omitted)).

b.    Exemption (b)(5)

The EOUSA invoked exemption (b)(5)—which shields from disclosure materials protected by, among other privileges, the attorney work product privilege and the deliberative process privilege—to withhold the letter and the investigative forms in their entirety. (See Stearns Referral Decl. ¶16.) The letter was prepared by an AUSA in the context of ongoing litigation, was sent only to her client (who was the subject of litigation brought by Plaintiff) and "details the AUSA's litigation strategy and assessment of the facts of the case." (Id. at ¶15.) It thus qualifies for protection under the attorney work product privilege. See Brunetti, 357 F. Supp. 2d at 109-10 (observing that a document is protected by the attorney work product privilege if it reveals "the mental processes of the attorney" and was "created in anticipation of litigation"). The investigative forms were prepared by an AUSA in anticipation of litigation against Plaintiff and his co-conspirators, are non-public, are "pre-decisional" and reflect a "proposed" strategy for investigating the individuals thought to be involved in the drug conspiracy with Plaintiff. (Stearns Referral Decl. ¶¶12, 15.) They also discuss "litigation alternatives." (Id. at ¶15.) As such, they are protected from disclosure by the attorney work product privilege and the deliberative process privilege. See Mapother, 3 F.3d at 1537 (records qualify for protection under the deliberative process privilege if they are "both predecisional and deliberative"); Brunetti, 357 F. Supp. 2d at 109-10 (discussing the work product privilege).

c.    Exemption (b)(7)(C)

The EOUSA invoked exemption (b)(7)(C) (in conjunction with exemption (b)(6)) to withhold: (1) the name and identifying information of the third party to whom the letter was sent; and (2) the names and identifying information of law enforcement personnel and potential criminal defendants that appear in the investigative forms. (Stearns Referral Decl. ¶¶18-19.)

27

The withholding of the above information pursuant to exemption (b)(7)(C) was proper. First, the letter and the investigative forms were "compiled for law enforcement purposes," as they were obtained by the FBI in connection with its investigation of Plaintiff and his co-conspirators.[18] See Kansi, 11 F. Supp. 2d at 44. Second, disclosure of the names and identifying information of the law enforcement personnel and potential criminal defendants who were referenced in the investigative forms, and the third party who was the subject of litigation brought by Plaintiff, would constitute an invasion of personal privacy. Such disclosure would subject those individuals to potential harassment, embarrassment and, in the case of the law enforcement personnel, retaliation. (See id. at ¶¶18-19.) Finally, disclosure of the withheld information would serve no public interest, as it "would not help explain the activities and operations of the EOUSA."[19] (Id. at ¶20.)

> d.    Exemption (b)(7)(E)

The EOUSA invoked exemption (b)(7)(E)—which shields from disclosure information compiled for law enforcement purposes if disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions—to protect the investigative forms. (See Stearns Referral Decl. ¶¶21-22.) The investigative forms were clearly compiled for law enforcement

---

[18] In addition, the investigative forms and the letter were created by the EOUSA for law enforcement purposes. (See Stearns Referral Decl. ¶17.) The investigative forms were prepared by an AUSA in connection with his work in building a drug-conspiracy case against Plaintiff and his co-conspirators. (Id.) The letter was prepared by an AUSA: (1) in response to litigation brought by Plaintiff "that arose out of the criminal case brought against him"; and (2) in the context of a USAO investigation into the propriety of Plaintiff's actions in connection with that litigation. (See id. at ¶¶15, 17.) In the letter, the AUSA contemplates instituting further litigation against Plaintiff. (See id. at ¶15.)

[19] In the alternative, the EOUSA invoked exemption (b)(6) to withhold the names and other identifying information of the above-mentioned third parties. (Stearns Referral Decl. ¶20 n.1.) Because the disclosure of the withheld information would risk subjecting the third parties to, inter alia, embarrassment, harassment and/or retaliation, and would shed no light on how the EOUSA performs its statutory duties, the information was properly withheld pursuant to exemption (b)(6). See Lepelletier, 164 F.3d at 46.

purposes.  (<u>See</u> <u>supra</u>.)  Moreover, disclosure of the investigative forms—which describe the step-by-step process that was to be used by law enforcement personnel in investigating the drug conspiracy involving Plaintiff—would provide criminals with a blueprint for how drug-related investigations are conducted, and criminals could use that information to circumvent the law.  (<u>See</u> Stearns Referral Decl. ¶22.)  Thus, the investigative forms were properly withheld pursuant to exemption (b)(7)(E).  <u>See</u> <u>Coleman</u>, 13 F. Supp. 2d at 83 (information is properly withheld under exemption (b)(7)(E) if it was "'compiled for law enforcement purposes'" and its release "'could reasonably be expected to risk circumvention of the law'" (quoting <u>F.B.I. v. Abramson</u>, 456 U.S. 615, 622 (1982)).

   3. <u>The DEA</u>

   The FBI referred 608 pages of lab reports to the DEA.  (Little Decl. ¶10.)  Of those 608 pages, 534 were later determined to be non-responsive to Plaintiff's request.  (<u>See</u> <u>supra</u>.)  The DEA processed the remaining 74 pages and redacted from those pages the names and other identifying information of DEA lab personnel pursuant to exemption (b)(7)(C) and, in the alternative, exemption (b)(6).  (Little Decl. ¶¶11, 15 n.2, 19-21.)  The DEA then returned the 74 pages to the FBI so that the FBI could review them and make a determination whether to redact any additional information from them.  (<u>See</u> <u>id.</u> at ¶16.)  The FBI has since reviewed the 74 pages and has decided to redact from them the names of the FBI special agents contained therein pursuant to exemptions (b)(6) and (b)(7)(C).  (Third Hardy Decl. ¶10.)

   The decision to redact the names and other identifying information of DEA and FBI personnel from the 74 pages of lab reports pursuant to exemption (b)(7)(C) was appropriate.  First, the lab reports were "compiled for law enforcement purposes"—they were compiled in connection with the FBI's investigation of Plaintiff and others for conspiring to distribute heroin.

(Id.)  Second, disclosure of the names and other identifying information of the government employees referenced in the lab reports would constitute an invasion of personal privacy, as it would "place each of [them] in such a position that they may suffer . . . harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file."  (Little Decl. ¶20; see Third Hardy Decl. ¶10.)  They might also become the targets of retaliatory conduct.  (See Third Hardy Decl. ¶10.)  Finally, disclosure of the names and identifying information of the government employees referenced in the lab reports would serve no public interest, as it would not shed light on how either the DEA or the FBI performs its statutory duties.[20]  (See id.)

## II.    THE EOUSA'S SEARCH FOR RECORDS AND FOIA WITHHOLDINGS WERE PROPER; THE FOIA WITHHOLDINGS OF THE AGENCY TO WHICH THE EOUSA REFERRED RECORDS WERE ALSO PROPER

### A.    The EOUSA Conducted an Adequate Search for Records

The EOUSA's Vaughn declaration establishes that its search for records was adequate. In response to Plaintiff's requests for records relating to himself and the criminal case brought against him, the EOUSA searched LIONS using Plaintiff's name as the search term.  (Second Stearns Decl. ¶3.)  LIONS "is a computer database maintained by the Department of Justice that tracks all civil, criminal and appellate investigations and cases."  (Id.)  It can be searched using a party's name, and "is the only source of information within the EOUSA's possession, custody or control that contains records concerning criminal cases brought against specific individuals." (Id.)  The above account demonstrates that the EOUSA's search was "reasonably calculated to

_____

[20] Alternatively, the DEA and the FBI invoked exemption (b)(6) to withhold the names and other identifying information of the government employees referenced in the lab reports. (Little Decl. ¶15 n.2; Third Hardy Decl. ¶10.)  Because the disclosure of the withheld information would risk subjecting the third parties to, inter alia, harassment and retaliation, and would shed no light on how the DEA and the FBI perform their statutory duties, the information was properly withheld pursuant to exemption (b)(6).  See Lepelletier, 164 F.3d at 46.

uncover all relevant documents," and was thus adequate. See Valencia-Lucena, 180 F.3d at 325.

The fact that the search of LIONS revealed the case file associated with the criminal case

brought against Plaintiff (Second Stearns Decl. ¶3) provides strong support for the conclusion

that the EOUSA's search was adequate.

**B.      The EOUSA's Withholdings were Appropriate**

After reviewing the more than 3,600 pages of responsive records that it located through

its search of LIONS, the EOUSA determined that 142 of those pages were properly withheld in

full or in part pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6) and (b)(7)(C).[21]  (See id.

at ¶5.)  As demonstrated below, the EOUSA's withholding decisions were appropriate.

**1.      Exemption (b)(2)**

The EOUSA invoked the low (b)(2) exemption to redact the "direct-dial telephone

number[s]" of two AUSAs, as well as an AUSA's government email address, from records

released to Plaintiff.  (Second Stearns Decl. Ex. A at documents 2, 3.)  Because the redacted

information relates to internal agency matters that are of no public interest, the information was

properly withheld pursuant to the low (b)(2) exemption.  See Ray, 441 F. Supp. 2d at 27 (holding

that an internal agency telephone number was properly withheld pursuant to exemption (b)(2));

Truesdale, 2005 WL 3294004, at *5 (concluding that internal agency telephone and fax numbers

were properly withheld pursuant to exemption (b)(2)).

---

[21] The EOUSA also withheld Plaintiff's 175-page PSR, but did so pursuant to the D.C.
Circuit's decision in Martinez, 444 F.3d at 624-25, not FOIA.  (Second Stearns Decl. ¶5 & Ex. A
at document 4.)  In Martinez, the D.C. Circuit upheld the Bureau of Prison's policy of
prohibiting inmates from possessing copies of their PSRs, so long as they are "afforded a
meaningful opportunity to review [their] PSRs."  Id.

2.    Exemption (b)(3)

The EOUSA invoked exemption (b)(3)—which protects records that are "specifically exempted from disclosure by statute"—to withhold two confidential conflict of interest certifications.  (See Second Stearns Decl. Ex. A at documents 5, 16.)  The USAO requires AUSAs to complete conflict of interest certifications for each case to which they are assigned pursuant to Title 1 of the Ethics in Government Act of 1978 (the "Ethics in Government Act"), 5 U.S.C. App. 4 § 107(a)(1).  (Id.)  The Ethics in Government Act, in turn, requires that the certifications be withheld from the public.  (Id.)  See 5 U.S.C. App. 4 § 107(a)(2) ("Any information required to be provided by an individual under this subsection shall be confidential and shall not be disclosed to the public.").  Thus, the EOUSA properly withheld the confidential conflict of interest certifications pursuant to exemption (b)(3).  See Glascoe v. Dep't of Justice, No. 04-0486, 2005 WL 1139269, at *1 (D.D.C. May 15, 2005) (finding that a conflict of interest certification was properly withheld pursuant to exemption (b)(3)).

3.    Exemption (b)(5)

The EOUSA invoked exemption (b)(5)—which shields from disclosure, inter alia, materials protected by the attorney work product privilege—to withhold:

- an email from one AUSA to other AUSAs that was prepared during the course of the prosecution of Plaintiff and his co-conspirators and that "discuss[es] whether or not various cases were still good law" (Second Stearns Decl. Ex. A at document 6);

- an email from one USAO attorney to another USAO attorney that was prepared in the context of this FOIA action and that discusses matters relating to "the processing of [Plaintiff's] FOIA requests" (id. at document 15);

- handwritten notes made by an AUSA in the context of litigating the drug conspiracy case against Plaintiff and his co-conspirators (id. at documents 10, 12, 22);

- internal memoranda discussing an AUSA's strategy for prosecuting Plaintiff and his co-conspirators (id. at documents 14, 18);

- a draft guilty plea prepared by an AUSA during the course of the prosecution of Plaintiff and his co-conspirators (id. at document 17);

- draft letters that were prepared by AUSAs during the course of the prosecution of Plaintiff and his co-conspirators and that discuss, inter alia, discovery matters, relevant legal authority and Plaintiff's sentencing submission (id. at documents 11, 13, 19, 20, 23); and

- an AUSA's legal research and portions of the Federal Rules of Criminal Procedure, both of which were compiled during the course of the prosecution of Plaintiff and his co-conspirators (id. at documents 21, 26).

Each of the above records was prepared by a USAO attorney in the context of ongoing litigation involving Plaintiff, and each contains the undisclosed mental processes of the USAO attorney. As such, each record qualifies for protection under the attorney work product privilege. See Brunetti, 357 F. Supp. 2d at 109-10; see also Watson v. Dep't of Justice, 799 F. Supp. 193, 195-96 (D.D.C. 1992) (concluding that the following qualified as attorney work product because they were compiled or created by attorneys in connection with specific litigation: legal research, handwritten notes, an internal memorandum and a draft subpoena). Because each of the above records qualifies for protection under the attorney work product privilege, each is properly withheld pursuant to exemption (b)(5). See Sears, Roebuck Bd., 421 U.S. at 149 (exemption (b)(5) protects materials that fall within the scope of the attorney work product privilege).

4.    Exemption (b)(7)(C)

The EOUSA invoked exemption (b)(7)(C)—which protects records compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy—(in conjunction with exemption (b)(6)) to withhold:

- the names and other identifying information of USAO support personnel referenced in a case closing sheet and fax cover sheet prepared in connection with the litigation against Plaintiff (Second Stearns Decl. Ex. A at documents 1, 2);

- the name of a federal employee (who was involved in the investigation of Plaintiff and his co-conspirators) identified in an internal USAO memorandum that discusses the strategy for prosecuting Plaintiff and his co-conspirators (id. at document 18);

- the names of third parties who provided information to the government during the investigation of Plaintiff and his co-conspirators and who are identified in draft letters prepared by AUSAs (id. at documents 20, 22, 23);

- a consent decree and a certificate of perjury, both of which relate to a co-conspirator of Plaintiff (id. at documents 24, 25); and

- three letters and a request for authorization to obtain a court reporter that relate solely to a third party's case—they do not relate in any way to Plaintiff (id. at documents 7, 8, 9, 19).[22]

The EOUSA's invocation of exemption (b)(7)(C) to withhold the above information was appropriate. Each of the above records was created or compiled by an AUSA in connection with the prosecution of Plaintiff and his co-conspirators for violating drug distribution laws. (Id. at ¶8.) Thus, the threshold requirement for invoking exemption (b)(7)(C) is met. Moreover, release of the third-party information described above could reasonably be expected to constitute an unwarranted invasion of personal privacy. Disclosure of the identities of, and other information regarding, individuals who were involved in the criminal investigation and/or prosecution of Plaintiff and his co-conspirators (either as investigators, prosecutors, support personnel, witnesses or co-defendants) could subject those individuals to, inter alia, harassment, criticism, embarrassment and (in the case of law enforcement personnel and those who provided information to law enforcement personnel) reprisal. (See id.) See also Barbosa v. Dep't of Justice, No. 06-0867, 2007 WL 1201604, at *3 (D.D.C. Apr. 23, 2007) (upholding the redaction of "the names and other identifying information of third-party suspects, codefendants,

---

[22] The records discussed in the last bullet above do not relate in any way to Plaintiff and are therefore not responsive to his FOIA/PA requests. Thus, they are properly withheld as non-responsive. The records discussed in the second, third and fourth bullets above are also properly withheld under exemption (b)(5). (See supra.)

confidential sources and law enforcement personnel").  Any insight that the above information

might provide with respect to how the USAO performs its statutory duties (and the EOUSA does

not believe that the information would provide any such insight (see Second Stearns Decl. ¶8)) is

outweighed by the strong interests that the third parties have in keeping the information private.[23]

See Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 905

(D.C. Cir. 1996) ("A mere desire to review how an agency is doing its job . . . does not create a

public interest sufficient to override the privacy interests protected by Exemption 7(C)." (internal

quotation marks omitted)).

### C.    The Withholdings of the FBI—the Agency to Which the EOUSA Referred Documents—Were Appropriate

The EOUSA referred 214 pages to the FBI.  (Second Hardy Decl. ¶7.)  The FBI has since

processed those pages, and has released one of those pages to Plaintiff.  (Third Hardy Decl. ¶7.)

It has withheld the remaining pages pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C) and

(b)(7)(D).  (Id.)  The FBI recently reviewed its sample Vaughn index, and determined that it

contains a representative sample of the materials that the FBI located in its files, as well as the

materials that were referred to it by the EOUSA.   (See Second Hardy Decl. ¶7; Third Hardy

Decl. ¶4.)  Thus, if this Court determines that the FBI made appropriate disclosure

determinations with respect to the records described in its sample Vaughn index, then this Court

should also conclude that the FBI made appropriate disclosure determinations with respect to the

records referred to it from the EOUSA.

---

[23] In the alternative, the EOUSA invoked exemption (b)(6) to withhold the above, third party information.  Because the disclosure of the above information would risk subjecting the third parties at issue to, inter alia, harassment, criticism and embarrassment, and would shed no light on how the EOUSA performs its statutory duties (see Second Stearns Decl. ¶8), the information is properly withheld pursuant to exemption (b)(6).  See Lepelletier, 164 F.3d at 46.

**III.    THE FBI, THE EOUSA AND THE AGENCIES TO WHICH THE FBI AND THE EOUSA REFERRED DOCUMENTS HAVE SHOWN THAT ALL REASONABLY SEGREGABLE INFORMATION HAS BEEN RELEASED**

FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" non-exempt information must be disclosed after deletion of the exempt information; non-exempt portions of records do not need to be disclosed if they are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Here, the FBI, the EOUSA and the agencies to which the FBI and the EOUSA referred documents (the CBP, the DEA and each other) have submitted detailed Vaughn declarations establishing that they carefully reviewed each record that was withheld in full or in part and appropriately determined that no additional, non-exempt information could be disclosed.  Indeed:

- The EOUSA's declaration states that "each record that was withheld in full was reviewed to determine whether it contained [nonexempt] material that could be segregated from the exempt material and released in part.  In addition, each record that was withheld in part was reviewed to determine whether it contained any additional information that could be released."  The EOUSA concluded that "[t]here is no further information that could be released."  (Second Stearns Decl. ¶6; see also id. (containing additional detail regarding the EOUSA's segregability review); Stearns Referral Decl. ¶¶16, 20 & Ex. D (making clear that the "[e]xempt information is so inextricably intertwined with any nonexempt information that any nonexempt information cannot be meaningfully segregated for release")).

- The FBI's declaration states that "[a]ll documents were processed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA.  Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material.  No reasonably segregable, nonexempt portions were withheld from plaintiff."  (Second Hardy Decl. ¶12; see id. at ¶¶13, 72.)  Moreover, a review of the records as they were

36

released to Plaintiff (see id. at Ex. F) confirms that the FBI carefully evaluated its disclosure determinations to ensure that all segregable information was released.

- The CBP's declaration states that "[a]ll documents were processed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA. Every effort was made to provide Plaintiff with all reasonably segregable portions of the documents that were processed by CBP as a result of this FBI referral. No reasonably segregable, nonexempt portions were withheld from Plaintiff." (Hanson Decl. ¶6.)  Moreover, the CBP did not withhold any documents in full, and redacted from the documents that were referred to it only administrative markings and social security numbers.  (See id. at Ex. A.)

- The DEA's declaration establishes that the DEA did not withhold any documents in full and that the only information that it redacted from the records it processed were the names and other identifying information of DEA lab personnel.  (See Little Decl. ¶¶15, 19-21.)  None of that information could be segregated for disclosure.

A review of the Vaughn declarations and, in the case of the FBI, the documents as they were released to Plaintiff confirms that the FBI, the EOUSA, the CBP and the DEA carefully evaluated each record to ensure that Plaintiff received all reasonably segregable, non-exempt material contained therein.  Accordingly, this Court should find that all reasonably segregable material that could be released to Plaintiff has been released to Plaintiff.

**IV.    THE FBI'S AND THE EOUSA'S WITHHOLDINGS UNDER THE PA WERE PROPER**

Both the FBI and the EOUSA invoked exemption (j)(2) of the PA to withhold records in response to Plaintiff's PA requests.  (See Second Hardy Decl. ¶¶16-17; Second Stearns Decl. ¶7.)  Exemption (j)(2) provides that records may be withheld if:  (1) they are located in a system of records that has been deemed to be exempt from the PA's disclosure requirements; and (2) the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of . . . (B) information compiled for the purpose of a criminal investigation . . . ; or (C)

reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws . . . ."  5 U.S.C. § 552a(j)(2).

The FBI and EOUSA records at issue here satisfy the above requirements for withholding.  They are maintained in the CRS (in the case of the FBI) and the Criminal Case File System (in the case of the EOUSA) (see Second Hardy Decl. ¶¶4-5; Second Stearns Decl. ¶7), which are systems of records that have been deemed to be exempt from the disclosure requirements of the PA, see 28 C.F.R. §§ 16.96(a)(1), 16.81(a)(4).  And they were compiled in connection with the criminal investigation and/or prosecution of Plaintiff and his co-conspirators.  (See Second Hardy Dec. ¶¶17, 46; Second Stearns Decl. ¶7.)  See also Watson, 799 F. Supp. at 197 (finding that records maintained within the EOUSA's Criminal Case File System and the FBI's CRS are properly withheld under PA exemption (j)(2)).  Although access to records was (rightly) denied under the PA, Plaintiff's requests for records were processed under the access provisions of FOIA.  (See supra.)

## CONCLUSION

As shown above, Defendants have responded fully and adequately to Plaintiff's FOIA/PA requests.  Thus, Defendants respectfully request that this Court GRANT their motion for summary judgment and dismiss this FOIA/PA case.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/_____

CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2008, I caused a copy of the foregoing to be served via

first class prepaid postage as follows:

ALBERTO CONCEPCION
#22853-050
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640

                                        /s/
                          Christopher B. Harwood

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ALBERTO CONCEPCION,                     )
                                        )
            Plaintiff,                  )
                                        )
            v.                          )            Civil Action 07-1766 (RMU)
                                        )
FEDERAL BUREAU OF INVESTIGATION,        )
et al.,                                 )
                                        )
            Defendants.                 )
_____)

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## NOT IN GENUINE DISPUTE

Pursuant to Local Civil Rule 7(h), the Federal Bureau of Investigation ("FBI") and the

Executive Office for United States Attorneys ("EOUSA") (collectively, "Defendants")

respectfully submit this Statement of Material Facts Not in Genuine Dispute.

1.      Starting on September 13, 2005 and continuing through March 14, 2007, Plaintiff

sent numerous (and largely duplicative) Freedom of Information Act ("FOIA")/Privacy Act

("PA") requests to the FBI and the EOUSA seeking in substance all records in the possession of

those agencies relating to himself and the criminal case brought against him.  (See, e.g., Hardy

Decl. ¶¶8, 10, 12, 15, 18, 19; Stearns Decl. ¶¶20-23.)[1]

---

[1] Citations in the form "(Hardy Decl. ¶__)" refer to the Declaration of David M. Hardy, which is dated February 13, 2008, and which appears at entry number 15 on the electronic docket of this case.  Citations in the form "(Stearns Decl. ¶__)" refer to the Declaration of Dione J. Stearns, which is dated February 13, 2008, and which appears at entry number 15 on the electronic docket of this case.

**The FBI**

2.      In response to Plaintiff's FOIA/PA requests, the FBI searched its Central Records

System ("CSR") and Electronic Surveillance Indices ("ELSUR") for records relating to Plaintiff.

(Second Hardy Decl. ¶4; Hardy Decl. ¶41.)[2]  The search of the CRS revealed the FBI's

investigative file for the criminal case brought against Plaintiff and 2,094 pages of seemingly

responsive records.  (Second Hardy Decl. ¶¶4-5.)  The search of the ELSUR produced no

responsive records.  (Hardy Decl. ¶41.)

3.      After reviewing the 2,094 pages, the FBI:  (1) released 890 pages to Plaintiff in

full or in part; (2) referred 631 pages to three other government agencies—the Bureau of

Customs and Border Protection ("CBP") (3 pages), the EOUSA (20 pages)[3] and the Drug

Enforcement Agency ("DEA") (608 pages)—for a disclosure determination and direct response

to Plaintiff; and (3) withheld the remaining pages pursuant to FOIA exemptions (b)(2), (b)(3),

(b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E), and PA exemption (j)(2).  (See id. at ¶¶5, 14,

16-17.)

4.      The CBP released the three pages referred to it to Plaintiff in part; the CBP

redacted information from those pages pursuant to FOIA exemptions (b)(2), (b)(6) and (b)(7)(C).

(See Hanson Decl. ¶¶9, 11, 14, Ex. A.)[4]

---

[2] Citations in the form "(Second Hardy Decl. ¶__)" refer to the Second Declaration of
David M. Hardy, which is dated May 16, 2008, and which appears at entry number 23 on the
electronic docket of this case.
[3] The FBI initially referred the 20 pages referenced above to the Department of Justice
("DOJ").  (Second Hardy Decl. ¶5.)  The DOJ, however, referred those 20 pages to the EOUSA.
(Id.)
[4] Citations in the form "(Hanson Decl. ¶__)" refer to the Declaration of Mark Hanson,
which is dated May 16, 2008, and which appears at entry number 24 on the electronic docket of
this case.

5.      The EOUSA released 10 of the 20 pages referred to it to Plaintiff in full and withheld in full the other 10 pages pursuant to FOIA exemptions (b)(2), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E).  (See Stearns Referral Decl. ¶5 & Ex. D.)[5]

6.      The DEA determined that 74 of the 608 pages referred to it were responsive to Plaintiff's FOIA/PA requests, redacted the names of DEA laboratory personnel from the 74 pages pursuant to FOIA exemptions (b)(6) and (b)(7)(C) and returned the 74 pages to the FBI so that the FBI could redact information from the 74 pages before releasing them to Plaintiff. (Little Decl. ¶¶11, 15 & n.2, 16.)[6]  The FBI has determined that it will redact the names of FBI special agents from the 74 pages pursuant to FOIA exemptions (b)(6) and (b)(7)(C); it has not yet released the 74 pages to Plaintiff, but will do so shortly.  (Third Hardy Decl. ¶¶10, 11.)[7]

7.      The 608 pages that the FBI referred to the DEA are copies of DEA lab reports. (See Little Decl. ¶12 & Ex. C.)  The 74 pages to which the DEA made redactions indicate (on their face) that they relate to Plaintiff.  (See id. at ¶¶15-16.)  None of the remaining 534 pages identifies the name of the individual to whom it relates.  (See Third Hardy Decl. ¶9.)  Nor does any include any other information that would allow the FBI or the DEA to determine to whom it relates (such as a date of birth or a social security number).  (See id.)

8.      The FBI and the agencies to which it referred documents (the CBP, the EOUSA and the DEA) carefully reviewed each record that was withheld in full or in part to ensure that all reasonably segregable material that could be released to Plaintiff has been released to Plaintiff.

---

[5] Citations in the form "(Stearns Referral Decl. ¶__)" refer to the Revised Version of the May 19, 2008 Declaration of Dione J. Stearns, which is dated May 29, 2008, and which is being submitted herewith.

[6] Citations in the form "(Little Decl. ¶__)" refer to the Declaration of William C. Little, which is dated May 21, 2008, and which appears at entry number 24 on the electronic docket of this case.

[7] Citations in the form "(Third Hardy Decl. ¶__)" refer to the Third Declaration of David M. Hardy, which is dated May 30, 2008, and which is attached hereto.

(See Second Hardy Decl. ¶¶12, 13, 72; Third Hardy Decl. ¶11; Stearns Referral Decl. ¶¶16, 20 & Ex. D; Hanson Decl. ¶6; see also Little Decl. ¶¶15, 19-21 (explaining that the DEA did not withhold any documents in full and that the only information that it redacted from the records it processed were the names and other identifying information of DEA lab personnel).)

### The EOUSA

9.      In response to Plaintiff's FOIA/PA requests, the EOUSA searched the Legal Information Office Network System for records pertaining to Plaintiff. (Second Stearns Decl. ¶3.)[8] That search uncovered the master criminal case file associated with the criminal case brought against Plaintiff. (Id.) A search of that case file revealed 3,637 pages of responsive records.[9] (Id. at ¶5.) The master criminal case file is maintained within the EOUSA's Criminal Case File System. (Id. at ¶7.)

10.     After reviewing the 3,637 pages, the EOUSA: (1) released 2,418 pages to Plaintiff in full; (2) released 8 pages to Plaintiff in part; (3) referred 214 pages to the FBI for a disclosure determination and direct response to Plaintiff; (4) withheld 688 pages on the ground that they were duplicates; (5) withheld Plaintiff's 175-page pre-sentence report pursuant to the D.C. Circuit's decision in Martinez v. Bureau of Prisons, 444 F.3d 620, 624-25 (D.C. Cir. 2006); and (5) withheld the remaining 134 pages in full. (Id. at ¶5 & n.2.) The 142 pages that the EOUSA withheld in full or in part were withheld pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6) and (b)(7)(C), and PA exemption (j)(2). (Id. at ¶5.)

---

[8] Citations in the form "(Second Stearns Decl. ¶___)" refer to the Revised Version of the April 30, 2008 Declaration of Dione J. Stearns, which is dated May 29, 2008, and which is being submitted herewith.

[9] The master criminal case file contained 3,862 pages relating to the criminal case brought against Plaintiff, but 225 of those pages were entirely unrelated to Plaintiff. (See Second Stearns Decl. ¶5.)

11.    The FBI has processed the 214 pages that were referred to it by the EOUSA, and has released one of those pages to Plaintiff.  (Third Hardy Decl. ¶7.)  It has withheld the remaining pages in full pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(D).  (See id.)

12.    The EOUSA and the agency to which it referred documents (the FBI) carefully reviewed each record that was withheld in full or in part to ensure that all reasonably segregable material that could be released to Plaintiff has been released to Plaintiff.  (See Second Stearns Decl. ¶6; Second Hardy Decl. ¶¶12, 13, 72.)

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2008, I caused a copy of the foregoing to be served via

first class prepaid postage as follows:

ALBERTO CONCEPCION
#22853-050
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640


               /s/
               Christopher B. Harwood

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ALBERTO CONCEPCION,                       )
                                          )
          Plaintiff,                      )
                                          )
              v.                          )      Civil Action 07-1766 (RMU)
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
et al.,                                   )
                                          )
          Defendants.                     )
_____)

## **ORDER**

Having considered Defendants' Motion for Summary Judgment, and the entire record

herein, it is this _____ day of _____, 2008, hereby:

ORDERED that Defendants' Motion for Summary Judgment is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Complaint in this action is DISMISSED with

prejudice.

SO ORDERED

                                    _____
                                    UNITED STATES DISTRICT JUDGE

Copy to: ECF Counsel

ALBERTO CONCEPCION
#22853-050
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, N.J. 08640

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALBERTO CONCEPCION,

      Plaintiff,

                                   Civil Action No. 07-CV-1766(ESH)

FEDERAL BUREA OF INVESTIGATION,
      et al.,

      Defendants.

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 190 employees who staff a total of ten (10) FBIHQ units and a field operational service center unit whose collective mission is to effectively plan, develop, direct, and manage responses to requests

for access to the FBI records and information pursuant to the FOIA; Privacy Act; Executive

Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures;

judicial decisions; and Presidential and Congressional directives. The statements contained in

this declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am

aware of the FBI's treatment of the numerous FOIA/Privacy Act requests of plaintiff Alberto

Concepcion starting on September 13, 2005, which seek access to records concerning himself

and the criminal case brought against him at FBIHQ and the FBI's Newark Field Office.

(4)    The primary purpose of this supplemental declaration is to update the Court and

plaintiff regarding the status of the documents returned to the FBI for further processing by the

Drug Enforcement Agency ("DEA") and the documents referred to the FBI by the Executive

Office of United States Attorney ("EOUSA"). Importantly, the fact that pages were returned to

the FBI for further processing by DEA and that material was referred to the FBI by EOUSA does

not affect the utility or representativeness of the sample Vaughn index discussed and attached to

the Second Hardy Declaration dated May 16, 2008. As discussed below, the FBI will be

redacting from the responsive DEA records only the names of FBI Special Agents pursuant to

FOIA exemptions (b)(6) and (b)(7)(C). Moreover, as stated in the Second Hardy Declaration, the

FBI has determined that its sample Vaughn index contains a representative sample of the

materials that the FBI located in its files, as well as the materials that were referred to it by the EOUSA.

## CORRESPONDENCE AND ACTIONS IN RESPONSE THERETO

(5)     By letter dated April 11, 2008, EOUSA advised the FBI that it had located records in its office which originated with the FBI. EOUSA referred 214 pages of material to the FBI for processing and direct response to the requester.  **(See Exhibit A.)**

(6)     By letter dated May 13, 2008, DEA returned to the FBI the documents (lab reports) referred to it by the FBI on February 25, 2008. DEA stated that of the 608 pages referred to it, only 74 pages contained the plaintiffs name or other identifying information.  The DEA could not determine whether the remaining 534 pages were responsive to the plaintiff and requested that the FBI make the determination.  **(See Exhibit B.)**

(7)     By letter dated May 19, 2008, FBIHQ made a direct response to plaintiff of the material referred from EOUSA.  The FBI advised plaintiff that 209 pages had been reviewed and 1 page was being released. (Although the EOUSA referred 214 pages to the FBI, 5 of those pages discussed the mere fact of the referral and the FBI's obligations arising from the referral. Those 5 pages were not records relating to Plaintiff or the case brought against him.) Information was withheld pursuant to exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(D.)  (See **Exhibit C.)**

(8)     The FBI has now the 74 pages of lab reports containing plaintiffs name or other identifying information which were returned by DEA and has determined that it will be redacting from those pages only the names of FBI Special Agents contained therein. The names of the FBI Special Agents will be withheld pursuant to exemptions (b)(6) and (b)(7)(C)

3

## DEA REFERRAL INFORMATION

(9)    The FBI reviewed the 534 pages for which the DEA could not make a determination whether the information was responsive to plaintiffs request. Because of the numerous subjects that were involved in this criminal investigation and the lack of identifiable information on the face of the records (e.g., name, date of birth, or social security number) the FBI cannot with any certainty make a positive determination as to whether these documents pertain to Alberto Concepcion or one of the many third parties who were also investigated along with Mr. Concepcion. The search to determine whether the 534 pages were responsive to plaintiffs request involved contacting the Case Agent of the FBI Squad in Newark which handled the criminal investigation. This contact was in an effort to try and determine which lab reports went with specific subjects of the criminal investigation. The Case Agent contacted, regarding the lab reports sent to DEA for testing of suspected drugs, had no specific knowledge of the preparation of the lab reports which were submitted to DEA. Without talking to someone with this knowledge, there was no way the FBI could determine which subjects the lab reports referred to. As such, the FBI is considering these documents as not responsive to plaintiffs request.

(10.)    As stated above, the FBI has reviewed the 74 pages determined to be responsive to plaintiffs request, and the only information that the FBI will be redacting from those pages is the names of FBI Special Agents referenced therein who were involved in the criminal investigation of Plaintiff. The FBI will be redacting those names pursuant to exemptions (b)(6) and (b)(7)(C). The 74 pages of lab reports were created by the FBI and sent to the DEA in connection with the FBI's investigation of Plaintiff for engaging in illegal drug distribution

4

activities. Disclosure of the names of the FBI Special Agents who were involved in that investigation could subject them to, among other things, harassment, criticism and reprisal, and would shed no light on the FBI's performance of its statutory duties. (See Second Hardy Decl. **1134,50.**)

## **CONCLUSION**

(11)    FBIHQ will soon release all segregable information from the 74 pages of responsive documents originally referred to the DEA.  The FBI will withhold only the names of its Special Agents.  The information withheld from the materials referred by EOUSA was withheld pursuant to FOIA Exemptions 5, 6, 7(C) and 7(D) and Privacy Act Exemption (j)(2). The FBI's actions with respect to the materials referred to it by the EOUSA are reflected in the materials included in its sample Vaughn index.  With respect to the DEA materials, the FBI carefully examined the 74 pages in question and determined that the information that is going to be withheld from plaintiff, if disclosed, would cause an unwarranted invasion of the personal privacy interests of FBI Special Agents.

(12) Pursuant to 28 U.S.C. § 1746,1 declare under penalty of perjury that the foregoing is true and correct, and **Exhibits A thru** C attached hereto are true and correct copies.

Executed this          day of May, 2008.

DAVID M. HARDY
Section Chief
RecoroVInformation Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALBERTO CONCEPCION,

     Plaintiff,

                         Civil Action No. 07-CV-1766(ESH)

FEDERAL BUREA OF INVESTIGATION,
     et al.,

     Defendants.

# EXHIBIT A



**U.S. Department of Justice**

*Executive Office for United States Attorneys '*
*Freedom of Information & Privacy Staff*
*600E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478 wynv.usdoi.eov/usao)*

To **David M. Hardy, Chief/Record/Information Disemination Section/FBI**

Requester: **Alberto Concepcion**          ,          Requester Number:  **06-1738**

Subject          of          Request:          **Self/DNJ**          *I:* AΡR  1 1  2008  -

Dear FOIA/PA Contact Person:          U⌐•, >  - -.......—#

        The enclosed Freedom of Information Act/Privacy Act request was received by this
office.  The paragraphs checked below apply:

1.    [  ]    As your office may have records responsive to this request, we are referring it to you for
              a direct response to the requester.

2.    [ X ]   While processing this request, we located the enclosed records which originated in your
              office.  These records were found in the U.S. Attorney's Office files and may or may not
              be responsive to the request.  We are referring    **214**        page(s) of material and a
              copy of the request to you for a direct response to the requester.

3.    [ X ]   This office is also providing      5          page(s) of documents under a cover page
              titled "Background Information".  The attached records are provided to your agency to
              assist in processing your records.  These are not part of the referred records and should
              be kept as administrative records in this referral.

        A copy of our final determination letter is also enclosed for your reference.  Please note
we have charged the requester $   **25.00**      for search/duplication costs incurred in the
processing, of this request.

        We   have   notified   the   requester   of   this   referral.   '

        If you have any questions about this matter, please contact the FOIA/PA processor
named below'.

                                            Sincerely,

                                            *[signature]*

                                            William G. Stewart II
                                            Assistant Director

Name: Janet Harper          _____ :_____
Phone:12021514-4359_____-
Enclosure(s)

                                                                    , Form No. 007 - 3/07

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ALBERTO CONCEPCION,

        Plaintiff,

                              Civil Action No. 07-CV-1766(ESH)

        v.

FEDERAL BUREA OF INVESTIGATION,
        et al.,


        Defendants.



# EXHIBIT B



**U.S. Department of Justice**
Drug Enforcement Administration
FOIA/Records Management Section
FOIA Operations Unit
Washington, D.C. 20537

H ™ .1 2 |0Q|

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation  ;  ?
Department of Justice
935 Pennsylvania Avenue, N.W!     v
Washington, D.C. 20535-0001

,
%

Re: CONCEPCION, ALBERTO; FBI FOI/PA #1030134-001
DEA FOIA Request No. 08-0647-P

Dear Mr. Hardy:

Enclosed please find 608 pages referred by your letter dated February 25, 2008, to the Drug
Enforcement Administration (DEA) for a direct response to the requester/plaintiff. Attached for
reference were two(2) request letters submitted by the requester/plaintiff dated September 13, 2005:
In the first letter, the plaintiff stated that he requested "all records in possession of your agency on
myself;" in the second letter, he requested "all records wherein my name is utilized." After review
of the entire 608 pages and based upon the requester/plaintiffs requests, we found only 74 pages
that contain the plaintiffs name. We processed the 74 pages and withheld the names and signatures
of DEA laboratory personnel pursuant to FOIA Exemption (b)(7)(C), in Blocks Number 23, 24, 34,
37 and 3,8. Unfortunately, it cannot be determined that the remaining 534 pages are responsive to
the requester/plaintiffs request, and many of the pages may be duplicates. Although you forwarded
the material for direct response to the requester, these pages are being returned for whatever action
you deem appropriate.

In an attempt to determine whether the remaining 534 pages were responsive, the DEA
Narcotics and Dangerous Drugs Information System (NADDIS), and the Federal Bureau of
Information (FBI), National Criminal Justice Information Services, National Crime Information
Center (NCIC) system, were queried. The investigative records maintained in the DEA
Investigative Reporting and Filing System (IRFS) that related to the requester/plaintiff were also
reviewed. Despite the fact that the requester/plaintiff is currently incarcerated in the Federal prison
system, there is no record of an arrest or conviction for any Federal offense contained in NCIC,
NADDIS or the investigative records maintained by DEA. Further, DEA investigative records

David M. Hardy                                                    Page 2
May 13, 2008

related to requester/plaintiff do not indicate any entry after June 10, 1997. We found, however, in NCIC, State of New Jersey arrests and a single conviction for an offense related to vehicular homicide. However, according to plaintiffs complaint filed in his civil action, he was arrested on or about December 17, 1999, on a charge of conspiracy to distribute heroin.

It was also noted that many of the pages are duplicates and the reverse side, containing instructions for the completing of the form, was consistently re-copied. It should be considered that the DEA Form 7 is a manifold type carbon form in which there are five (5) copies that contain instructions for completing the form on the reverse side. Copy 1 is for the prosecution; Copy 2 is for the division file; Copy 3 is the originating office file; Copy 4 is for the Headquarters file; and, Copy 5 is a receipt copy. However, the information on the completed forms and the instructions is exactly the same on each of the copies. Ordinarily, in processing documents held by DEA, Copy 1 is considered the original and Copies 2, 3, 4 and 5 are considered duplicates. Duplicates are not considered separate records under the FOIA. Although DEA has processed 74 pages, please note that our review indicates that the 74 pages essentially consists of twelve (12) sets of the DEA Form 7 with the instructions copied 35 times.

In addition, DEA could not respond directly to the requester. It appears that the materials were not reviewed prior to forwarding them to DEA. It should be noted that, in Blocks 17 and 18 of the DEA Form 7, the names and signatures of what appears to be FBI Special Agents were not redacted. It is also noted that of the 74 pages processed and reviewed all are releasable to the requester/plaintiff. As such, a duplication fee of $7.40 is warranted. If all 608 pages are releasable, a duplication fee of $60.80 would be assessjsd.byJDEA, if forwarded for a direct response.

Thus, before expending additional DEA time and resources processing this information, we respectfully request that a determination be made whether the 534 pages are responsive. If it is determined that these pages are responsive, please return them and DEA will, process the materials expeditiously. Should you have any questions with regard to this matter, please contact Phyllis Drewery at 202-307-7618, e-mail Phyllis.M.Drewery@usdoj.gov or William C. Little, Senior Attorney, Office of Chief Counsel at 202-353-9680, e-mail william.c.little@usdoj.gov.

                              Sincerely,


                              Katherine L. Myrick
                              Chief, Operations Unit
                              FOI/Records Management Section


Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALBERTO CONCEPCION,

        Plaintiff,

                                      Civil Action No. 07-CV-1766(ESH)

        v.

FEDERAL BUREA OF INVESTIGATION,
        et al.,

        Defendants.

# EXHIBIT C



U.S. **Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

May 19, 2008

MR ALBERTO CONCEPCION
*22853-050
FEDERAL CORRECTIONAL INSTITUTION
POST OFFICE BOX 2000
WHITE DEER, PA 17887

Subject: CONCEPCION

FOIPANo. 1114329-000

Dear Requester:

     The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| **Section 552** | | **Section 552a** |
|---|---|---|
| •**(b)(1)** | •(b)(7)(A) | •(d)(5) |
| •**(b)(2)** | • (b)(7)(B) | °(fl)(2) |
| •**(b)(3)** • | 8(b)(7)(C) | • (k)(1) |
| _____ | 8(b)(7)(D) _____ | •(k)(2) |
| _____ | • (b)(7)(E) _____ | •(k)(3) |
| _____ | • (b)(7)(F) _____ | •(k)(4) |
| • **(b)(4)** | • (b)(8) | •(k)(5) |
| 8**(b)(5)** | • (b)(9) | •(k)(6) |
| 8**(b)(6)** | | •(k)(7) |

209 **page(s)** were reviewed and 1 **page(s)** are being released.

- Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

  - referred to the OGA for review and direct response to you.

  - referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

- You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

- The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).

If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

• See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALBERTO CONCEPCION, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action 07-1766 (RMU) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## <u>REVISED VERSION OF APRIL 30, 2008 DECLARATION OF DIONE JACKSON STEARNS</u>

This declaration revises and clarifies portions of my declaration dated April 30, 2008 and supplements my declaration dated February 13, 2008.[1] I, Dione J. Stearns, declare the following to be true and correct statements of facts:

1.     By letter dated March 8, 2006, Alberto Concepcion ("Plaintiff") submitted a Freedom of Information Act ("FOIA")/Privacy Act ("PA") request to the Executive Office for United States Attorneys ("EOUSA") for records pertaining to himself and the criminal case brought against him.  Specifically, Plaintiff sought access to the following records:

"Lab report, indictment, the Rule 11, application of which was signed by Alberto Concepcion, & the recorded F.B.I. tapes series numbers with the dates of recordings, & if possible please proved [sic] me with the locations of the said recordings."

2.     In response, the EOUSA located Plaintiff's criminal case file—No. 99-753—in the District of New Jersey, and searched that case file for the specific records referenced in his

---

[1] For a full and detailed account of the Executive Office for United States Attorneys' responses to Alberto Concepcion's various Freedom of Information Act/Privacy Act requests, see the February 13, 2008 declaration.  The February 13, 2008 declaration appears at Docket No. 15, Attachment 2.

March 8, 2006 letter. By letter dated September 26, 2006, the EOUSA released to Plaintiff in full all documents responsive to his March 8, 2006 request that it located in his criminal case file—viz. his indictment and Rule 11 application.

3.     Criminal case file No. 99-753 is the only source of information within the possession, custody or control of the EOUSA that is reasonably likely to contain records pertaining to Plaintiff and the criminal case brought against him. The Legal Information Office Network System ("LIONS") is a computer database maintained by the Department of Justice that tracks all civil, criminal and appellate investigations and cases. LIONS is the only source of information within the EOUSA's possession, custody or control that contains records concerning criminal cases brought against specific individuals. LIONS can be searched using, inter alia, a party's name. In connection with Plaintiff's March 8, 2006 FOIA/PA request, the EOUSA searched LIONS using his name. That search identified two criminal case files—Nos. 99-753 and 99-6144-01. Criminal case file No. 99-6144-01 was the file number associated with Plaintiff's criminal case while it was before a Magistrate Judge. Once the criminal case against Plaintiff reached the District Court level, criminal case file No. 99-6144-01 became subsumed within criminal case file No. 99-753. All records that appear in criminal case file No. 99-6144-01 also appear in criminal case file No. 99-753.

4.     Subsequent to March 8, 2006, Plaintiff sent the EOUSA numerous additional FOIA/PA requests for records relating to himself and the criminal case brought against him (the "ensuing FOIA/PA requests"). (See Docket No. 15, Attachment 2, at ¶¶21-23, 28-29.) The ensuing FOIA/PA requests were largely duplicative of the March 8, 2006 FOIA/PA request. However, some did request specific documents relating to the criminal case brought against Plaintiff that were not expressly mentioned in the March 8, 2006 request. (Compare id. at ¶20

with id. at ¶21.)  The EOUSA did not conduct additional searches of Plaintiff's criminal case file in connection with his ensuing requests.  Under the circumstances, it believes it was justified in not doing so.  However, on February 13, 2008, in an effort to streamline this litigation, the EOUSA agreed to:  (1) conduct a new search of Plaintiff's criminal case file for all documents relating to himself and the criminal case brought against him (regardless of whether the documents were specifically referenced in any of his prior FOIA/PA requests); and (2) produce to Plaintiff any previously undisclosed and releasable documents that it locates.  The EOUSA did in fact conduct a new search of Plaintiff's criminal case file for all documents relating to himself and the criminal case brought against him.

5.      In conducting the new search of Plaintiff's criminal case file (No. 99-753), the EOUSA located 3,862 pages of records that appeared to be related to Plaintiff and the criminal case brought against him.  By letter dated April 11, 2008, the EOUSA advised Plaintiff that 7 pages were being released to him in part; 2,418 pages were being release to him in full; and 135 pages were being withheld in full pursuant to 5 U.S.C. § 552(b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), and 5 U.S.C. § 552a(j)(2).[2]  The letter also advised Plaintiff that 214 pages of material that originated with another federal agency were located in the criminal case file, and that the EOUSA had referred those pages to the originating agency (the Federal Bureau of Investigation) for review and direct response to him.  The EOUSA further advised Plaintiff that a copy of his PSI was located in the criminal case file and that (pursuant to Bureau of Prisons Revised Program Statement No. 1351.05) he could review that document, but that it could not be released

---

[2] The EOUSA subsequently determined that one of the pages that had been withheld in full could be released in part.  The EOUSA released that document by letter dated April 28, 2008.  Thus, as of the date of this filing, 8 pages have been released in part to Plaintiff and 134 pages have been withheld in full.

to him.  688 pages located in the criminal case file were duplicates and 225 pages were entirely non-responsive.

6.    Attached hereto is a Vaughn index describing the 142 pages of responsive and withheld/redacted documents, and identifying the basis or bases for each withholding/redaction—i.e., the applicable FOIA/PA exemption(s).  As indicated by the Vaughn index, each record that was withheld in full was reviewed to determine whether it contained responsive material that could be segregated from the exempt material and released in part.  In addition, each record that was withheld in part was reviewed to determine whether it contained any additional information that could be released.  The overwhelming majority of the records withheld in full consist of draft letters, draft court documents, internal USAO emails, handwritten notes, internal USAO memoranda and legal research.  After careful review by EOUSA FOIA staff, it was determined that each of those records contains factual material so closely intertwined with exempt attorney work product and/or exempt information relating to third parties that it could not be meaningfully separated.  The other pages withheld in full consist of Confidential Conflict of Interest Certifications.  The certifications are required by statute (the Ethics in Government Act of 1978) to be withheld in full.  The only redactions on the 8 pages withheld in part are the initials of a third party, the direct-dial telephone numbers and email addresses of third parties and the name of a third party.  There is no further information that could be released on the pages that were released in part.

7.    As indicated in the attached Vaughn index, material was withheld not only pursuant to FOIA exemptions, but also pursuant to exemption (j)(2) of the PA.  Exemption (j)(2) of the PA authorizes the head of an agency to promulgate rules to exempt systems of records: "maintained by an agency or component thereof which performs as its principal function any

activity pertaining to the enforcement of criminal laws . . . and which consists of . . . (B) information compiled for the purpose of a criminal investigation . . . ; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws . . . ." Here, all of the records the EOUSA located in response to Plaintiff's FOIA/PA requests are maintained in the USAO's Criminal Case File System (Justice/USA-007). The Attorney General has promulgated rules exempting the Criminal Case File System from the PA's access provisions. See 28 C.F.R. § 16.81. Moreover, the records were compiled in connection with the prosecution of Plaintiff and his co-conspirators for narcotics-related violations. Thus, Plaintiff was appropriately denied access to the records he requested pursuant to exemption (j)(2). Although access to the records was denied under the PA, the records were processed under the access provisions of FOIA.

8.    Each of the records referenced in the attached Vaughn index was created or compiled by an AUSA in the context of prosecuting Plaintiff and/or his co-conspirators for violations of drug distribution and other laws. Disclosure of information that reveals the identity of, and documents that relate solely to, third parties who were involved in the criminal case brought against Plaintiff and his co-conspirators could subject those individuals to, inter alia, harassment, criticism, embarrassment and (in the case of law enforcement personnel and those who provided information to law enforcement personnel) reprisal. Disclosure of such information and documents would shed no light on how the EOUSA performs its statutory functions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the

29th day of May 2008 at Washington, D.C.

Dione Jackson Stearns
Attorney Advisor
EOUSA FOIA/PA Staff



GOVERNMENT EXHIBIT A

SUMMARY OF WITHHELD/REDACTED DOCUMENTS
(*Concepcion v. Federal Bureau of Investigation, et. al. 07-1766-RMU*)

Glossary:

**"RIP"–released in part**
**"WIF"–withheld in full; reviewed for and not deemed segregable**
**"USAO"–United States Attorney's Office**
**"AUSA"–Assistant U.S. Attorney**

| DOC | PAGES | DOCUMENT DESCRIPTION | EXEMPT STATUS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 3 | Case closing sheets prepared in connection with the criminal case against Plaintiff | RIP: b7C, b6, j2 | Withheld only the initials of a third party (a USAO paralegal) to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 2 | 2 | 2 fax cover sheets from AUSA Scott Resnik to Defense Attorney Thomas Ashley dated 06/28/2000 and 06/30/2000, and sent in connection with the case against Plaintiff and his co-conspirators. | RIP: b2, b7C, b6, j2 | Withheld direct-dial telephone number of a USAO employee (pursuant to the low b2 exemption), and the name of a third party (a USAO paralegal) (pursuant to exemptions b6 and b7C). The telephone number is an internal agency matter of no public interest. The name of the third party was withheld to protect against harassment and annoyance in the conduct of official duties and in private life. |
| 3 | 3 | Notice of appearance of Appellee Counsel, George S. Leone, Chief, Appeals Division. | RIP: b2, j2 | Withheld portions of the AUSA's direct telephone number and government email address pursuant to the low b2 exemption. The telephone number and email address are internal agency matters of no public interest. |

| 4 | 175 | Copy of Pre-Sentence Report and Statement of Reasons for Alberto Concepcion 05/05/00 | Bureau of Prisons policy, j2 | BOP may properly limit inmate access to PSIs and related documents to a view-only basis. See Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006). |
| 5 | 2 | Confidential Conflict of Interest Certification completed by an AUSA | WIF: b3 (5 U.S.C. App. 4 § 107(a)(2)), j2 | Withheld form in its entirety as required pursuant to 5 U.S.C. Appendix 4, § 107(a)(2), Title 1 of the Ethics in Government Act of 1978. The USAO requires AUSAs to complete conflict of interest certifications for each case to which they are assigned pursuant to the Ethics in Government Act. The Ethics in Government Act, in turn, requires that the certifications be withheld from the public. There is no reasonably segregable information contained in this document. |
| 6 | 5 | Email dated April 20, 2001 from AUSA George Leon to other AUSAs | WIF: b5, j2 | Withheld internal email, prepared during the course of the prosecution of Plaintiff and his co-conspirators, discussing whether or not various cases were still good law. This email is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 7 | 1 | February 6, 2001 letter from Andrea D. Bergman, Assistant Federal Public Defender, to Marcia Waldron, Clerk United States Court of Appeals for the Third Circuit. | WIF: b7C, b6, j2 | Withheld letter pertains entirely to a third party's appeal. The third party appears to be an alleged co-conspirator of Plaintiff in the drug conspiracy for which Plaintiff was prosecuted. There is no reasonably segregable information contained in this document, as the document does not relate in any way to Plaintiff. This document is arguably non-responsive, as it pertains entirely to a third party. |
| 8 | 3 | Request for Authorization to incur and pay expenses for a shorthand reporter. | WIF: b7C, b6, j2 | Withheld document pertains entirely to expenses for a shorthand reporter in a third party's criminal case. The third party appears to be an alleged co-conspirator of Plaintiff in the drug conspiracy for which Plaintiff was prosecuted. There is no reasonably segregable information contained in this document, as the document does not relate in any way to Plaintiff. This document is arguably non-responsive, as it pertains entirely to a third party. |

| | | | |
|---|---|---|---|
| 9 | 1 | January 8, 2001 letter from Tonya Wyche, Case Manager for the United States Court of Appeals for the Third Circuit, to AUSA George Leone and Andrea D. Bergman. | WIF: b7C, b6, j2 | Withheld letter pertains entirely to a third party's appeal. The third party appears to be an alleged co-conspirator of Plaintiff in the drug conspiracy for which Plaintiff was prosecuted. There is no reasonably segregable information contained in this document, as the document does not relate in any way to Plaintiff. This document is arguably non-responsive, as it pertains entirely to a third party. |
| 10 | 1 | Handwritten notes. | WIF: b5, j2 | Withheld prosecutor's handwritten notes of that were created while the prosecutor was preparing to litigate the drug conspiracy case against Plaintiff and his co-conspirators. The notes pertain to evidence that might be used in the litigation. This document is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 11 | 5 | Draft correspondence dated April 17, 2007 from AUSA Shawna H. Yen to Marcia M. Waldron and Michael J. Sullivan, Esq., McElroy, Deutsch & Mulvaney. | WIF: b5, j2 | Withheld prosecutor's unsigned draft of letter, which was prepared during the course of the prosecution of Plaintiff and his co-conspirators, and which addresses pertinent legal authority that came to the government's attention subsequent to preparing the Brief for Appellant. This unsigned draft letter is attorney work product. There is no reasonably segregable information contained in this document. |
| 12 | 1 | Handwritten note | WIF: b5, j2 | Withheld prosecutor's handwritten note that was prepared in connection with the prosecution of Plaintiff and his co-conspirators. The note contains the prosecutor's mental impressions of the case and strategy decisions. This handwritten note is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 13 | 3 | Draft letter dated January 7, 2000 to Thomas Ashley, Esq. from AUSAs Scott Resnik and Carolyn A. Murray. | WIF: b5, j2 | Withheld prosecutor's unsigned draft of a letter concerning discovery in the context of the criminal case involving Plaintiff. The draft letter is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |

| 14 | Draft Prosecutor's Memorandum dated 02/25/2000 | WIF: b5, j2 | Withheld draft memorandum containing prosecutor's legal strategy, which was prepared in connection with the prosecution of Plaintiff and his co-conspirators, and which is thus protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
|----|----|----|----|
| 46 | | | |
| 15 | Internal email from Gisele Bryant, United States Attorney's Office for District of New Jersey, to Dione J. Stearns, Attorney Advisor Executive Office of United States Attorneys. | WIF: b5, j2 | Withheld internal discussion among USAO employees relating to the processing of the FOIA requests at issue in this case based upon the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 2 | | | |
| 16 | Confidential Conflict of Interest Certification completed by an AUSA | WIF: b3 (5 U.S.C. App. 4 § 107(a)(2)), j2 | Withheld form in its entirety as required pursuant to 5 U.S.C. Appendix 4, § 107(a)(2), Title 1 of the Ethics in Government Act of 1978. The USAO requires AUSAs to complete conflict of interest certifications for each case to which they are assigned pursuant to the Ethics in Government Act. The Ethics in Government Act, in turn, requires that the certifications be withheld from the public. There is no reasonably segregable information contained in this document. |
| 1 | | | |
| 17 | Unsigned and undated draft of guilty plea. | WIF: b5, j2 | Withheld unsigned draft of guilty plea prepared by a prosecutor in connection with the criminal case brought against Plaintiff under the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 6 | | | |

| 18 | Draft Prosecutor's Memorandum dated 05/05/2000 | WIF: b5, b6, b7C, j2 | Withheld memorandum containing details of the prosecutor's litigation strategy. The memorandum was prepared in connection with the prosecution of Plaintiff and his co-conspirators, and is thus protected by the attorney work product privilege and exemption b5. The memorandum also contains the name of a third party federal employee who was involved in the investigation of Plaintiff and his co-conspirators. The name of the third party is properly withheld pursuant to exemptions b6 and b7C to protect against harassment and annoyance in the conduct of official duties and in private life. There is no reasonably segregable information contained in this document. |
| 19 | Partial draft of letter (it is missing pages) dated 12/3/1999 addressed to Hon. Alfred J. Lechner, Jr. | WIF: b5, b6, b7C, j2 | Withheld partial draft of letter that is missing the signature page, but that appears to have been created by an AUSA in connection with the prosecution of Plaintiff, as it was found in the prosecutor's file. The letter is withheld under the attorney work product privilege and exemption b5. In addition, the letter pertains entirely to third parties (co-conspirators) and is thus properly withheld pursuant to exemptoins b6 and b7C to protect against the unwarranted invasion of personal privacy of the third party referenced therein. The letter addresses whether the third parties committed perjury when they testified. There is no reasonably segregable information contained in this document. This partial draft of a letter is arguably non-responsive, as it pertains entirely to a third party. |

| 20 | 8 | Unsigned 06/09/2000 draft letter from AUSA Scott Resnik to Hon. Alfred J. Lechner, Jr. | WIF: b5, b6, b7C, j2 | Withheld unsigned draft of a letter prepared by prosecutor in connection with the criminal case against Plaintiff addressing Plaintiff's sentencing submission. This document is protected from disclosure by the attorney work product privilege and exemption b5. In addition, the names of third parties referenced in the letter who provided information to the government in the course of the criminal investigation of Plaintiff and his co-conspirators are properly withheld pursuant to exemptions b6 and b7C to protect against retaliation and/or harassment. There is no reasonably segregable information contained in this document. |
| --- | --- | --- | --- | --- |
| 21 | 10 | Case law research | WIF: b5, j2 | Withheld pages would reveal aspects of the prosecutor's legal strategy, which is protected by the attorney work product privilege. There is no reasonably segregable information contained in this document. |
| 22 | 14 | Unsigned, undated handwritten notes found in prosecutor's file. | WIF: b5, b6, b7C, j2 | The notes contain the author's mental impressions with respect to matters pertaining to the criminal prosecution of Plaintiff and his co-conspirators and are thus protected by the attorney work product privilege and exemption b5. The notes also contain the names of third parties who provided information to the government pursuant to a subpoena during the course of the investigation of Plaintiff and his co-conspirators, and are thus properly withheld pursuant to exemptions b6 and b7C to protect against harassment or unwanted attention. There is no reasonably segregable information contained in this document. |

| 23 | 9 | Signed 06/13/2000 letter to the Hon. Alfred J. Lechner, Jr. from the prosecuting AUSA. | WIF: b5, b6, b7C, j2 | Withheld letter contains the prosecutor's mental impressions about Plaintiff's sentencing submission. Although the letter is signed, there is nothing on its face that indicates that it was ever sent. Nor does it appear on the court docket. Thus, the letter is properly withheld under the attorney work product privilege and pursuant to exemption b5. In addition, the letter references the names of third parties who provided information to the government during the course of the investigation of Plaintiff and his co-conspirators, and is thus properly withheld pursuant to exemptions b6 and b7C to protect against harassment or unwanted attention. There is no reasonably segregable information contained in this document. |
| 24 | 10 | Signed 04/16/2003 consent decree pertaining to a third party. | WIF: b6, b7C, j2 | Withheld consent decree pertaining to a third party (a co-conspirator). Although Plaintiff's name appears in the consent decree, the exempt information is so inextricably intertwined with any non-exempt information that it cannot be meaningfully segregated for release. |
| 25 | 1 | Signed 02/20/2001 certificate of perjury relating to a third party. | WIF: b6, b7C, j2 | Withheld certificate of perjury relating to a third party (a co-conspirator). Although Plaintiff's name appears on the certificate of perjury, the exempt information is so inextricably intertwined with any non-exempt information that it cannot be meaningfully segregated for release. |
| 26 | 3 | Selected portions of the Federal Rules of Criminal Procedure found in the prosecutor's case file. | WIF: b5, j2 | Withheld the selected portions of the Federal Rules of Criminal Procedure that were found in the prosecutor's case file on the ground that releasing those portions of the rules would reveal the prosecutor's mental impressions; they are thus protected under the attorney work product privilege. There is no information that can be segregated for release in this document. |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALBERTO CONCEPCION,                          )
                          Plaintiff,         )
                                             )
                                             ) Civil Action No. 07-1766
        V.                                   )
                                             )
FEDERAL BUREAU OF INVESTIGATION,             )
et al.,                                      )
                                             )
                          Defendant.         )
                                             )
_____     )

<u>REVISED VERSION OF MAY 19, 2008 DECLARATION OF DIONE JACKSON STEARNS</u>

        I, Dione J. Stearns, declare the following to be a true and correct statement of facts:

        1.)      I am an Attorney Advisor with the Executive Office for United States Attorneys

(EOUSA ), United States Department of Justice.  In that capacity, my responsibilities include:

acting as liaison with other divisions and offices of the Department of Justice ("DOJ") in

responding to requests and the litigation filed under both the Freedom of Information Act

("FOIA"), 5 U.S.C. §552 (1988), and the Privacy Act of 1974, 5 U.S.C. § 552a (1988) ("PA");

the review of FOIA/PA requests for access to records located in this office and the 94 United

States Attorney's offices (USAO's) and the case files arising therefrom; the review of

correspondence related to requests; the review of searches conducted in response to requests; the

location of responsive records; and preparation of responses thereto by EOUSA to assure that

determinations to withhold (or to release) such responsive records are in accordance with the

provisions of both the FOIA and the PA, as well as the Department of Justice regulations (28

C.F.R. §§ 16.3 et seq. and 16.40 et seq.).

2.)    As an Attorney Advisor of the FOIA/PA unit, EOUSA, I have authority to release

and/or withhold records requested under the FOIA/PA, and to advocate the position of EOUSA

in actions brought under the FOIA/PA.  The statements I make hereinafter are made on the basis

of my review of the official files and records of EOUSA, on my own personal knowledge, or on

the basis of information acquired by me through the performance of my official duties.

3)    Due to the nature of my official duties, I am familiar with the procedures

followed by this office in responding to the FOIA/PA request made to the FBI by the above-

captioned Plaintiff, Alberto Concepcion (hereinafter referred to as "Mr. Concepcion").

## CORRESPONDENCE

4.)    On April 16, 2008, EOUSA received a referral of twenty pages of documents

from the FBI to process and respond directly to Mr. Concepcion.  *See* **Exhibit A.**

Accompanying the documents was a copy of Mr. Concepcion's request to the FBI.  *See* **Exhibit

B.**  Upon receipt of the referral, EOUSA assigned it Request Number 06-1146-R.

5.)    By letter dated April 30, 2008, EOUSA released ten pages in full and withheld in

full ten pages.  *See* **Exhibit C.**  The ten pages withheld in full are part of two documents, one

consisting of nine pages ("Document 2") and the other of one page ("Document 1").

6.)    The following describes the application of the exemptions in general that EOUSA

is asserting.

## EOUSA'S DISCLOSURE DETERMINATIONS

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

7.)    Exemption (j)(2) of the Privacy Act authorizes the head of an agency to

promulgate rules to exempt systems of records: "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of . . . (B) information compiled for the purpose of a criminal investigation . . . ; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws . . . ."

8.)     The USAO's Criminal Case File System (Justice/USA-007) is a Privacy Act systems of records. The Attorney General has promulgated rules exempting that System from the Privacy Act's access provisions pursuant to 5 U.S.C. § 552a(j)(2), which appear at 28 C.F.R. § 16.81 (2007). The mission of the USAO is to enforce criminal and civil laws and defend the interests of the United States, to provide Federal leadership in preventing and controlling crime, and to seek just punishment for those found guilty of unlawful behavior.

9.)     Here, the two withheld documents originated from the USAO's Criminal Case File System and were created for criminal law enforcement purposes by the USAO for the District of New Jersey, which performs as its principal function activities related to the enforcement of criminal laws. Accordingly, the documents are exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2). This exemption, which was applied to Documents 1 & 2, is reflected in the attached <u>Vaughn</u> Index ("Index"): <u>See</u> **Exhibit D.**

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA EXEMPTION 5 U.S.C. § 552(b)(2)

10.)     Exemption (b)(2) of the FOIA protects from mandatory disclosure documents or portions of documents "related solely to the internal personnel rules and practices of an agency." This exemption covers two distinct categories of records: "high" (b)(2) records and "low" (b)(2)

records. Low (b)(2) records are agency records of internal matters of a relatively trivial nature. High (b)(2) records are agency records that are predominantly internal in nature and whose disclosure would risk circumvention of agency regulations or statutes. The use of exemption (b)(2) in this case involves both high and low (b)(2) information.

11.)    Some of the (b)(2) records withheld here consist of internal telephone numbers of two Assistant United States Attorneys ("AUSA") and one USAO paralegal. There is no public interest in the release of internal USAO telephone numbers, which are internal agency matters of a relatively trivial nature. Moreover, release of the telephone numbers could subject the AUSAs and paralegal to harassing communications and, in so doing, disrupt official business. Consequently, the telephone numbers are properly withheld pursuant to the low (b)(2) exemption.

12.)    The remaining (b)(2) records withheld here (pursuant to the high (b)(2) exemption) consist of internal, undisclosed, and pre-decisional investigative forms that were prepared by an AUSA and that address, _inter alia_, the specific manner in which the government was to conduct its investigation of the individuals involved in the drug conspiracy with Mr. Concepcion (_i.e._, the step-by-step investigative techniques that would be utilized by law enforcement personnel in investigating the drug conspiracy). Release of these investigative forms—which disclose precisely how the government planned to investigate those thought to be involved in the drug conspiracy with Mr. Concepcion—could allow individuals involved in future drug conspiracies to tailor their behavior and avoid apprehension.

13.)    The (b)(2) exemption was applied to both of the documents listed in the Index: _See_ Documents 1 and 2.

## EXEMPTION 5 U.S.C. § 552(b)(5)
## PRIVILEGED INFORMATION

14.)    Exemption (b)(5) protects "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The courts have construed this language to exempt those documents that are normally privileged in the civil discovery context. Documents that would be protected in civil litigation under, inter alia, the work product doctrine and the deliberative process privilege fall within the scope of exemption (b)(5).

15.)    EOUSA asserted exemption (b)(5) to protect a letter prepared by an AUSA that the AUSA sent only to her client, which discusses, inter alia, litigation filed by Mr. Concepcion against the client and litigation that the AUSA was contemplating filing against Mr. Concepcion to enjoin him from harassing the client in the future. The litigation against the client arose out of Plaintiff's criminal prosecution; the client was involved in the criminal prosecution. The letter details the AUSA's litigation strategy and assessment of the facts of the case, and is thus protected from disclosure by the attorney work product doctrine. (See Document 1.) EOUSA also asserted exemption (b)(5) to protect internal and pre-decisional investigative forms that were prepared by an AUSA in anticipation of litigation against Plaintiff and his co-conspirators, that were not disclosed to the public and that address, inter alia, proposed investigatory techniques, litigation alternatives and strategies and the AUSA's personal evaluation of facts relevant to the criminal case involving Mr. Concepcion and others. (See Document 2.) The investigative forms do not reflect final agency action. Disclosure of this non-public information could jeopardize the candid and comprehensive communications that are essential for efficient

and effective agency decision-making. The internal and previously undisclosed investigative forms are protected from disclosure by the attorney work product and deliberative process privileges.

16.)   The attorney work product and deliberative process information referenced above is so interwoven as to make all the information contained in the above-mentioned documents protected. EOUSA applied this exemption to protect the two documents listed in the Index: *See* Documents 1 and 2.

## FOIA EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

17.)   Exemption (b)(7)(C) of the FOIA exempts from mandatory release records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy. All information at issue herein was compiled for law enforcement purposes: (1) in order to prosecute Mr. Concepcion and others for violations of illegal drug distribution and other laws (Document 2); and (2) in the context of a government investigation into the actions of Mr. Concepcion in connection with litigation that he filed against a third party that arose out of the criminal case brought against him (Document 1).

18.)   Exemption (b)(7)(C) is applied to withhold the identity of and personal information about the third party individual to whom Document 1 was sent (*i.e.*, the client of an AUSA in connection with litigation filed by Mr. Concepcion) (*see* Index). The release of that information could subject that person to an unwarranted invasion of his or her personal privacy. Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to that person or to personal information about him or her, or cause the person harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising

from his or her connection to a case brought by Mr. Concepcion.

19.)    This exemption has also been applied to withhold the names and identifying information (e.g., phone numbers, dates of birth, social security numbers) of special agents, other government employees, local law enforcement personnel and potential criminal defendants contained in Document 2 (see Index). Individual duties and assignments are not public and the publicity that would likely arise from disclosure of the identities of government employees involved in the investigation of Mr. Concepcion and others could seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, and could cause such individuals to be subject to harassment and/or retaliation. In addition, disclosure of identifying information of potential criminal defendants could subject those individuals to harassment, stigmatization and embarrassment.

20.)    EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of EOUSA. No public interest would counterbalance the individuals' privacy right in having the information withheld under this exemption. Mr. Concepcion did not provide this office with authorizations or consents from any third party individual to release otherwise personal privacy protected materials. The exempt information is so inextricably intertwined with any nonexempt information that it cannot be meaningfully segregated for release. EOUSA applied this exemption to protect information in both of the documents listed in the Index: _See_ Documents 1 and 2.[1]

---

[1] In the alternative, the EOUSA invokes exemption (b)(6) to withhold the names and other identifying information of the above-mentioned third parties. Because the disclosure of that information would risk subjecting the third parties to, inter alia, embarrassment, harassment

**EXEMPTION 5 U.S.C. § (b)(7)(E)**

21.)    Exemption (b)(7)(E) permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information would disclose techniques and procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions, and such disclosure could reasonably be expected to risk circumvention of the law.

22.)    Here, the EOUSA asserted exemption (b)(7)(E) to protect internal, undisclosed, and pre-decisional investigative forms that were prepared by an AUSA and that address, inter alia, the specific manner in which the government was to conduct its investigation of the individuals involved in the drug conspiracy with Mr. Concepcion (i.e., the step-by-step process that would be utilized by law enforcement personnel in investigating the drug conspiracy).  If the specific techniques the government used to conduct its investigation in the case involving Mr. Concepcion and other were disclosed, then other individuals involved in similar drug conspiracies could use that information to tailor their behavior and avoid future detection and criminal prosecution.  The EOUSA has determined that the exempt information is so inextricably intertwined with any nonexempt information that it cannot be meaningfully segregated for release.

23.)    EOUSA applied this exemption to protect this type of information in one of the documents listed in the Index: See Document 2.

---

and/or retaliation, and would shed no light on how the EOUSA performs its statutory duties, the information is properly withheld pursuant to exemption (b)(6).

## CONCLUSION

24.)     Each step in the handling of the referral of documents from the FBI has been

entirely consistent with the EOUSA's and the USAO's procedures which were adopted to insure

an equitable response to all persons seeking access to records under the FOIA/PA.  I declare

under penalty of perjury that the foregoing is true and correct.

Executed on the 29th day of May 2008 at Washington, D.C.

Dione Jackson Stearns
Attorney Advisor
EOUSA FOIA/PA Staff



U. Department of Justice

Federal Bureau of Investigation

*Washington, D C 20535*

To:     Executive Office of the US Attorney          April 16, 2008
        Attn: Assistant Director
        FOIA/PA Unit
        Department of Justice
        Room 7300
        600 E Street NW
        Washington, D.C. 20530

From:   David M. Hardy
        Record/Information Dissemination Section
        Records Management Division

Subject: FOI/PA Request of
        FBI FOI/PA # 1030134- 001       Re: CONCEPCION, ALBERTO

        In connection with review of FBI files responsive to the above request, the following was surfaced:

☒          unclassified document(s) which originated with your agency is/are being referred to you for
        direct response to the requester. The requester x has ☐ has not been advised of this referral. Please
        furnish this Bureau a copy of your disclosure letter to the requester. (See index A).

☐          FBI document(s) containing information (outlined in red) concerning your agency.
        ☒ We will advise the requester to expect a direct response from your agency regarding this matter.

        ☐ Please review this information and return the documents to us, making any deletions you deem
        appropriate. (See index B).

☐          classified document(s) which originated with your agency is/are being referred to you for
        direct response to the requester. The requester ☐ has ☐ has not been advised of this referral. Please
        furnish this Bureau a copy of your disclosure letter to the requester, and advise us if the classification
        of the documents(s) changed so that we may amend our files. (See index C).

☐          classified FBI document(s) containing information (outlined in red) concerning your agency.
        ☐ We will advise the requester to expect a direct response from your agency regarding this matter.

        ☐ Please review this information and return the document(s) to us, making any deletions you deem
        appropriate, citing the exemption(s) claimed. Please advise this Bureau if the document(s) still
        warrant classification. (See index D).

        ☐ Please note that some of the enclosed documents contain deletions made by this Bureau. The
        appropriate exemption appears next to the redacted information. The requester may appeal these
        denials by writing to the following address within sixty days of your release: Co-Director, Office of
        Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050,
        Washington, D.C. 20530-0001.

        A copy of the requester's initial letter and other significant correspondence is enclosed for your
convenience. If you have any questions concerning this referral, please contact Nicole Carter (540) 868 -4855.
The FBI FOIPA number as well as the FBI file number(s) on the Index Listing (see reverse) should be utilized
during any consultation with the FBI concerning this referral.

        Additional Remarks: THIS CASE IS IN LITIGATION.
Once the referral is completed, please send a copy of the letter to the FBI, 170 Marcel Drive, Winchester, VA
22608..

Enclosure(s)  (2)              ( INDEX LISTING ON REVERSE)



GOVERNMENT
EXHIBIT
A

FROM: NK DATE: September 13, 2005

NAME: ALBERTO CONCEPCION    CRIMINAL NO. 99-6144-01-01
                                              99-753 (ATL)
REG. # 22853-050    DATE OF SENTENCE July 7, 2000
DC _____    CHARGE/CONVIT. # 21 U.S.C. 841(a)(1) Heroin
POB Newark, N.J    US DIST. COURT OF Newark, New Jersey
SSN _____  ___  ___    US DIST. JUDGE ALFRED J. LECHNER JR.

## RE: FREEDOM OF INFORMATION/PRIVACY ACT REQUEST

TO WHOM IT MAY CONCERN

   Pursuant to the Freedom of Information Act, 5 U.S.C. Sec. 552,
as Amended, and the Privacy Act of 1974, 5 U.S.C. Sec. 552(a), I hereby
request a copy of all records in possession of your agency on myself or
which makes a reference to me. Please find a Certificate of Identity attached.

   I request a copy of all records wherein my name is utilized, and
this request is all inclusive. I will expect information from every retrievable
source to include every system of records located in the FOI Exempt section
of my Central File as well as all information in the SIS files and computers.

   I will expect a legal justification for each and every deletion or excision
made. I want an index of all excised or withheld records. The Acts
provide you shall furnish me all non-exempt records   I, of course, reserve
the right to appeal any decision to withhold records.

   I will pay reasonable copying fees for these records. This request
should be processed pursuant to the Privacy Act, which provides that
no fees shall be charged for locating and retrieving records. 5 U.S.C.
552a(f)(5).

   As provided by the Acts, I will expect a response to this request
within ten (10) working days of receipt. Please forward the required
response to me as the below address. Thank you..

Sincerely,

Alberto Concepcion
Without Prejudice U.C.C. 1-207

REG. NO. 22853-050
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887-2000

ATTACHMENT: CERTIFICATE OF IDENTITY

CERTIFIED MAIL NO. 7002-0510-0001-6675-6680

GOVERNMENT EXHIBIT
13

ALBERTO CONCEPCION, 22853-050
F.C.I Allenwood P.O. Box 2000
White Deer, PA. 17887

Date September 13, 2005

FREEDOM OF INFORAMTION SECTION

FEDERAL BUREAU OF INVESTIGATION
1 Gateway Plaza
Newark, New Jersey 07102

CERTIFIED MAIL NO. 7002-0510-0001-6675-6680

RE: FOIA/PA's request; 5 U.S.C.§§ 552 and/or 552a.

Dear Sir or Madam:

        This is my non-commercial request pursuant to the provision
of the Freedom of Information and Privacy Act, as codified under
the title 5 U.S.C.§ 552 as amended, and/or the Privacy Act of 1974
as codified under the title 5 U.S.C. 552a, et al. I hereby request
for copy of all of the records in possession of this agency
pertained to me and/or to any form of identification that make
reference to myself.

        I am requesting copy of all records wherein my name is
utilized, and this request is conclusive. I will expect information
of myself from any retrievable  source, that is but not limited to,
this agency's records.

        I will expect any legal justification for each and any
delection or exemption made. I want a index of all exempted or
withhelded records. The Act provide that you shall furnish me all
non-exempt records. I, of course, reserve the right to appeals any
decision to withhold records. I will also pay for copying fee, after
the first 125 pages. As provided by the Act, I expect response
withing 20 working days from receiving this letter.

        Here I am including the follow information about myself:

Requesting for  certified copys of any, and all documents per-
taining to ALBERTO CONCEPCION, ET AL, which some are as follows:
statements, criminal complaints, arrest warrants, Lab Report(s), and etc.,
including any other unmentioned documents. Alberto Concepcion ®
Certificate of Identity                    Without prejudice U.C.C. 1-207
included



U.S. Departm    of Justice

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester:  **Alberto Concepcion**                    Request Number:  **08-1146-R**

Government Component that referred material: **Federal Bureau of Investigation (FBI)**

Dear Requester:

     This is in reply to your Freedom of Information Act/Privacy Act request of Sept. 19, 2005. APR 28 2008
Records were referred to us by the government component above for direct response to you.

     The referred material has been considered under both the FOIA and the Privacy Act to
provide you the greatest degree of access. Exemptions have been applied when deemed
appropriate either for withholding records in full or for excising certain information. The
exemptions cited are marked below. An enclosure to this letter explains the exemptions in more
detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [    ] (b)(1) | [    ] (b)(4) | [    ] (b)(7)(B) | [ **X** ] (j)(2) |
| [ **X** ] (b)(2) | [ **X** ] (b)(5) | [ **X** ] (b)(7)(C) | [    ] (k)(2) |
| [    ] (b)(3) | [    ] (b)(6) | [    ] (b)(7)(D) | [    ] (k)(5) |
| _____ | [    ] (b)(7)(A) | [ **X** ] (b)(7)(E) | [    ] _____ |
| | | [    ] (b)(7)(F) | |

     We have reviewed approximately ___**20**___ page(s) of material:

___**10**___ page(s) are being released in full (RIF);
_____ page(s) are being released in part (RIP);
___**10**___ page(s) are withheld in full (WIF) and
_____ pages were duplicate copies of material already processed.

     This is the final action on this above-numbered request. You may appeal this decision on
this request by writing within 60 days from the date of this letter to **the Office of Information
and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050,
Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA
Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial
review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Form No. 024 - 3/07

Enclosure(s)



SUMMARY OF WITHHELD DOCUMENTS
*(Concepcion v. Federal Bureau of Investigation, et. al.  07-1766-RMU)*

Glossary:

"WIF"–withheld in full; reviewed for and not deemed segregable
"USAO"–United States Attorney's Office
"AUSA"–Assistant U.S. Attorney

| DOC | PAGES | DOCUMENT DESCRIPTION | EXEMPT STATUS | JUSTIFICATION |
|-----|-------|---------------------|---------------|---------------|
|     |       |                     |               |               |



| 1 | 1 | One-page letter dated September 17, 2002 from AUSA Susan J. Steele, District of New Jersey, to her client in the context of a litigation brought by Mr. Concepcion. | WIF: J2, b2, b5, b6, b7C | Exemption J2 is asserted to protect the document at issue, which originated from the USAO's Criminal Case File System and was compiled for criminal law enforcement purposes.

Exemption b(2) is asserted to protect a USAO paralegal's phone number. The information withheld is of a trivial nature and is used primarily for internal purposes. Moreover, its release could subject the paralegal to harassing communications and, thus, disrupt official business.

Exemption b(5) is asserted to protect this document as it consists entirely of attorney work product. The information contained in this document—which is a communication between an AUSA and her client in the context of ongoing litigation—reveals the AUSA's thoughts, impressions, opinions, theory of the case, litigation strategy and assessment of facts and issues relating to a case brought by Mr. Concepcion.

Exemption b(6) is asserted to withhold the name and other identifying information of the third party to whom this letter was sent. This exemption is invoked to protect the third party from embarrassment and harassment. Release of this document would shed no light on how the EOUSA performs its statutory duties.

Exemption b7(C) is asserted to protect the privacy of the third party to whom the AUSA sent the letter and who was implicated in litigation brought by Mr. Concepcion. The letter does not indicate that the party has waived his or her rights to privacy. Accordingly, the name of the third party has been withheld. Release of the name of the third party would violate the third party's privacy rights by revealing his or her identity.

Exempt information is so inextricably intertwined with any nonexempt information that any nonexempt information cannot be meaningfully segregated for release. |

| 2 | 9 | Nine-pages of Investigation Initiation Forms created by an AUSA for internal USAO use in connection with an Organized Crime Drug Enforcement Task Force. | W/H: J2, b2, b7C, b7E | Exemption J2 is asserted to protect the document at issue, which originated from the USAO's Criminal Case File System and was compiled for criminal law enforcement purposes.<br><br>Exemption b(2) is asserted to protect two AUSAs' telephone numbers which are trivial in nature, which are used primarily for internal purposes and whose release could subject the AUSAs to harassing communications and, thus, disrupt official business. Exemption (b)(2) is also asserted to protect the step-by-step investigative techniques discussed in the document at issue. Release of those step-by-step investigative techniques (which detail precisely how the FBI was to investigate the drug conspiracy involving Mr. Concepcion and others) could allow individuals involved in future drug conspiracies to alter their behavior and avoid detection and prosecution.<br><br>Exemption b(7)(C) is asserted to protect the names and other identifying information of law enforcement agents and potential third party criminal defendants. This exemption is appropriately asserted to protect those individuals from harassment, embarrassment and stigmatization. There is no indication that the third parties identified in this document have waived their rights to privacy. Accordingly, the names of those third parties have been withheld. Release of the names of the third parties would violate their privacy rights.<br><br>Exemption b(7)(E) is asserted to protect the step-by-step investigative techniques that were to be used during the investigation of Mr. Concepcion and others. Release of those step-by-step investigative techniques (which detail precisely how the FBI was to investigate the drug conspiracy involving Mr. Concepcion and others) could allow individuals involved in future drug conspiracies to alter their behavior and avoid detection and prosecution.<br><br>In this instance, the exempt information is so inextricably intertwined with any nonexempt information that it cannot be meaningfully segregated for release. |