UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

JUN 3 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Alberto Concepcion,                   :

            Plaintiff/Sovereign,      :

                                      :

    vs.                               :

                                      :

                                      :

FEDERAL BUREAU OF INVESTIGATION;      :
EXECUTIVE OFFICE OF THE UNITED        :
STATES ATTORNEYS; &                   :
U.S. DEPARTMENT OF JUSTICE;           :

            Defendants/Corporations.  :

OPPOSITION MOTION TO
COUNSELS OF RECORD, MOTION FOR
SUMMARY JUDGMENT

CIVIL ACTION NO. 07-1766(RMU)

---

PLAINTIFF'S, SECOND OPPOSITION MOTION/AFFIDAVIT/DECLARATION/
MEMORANDUM OF LAW/BRIEF OF FACTS OF GENUINE ISSUES
OF LAW IN RESPONSE TO COUNSELS OF RECORD MISLEADING/PERJURED
INTER ALIA MOTION FOR SUMMARY JUDGMENT

---

**NOW COMES,** Pro Se Plaintiff, Alberto Concepcion, the Sovereign, Se-
cured Party, Creditor, Holder-In-Due-Course, Trade Name Owner, & Record
Owner on behalf of STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, hereinafter
**"Concepcion, or CONCEPCION"**, waiving no powers, rights, and/or immunities
by the use of said **"private copyrighted statutes"** in the above entitled
case.

1. Concepcion, is of full age, & I am familiar with the **"FACTS"**
stated herein, with many incorporated exhibits, the filed FOIA Civil Com-
plaint Action, incorporated with its own exhibits [F-1 - F-128], the filed
Motion to Compel, incorporated with its own exhibits [D-1 - D-15], the
Plaintiff's Second Additional Request for the Production of Different Re-
cords, Documents, & etc., & the Plaintiff's, Motion for Summary Judgment,

inter alia being duly sworn, deposes, & says under penalty of perjury as follows;

2. CONCEPCION, is without Counsel, & is relying on <u>Haines v. Kerner</u>, 30 L.Ed 2d 652, at ¶ 1 (1972), The U.S. Supreme Court held: Pro Se Complaint to a less stringent standard... Also see <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, at ¶ 4 (11th Cir. 2005); & <u>White v. Kautzky</u>, 494 F. 3d 677, at ¶ 11 (8th Cir. 2007).

3. The named Defendants/Corporations, as well as Counsels of Record for the named Defendants/Corporations, herein **"are not"** involved in any military services, and/or activities; **"& are not"** infants, and/or incompetent individuals.

<u>STATEMENT OF THE CASE</u>

4. This is a Cause of Action, for the amount of Six Hundred Million [\$600,000,000.00] U.S. Dollars, under the Freedom of Information Act, hereinafter FOIA, pursuant to title 5 U.S.C. § 552, et seq., as amended, & the Privacy Act, hereinafter PA., for the **"full disclosure"** of the above agencies, offices, corporations, sub-agencies, and/or otherwise records, documents, files, data, & etc., **"for wrongfully withholding, inter alia, exculpatory records, documents, files, data, & etc., & for falsification of public records, inter alia"**, in which contained fraud, deceit, false information, & false pretents, inter alia, by the named Defendants/Corporations, in regard to Concepcion, & CONCEPCION, & Federal Criminal Case <u>99-6144-01</u>, & <u>99-753(AJL)</u>, hereinafter Case #<u>99-753(AJL)</u>. This Motion has been placed before this Court in good faith by the Plaintiff/Sovereign, in which he seeks Summary Judgment pursuant to the <u>Fed.R.Civ.P.</u>, Rule 56. <u>SEE</u>, Plaintiff's, Comp., at pg. 22, ¶ 74, therein.

5. The named Defendants/Corporations, are agencies, corporations, & etc., that can be sued pursuant to title 5 U.S.C. § 552(a)(4)(B), inter alia; & for damages, inter alia, **"for knowingly, & intentionally with- holding"** the requested filed Criminal Complaint(s), Arrest Warrants, Search Warrants, Lab Reports with said results, the Application(s) for the Wire Tap Authorizations, the Serial Numbers on the Recorded FBI Tapes of CONCEPCION, & his Co-Defendants, the 407 Forms of any, & all of CON- CEPCION'S, Co-Defendants, and/or otherwise Statements **[IF ANY];**

the Oath of Office, the Officer's Affidavit(s), and/or Employee's Affidavit(s), the Surety Bond(s), & D.C Code 11-7040, the Registrations of all the initial State, & Federal Government Employees who were in- volved directly, and/or indirectly in prosecuting Case #99-753(AJL), the Bid Bond(s), STANDARD form 24, put out by the U.S. General Service Admini- stration, hereinafter GSA, Performance Bond(s), standard form 25, put out by the GSA, Payment Bond(s), standard form 25A, put out by the GSA, the Millers Act Reinsurance, standard form 273 [CONTRACT], with the United States, the Millers Act Reinsurance, standard form 274, Bond(s), the Pay- ment, standard form 275, Bond(s), **"& THE MANDATORY REQUIRED BY LAW"**, No- tice of Acceptance of Criminal Jurisdiction, for where the alleged Feder- al Criminal Activities occurred within the City of Newark, New Jersey, in- ter alia;

in which said **"requested non-exempt"** records, documents, files, data, & etc., **"ARE RELEVANT, & ARE RELATED"** to Concepcion, & CONCEPCION, as well as Case #99-753(AJL), **"& ARE NOT"** exempt by any provisions within title 5 U.S.C. § 552 et seq. In Sellers v. Bureau of Prisons, 959 F.2d 307, at ¶ 4 (1992), The Cir. Court held: As long as information contained in agency's files is capable of being verified, then under PA., agency **"must"** take reasonable steps to maintain accuracy of information to as-

3

sure fairness of individuals, & if agency willfully, or intentionally
fails to maintain its records in that way, & consequently makes determina-
tion advance to individual, **IT WILL BE LIABLE TO THAT PERSON [CONCEPCION]
FOR MONEY DAMAGES**"; as in <u>Oppenheimer Fund Inc. v. Sander</u>, 57 L.Ed 2d 253,
at ¶ 6-7 (1978), The U.S. Supreme Court held: Parties may obtain discovery
regarding **"any matter"** not privilege, **"which is relevant"** to the subject
matter involved in the pending action... Also see Ex: A-1 - A-14, here-
with; & <u>Bivens v. Six Unknown Agents</u>, 29 L.Ed 2d 619, at ¶ 5, ¶ 13, & ¶
14 (S.Ct. 1971).

    The Defendants/Corporations, are agencies, offices, corporations, &
etc., within the meaning of title 5 U.S.C § 552(c), & (e), & are in pos-
session, & in control of the requested, & sought records, documents,
files, data, & etc., of which have been requested on numerous occasions by
both Concepcion, & CONCEPCION, & are the subject of this Cause of Action.
**SEE,** ¶ 5, herein; the <u>Fed.R.Civ.P.</u>, 28 § 3002(15)(A); & <u>Penhollow v.
Doane's Administrations</u>, 3 U.S. 54, 1 L.Ed 307 (1795).

    6. Here, & as of <u>June 18,2008</u>, CONCEPCION, attest that he has re-
ceived a maximum of 535 pgs. of FOIA records, & etc., from the named De-
fendants/Corporations, & a couple of other federal agencies [AS THE DEA, &
THE CUSTOMS, & BORDER PROTECTION], in which 345 plus pgs. of those FOIA
records, documents, files, data, and/or otherwise were records, & etc.,
**"THAT WERE NOT RELEVANT, AND/OR RELATED"** to CONCEPCION, and/or Case #<u>99-
753(AJL)</u>, as the remaining 100, & more pgs. of the received FOIA records,
& etc., **"WERE NOT"** the specified FOIA non-exempted requested records,
documents, files, data, & etc., that were requested by Concepcion, & CON-
CEPCION, in this Cause of Action, now before this Court.

## STATEMENT OF FACTS

**7.** The Plaintiff/Sovereign's, Civil FOIA Complaint Action, & Summons were served upon the named Defendants/Corporations, among others in-between Dec. 4,2007, through Dec.10,2007. **SEE,** Clerk's docket entry sheet for Civil Action #07-1766(RMU), at ¶ 10.

**8.** The answer to the Plaintiff/Sovereign's, Civil FOIA Complaint Action, was due on Feb. 8,2008; of which said due date is not including the five additional days that was granted by the District Court in regard to Counsels of Record **"first"** filed Motion for an Extention of Time, in which said new answer date was then due on Feb. 13,2008. **SEE,** Clerk's docket entry sheet for Civil Action #07-1766(RMU), at ¶ 15.

**9.** Then on Feb. 13,2008, Counsels of Record for the named Defendants/Corporations, filed a **"second"** Motion for an Extention of Time, along with **"Two Sworn Declarations"**, hereinafter Counsels 2nd Extention.

**10.** In Counsels 2nd Extention, at the top of pg. 2, & in both of the attached Sworn Declarations to the 2nd Extention, **"they all claimed"** that the Plaintiff/Sovereign, Alberto Concepcion, was charged with inter alia, **"conspiracy to distribute narcotics (HEROIN)"**. They further stated: Plaintiff/Sovereign, Alberto Concepcion, ultimately pleaded guilty to that charge [**SEE**, THE FED.R.CRIM.P., 18 § 3231, & 21 §§§§ 841, 846, 851, & 853], & was sentence to 325 months in prison, **"in which those falsehood statements, testimonies, & information"** that were made knowingly, intentionally, & willingly..... by Counsels of Record, & others are by Law in fact consider knowing acts of perjury generally, inter alia, to Honorable presiding Judge RMU, & acts of false declarations before the District Court of Columbia, inter alia. Here CONCEPCION, attest, & asserts that **"he was not"** indicted for distribution of heroin, as Counsels of Record, &

5

others claim in their Motions, & said Sworn Declarations; in which CONCEP-
CION, attest, & asserts that he in fact **"WAS INDICTED ON PURE LACTOSE, &
NOTHING MORE, IN WHICH HIS CONVICTION HAS NOTHING TO DO WITH THIS CIVIL
FOIA ACTION NOW BEFORE THIS COURT"**. Therefore, the named Defendants/Corpo-
rations, have been, & are continuing to commit falsification of public
records, invasion of Concepcion's, personal privacy, & the withholing of
the requested, & soughted records, documents, files, & data, inter alia.
**SEE**, ¶ 5, herein.

11. In Counsels of Record filed Memorandum of Points, & Authorities
in support of Defendants Motion for Summary Judgment, incorporated with
three (3) Declarations, & one (1) letter, hereinafter Counsels Summary
Judgment, they claim that they satisfied their obligations under FOIA, &
the PA., of which the Plaintiff/Sovereign, asserts that said mentioned
statements, and/or otherwise **"are in fact false"**. **SEE**, ¶¶ 5, & 6, herein.

12. In Counsels Summary Judgment, they mentioned, & relied upon nu-
merous issues in said Motion, inter alia, in which some are as follows:
[A] they mentioned drug conspiracy [PURSUANT TO THE FED.R.CRIM.P., 18 §
3231, & 21 §§ 841, & 846, UNDER THE FOOD, & DRUGS-CODE OF FEDERAL REGULA-
TIONS], **"over six (6) times"**; [B] they mentioned conspiracy to distribute
narcotics, heroin [PURSUANT TO THE FED.R.CRIM.P., 18 §§ 2, & 3231, & 21 §§
841, & 846, UNDER THE FOOD, & DRUGS-CODE OF FEDERAL REGULATIONS], **"over
three (3) times"**; [C] they mentioned drug related activities [PURSUANT TO
THE FED.R.CRIM.P., 21 §§ 841, & 846, UNDER THE FOOD, & DRUGS-CODE OF FED-
ERAL REGULATIONS], **"at lease once"**; [D] they mentioned Case #99-753(AJL)
[PURSUANT TO THE FED.R.CRIM.P., 18 § 3231], **"over eight (8) times"**; & [E]
they mentioned, inter alia, criminal investigation of Plaintiff/Sovereign,
involved in narcotices [PURSUANT TO THE FED.R.CRIM.P., TITLES 18, & 21; &

6

40 U.S.C § 255] **"over five (5) times"** [**SEE,** COUNSELS SUMMARY JUDGMENT PG. 17 [MIDDLE], PG. 24 [BOTTOM], PG. 28 [BOTTOM AT ¶ 18], PG. 34 [MIDDLE], & PG. 38 [MIDDLE].

Throughout Counsels Summary Judgment, they, & others **"continue to lean"** on CONCEPCION'S, false imprisonment, & continue to **"claim said pure lactose involved in Case #99-753(AJL), to be heroin"**. Here the Plaintiff/ Sovereign, in this Cause of Action, attest, & contends that his invasion of personal privacy-private rights of, have been violated by the Defendants/Corporations, do to their knowingly, intentionally, & willingly committed acts of falsification of public records, invasion of the Sovereign's, [Concepcion's], personal privacy, & the withholding of the requested, & soughted records, documents, files, data, & etc.; in which said statutes 18 § 3231, & 21 §§ 841, & 846, among others that were used to indict CONCEPCION, in Case #99-753(AJL), **"are in fact unconstitutional, & unpublished, inter alia"**. **SEE,** the Plaintiff's, Comp., at pg. 20, ¶ 68; & the Plaintiff's, Motion in response to mail unresponsive, at pgs. 2 - 5, ¶ 1 - ¶ 7, therewith.

13. The Plaintiff/Sovereign, has mentioned in his filed Motion/Affidavit/Memo. of Law/Application/Breif in support of his Request for Summary Judgment dated April 23,2008, at pg. 6, ¶ 14, in which states in part as follows: That prior to CONCEPCION, filing his FOIA applications-requests... **"the DEA had no records, documents, files, data, and/or otherwise in regards to Concepcion, or CONCEPCION, and/or Case #99-753(AJL)..."**, & that there was an investigation... that was conducted by the DEA agency against CONCEPCION, of which started on, or about Oct. 18,1994, but was closed sometime in 1997, **"IN WHICH WAS COMPLETELY UNRELATED TO CASE #99-753(AJL)"**.

14. Here the Plaintiff/Sovereign, is once again proving beyond a

reasonable doubt with Counsels [OWN] Summary Judgment, at pg. 29 [3. THE

DEA], & the Declaration of WILLIAM C. LITTLE JR., hereinafter LITTLE'S

Decl., filed with this Court on May 21,2008, attached to Counsels of Re-

cord filed Notice of Filing; LITTLE'S Decl., at pg. 3, ¶ 11, stated: After

review of the materials... DEA identified 74 pgs. out of the 608 pgs.

**"that were referred by the FBI..."**. The... DEA, & along with the remaining

534 pgs. were returned to the FBI by letter dated May 13,2008.

15. Then at pg 6, ¶ 8, in Mr. LITTLE'S Decl., he stated: This thresh-

old **"MUST"** be established by the FBI. **"Insufficient information"** was pro-

vided to the DEA [BY THE FBI]... Given the nature of the substance tested

by the DEA laboratory it is presumed that the information was gather in

the course of a criminal investigation, **"& IS MAINTAINED IN AN FBI CRIMI-**

**NAL CASE FILE"**. In Ex: B, at the bottom of pg. 1, attached to Counsels

Summary Judgment; the Chief Operation Unit Katherine L. Myrick, stated:

Further, DEA investigative records related to requester/plaintiff, **"DO**

**NOT INDICATE ANY ENTRY AFTER JUNE 10,1997"**. See, U.S. v. Johnson, 343 F.

2d 5, & 6 (2nd Cir. 1965); U.S. V. Chas. Pfizer, & Co. Inc. et al., 367 F.

Supp. 91, at ¶ 6 (S.D.N.Y 1973); & Johnson v. Louisiana, 32 L.Ed 2d 152,

at ¶ 1 (S.Ct. 1972).

16. Here the Plaintiff-Sovereign, attest, & asserts once again, &

makes respectfully clear to Judge RMU, that their is a clear distinction

between a Sovereign, & a Person, in which Counsels of Record **"HAVE NOT"**

produced any evidence, nor supporting case Law, and/or otherwise to refute

the Plaintiff/Sovereign's, facts in his filed Motion for Summary Judgment,

& now in points I, II, & III, herein, of which **"ARE SOME"** of the request-

ed, & soughted records, documents, files, data, & etc., in this Opposition

Motion for Summary Judgment presented by the Plaintiff/Sovereign, in his

Cause of Action, & are records, & etc., in regards, & related to Case #99-753(AJL), & were the statutes [18 § 3231, & 21 §§ 841, & 846, AMONG OTHERS] that were relied upon by the prosecutors involved in prosecuting CONCEPCION'S, **"fabricated federal criminal case [#99-753(AJL)]"**. In Quinon v. FBI, 86 F.3d 1222, at ¶ 9 (1996), The D.C Cir. Court held: When government misconduct is alleged as justification for disclosure under FOIA public interest is insubstantial, unless requester puts forward compelling evidence that the agency denying the request is engaged in illegal activity [**JUDICIAL NOTICE IS GIVEN: THE 74 PGS. OF LAB REPORTS THAT THE DEA ANALYZED, & RETURNED BACK TO THE FBI "ARE NOT" IN REGARDS TO CASE #99-753 (AJL), BUT IN FACT WERE FOR AN UNRELATED DEA INVESTIGATION (SEE, ¶ 13, HEREIN) AGAINST CONCEPCION, PRIOR TO THE FBI INVESTIGATION. SEE, PLAINTIFF'S, COMP., AT PG. 2, ¶ 4]**, & shows that the information sought is necessary in order to confirm, or refute evidence;

as in Nash v. Thielke, 743 F.Supp. 1301 (S.D.W.S. 1990), The Court held: The Plaintiff, was entitled to the officer's urine report **"from day of incident [SEE, PLAINTIFF'S, COMP., AT PGS. 2, & 3, ¶ 4 - ¶ 9] which might have been relevant"**. Also see Dept. of Justice v. Reporters Comm., 105 L.Ed 2d 744 (S.Ct. 1989).

17. The requested, & soughted public records mentioned in ¶ 5, herein, & those that are unmentioned in the FOIA applications-requests for the production of records, & documents by both Concepcion, & CONCEPCION, are those records, & etc., in which a government unit in whole, **"is required by Law to keep"**. Thats in case said records are requested by anyone, in order to prove different facts [**AS THE LAB REPORTS, INTER ALIA**], in which may be received as evidence **"IN ANY COURT"** as the exhibits attached herewith. The Plaintiff-Sovereign, asserts for the purposes of his

9

right-to-know Laws, includes decisions, of which establish rights, duties,
& obligations that compels Counsels of Record to produce said requests,
of which said records, & etc., are designed to remain as a memorial, or
permanent evidence of the matters to which Case #99-753(AJL), is related
to. Records, & etc., as the filed exhibits herewith **"are admissable"** in
this Cause of Action, & are relevant, & related records, documents, files,
data, & etc., to both Case #07-1766(RMU) [FOR THE REQUESTED TRIAL BY JURY],
& 99-753(AJL), as the prima facie facts of this case, inter alia, in which
said facts **"must be taken as true"**, until rebutted point by point, & issue,
by issue by the named Defendants/Corporations, and/or Counsels of Record.
See, Hamm v. Groose, 15 F.3d 110, at ¶ 2-3 (8th Cir. 1994); & Copper v.
Pate, 12 L.Ed 2d 1030 (S.Ct. 1964).

Therefore, said Defendants/Corporations, & Counsels of Record have
been, & are continuing to withhold relevant requested, & soughted records,
documents, files, data, & etc., & are continuing to commit acts of falsifi-
cation of public records, & invasion of the Sovereign's [Concepcion's],
personal privacy, inter alia. In Truitt v. Dept. of Justice, 897 F.2d 540,
at 542 (1990), The D.C Court held: Under FOIA an agency is **"obligated to**
**make promptly available records that are reasonably described in a written**
**request..."**. Also see Sellers v. Bureau of Prison, 959 F.2d 307, at ¶ 4
(D.C Cir. 1992); & Oppenheimer Fund. Inc. v. Sander, 57 L.Ed 2d 253, at ¶
6-7 (S.Ct. 1978).

### POINT  I
**OF THE FINDING OF FACTS FOR SUMMARY JUDGMENT**
**OF THE SOVEREIGNTY ESTABLISHMENT OF**
**THE FEDERAL COURTS INTER ALIA**

**18.** The Plaintiff/Sovereign's, understanding of the definition of a
Sovereign; in which is relevant, & is related to Civil Action #07-1766

(RMU), & is in fact as folows: The Sovereign, is a nonjuristic human being
a member of **"We The People"**. All of the Sovereign's, Rights come from
**"GOD"**, & not the State, and/or Federal Government-Corporations. The Sover-
eign, **"does not"** qualify as a **"person"** as defined by [STATUTES] Law. The
Sovereign, is independent, self-governing, & Lawful. The term Sovereign, &
to this particular extent means **"property"** herein, being the [SECURED PAR-
TY'S] Plaintiff's, body, mind, & all of his material possessions, & owner-
ship thereof.

19. Here the Plaintiff/Sovereign, Alberto Concepcion, is proving **"be-
yond a reasonable doubt"** that he was not indicted by any Federal Grand
Jury as required by Law, & as Counsels of Record mentioned in their 2nd
Extention, & as said Declarations attached therewith claimed; in which the
5th Amendment for the Const. of the United States held: No **"person"** shall
be held to answer for capital, or otherwise infamous  crime, unless on
presentment, or indictment of a Grand Jury... nor be deprived of life,
liberty, or property without due process of Law... In Kansas v. Colorado,
51 L.Ed 956 (1907), The U.S. Supreme Court held: The three Sovereigns as
[1] the United States, as the Federal Government; [2] the State Govern-
ments;  **"& [3] We The People"**. While Sovereign, powers are delegated to...
the Government, Sovereignty itself remains with the people. Alse see Art.
I, § I, ¶ 8, of the Const. for the State of New Jersey; & Yick Wo. v.
Hopkins, 118 U.S. 356, at 370 (1886)(Emphasis added).

20. Furthermore, the Plaintiff/Sovereign, asserts that if the U.S.
DISTRICT COURT OF [NEWARK] NEW JERSEY, hereinafter NJDC, presupposing
that it is duly constituted; were charging this **"Sovereign"** nonjuristic
man, it should have either served notice that it intended to do so, or
served this Sovereign, with the **"proper service of process"**. Concepcion,

asserts, & contends that the **"person"** named in the NJDC [& THE FOIA RE-
CORDS, DOCUMENTS, FILES, DATA, & ETC.] charging commercial instruments
[CRIMINAL COMPLAINT, ARREST WARRANTS, & INDICTMENT, INTER ALIA] is just
what it presumes to be, that of a **"federal government creation, & fiction
existing ONLY in the comtemplation of Law"**, of which this man does not
propose to ignore his birth, life, nor his future. However, **"respectfully"**
to the Honorable Judge in this Cause of Action, it must be made clear that
as a **"SOVEREIGN"**, the NJDC, if it were a Court of Law other then de facto,
it should have served this Sovereign, within the mandate Rules, & Proce-
dures of the Law. The Plaintiff/Sovereign, herein asserts that STRAW-MAN
[OF WHICH IS A COMMERCIAL NAME], & DEBTOR ALBERTO CONCEPCION, is a fic-
tion; however, that entity does, & is, the personal property of the Plain-
tiff/Sovereign, Alberto Concepcion.

21. It is also contended, & at issue that the Sovereign, **"CANNOT"** be
named merely as a person, or any person in a statute, but **"MUST"** be spe-
cified within the language of the statute, **"AS IT WAS HELD BY THE U.S. SU-
PREME COURT IN"** Will v. Michigan State Police, 105 L.Ed 2d 45, at 1c (19-
89), in which held: In common usage, the term **"person does not include the
Sovereign"**, & statutes employing the [WORD] are ordinarily construed **"to
exclude it"**. Citing Wilson v. Omaha Indian Tribe, 61 L.Ed 2d 153, at ¶¶
10-11; U.S. v. Copper Corporation, 312 U.S. 600, at 604 (1941); & U.S. v.
United Mine Worker of America, 91 L.Ed 884 (1947).

22. More importantly, this Sovereign, now being a Secured Party, has
declared, & certified his birthrights on the public record, although it is
true that Concepcion, came into this world as a Sovereign, & is now being
asserted. e.g., In Church of Sci. v. U.S. Dept. of Justice, 612 F.2d 417,
at 425 (9th Cir. 1978), The Cir. Court held: The word **"PERSON"** in legal

terminology is preceived as a general word... includes in its scope a variety of entities... citing title 1 U.S.C. § 1. Also see U.S. v. Fox, 94 U.S. 315, 24 L.Ed 192 (S.Ct. 1877).

23. Here the Plaintiff/Sovereign, asserts, & contends that a Court [AS THE NJDC, SEE, COUNSELS 2ND EXTENTION, AT THE TOP OF PG. 2, HARDY'S DECL., AT ¶ 5, ATTACHED TO COUNSELS 2ND EXTENTION, STEARNS DECL., AT ¶ 25, ATTACHED TO COUNSELS 2ND EXTENTION, & COUNSELS SUMMARY JUDGMENT, AT PG. 8, FN. 10] "HAS NO JURISDICTION" over a party not properly indicted by a Grand Jury; of which there can be no action, or criminal prosecution, and/or otherwise until someone has been formally accused of the act(s) constituting a criminal offense. SEE, Art. V. for the Const. of the United States; the New Jersey State Constitution, Art. I, § I, ¶ 8; & Hale v. Hankel, 50 L.Ed 652 (S.Ct. 1906).

24. The Plaintiff/Sovereign, asserts that he requested in both of his requests for the production of records, & documents, incorporated with the request for admissions for numerous records, & answers [SEE, ¶ 5, HEREIN], of which "some" were already requested by CONCEPCION, by way of his FOIA applications [SEE, EX: A-1 - A-14, ATTACHED HEREWITH], in which at this stage of this case is consider wrongfully withholding the required by Law filed Notice of Acceptance of Criminal Jurisdiction with the Governor of the State of New Jersey, inter alia, for Case #99-753(AJL), & are one of many non-exempt records, documents, files, & etc., that is required by Law to be produced regardless of CONCEPCION'S, [FALSE] imprisonment; a part from Counsels of Record et al., claiming that "they satisfied their obligations under FOIA [SEE, ¶ 11, HEREIN]", in which said lies to both Honorable presiding Judge RMU, & the Plaintiff-Sovereign, on many issues in regards to both Case #99-753(AJL), & this case throughout their Motions,

the filed Declarations, & etc., are considered acts of bad faith, & delay, inter alia.

25. The named Defendants/Corporations, & Counsels of Record have "failed" to produce the requested, & soughted [SEE,TITLE 40 U.S.C. § 255] non-exempt FOIA records, documents, files, & etc., of which are in fact related, & in regards to CONCEPCION'S, Case #99-753(AJL), in which Concepcion, asserts that the special provisions have been placed in the Constitution for the United States for cession of jurisdiction, & it is only in those places, or in those territories of the United States where the federal government "in any capacity" can exercise general jurisdiction. e.g., In U.S. v. Bevans, 4 L.Ed 404 (1818), The Court held: It is not the offense committed, but the place, in which it was committed. It has been well established in Law that all legislation is "prima facie territorial". Also see, America Banana Co. v. United Fruit Co., 213 U.S. 347, at 357-58 (1909).

26. In Pollard v. Hagan, 44 U.S. 212, at 221 (1845), The Court held: The "United States" has no Constitutional capacity to exercise municipal Sovereignty, or eminent domain within the limits of a State, except in cases, in which it is expressly granted. Id. at 223, Special provisions is made in the Constitution for cession of jurisdiction, & it is only in these places, or in territories of the United States where it can execcise general jurisdiction; as in New Orleans v. United States, 35 U.S. 622 (1836), The Court held: Unless there has been a transfer of jurisdiction... "THE FEDERAL GOVERNMENT POSSESSES NO LEGISLATIVE JURISDICTION OVER ANY AREA WITHIN A STATE"; as in Battle v. United States, 209 U.S. 36 (1908), The U.S. Supreme Court held: The United States has exclusive jurisdiction of the offense committed "upon land over which the State ceded jurisdic-

14

tion [**IN WHICH ARE SOME OF THE FOIA NON-EXEMPT RECORDS, DOCUMENTS, FILES, & ETC., REQUESTED, & SOUGHTED BY THE PLAINTIFF/SOVEREIGN, IN THIS CAUSE OF ACTION]"**. See, title 18 U.S.C. § 7.

The above soughted records, documents, files, & etc., that have been wrongfully withheld by the Defendants/Corporations, & others are in fact mandatory required by Law to be filed with the Governor of the State of New Jersey, in regards to Case #<u>99-753(AJL)</u>, in which is known as the Notice of Acceptance of Criminal Jurisdiction, of which said failure to produce said records, & etc., constitutes falsification of public records, inter alia, by said Defendants/Corporations, & others. In <u>U.S. v. King</u>, 781 F.Supp. 315, at 317, ¶ 1 (NJDC 1991), The Court held: Second, & more importantly, the U.S. Government **"has not"** shown that it has exerted such jurisdiction by filing the requisite notice with the governor under 40 U.S.C. § 255, **"<u>WHICH HAS BEEN REQUIRED BY CONGRESS, SINCE 1940</u>"**; as in <u>Adams v. United States</u>, 319 U.S. 312 (1943), The U.S. Supreme Court held: Since the Government **"has not"** accepted jurisdiction in the manner required by the act of 40 U.S.C. § 255; the Federal Court had **"no jurisdiction"** in Admas, proceeding. The Court further held: Unless, & until the United States had accepted jurisdiction over lands hereafter to be acquired as aforesaid **"<u>IT SHALL BE CONCLUSIVELY PRESUMED THAT NO SUCH JURISDICTION HAS BEEN ACCEPTED...</u>"**

In <u>Oppenheimer Fund. Inc. v. Sander</u>, 57 L.Ed 2d 253, at ¶¶ 6-7 (1978), The U.S. Supreme Court held: Parties may obtain discovery regarding any matter not privilege, which is relevant to the subject matter involved in the pending action... Also see <u>Bender v. Williamsport Area School District</u>, 89 .Ed 2d 501, at pg. 511, ¶¶ 2-4 (S.Ct. 1986); & <u>Dietemann v. Time, Incorporation</u>, 284 F.Supp. 925. (1968).

27. In short, Concepcion, **"has never"** knowingly, intentionally, and/or voluntarily surrendered his original status as a Sovereign, Common Law [C]itizen of the serveral States [New Jersey]; for the purpose of becoming a so-called 14th Amendment, federal [c]itizen who is subject to the juris-diction of the United States, or a person, or a straw-man, or a debtor, and/or any affiliation(s) with the State, and/or Federal Government-Corpo-ration(s).

### POINT II

28. The Plaintiff/Sovereign, is also pointing out to Honorable Judge RMU, that in Counsels 2nd Extention, at the top of pg. 2, in which also refered to Mr. Hardy's Decl., at ¶ 5, in which both the Motion, & Decl., held: Plaintiff.., was charged with possession with intent to distribute **"HEROIN [PURSUANT TO THE FED.R.CRIM.P., 21 §841(a)(1), UNDER THE FOOD, & DRUGS—CODE OF FEDERAL REGULATIONS]..."**; as in Hardy's Decl., at ¶ 5, held: Plaintiff.., was charge with possession... conspiracy to distribute nar-catics sell, distribution, or dispense [PURSUANT TO THE FED.R.CRIM.P., 18 §§ 2, & 3231, & 21 §§ 841, & 846, UNDER THE FOOD, & DRUGS—CODE OF FEDERAL REGULATIONS]... Then in Mr. Hardy's Decl., he stated: Plaintiff, plea guilty to conspiracy to distribute narcotics **"in violation of 21 U.S.C. §§ 841(a)(1), & 846..."**. Here the Plaintiff/Sovereign, bring to the Court's attention in Civil Action #07-1766(RMU), that Counsels of Record, & others are continuing to lean on CONCEPCION'S, conviction, even though they **"KNOW"** that the Controlled Substance Act, hereinafter CSA, established commercial regulatory statutes that were, & are still designed for legiti-mate businesses. SEE, ¶ 12, herein.

29. e.g., Said CSA, applys to physicians, manufactures, distributors, retailers, & all registrants, & such. See, the legislative history House

of Representatives, hereinafter H.O.R, Report No. 91-1444, U.S. Cong., & the Administration News at pgs. 4566, 4571-72, & 4590. The purpose of the CSA, 21 U.S.C § 801 et seq., was, & still is to provide a more flexible penalty structrue that existed under prior Law. Thus, Concepcion, avers that § 801 et seq., is for a **"person"**, or people registered, or people residing, and/or doing business within the jurisdiction of the United States in which Concepcion, a Sovereign, & Common Law [C]itizen of the State of New Jersey, **"is not included"**.

30. Accordingly, §§§§ 841, 846, 851, & 853, under which the Plaintiff-Sovereign, Alberto Concepcion [**SEE**, PGS. 10 - 13, ¶ 18 - ¶ 23, HEREIN], **"WAS MISTAKENLY"** convicted of, contains language, in which its application is limited. The phrase as authorized by subchapters §§§§ 841, 846, 851, & 853, specifically reflects to those who are registered, or a person(s), and/or citizens of the **"United States"**. Concepcion, asserts, & contends that he **"IS NOT"** licensed, or registered as doctors are required to be, nor is he a **"PERSON"**, nor did he ever live within the jurisdiction of the United States. **SEE**, Plaintiff's, Comp., at pg. 2, ¶¶¶ 5, 17, & 19, therein; & the Fed.R.Crim.P., 21 §§§§ 841(a)(1), 846, 851, & 853.

31. Here Concepcion, thus, advances with supporting authorities that **"no documentation"** can be shown by the named Defendants/Corporations, Counsels of Record for said named Defendants, and/or otherwise to say that the enumerated subsections, in which CONCEPCION, ET AL., were charged with is a promulgated published regulation, thus, these particular federal statutory provisions known as §§§§ 841, 846, 851, & 853, among others **"lack's the force, & affect of Law when mis-applied beyond the parameters of the United States"**. See, the Fed.R.Crim.P., Rule 54(c); 21 § 802(28); & Art. I, § 8, Cls. 17, of the Const. for the United States.

**32.** In <u>Foley Brothers v. Filardo</u>, 93 L.Ed 680 (1949), The U.S. Supreme Court held: It is well established as a principal of Law that all federal legislation **"applies only within the territorial jurisdiction of the United States"**, unless contrary intent appears. In order for a contrary intent to be facilitated, delegations of authority, & implementing regulations **"<u>MUST</u>"** be published in the Federal Register, & Code of Federal Regulations, hereinafter C.F.R. Fortunately, there is readily available method for discerning which statutes are at Large, & which statutes contained within the 50 titles of the United States possess either restricted application, or general applicability to the **"<u>SEVERAL STATES OF THE UNION</u>"**, & Population at Large. This method is through consulting the paralled table of Authorities, & Rules which begins at pg. 709, of the <u>1998</u>, index volume to the C.F.R.

**33.** The facts in this section are that the named Defendants/Corporations, Counsels of Record, & others **"<u>KNEW</u>"** that §§§ 841, 846, & 851, among other statutes **"<u>HAVE NOT BEEN PROMULGATED AS REQUIRED BY LAW</u>"**, in the Federal Register, & the C.F.R; & possess no published implementing authorities, of which publication is required pursuant to title 5 U.S.C. § 552(a)(1)(D), & (a)(2), among others.

**34.** The Administrative Procedures Act located at title 5 U.S.C. § 552 et seq., & the Federal Register Act located at 44 U.S.C. § 1501 et seq., has provided the means for determining statutes in any given **"<u>ACT OF CONGRESS</u>, & which act's are applicable within federal area, & which statutes have general applicability within the territories, enclaves, & insular possessions belonging to the United States"**. The Plaintiff-Sovereign, asserts, & contends that the United States Code in totality, were put together in the District of Columbia as **"<u>COPYRIGHTED PRIVATE INTERNA-</u>**

18

**TIONAL LAW"**, & IS applicable **"ONLY"** in the District of Columbia, & any other jurisdiction within the purview of its Military Dictatorship.

35. Pursuant to title 44 U.S.C. § 1505(a)(1), it is found **"that if a statute IS NOT PUBLISHED in the Federal Register, & C.F.R, the application of the statutory provision IS RESTRICTED to federal agencies, or persons acting in there capacity as agents, officers, employees, & etc., of the federal governent"**. Furthermore, positive Law is the Law of the United States. However, when federal statutory provisions **"ARE NOT DULY, & PROPERLY PROMULGATED IN ACCORDANCE WITH THE LAW"**, then such statutes lack the force of Law, & may not be applied capriciously, or arbitrarily. In U.S. v. Balint, 201 F.3d 928, at ¶ 12 (7th Cir. 2000), The Cir. Court held: A criminal statute **"IS UNCONSTITUTIONAL VAGUE"**, if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Also see, U.S. v. Caudle, 828 F.2d 1111 (1987); U.S. v. Widdowson, 723 F.Supp. 583 (1989); & U.S. v. Birnbaum, 55 F.Supp. 356 (1944).

36. In Hotch v. United States, 212 F.2d 280, at 283 (1954), The Court held: Under our system of Law **"NO ACT IS PUNISHABLE AS A CRIME"**, unless it is specifically condemned by the Common Law, or by a statutory enhancement of the legislative. Citing 22 C.F.R, Criminal Law, at 17. Therefore, the Administrative Procedures Act, & the Federal Register Act **"MUST"** be read as a part of every Congressional delegation of authority, unless specifically mentioned. These acts **"require publication"** irrespective of **"actual notice"** as a prerequisite to the issuance of a regulation making certain acts criminal. If certain acts have been made crimes by a duly enacted Law, then the knowledge of their contemplated administrative prescription **"CANNOT"** subject the informed **"PERSON [AS STRAW-MAN, & DEBTOR ALBERTO CONCEPCION]"**, to criminal prosecution, as in Case #99-753(AJL).

19

While ignorance of the Law is no defense for those highly educated Defendants/Corporations, Counsels of Record for said Defendants/Corporations, & other; it is conversely true that a Law, in which **"has not been duly enacted into positive Law, is not a Law of general application"**, & therefore, a **"person"** who does not comply with its provisions **"CANNOT BE GUILTY OF ANY CRIME(S)"**. <u>**SEE,**</u> Ex: A-15, & A-17, herewith; Counsels 2nd Extention, at the top of pg. 2; & Art. IV, § VII, ¶ 8, of the Const. of the State of New Jersey.

37. In <u>U.S. v. Mursky</u>, 4 L.Ed 2d 423, at ¶ 6 (1960), The U.S. Supreme Court held: Once promulgated the regulations called for by the statutes itself, have the force of Law, & violations thereof incur criminal prosecution, just as if all the details have been incorporated into the Congressional language. **"THE RESULT IS THAT NEITHER THE STATUTE, NOR THE REGULATION ARE COMPLETE WITHOUT THE OTHER, & ONLY TOGETHER DO THEY HAVE ANY FORCE, & EFFECT"**. Therefore, the construction of one necessarily involves the construction of the others; & in the context of a criminal prosecution the Rules of strict construction **"<u>MUST</u>"** be applied in the interpretation of any administrative regulation to which the consequences attached under the statutes authorizing the promulgation of the regulation, as well as the construction of the statutes. See, <u>Opponheimer Fund. Inc. v. Sander</u>, 57 L.Ed 2d 253, at ¶ 6-7 (S.Ct. 1978).

38. In <u>U.S. v. Two Hundred Thousand Dollars</u>, 590 F.Supp. at ¶ 9 (1984), The Court held: The publication of a Rule in the Federal Register made **"obligatory"** by title 5 U.S.C. §552(d), relates back to title 5 U.S.C. § 552(a)(1)(D), **"which requires that each agency [AS THE DEA] shall"** separately state, & currently publish in the Federal Register **"ALL"** substantive Rules of general applicability... citing <u>Rowell v. Andrus</u>, 631

F.2d 699, at ¶ 1 (1980). In <u>Quinon v. FBI</u>, 86 F.3d 1222, at ¶ 9 (1996), The D.C Cir. Court held: When government misconduct is alleged as justification for disclosure under FOIA public interest is insubstantial, unless requester **"puts forward"** compelling evidence that the agency denying the request is engaged in illegal activity, & shows that the information sought is necessary in order to confirm, or refute evidence. <u>SEE</u>, Ex: A-17 - A-29, herewith.

## POINT III

39. Here the Plaintiff/Sovereign, obtained additional evidence, inter alia, from his extensive research[<u>SEE</u>, PLAINTIFF'S, COMP., AT ¶¶ 39, & 74; & ¶ 12, HEREIN], in which indicated that the statutes that the NJDC, & others used [FALSIFICATION OF FOIA PUBLIC RECORDS, & THE INVASION OF THE SOVEREIGN'S, PERSONAL PRIVACY, INTER ALIA] to attain its **"bogus jurisdiction"**, inter alia, **"were never"** enacted into positive Law, **"& ARE IN FACT** **<u>UNCONSTITUTIONAL ON THEIR FACE"</u>**; therefore, being void ab initio, in which the named Defendants/Corporations, Counsels of Record for said Defendants/ Corporations, & others are aware of these facts in this section, as well as in points I, & II, herein.

The **"unrebuttable evidence"** known as the attached exhibits herewith, & the many Court decisions herein, inter alia, supports the Plaintiff-Sovereign's, facts, & established Laws; as well as this Opposition Motion/ Affidavit/Declaration/Memo. of Law/Brief of Facts of Genuine Issues of Law... pursuant to the <u>Fed.R.Civ.P.</u>, Rule 56(e). Both Concepcion, & CONCEPCION, are being held against there will in violation of both the Constitution of the United States, & the Constitution for the State of New Jersey, inter alia, of which they **"have not"** committed no crime as a matter of Law. <u>SEE</u>, PLaintiff's, Comp., at pg. 22, ¶ 74.

**40.** The Plaintiff, asserts that the NJDC, exceeded its jurisdiction over CONCEPCION, & Case #99-753(AJL), & had no authority to indict, hold, impose a prison sentence, and/or otherwise against him, of which CONCEPCION'S, incarceration has nothing to do with this FOIA Cause of Action, now before this Court. The Plaintiff/Sovereign, is in good-faith attempting to obtain many wrongfully withheld records, documents, files, data, & etc., from the named Defendants/Corporations [SEE, ¶ 5, HEREIN] & others in regards to both Concepcion, & CONCEPCION, & Case #99-753(AJL). Said **"FACTS"** are, because Public Law 80-772, **"was never enacted into positive Law [OF WHICH ARE SOME OF THE SOUGHTED RECORDS, & ETC, IN THIS FOIA CIVIL ACTION. SEE, OPPENHEIMER FUND. INC. V. SANDER, 57 L.ED 2D 253, AT ¶¶ 6-7 (1978)]",** in which the NJDC, relied upon the Fed.R.Crim.P., 18 § 3231, for its **[BOGUS]** jurisdiction over CONCEPCION, & Case #99-753(AJL), of which is the **"only"** statute, in which gave the NJDC, jurisdiction to entertain said bogus criminal prosecution in Case #99-753(AJL).

Therefore, since 18 § 3231, gave the NJDC, jurisdiction over CONCEPCION'S, **"fabricated federal criminal case";** the NJDC, had no business entertaining Case #99-753(AJL), even under a statute that is, or was enacted later as the **"UNPUBLISHED"** 1970, drug statutes under titles 21 §§§§ 841, 846, 851, & 853, among others [OF WHICH ARE UNCONSTITUTIONAL. SEE, PG. 20, ¶ 38, HEREIN].

<div align="center">

### HISTORY, & FACTS
### OF PUBLIC LAW 80-772

</div>

**41.** The Plaintiff/Sovereign, asserts, & contends for the purpose of his, & this Opposition Motion for Summary Judgment, inter alia; that pursuant to Public Law 80-772 [THE CODIFICATION OF TITLE 18], that it was introduced, & passed by the H.O.R, during the 1st Session of the 80th Congress as House Report Number, hereinafter H.R. 3190, entitled as Crimes, &

<div align="center">22</div>

Criminal Procedures, of which H.R. 3190, differed from Five... Bills which ... preceded it.., because it constituted a revision, as well as a codification of the Federal Laws relating to said Crimes, & Criminal Procedure. **SEE**, Ex: A-30, & A-31, herewith.

42. The Bill prior to being known as the Federal Crimes, & CriminaL Procedure-Public Law 80-772, **"was first introduced"** in the H.O.R, as H.R. 2200, during the 79th Congress, & passed the H.O.R, unanimously, & was referred to the Senate Committee on the Judiciary on July 16,1946, in said 2nd Session of the 79th Congress, **"but never passed said Senate, & died when the 79th Congress adjourned sine die"**. **SEE**, Ex: A-31, herewith; & the 92nd Congressional Record, hereinafter Cong. Rec. pgs. 9122, & 1067 (FOR JULY 16,1947).

43. Said H.R. Bill 3190, was intended [1] to revise, & compile **"ALL"** of the criminal Law(s), [2] **"to restate, & consolidate"** existing statutes, [3] to repeal, absolete, supersede, redundant, & repitious statutes, [4] to coordinate the criminal code with the Fed.R.Crim.P., formerly enacted, & [5] to clarify, & harmonize penalties of the **"many acts"** passed by Congress, of which were found to be almost identical. Id. The Bill was ordered to be engrossed, & read a **"THIRD TIME, & FINALLY PASSED THE HOUSE ON MAY 12,1947"**. **SEE**, Ex: A-32, & A-33; & The Journal of the H.O.R, for May 12,1947, at pgs. 343-44.

Said Bill [WITH SOME AMENDMENTS] passed the H.O.R, 38 to 6, on May 12,1947, & was referred to the Senate Committee on the Judiciary the next day in the 1st Session of the 80th Congress. **SEE**, Ex: A-30, & A-31, **specifically** Ex: A-31 (SHOWING H.R. 3190's **ONLY PASSAGE** BY THE H.O.R, ON MAY 12,1947; OF WHICH WAS SENT TO THE SENATE, & REFERRED... TO THE COMMITTEE ON THE JUDICIARY. **ALSO SEE**, Ex: A-34, herewith; 93rd Cong. Rec. 5121 (FOR

23

MAY 13,1947); Journal of the Senate, at pg. 252; & fn. 1, below.

As passed, & enrolled by the H.O.R, H.R. 3190, included at § 3231, **"Subtitled District Courts",** in which held as follows: Offenses against the United States shall be cognizable in the District Courts of the United States, but nothing in this title shall be taken away, or impair the jurisdiction of the Courts of the several States under the Laws thereof. See, H.O.R, at pg. 307, § 3231; & U.S. v. Sasscer, 558 F.Supp. 33, at pg. 34 (1982).

44. The Plaintiff, in this Cause of Action, attest, & asserts that there is a clear distinction between a Citizen of the 50 States [American Citizen], & a citizen of the United States [Federal citizen], in which the U.S. Supreme Court has Ruled on **"THIS FACT"** more than once, & have came up with the same result. As in Law each word, & each use of the word including its capitalization as ALBERTO CONCEPCION [SEE, ¶¶ 18 - 23, HEREIN], or lack of capitalization **"has a distinct legal meaning".** Concepcion, asserts, & contends that the State Citizenship carries with it the full protections of the Const. of the United States, & the Const. of the State of New Jersey, in this matter, of which said Sovereignty is a **"GOD-GIVEN"** unalienable Right to life, liberty, & the pursuant of happiness, inter alia; **"of which do not come from the State, and/or Federal Government-Corporations".** The case Law surrounding the 13th, & 14th Amendments all ring with the same massage; these Amendments **"DID NOT"** change the status

---

FN. 1/ The Senate Journal [AT PG. 252] for May 13,1947, was approved by the Senate on May 14,1947, & the House Journal for May 12,1947, was approved by the House on May 13,1947. See, House Journal, at pg. 346. The Journals of the Two Houses **"are admissible as evidence when properly certified".** Also see, 28 U.S.C. § 1736; 28 U.S.C. § 2072(a), & (b); House Doc. No. 355; 59th Cong., 2nd Session; & Hinds Precedents of the H.O.R, § 2810, at pg. 34 (G.P.O 1907).

of the Common Law Citizenship of the Citizen of the several States of the Union. See, <u>Slaughter-House Cases</u>, 21 L.Ed 394 (1873); <u>Twining v. New Jersey</u>, 53 L.Ed 97 (1908); <u>People v. Washington</u>, 36 C. 658, at 661 (1869); <u>Freanch v. Barber</u>, 45 L.Ed 879 (1901); & <u>Mackenzic v. Hare</u>, 60 L. Ed 297 (1915).

**45.** The Plaintiff, asserts that upon President Truman's, proclamation, Congress reconvened on <u>Nov. 17,1947</u>, & the 1st Congress of the 80th Congress adjourned sine die on <u>Dec. 19,1947</u>, **"without the Senate passing H.R. 3190"**. In <u>Kennedy v. Sampson</u>, 511 F.2d 430, at pg. 444, fn. 4 (1979), The D.C Cir. Court held: The Senate, & the H.O.R, adjourned on <u>July 27, 1947</u>, under a **"conditional final adjournment resolution"**, S. Con. Res. 33; 93 Cong. Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until <u>Jan. 2,1948</u>, unless recalled in Session earlier by specified Senate, & House leaders. In effect, the ajournment was a **"sine die adjournment, & not an intrasession adjournment"**. On <u>Nov. 17, 1947</u>, Congress convened pursuant to proclamation of President Truman, & adjourned sine die on <u>Dec. 18,1947</u>. The President pocket vetoed 19 Bills presented to him after the adjournment of <u>July 27,1947</u>. <u>SEE</u>, Ex: A-35 - A-40, herewith.

## H.R. 3190, IN THE SECOND SESSION
## OF THE 80TH CONGRESS

**46.** The Plaintiff, asserts pursuant to numerous records, documents, case Law, & etc., that the Senate Committee on the Judiciary reports of the amendments to H.R. 3190, dated <u>June 14,1948</u>, under Senate Report 1620 [<u>SEE</u>, FN. 2, BELOW], in which contained **"a large volume of amendments"**,

_____
**FN. 2/** The Senate Journal [AT PGS. 461-62] was approved on <u>June 14, 1948</u>.

& the new <u>Fed.R.Crim.P.</u>, in which keyed to the Bill, & were reflected in part II, of title 18; heralding that, upon passage of the amended Bill, **"uncertainty will be ended"**, of which the Senate wanted **"the amendments adopted en bloc"**, including a new jurisdiction section for title 18, of which the report contained only the proposed amendments. See, 94th Cong. Rec. 8721; & Senate Report No. <u>1620</u>, at pgs. 1, & 4.

Mysteriously, however, near the end of the 2nd Session of the 80th Congress on <u>June 14,1948</u>, H.R. <u>3190</u>, surfaced in the Judiciary Committee Amendments, in the Senate, **"as if it had never died with the sine die ad-jourment in <u>1947</u>"**; or as if it was passed once again by the H.O.R, in <u>1948</u>. See, 94th Cong. Rec. 8075 (FOR JUNE 18,1946); & Senate Journal, for <u>June 14,1948</u>, at pg. 452.

**47.** The amendments were considered, & agreed to an en bloc, & from there **"ordered to be engrossed"**. See, 94th Cong. Rec. pgs. 8721-22 (FOR JUNE 18,1948); & Senate Journal, for <u>June 18,1948</u>, at pg. 506 [OF WHICH H.R. 3190, "AS AMENDED", PASSED THE SENATE]. It was moved that **"the Se-nate insist upon its amendments"** by the House [IN THE 94TH CONG. REC. 8722]; **"& ordered that the Secretary request the concurrence of the H.O.R, in the amendments"**. See, House Journal, for <u>June 18,1948</u>, at pg. 688; Se-nate Journal, at pg. 506; & fn. 3, below.

**48.** At that time the House received the proposed amendments, **"& the Clerk read the Senate amendments collectively"** into the record [SEE, 94TH

---

FN. 3/ The House Journal [AT PG. 714] was approved on <u>June 18,1948</u> (ON JUNE 19,1948, APPROVING JOURNAL FOR **"LEGISLATIVE DAY OF... JUNE 17, 1948"**. E.G., CALENDAR DAY OF JUNE 18,1948); Id. at pg. 669 (SHOWING FRI-DAY JUNE 18,1948, **"AS LEGISLATIVE DAY OF THURSDAY, JUNE 17,1948"**); & The Senate approved its Journal for <u>June 18 - 20,1948</u>. See, Senate Jour-nal, for <u>July 26,1948</u>, at pg. 593.

CONG. REC. 8864-65, FOR JUNE 18,1948; & HOUSE JOURNAL, FOR JUNE 18,1948, AT PG. 704 (IN WHICH SAID SENATE AMENDMENTS WERE CONCURRED IN)] with which the House concurred. Even though the House agreed to the amendments of... H.R. 3190 [SEE, SENATE JOURNAL, FOR JUNE 18,1946, AT PG. 510]; **"no action was taken in regards to H.R. 3190, as amended [SEE, EX: A-41 - A-46]".** The Journal of the H.O.R, is devoid of any veto on H.R. 3190, itself on June 18,1948, & thereafter through adjournment on June 20,1948. Moreover, the official historical chart of H.R. 3190, clearly shows the **"ONLY"** passage by the H.O.R, occurring on May 12,1947, & specifically references to by the Plaintiff-Sovereign, in the exhibits attached herewith, of the recorded date, in which the House passed the Bill. **SEE,** Ex: A-31; & A-47 - A-50, herewith. In Quinon  v. FBI, 86 F.3d 1222, at ¶ 9 (1996), The D.C Cir. Court held: When government misconduct is alleged as justification for disclosure under FOIA public interest is insubstantial, unless requester **"puts forward"** compelling evidence that the agency denying the request is engaged in illegal activities, & shows that the information sought is necessary in order to confirm, or refute evidence. Also see, Counsels Summary Judgment, at the top of pg. 33, of which held:

an AUSA's legal research, & portions of the Fed.R.Crim.P., both of which were compiled during the course of the prosecution of Plaintiff..; of which these facts herein presented by the Plaintiff/Sovereign, in point III, are relevant, & are in regards, inter alia, to CONCEPCION, & Case #99-753(AJL), & as mentioned in Counsels Summary Judgment, at pg. 33. Also see, ¶¶ 5, & 12, herein; Sellers v. Bureau of Prisons, 959 F. 2d 307, at ¶ 4 (1992); & Oppenheimer Fund. Inc. v. Sander, 57 L.Ed 2d 253, at ¶ 6-7 (S.Ct. 1978).

**CONGRESS AGREED BY RESOLUTION, TO CONTINUE**

LEGISLATIVE BUSINESS BY A SINGLE OFFICER OF EACH HOUSE
DURING ADJOURNMENT IN VIOLATION, OF THE CONSTITUTION
OF THE UNITED STATES, INTER ALIA

**49.** On June 19,1948, the House submitted, & agreed to concurrent re-
solutions H. CONG. RES. 218, & 219, & requested concurrence by the Senate
House Journal, of June 19,1948 [AT PGS. 771-72, THEREIN], & Senate Jour-
nal, of June 18,1948 [AT PG. 577, THEREIN]. The Senate then passed with-
out amendment, these concurrent resolutions of the House [SEE, 94TH CONG.
REC. 9349; & FN. 4, BELOW]; of which H. Cong. Res. 218, provided adjourn-
ment of the two Houses of Congress until Dec. 31,1948. See, H. Cong. Res.
218, 2nd Session, 80th Congress (FOR JUNE 20,1948.), 62 Stat. at pgs. 1435-
36; & H. Cong. Res. 219, **"authozized the signing of enrolled Bills follow-
ing adjournment...".**

**50.** The Plaintiff/Sovereign, asserts pursuant to numerous exhibits
filed in his Cause of Action, & in this Oppositon Motion for Summary Judg-
ment, now before this Court, as well as H. Cong. Res. 218, that Congress
adjourned on June 20,1948 [SEE, 94TH CONG. REC. 9169, & 9348; AS WELL AS
THE HOUSE JOURNAL, FOR JUNE 20,1948, AT PG. 775]. Both Houses reconvened
on July 26,1948, pursuant to a proclamation of President Truman. See, Se-
nate Journal, for July 26,1948, at pg. 598 (SHOWING RECONVENTION); House
Journal, for July 26,1948, at pgs. 792-93; & fn. 5, at pg. 29, herein.
**ALSO SEE,** Ex: A-51, & 52, herewith.

**51.** In accordance with the H. Cong. Res. 218, the 2nd Session of the
80th Congress [CONDITIONALLY] adjourned on June 20,1948, with H.R. 3190,

---

     **FN. 4/** The House sat from June 19, through June 20,1948, adjourn-
ing at 6:56 a.m.; House Journal, of June 19,1948, at pg. 775, & approved
by the Journal. See, House Journal, for July 26,1948, at pgs. 792-93 (RE-
CONVENTION BY PRESIDENTIAL PROCLAMATION).

still to be signed by the Speaker of the House, & the President pro tem-
pore of the Senate after the adjournment by the H. Cong. Res. 219. After
the **"adjournment of June 20,1948"**, that Bill die, because the adjournment
was a sine die adjournment, & Congress didn't return within the time re-
quired, in order to pass the alleged Bill. In Art. I, § 5, Cls. 1, of the
Const. for the United States held: Each House **"shall"** be the Judges of
the Elections, Returns, & Qualifications of its own Members, **"& Majority
of each shall constitute a QUORUM to do business"**; but a smaller Number
may adjourn from day to day, & may be authorized to compel the Attendance
of absent Members... The 80th Congress had some **"435 Members"**. On May 12,
1947, when H.R. 3190, was alleged to had been in the H.O.R, there were
**"ONLY 44 MEMBERS PRESENT"**, of which this Number [44 MEMBERS] **"does not
constitute a QUORUM of Votes for the passage of a Bill"**.

    52. In Art. I, § 5, Cls. 4, of the Const. for the United States
held: Neither House, during the Session of Congress **"shall"**, without the
Consent of the other, **"ADJOURN FOR MORE THAN THREE [3] DAYS"**, nor to any
other Place then that, in which the Two Houses **"shall"** be sitting. The
Plaintiff-Sovereign, asserts, & contends that H.R. 3190, was alleged to
have been passed [ON JUNE 25,1948], after the June 20,1948, adjournment,
**"meaning that said Bill [H.R. 3190] was passed five [5] days after it
died, & on a day [JUNE 25,1948], WHEN CONGRESS WAS NOT IN SESSION, to do
business"**; a part from this fact, H.R. 3190, is now even more suspicious,
do to my understanding, that each of the H.R. Number's **"are only used
once"** by Members of the H.O.R, & the United States Senate; of which it is
**"UNCONSTITUTIONAL"** for either, and/or both Houses to sign a Bill, speci-

---

      FN. 5/ The House Journal [AT PG. 797], was approved on July 27,
1948; & the Senate Journal [AT PG. 593], was approved on July 27,1948.

fically H.R. 3190, **"after the final adjournment of the 80th Congress on June 20,1948"**. In Kennedy v. Simpson, 511 F.2d 430, at pg. 444, fn. 5 (1974), The D.C Cir. Court held: The Senate, & H.O.R, adjourned on June 20,1948, under a **"conditional final adjournment resolution"**, H. Cong. Res. 218; 94th Cong. Rec. 9158. Pursuant to the resolution, the **"TWO HOUSES"** were to stand in adjournment until Dec. 31,1948, unless recalled into Session earlier by specified Senate, & House leaders. In effect the adjournment was a sine die adjournment, **"not an intrasession adjournment"**. On July 26,1948, Congress convened pursuant to a proclamation of President Truman. The President pocket vetoed 14 Bills presented to him after the adjournment of June 20,1948. See, 94th Cong. Rec. 8079 (FOR JUNE 14,1948); 94th Cong. Rec. 9349 (FOR JUNE 19,1948); & Art. I, § 7, Cls. 2, for the Const. of the United States.

53. It was only after this [CONDITIONAL] final adjournment of the 2nd Session of the 80th Congress, & as authorized by the H. Cong. Res. 219, that the Speaker of the House, & President pro tempore of the Senate signed the enrolled H.R. 3190, & presented it to President Truman, on June 23,1948, for the President to sign, & enrolled the Bill into Law on June 25,1948. It is alleged that title 18 [**SEE**, ¶¶ 10, & 12, HEREIN], was to have been enacted on Friday June 25,1948. The issue is that, there are **"NO ACTUAL RECORDS"** [OF WHICH ARE SOUGHTED FOIA RECORDS, & ETC., IN REGARDS TO CASE #99-753(AJL). **SEE**, ¶ 40, HEREIN], that can be provided by the named Defendants/Corporations, Counsels of Record, and/or otherwise to prove the statute 18, was in fact voted into positive Law [OF WHICH IT HAS BEEN CONFIRMED THAT TITLE 21 §§§§ 841, 846, 851, & 853, AMONG OTHER **"WERE NOT"** ENACTED INTO POSITIVE LAW. **SEE**, ¶¶ 36, & 38, HEREIN]. The records, & etc., known as **"some"** of the exhibits herein are showing that the Bill of

H.R. 3190, was originally introduced in the H.O.R, on April 24,1947, & en-
acted into positive Law on Friday June 25,1948; but what if the Bill [TI-
TLE 18] was voted on by one House, & not the other, but was still allowed
to become a Public Law, would that be a violation of Art. I, § 7, Cls. 2,
of the Const. for the United States, "OF COURSE". SEE, Ex: A-31; & 94th
Cong. Rec. 9354, 9365, & 9367.

54. The face of the engrossed Bill, as signed by the 80th Congress,
shows that the engrossed Bill was passed, & signed in the 80th Congress
in the 1947, Session by the H.O.R. However, the enrolled Bill, in which
actually placed Public Law 80-772, into Law was in fact "altered" from the
engrossed Bill [IN WHICH SHOWS A DATE OF ENROLLMENT IN 1947, IN THE 1ST
SESSION OF THE 80TH CONGRESS], "as to make it appear as if it passed with
both Houses in 1948", during the 2nd Session of Congress, thus, rendering
it a "Fraud, Forgery, & Unconstitutional, Inter Alia". See, National Ar-
chives, & Records Administration; Engrossed Bill; Enrolled Bill; Public
Law 80-772; & the mentioned Congressional Records herein, inter alia.

55. The Plaintiff/Sovereign, asserts, & contends that "no valid en-
actment clause exists for Public Law 80-772", pursuant to title 1 U.S.C.
§ 101, which held: The enacting clause of all Acts of Congress "shall" be
in the following forms; be it enacted by the Senate, & H.O.R, of the uni-
ted States of America, in Congress assembled. H.R. 3190, died sine die in
the 1st Session of the 80th Congress, "& was not reintroduced as a new
Bill, or even as the old Bill in the House in the 2nd Session of the 80th
Congress". Therefore, the Fed.R.Crim.P., § 18, "DID NOT" lawfully pass
both Houses [SEE, ¶ 12, HEREIN]. It also was not enacted in the Congress
assembled, as it was signed into Law by the President pro tempore of the
United States Senate, & Speaker of the House; "ONLY AFTER CONGRESS AD-

**JOURNED".** The Plaintiff, asserts that a review of the Congressional re-
cords of the 80th Congress shows that no record vote occurred by the House
in 1948. Therefore, no Law exists under title 18; in which there exists
**"no certificate"** showing that the Bill was truely enrolled, as was re-
quired by the President pro tempore of the Senate, & as shown by the Con-
gressional Records.

   56. Here the Plaintiff/Sovereign, asserts, & contends that statute
18 § 3231 [**SEE,** ¶ 40, HEREIN], was introduced in the 1st Session of the
80th Congress as part of a **"faulty"** H.R. 3190, & Public Law 80-772. The in
toto Rule for legislation requires that when **"ANY PART"** of a Bill is dead,
**"the entire Bill is dead, in which there are no exceptions".** Since § 3231,
**"IS DEAD",** the only possible jurisdiction for the Court, as the NJDC, to
hear **"any criminal prosecution",** must revert back to the 1940 statute of
18 U.S.C. §§ 546, & 547 [SEE, FN. 6, BELOW]. However, that statute **"only
allows"** the prosecution(s) to prosecute the crimes defined in those stat-
utes, & since CONCEPCION [ET AL.] **"was not"** given fair warning [AS RE-
QUIRED BY BOTH THE STATE OF NEW JERSEY, & U.S. CONSTITUTIONS] related to

   **FN. 6/** The **Fed.R.Crim.P.,** 18 § 3231, held: The Dist. Courts of the
United States shall have original jurisdiction exclusive of the Courts of
the States, of all offenses against Laws of the United States. Nothing in
this title shall be held to take away, or impair the jurisdiction of the
Courts of the several States under the Laws thereof (JULY 25,1948, CH.
645, 62 STAT. 825). **REVISION NOTE THEREIN HELD:** This Section was formed
by combinging §§ 546, & 547, of title 18 U.S.C., 1940 ed., with section
588(d), of title 12 U.S.C., Banks, & Banking with no charge of substance.
Also see Jurisdiction over Federal Areas within the States; the New Jer-
sey State Annotate for Jurisdiction, 52:30-1, & 2; title 40 U.S.C. § 255;
pgs. 13 - 16, ¶¶ 23 - 27, herein; & Ex: D-6 - D-13, ¶¶ 1 - 34, therein
attached to the Plaintiff/Sovereign's, Motion to Compel. Also see the
Plaintiff's, Comp., at pgs. 17 - 19, ¶ 61 - ¶ 64, therein.

that, and/or those specific statutes [**SEE**, PLAINTIFF'S, COMP., AT ¶ 5; & COUNSELS 2ND EXTENTION, AT THE TOP OF PG. 3]. The Plaintiff-Sovereign, asserts pursuant to the report of the House Committee on Judiciary [80TH CONGRESS, 1ST SESSION], in which held: This section 3231, was formed by combining §§ 546, & 547, of title 18 U.S.C., 1940 ed., with § 588(d), of title 12.

<div align="center">

**DEFENDANT U.S. DEPT. OF JUSTICE & OTHERS
KNEW THAT THE ENACTING CLAUSE OF
PUBLIC LAW 80-772, WAS FALSE WHEN SIGNED**

</div>

57. Public Law 80-772, stated that the enactment proceeded **"by the Senate, & H.O.R"**, of the united States of America, in the Congress assembled [**SEE**, THE NATIONAL ARCHIVES, & RECORDS ADM., H.R. 3190, AS SIGNED INTO PUBLIC LAW]; each signatory knew that neither House legislatively existed at the time, & that the legislative process had ceased within the terms of Art. I, § 5, Cls. 7 [ON JUNE 20,1948], of the Const. for the United States. However, that Bill as just mentioned was never certified as enrolled & was surreptitiously signed by the Speaker of the House, & President pro tempore of the Senate under the purported authority of a concurrent resolution agreed to by a Congress denounced by President Truman, as a body dominated by men with a dangerous lust of power, & privilege [**SEE**, ENCYCLOPEDIA AMERICANA 175 (2005)], **"without Quorums"** of the respective Houses sitting; of which that Bill **"was mistakenly signed by the President of the United States, <u>AFTER IT WAS MISREPRESENTED TO HIM</u>"** by solitary officers as a Bill passed by both Houses, of which was impossible, **"<u>SINCE CONGRESS WAS NOT IN SESSION</u>"**.

58. The Plaintiff/Sovereign, asserts for the purpose of this Opposition Motion for Summary Judgment, that H.R. 3190, **"is unconstitutional"**

<div align="center">33</div>

on its face, & the NJDC, **"never had jurisdiction"** [A PART FROM THE NAMED
DEFENDANTS/CORPORATIONS, IN THIS CAUSE OF ACTION, & THE INITIAL FEDERAL
GOVERNMENT IN CASE #99-753(AJL), **"FAILURE"** TO PRODUCE THE FOIA NON-EXEMPT
SOUGHTED **NOTICE OF ACCEPTANCE OF CRIMINAL JURISDICTION, INTER ALIA.** <u>SEE,</u>
¶ 5, HEREIN], because it only provided for jurisdiction for crimes in
that title [<u>SEE</u>, PG. 32, ¶ 56, HEREIN], for which neither Concepcion, or
CONCEPCION [<u>SEE</u>, PGS. 2, & 3, ¶ 5 - ¶ 9, IN THE PLAINTIFF'S, COMP.], **"were
not"** charge with in the criminal complaint-affidavit, and/or indictment.

59. The Plaintiff, asserts that an Act of Congess **"does not"**, be-
come a Law, unless it follows each, & every procedural step chartered in
Art. I, § 7, Cls. 2, of the Const. for the United States. See, <u>Landgraf v.
USI File Production</u>, 128 L.Ed 2d 229 (S.Ct. 1994); <u>Clinton v. City of New
York</u>, 141 L.Ed 2d 393 (S.Ct. 1998); <u>Oppenheimer Funf Inc. v. Sander</u>, 57 L.
Ed 2d 253, at ¶ 6-7 (S.Ct. 1978); <u>Quinon v. FBI</u>, 86 F.3d 1222, at ¶ 9
(1996); & <u>Sellers v. Bureau of Prisons</u>, 959 F.2d 307, ¶ 4 (D.C. Cir.
(1992).

The Constitution requires **"three procedurel steps"**, of which are as
follows: **[A]** A Bill containing its exact text was approved by a Majority
of the Members of the H.O.R; **[B]** The Senate approved precisely on the
same text; & **[C]** That the text be signed into Law by the President. If by
chance, **"any"** of those three three stages are not implemented, the Law [&
REQUESTED FOIA NON-EXEMPT RECORDS, DOCUMENTS, FILES, & ETC., IN REGARDS
TO TITLE 18, INTER ALIA] would not have been validly enacted. The text of
H.R. <u>3190</u>, passed by the H.O.R, was the text as it existed on the date of
passage; e.g., On <u>May 12,1947</u>. Whereas, the text of the Bill passed by
the Senate on <u>June 18,1948</u>, was H.R. <u>3190</u>, as amended. Thus, the text of
the Bill passed by the respective Houses was grossly different; **"in which**

34

neither Bill ever became a Law". See, Senate Journal, for June 18,1948, at pg. 506; & Clinton v. City of New York, 141 L.Ed 2d 393, at pg. 448 (S.Ct. 1998).

60. Since Public Law 80-772 [THE CODIFICATION OF TITLE 18], was never published in the Federal Register, & is not listed in the C.F.R; the public was never properly notified [AS REQUIRED BY LAW] of the Law, & it is a nullity [SEE, PG. 6, ¶ 12, HEREIN; & PG. 20, ¶ 38; HEREIN]; in fact a look at the C.F.R, ubder title 18, is showing that it deals with con-servation of power, & water resoures. See, 44 U.S.C. §§ 307, & 1507.

61. Here the Plaintiff-Sovereign, points out to Honorable Judge RMU, that Congress adjourned for over 113 days in its first adjournment, & for about two months in its second adjournment; if one House seeks the consent of the other House, & goes out on a recess for more than "three [3] days", you have a "BICAMERAL ACTION, OF WHICH CONSTITUTES AN ADJOURN-MENT BY CONGRESS..." of which the Const. for the United States implies that any adjournment by Congress, that is, any adjournment of either House for longer than "three [3] days" gives occasion for a pocket veto... In Sellers v. Bureau of Prisons, 959 F.2d 307, at ¶ 4 (1992), The D.C Cir. Court held: As long as information contained in agency's files is capable of being "verified", than under PA, agency "MUST" take reasonable steps to maintain accuracy of information [OF WHICH THE PLAINTIFF/SOVEREIGN, HAS PROVIDED IN GOOD-FAITH "SOME" OF HIS FACTS AS EXHIBITS IN THIS OPPOSITION MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING CASE LAW, INTER ALIA], to as-sure fairness to individual, "& if agency willingly or intentionally fails to maintain its records in that way, & consequently makes determination adverse to individual, IT WILL BE LIABLE TO THAT PERSON [CONCEPCION] FOR MONEY DAMAGES". ALSO SEE, Plaintiff's, Comp., at pg. 22, ¶ 74; title 5

35

U.S.C. § 552(a)(e)(5), (g)(1)(c), & (c)(4); <u>Independent Ins. Agents of</u>
<u>America Inc. v. Clarke</u>, 965 F.2d 1077, at pg. 1078 (D.C Cir. 1992); &
<u>Landgraf v. USI File Production</u>, 128 L.Ed 2d 229 (S.Ct. 1994).

## POINT IV

62. On <u>June 18,2008</u>, CONCEPCION, receive a package containing a to-
tal of 76 pgs. of records, & etc., from the U.S. Dept. of Justice/FBI, Re-
cords Management Division [170 MARCE DRIVE WINCHESTER, VA. 22602-4843]. En-
closed in said package **"there was a total of thirty-nine [39], pgs. of Lab**
**Reports, of which thirty-eight [38], pgs. of those Lab Reports, <u>WERE NOT</u>**
**in regards to CONCEPCION, and/or Case #<u>99-753(AJL)</u>"**; as the one [1] re-
maining pg. of the Lab Report held a date of substance obtained [<u>SEE</u>, EX:
A-53, SQUARE BOX 4b, HEREWITH] being <u>May 26,1999</u>, **"of which ain't adding up**
**to the Federal Governments <u>OWN DRUG CALCULATION CHART</u>"**. <u>SEE</u>, Ex: A-54, &
A-55, herewith specifically Ex: A-55, at top 5/26/1999, Canales, 50 bags
of heroin, net grams of heroin 2.37, of which the weight is contrary to
what is in Ex: A-53, therein. **<u>ALSO SEE</u>**, Ex: A-56, herewith.

63. In Ex: A-54, CONCEPCION, was alleged to have made **"numerous drug-**
**heroin sales"**. e.g., based on the **"federal governments own drug calcula-**
**tion chart for Case #<u>99-753(AJL)</u>"**, it held that CONCEPCION, distribute on
<u>Dec. 17,1998</u>, three [3] bags of heroin, in which came up to be 1.61 net
grams **"of heroin"**.

[A] Then below that, said drug calculation chart held that CONCEP-
CION, distribute on <u>Dec. 20,1998</u>, four hundred, & ninety [490] bags of
heroin, in which came up to be 20.00 net grams **"of heroin"**.

[B] Then below that, said drug calculation chart held that CONCEP-
CION, distribute on <u>Dec. 31,1998</u>, two hundred, & three **"[203] bags of**

heroin, in which came up to be <u>54.11</u> net grams of heroin".

[C] Then below that, said drug calculation chart held that CONCEP-CION, distribute on <u>Jan. 6,1999</u>, four hundred [400] bags of heroin, in which came up to be 13.1 net grams **"of heroin"**.

[D] Then below that, said drug calculation chart held that CONCEP-CION, distribute on <u>Jan. 25,1999</u>, five hundred **"[500] bags of heroin, in which came up to be <u>.40</u> net grams of heroin"**. <u>SEE</u>, ¶ 63, Alphabet B, here-in.

[E] Then below that, said drug calculation chart held that CONCEP-CION, distribute on <u>Feb. 12,1999</u>, four hundred, & four [404] bags of hero-in, in which came up to be 24.00 net grams **"of heroin"**.

**64.** In Ex: A-55, of the drug calculation chart held, that the **"to-tal amount of heroin"** that was sold by CONCEPCION, & his co-defendants, **"was <u>143.97</u> grams".** In the same exhibit, said drug calculation chart stated: **"CONCEPCION, himself made <u>ALL</u> of the sales.., & he personally sold <u>113.22 GRAMS OF HEROIN</u>...".** <u>SEE</u>, Plaintiff's, Comp., at pgs. 15 - 19, ¶ 58 - ¶ 64, therein; & Ex: A-57 - A-62, herewith.

<u>**JUDICIAL NOTICE IS HEREBY GIVEN:**</u> It is obvious that their are **"<u>NO LAB REPORTS</u>"** in regards to CONCEPCION, and/or for Case <u>#99-753(AJL)</u>, of which CONCEPCION, **"was accused"** by the federal government [& OTHERS] who were directly involved in Case <u>#99-753(AJL)</u> [& NOW THE NAMED DEFENDANTS/ CORPORATIONS, COUNSELS OF RECORD, & OTHERS OF DISTRIBUTING HEROIN, INTER ALIA. <u>SEE</u>, ¶ 12, HEREIN], of making **"all"** of the heroin sales himself; of which the <u>113.22</u>, **"of so-call heroin",** was in fact pure lactose. The spe-cified requested, & soughted FOIA non-exempted Lab Reports for the above mentioned dates in ¶ 63, incorporated with alphabets A-E, inter alia are knowingly, intentionally, & willingly being wrongfully withheld by the

named Defendants/Corporations, Counsels of Record for the named Defendants/Corporation, & others **"of which said requested, & soughted records, documents, files, data, & etc., are in regards to CONCEPCION, & are relevant, inter alia, to both Case #07-1766(RMU), & 99-753(AJL)"**; as points I, II, & III, are also related, & relevant to Concepcion, CONCEPCION, & Case #07-1766(RMU), & 99-753(AJL). **SEE,** ¶ 4, ¶ 5, ¶ 12, ¶ 15, ¶ 24, ¶ 31, ¶ 38, & ¶ 58... herein; Quinon v. FBI, 86 F.3d 1222, at ¶ 9 (D.C Cir. 1996); Sellers v. Federal Bureau of Prisons, 959 F.2d 307, at ¶ 4 (D.C Cir. 1992); & Truitt v. Dept. of Justice, 897 F.2d 540, at ¶ 2 (D.C Cir. 1990).

65. The Plaintiff-Sovereign, asserts, & contends that the strict meaning of the onus probandi, is that if **"no evidence"** is adduced point by point, & issue by issue by the Defendants/Corporations, and/or Counsels of Record for said Defendants/Corporations, on whom the burden is cast upon; the issues, in whole **"must"** be found against them. See, U.S. v. Santos, 340 F.Supp. 2d 527 (NJDC 2004); Campbell v. Dept. of Justice, 164 F.3d 20, at ¶ 6 (D.C Cir. 1998); & Consumer Federation of America v. Dept. of AG, 455 F.3d 283 (D.C Cir. 2006).

## CONCLUSION

For the foregoing reasons, Counsels of Record for the named Defendents/Corporations, and/or otherwise Motion for Summary Judgment should be DENIED.

## OATH

The undersign declare, certifies, verifies, & state under penalty of perjury, under the Laws of the State of New Jersey, & the United States, pursuant to title 28 U.S.C. § 1746, that the foregoing is true, & correct.

Respectfully Requested, &
Submitted By:

DATED: <u>June 25,2008</u>

*Alberto Concepcion* ©

Pro Se Plaintiff,
Alberto Concepcion© the
Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

WITHOUT PREJUDICE U.C.C. 1-207

c.c. File; &

Cert. Return Receipt Mail to the
U.S. District Court for the Dis-
trict of Columbia No. <u>7007-3020-
0000-1184-2818</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Alberto Concepcion, | : |
|        Plaintiff/Sovereign, | : |
| | : |
|    <u>vs</u>. | : |
| | : |
| | : |
| FEDERAL BUREAU OF INVESTIGATION; | : |
| EXECUTIVE OFFICE OF THE UNITED | : |
| STATES ATTORNEYS; & | : |
| U.S. DEPARTMENT OF JUSTICE; | :   CIVIL ACTION NO. <u>07-1766(RMU)</u> |
|       Defendants/Corporations. | : |

**PLAINTIFF'S, STATEMENT**
**OF DISPUTED FACTUAL ISSUES**

**NOW COMES,** Pro Se Plaintiff, <u>Alberto Concepcion</u>, the Sovereign, Secured Party, Creditor, Holder-In-Due-Course, Trade Name Owner, & Record Owner on behalf of STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, hereinafter **"Concepcion, or CONCEPCION"**, waiving no powers, rights, and/or immunities by the use of said **"private copyrighted statutes"**. On <u>May 30,2008</u>, Counsels of Record for the named Defendants/Corporations, have moved, & filed a Motion for Summary Judgment, hereinafter Counsels Summary Judgment, on the Plaintiff/Sovereign's [OF WHICH THE PLAINTIFF/SOVEREIGN, FILED A MOTION FOR SUMMARY JUDGMENT PRIOR (**SEE,** DOCKET SHEET, AT ¶ 19) TO COUNSELS FILING THEIR MOTION FOR SUMMARY JUDGMENT], claims concerning wrongfully withheld FOIA non-exempt records, documents, files, data, & etc., in regards to Concepcion, CONCEPCION, & Federal Criminal Case #<u>99-6144-01</u>, & <u>99-753(AJL)</u>, hereinafter Case #<u>99-753(AJL)</u>.

The Plaintiff-Sovereign, submits the following list of genuine issues of material facts [& SUPPORTING CASE LAW, INTER ALIA, IN HIS SECOND OPPOSITION MOTION FOR SUMMARY JUDGMENT, IN RESPONSE TO COUNSELS OF RECORD MOTION FOR SUMMARY JUDGMENT, FILED ON MAY 30,2008, HEREINAFTER COUNSELS SUMMARY JUDGMENT], that require the denial of the named Defendants-Corporations, and/or Counsels Summary Judgment. The Plaintiff, continue to assert, & contend that the Defendants-Corporations, Counsels of Record, & others of whom are involved in this Cause of Action, **"HAVE FAILED"** to respond to the Plaintiff-Sovereign's, FOIA Civil Complaint Action, within the required time, pursuant to the <u>Fed.R.Civ.P</u>. (60 DAYS FROM DATE OF SERVICE. **<u>SEE</u>**, PG. 5, ¶ 7 - ¶ 9, IN THE PLAINTIFF'S, SECOND OPPOSITION MOTION FOR SUMMARY JUDGMENT; OF WHICH SAID GRANTED EXTENTIONS WERE FOR THE PURPOSE OF THE DEFENDANTS-CORPORATIONS TO LOCATE THE PLAINTIFF'S, SPECIFIED REQUESTED, & SOUGHTED RECORDS, & ETC., IN REGARDS TO CONCEPCION, AND/OR CASE #<u>99-753(AJL)</u>, OF WHICH HE AS OF JUNE 25,2008, **"HAS NOT"** RECEIVED THE SPECIFIED REQUESTED, & SOUGHTED RECORDS, & ETC.).

The Plaintiff, also points out to the Court's attention, that the Granted Protective Order, in which Counsels of Record continue to lean upon **"was only granted"** in regards to the Plaintiff's, interrogatories, & requests for admissions (DISCOVERY REQUESTS), of which the Defendants, Memo. of Law in support of their Motion for a Protective Order, hereinafter Counsels Protective Order, stated at pg. 3, in part: Defendants, now seek from this Court a Protective Order freeing them from **"any obligation they may have to respond to Plaintiff's, <u>DISCOVERY REQUESTS UNTIL FURTHER ORDER FROM THIS COURT</u>..."** Therefore, the Defendants/Corporations, as well as Counsels of Record for said Defendants-Corporations, **"HAVE CON-CEDED TO, INTER ALIA"**, to the following facts:

2

1-- That the **"PERSON-SUBJECT"** that was being targetted was in fact STRAW-MAN, & DEBTOR ALBERTO CONCEPCION. **SEE**, Comp., at pg. 2, ¶ 4, therein;

2-- That the arresting alleged Special FBI Agent JOHN F. MURPHY JR., who was involved in prosecuting Case #99-753(AJL), **"was never"** deputized as required by Law, from the Essex County Sheriff Police Department, to the New Jersey FBI Agency-Office, and/or otherwise. **SEE**, Comp., at pg. 2, ¶ 4, therein;

3-- That the U.S. District Court of [NEWARK] New Jersey, obtained its jurisdiction pursuant to the Fed.R.Crim.P., 18 § 3231 [UNDER A STATUTE, OF WHICH IS UNCONSTITUTIONAL. **SEE**, PLAINTIFF'S, SECOND OPPOSITION MOION ATTACHED HEREOF AT PG. 6, ¶ 12, & PGS. 21 - 35, ¶ 39 - ¶ 61, THEREIN];

4-- That the U.S. Government **"failed"** to file the **"mandatory"** Notice of Acceptance of Criminal Jurisdiction, with the Governor of the State of New Jersey, for were the alleged federal crimes occurred, concerning Case #99-753(AJL);

5-- That the Grand Jury in Newark, New Jersey, indicted STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, in which lead to Case #99-753(AJL), under titles 21 U.S.C. §§§ 841, & 846, apart from § 853 [UNDER STATUTES, OF WHICH ARE UNCONSTITUTIONAL. **SEE**, PLAINTIFF'S, SECOND OPPOSITION MOTION ATTACHED HEREOF AT PG. 6, ¶ 12, & PGS. 16 - 20, ¶ 28 - ¶ 38, THEREIN].

6-- That STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, plea guilty to the indictment, pursuant to statute 21 U.S.C. § 846, **"for conspiracy to distribute MORE THAN 100 GRAMS OF HEROIN"**. **SEE**, Comp., at pg. 3, ¶ 7, therein;

7-- That from July 5,2005, through July 30,2007, CONCEPCION, made

3

numerous good-faith efforts by way of Certified Mail to obtain FOIA non-exempt records, documents, files, data, & etc., from the named Defendants-Corporations, **"of which were wrongfully withheld by the named Defendants/Corporations"**. **SEE**, Comp., at pgs. 4 - 10, ¶ 10 - ¶ 44, therein;

8-- That CONCEPCION, **"was provided"** with a indictment bearing no signatures of the foreperson, and/or the U.S. Attorney for the State of New Jersey, by the named Defendants/Corporations. **SEE**, Comp., at pg. 5, ¶ 22, therein;

9-- That the New Jersey, U.S. Attorneys Office has **"NO LAB REPORTS, INTER ALIA"**, in their files for Case #<u>99-753(AJL)</u>. **SEE**, Comp., at pg. 8, ¶ 39, therein;

10-- That statutes 21 §§§§ 841, 846, 851, & 853, among others **"are not promulgated in the Code of Federal Regulations"**. **SEE**, Comp., at the top of pg. 9, therein;

11-- That the **"<u>FBI HAS NO RECORDS</u>"** responsive to the requested/soughted FOIA records, & etc., made in good-faith by CONCEPCION. **SEE**, Comp., at pg. 9, ¶ 42, therein;

12-- That one at minimum, or more of the N.J-FBI recorded tape(s) was altered, & edited in Case #<u>99-753(AJL)</u>. **SEE**, Comp., at pg. 10, ¶ 45, therein;

13-- That Sherifff Police Officer JOHN F. MURPHY JR., the initial A.U.S.A, & others who were involved in Case #<u>99-753(AJL)</u>, **"introduced, & added 45.00 to 50.00 grams of a powder substance"** to CONCEPCION'S, fabricated federal criminal case, & presented said powder substance to a federal grand jury. **SEE**, Comp., at pg. 12, ¶ 49, therein;

14-- That the criminal complaints, & arrest warrants were signed by

4

unknown individual's, & not by the presiding Magistrate Judge in Case #
<u>99-6144-01</u> - <u>99-753(AJL)</u>. <u>SEE</u>, Comp., at pg. 11, ¶¶ 46, & 48, pg. 12, ¶
50, & pgs. 13, & 14, ¶ 52 - ¶ 56, therein;

15-- That the Plaintiff-Sovereign, Alberto Concepcion, in this
Cause of Action, **"was kidnap, arrested, & robbed, inter alia",** by arrest-
ing Sheriff Police Officer JOHN F. MURPHY, & his partner on <u>Dec. 15,1999</u>.
<u>SEE</u>, Comp., at pg. 11, ¶ 47, therein;

16-- That the criminal complaint affidavit made by Sheriff Police
Officer JOHN F. MURPHY JR., for Case #<u>99-753(AJL)</u>, contained false state-
ments, & information, inter alia, based on the discovery requests in
Civil Action #<u>07-1766(RMU)</u>. <u>SEE</u>, Comp., at pg. 17, ¶ 61, thereIn;

17-- That STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, was out of the
State of New Jersey, when the alleged **"heroin transaction(s) occurred for
Case #<u>99-753(AJL)</u>"**. <u>SEE</u>, Comp., pg. 17, ¶ 62, & pg. 19, ¶ 64, therein;

18-- That STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, was knowingly,
intentionally, & willingly indicted on **"<u>PURE LACTOSE</u>"**. <u>SEE</u>, Comp., at pg.
19, ¶ 65, therein;

19-- That **"<u>ALL</u>"** of the initial individuals involved in Case #<u>99-753</u>
<u>(AJL)</u>, **"destroyed non-favorable evidence to them, inter alia",** as records,
documents, files, data, & etc.; for the purpose of covering up the com-
mitted illegal activities, inter alia, that they implemented against
STRAW-MAN, & DEBTOR ALBERTO CONCEPCION, ET AL., in Case #<u>99-753(AJL)</u>. <u>SEE</u>,
Plaintiff's, Second Opposition Motion at pgs. 36 - 38, ¶ 62 - ¶ 65, there-
in; &

20-- That the named Defendants/Corpoations, herein are required to
pay Pro Se Plaintiff-Sovereign, Alberto Concepcion, Six Hundred Million

[$600,000,000.00] U.S. Dollars **"for wrongfully withheld evidence, & invasion of Concepcion's, personal privacy, inter alia"**, in regards to CONCEPCION, & Case #<u>99-753(AJL)</u>. <u>**SEE**</u>, Comp., at pg. 22, ¶ 74, therein; & the Plaintiff's, Second Opposition Motion at pg. 6, ¶ 12, pg. 20, ¶ 38, & pgs. 21, & 22, ¶¶ 39, & 40, therein.

<div align="center"><u>CONCLUSION</u></div>

For the foregoing reasons, Counsels of Record for the named Defendants/Corporations, and/or otherwise Motion for Summary Judgment should be DENIED.

<div align="center"><u>OATH</u></div>

The undersign declare, certifies, verifies, & state under penalty of perjury, under the Laws of the State of New Jersey, & the United States, pursuant to title 28 U.S.C. § 1746, that the foregoing is true, & correct.

Respectfully Requested, & Submitted By:

**DATED:** <u>June 25,2008</u>

*Alberto Concepcion* ©

Pro Se Plaintiff, Alberto Concepcion© the Sovereign Secured Party, & Creditor on behalf Of STRAW-MAN, & DEBTOR ALBERTO CONCEPCION

WITHOUT PREJUDICE U.C.C. 1-207

**c.c.** File; &

Cert. Return Receipt Mail to the U.S. District Court for the District of Columbia No. <u>7007-3020-0000-1184-2818</u>

<div align="center">6</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alberto Concepcion,<br><br>       Plaintiff/Sovereign,<br><br><br>   vs.<br><br><br>FEDERAL BUREAU OF INVESTIGATION;<br>EXECUTIVE OFFICE OF THE UNITED<br>STATES ATTORNEYS; &<br>U.S. DEPARTMENT OF JUSTICE;<br><br>      Defendants/Corporations. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO. 07-1766(RMU)<br>: |

**ORDER**

Having considered the Plaintiff/Sovereign's, Opposition Motion/Affidavit/Declaration/Memorandum of Law/Brief of Facts of Genuine Issues of Law In Support of Law, In Response to Counsels of Record Motion for Summary Judgment, & the entire record herein, it is this _____, day of _____,2008, hereby:

**ORDERED,** that Counsels of Record for said Defendants/Corporations, and/or the Defendants/Corporations, Motion for Summary Judgment is <u>DENIED</u>.

_____
UNITED STATES DISTRICT JUDGE

## PROOF OF SERVICE

I, Alberto Concepcion, certify that on June 25,2008, I mailed this document, along with the Plaintiff's, Second Opposition Motion/Affidavit/ Declaration/Memorandum of Law/Brief of Facts of Genuine Issue of Law In Response to Counsels of Record Misleading/Perjured, Inter Alia Motion for Summary Judgment to the following address by way of Cert. Mail #7007-3020-0000-1184-2825;

> U.S. ATTORNEYS OFFICE FOR
> THE DISTRICT OF COLUMBIA
> 555 Fourth St., N.W. [SUITE 4220]
> Washington, D.C 20001
> ATT: Christopher B. Harwood, Esq. [ET AL.]

## OATH

I, Alberto Concepcion, certify that these documents were given to prison officials on June 25,2008, for forwarding to Counsels of Record at the above address. I certify under penalty of perjury, that the fore-going is true, & correct, pursuant to title 28 U.S.C. § 1746.

Respectfully Submitted By:

DATED: June 25,2008

*Alberto Concepcion* ©

Pro Se Plaintiff
Alberto Concepcion, the
Sovereign, Secured Party, &
Creditor on behalf of
STRAW-MAN, & DEBTOR
ALBERTO CONCEPCION

c.c. File; &

Cert. Return Receipt Mail to the
U.S. District Court for the Dis-
trict of Columbia No. 7007-3020-
0000-1184-2818

LETTER REQUESTING ALL INFORMATION OF MISCONDUCT IN WHOLE;
INTERNAL AFFAIRS COMPLAINTS;  DISCIPLINARY ACTIONS;  DIS-
CHARGE OF EMPLOYMENT;  SANCTION(S);  AND ANY OTHER UNMEN-
TIONED DOCUMENTS FOR F.B.I. AGENT KENNETH SHUEY;  AND
FORMER F.B.I AGENT(S) JOHN F. MURPHY JR. [ LOANER FROM
THE BOSTON POLICE DEPT. ];  JERRY OCONNER [ LOANER FROM
THE NEWARK NEW JERSEY POLICE DEPT. ];  AND PERTER MICK-
WALTER, BADGE # 172, [ LOANER FROM THE ESSEX COUNTY
SHERIFF DEPT. [ B.O.N UNIT ].


TO: FEDERAL BUREAU OF INVESTIGATION
    Chief, FOIPA Section
    935 Pennsylvania Ave. N.W.
    Washington, DC. 20530-0001


FROM: DIRECT RESPONSE TO:
    ALBERTO CONCEPCION, # 22853-050
    F.C.I Allenwood P.O. Box 2000
    White Deer, PA. 17887

S.S.N. # 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

D.O.B. May 29,1968

P.O.B. Newark, New Jersey

CRIMINAL CASE NO. 2:99-CR-753-01, AND/OR 99-753(AJL)

MAGISTRATE CRIMINAL CASE NO. 99-6144-01-01

DATE OF SENTENCE: July 7,2000, AT THE

UNITED STATES DISTRICT COURT OF NEW JERSEY

U.S. DISTRICT JUDGE: ALFRED J. LECHNER JR.


IDENTIFICATION OF REQUEST: In accordance with 28 C.F.R. Section 16.41.


**INFORMATION IN RE:** DISCLOSURE OF ALL COMPLAINTS OF MISCONDUCT; SANCTIONS;

DISCIPLINARY ACTIONS; DISCHARGE FROM EITHER THE STATE, AND/OR FEDERAL

GOVERNMENT AS EMPLOYEES; INTERNAL AFFAIRS RECORDS; and any other unmention-

ed documents from  day one of employment under any State, and/or Federal

authority, and/or otherwise.


   Dear Federal Bureau of Investigaton:  The herewith request is

made pursuant to the provisions of the Freedom of Information Act 5 U.S.C.

Ex: A - 1          1

§ 552, and the Privacy Act of 5 U.S.C. § 552(a), and (d)(1), for a " FULL DISCLOSURE, AND RELEASE OF ALL RECORDS," and/or data contained in the files of this Department, and/or Agency, or any other State, or Federal Department of Agencies listed above, and below under my name, and/or indentifier to my name.  This request soughted herein is for COMPLAINTS OF MISCONDUCT, SANCTIONS, DISCIPINARY ACTIONS, DISCHARGE FROM EMPLOYMENT FROM EITHER THE STATES, AND/OR FEDERAL GOVERNMENT AS EMPLOYEES, INTERNAL AFFAIRS RECORDS, and etc., pursuant to title 5 U.S.C. § 552(a)(2)(A), and (B), records which are secured, and maintained by this Department, and/or Agency.

1.  The records soughted specifically, but not limited to are the compiled files of:  **A.**  Misconduct Complaint(s);  **B.**  Sanction(s);  **C.** Discipinary Actions;  **D.**  Discharge from Government Employment for both the State(s), and/or Federal Government;  **E.**  Internal Affairs Records; and any, and all records, and data concerning the Complaints filed by Victim's, co-workers, associates, and/or otherwise not EXEMPT by title 5 U.S.C. Section (a)(b)(c), and (b)(7);  5 U.S.C. Section (a)(j)(2), and (k)(2).  Also see Public Citizen v. Department of Justice, 491 U.S. 440, 105 L. Ed 2d 377, 109 S. Ctt. 2552 ( 1989 );  Department of Justice v. Reporters Comm, 489 U.S. 749, 103 L. Ed2d 774, 109 S. Ct. 1488 ( 1999 ); and F.B.I v. Abramson, 465 U.S. 615, 72 L. Ed 2d 376, 102 S. Ct. 2054 ( 1982 ), including exemption.

2.  The requester respectfully request the information soughted for the above information, and named individuals, as I authorize, and request this Department, and/or Agency to open, and access those files for the information, records, and/or data requested herein.

3.  It is further requested that the Department, and/or Agency in response to all the information requested specifically inform Alberto Concepcion, if, and to what State, and/or Federal body, and/or whom, and/or what " PERSON(S) " previously described, and/or other unknown " PERSON(S) " has this information been release, and/or disclosed to which the requester

Ex: A-2

request to know their names, employment address, their purposes, and need for such information, and/or material, and the specific reference of statute, or regulation governing such release, and/or disclosure. **See,** 5 U.S.C. § 552(a)(b)(1), through (4); and P.L.C. v. U.S., 138 F.3d 1075 ( 1998 ).

4.  This Department, and/or Agency is advised that the requested information as the Complaints, and etc., in total are no longer accorded exempt status, unless specific exemptions noted, and only with reference to specific citation, or authority. **See,** Nemetz v. Department of Justice, 446 F. Supp. 102 ( 1987 );  Akins v. Federal Election Comm, 101 F.3d 731 ( 1996 );  Gummal v. Gore, 180 F.3d 282 ( 1999 );  and Solar Sources Inc. v. U.S., 142 F.3d 1033 ( 1998 ).

5.  I agree to pay all reasonable costs, or fees applicable to this request above, and/or beyond the specific allotment, or costs of fees applicable at no charge pursuant to the Uniform Practice Code, the OMB Uniform FOIA fee schedule, and guideline section 6(b), FED REG. 10017, in compliance with section 9701, or if an considered indigent, I ask that this Department, and/or Agency waive all charges pursuant to title 5 U.S.C. § 552(a)(i)(3), ET SEQ.

6.  Pursuant to title 5 U.S.C. Section (a)(6)(A)(l), it is noted that this Department, and/or Agency has ten ( 10 ) working days following receipt of this request to provide me with the information, and/or material soughted.  Should any delay occur, it is respectfully requested that this Department, and/or Agency inform me of the delay as provided by statute, or I will be compel to pursue other remedies. **See,** Public Citizen v. F.T.C., 869 F.2d 1541 ( 1998 );  Blazy v. Tenet, 194 F.3d 90 ( 1990 );  and GMRI Inc. v. E.E.O.C., 149 F.3d 449 ( 1998 ).

<u>OATH</u>

I, Alberto Concepcion, declare under penalty of perjury under the laws



3

of the United States that the foregoing is true, and correct to the best
of my knowledge.


RESPECTFULLY SUBMITTED BY:

DATED: July 19,2005

Alberto Concepcion, on behalf
of ALBERTO CONCEPCION


c.c.  file


THIS REQUEST HAS BEEN SENT TO THE FEDERAL
BUREAU OF INVESTIGATION CERTIFIED MAIL # 7002-0510-
0001-6677-0082.


Ex: A-4      4

**LETTER REQUESTING ALL INFORMATION OF MISCONDUCT IN WHOLE;
INTERNAL AFFAIRS COMPLAINTS; DISCIPLINARY ACTIONS; DIS-
CHARGE OF EMPLOYMENT; SANCTION(S); AND ANY OTHER UNMEN-
TIONED DOCUMENTS FOR F.B.I. AGENT KENNETH SHUEY; AND
FORMER F.B.I AGENT(S) JOHN F. MURPHY JR. [ LOANER FROM
THE BOSTON POLICE DEPT. ]; JERRY OCONNER [ LOANER FROM
THE NEWARK NEW JERSEY POLICE DEPT. ]; AND PERTER MICK-
WALTER, BADGE # 172, [ LOANER FROM THE ESSEX COUNTY
SHERIFF DEPT. [ B.O.N UNIT ].**


TO: FEDERAL BUREAU OF INVESTIGATION
    GATEWAY 1 MARKET STREET
    Newark, New Jersey 07102


FROM: DIRECT RESPONSE TO:
    ALBERTO CONCEPCION, # 22853-050
    F.C.I Allenwood P.O. Box 2000
    White Deer, PA. 17887

S.S.N. # 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

D.O.B. May 29,1968

P.O.B. Newark, New Jersey

CRIMINAL CASE NO. 2:99-CR-753-01, AND/OR 99-753(AJL)

MAGISTRATE CRIMINAL CASE NO. 99-6144-01-01

DATE OF SENTENCE: July 7,2000, AT THE

UNITED STATES DISTRICT COURT OF NEW JERSEY

U.S. DISTRICT JUDGE: ALFRED J. LECHNER JR.


IDENTIFICATION OF REQUEST: In accordance with 28 C.F.R. Section 16.41.


**INFORMATION IN RE:** DISCLOSURE OF ALL COMPLAINTS OF MISCONDUCT; SANCTIONS;
DISCIPLINARY ACTIONS; DISCHARGE FROM EITHER THE STATE, AND/OR FEDERAL
GOVERNMENT AS EMPLOYEES; INTERNAL AFFAIRS RECORDS; and any other unmention-
ed documents from  day one of employment under any State, and/or Federal
authority, and/or otherwise.


    Dear Federal Bureau of Investigaton:  The herewith request is

made pursuant to the provisions of the Freedom of Information Act 5 U.S.C.



1

§ 552, and the Privacy Act of 5 U.S.C. § 552(a), and (d)(1), for a " FULL DISCLOSURE, AND RELEASE OF ALL RECORDS," and/or data contained in the files of this Department, and/or Agency, or any other State, or Federal Department of Agencies listed above, and below under my name, and/or indentifier to my name.  This request soughted herein is for COMPLAINTS OF MISCONDUCT, SANCTIONS, DISCIPINARY ACTIONS, DISCHARGE FROM EMPLOYMENT FROM EITHER THE STATES, AND/OR FEDERAL GOVERNMENT AS EMPLOYEES, INTERNAL AFFAIRS RECORDS, and etc., pursuant to title 5 U.S.C. § 552(a)(2)(A), and (B), records which are secured, and maintained by this Department, and/or Agency.

1.  The records soughted specifically, but not limited to are the compiled files of:  **A.**  Misconduct Complaint(s);  **B.**  Sanction(s);  **C.** Discipinary Actions;  **D.**  Discharge from Government Employment for both the State(s), and/or Federal Government;  **E.**  Internal Affairs Records; and any, and all records, and data concerning the Complaints filed by Victim's, co-workers, associates, and/or otherwise not EXEMPT by title 5 U.S.C. Section (a)(b)(c), and (b)(7);  5 U.S.C. Section (a)(j)(2), and (k)(2).  Also see Public Citizen v. Department of Justice, 491 U.S. 440, 105 L. Ed 2d 377, 109 S. Ctt. 2552 ( 1989 );  Department of Justice v. Reporters Comm, 489 U.S. 749, 103 L. Ed2d 774, 109 S. Ct. 1488 ( 1999 ); and F.B.I v. Abramson, 465 U.S. 615, 72 L. Ed 2d 376, 102 S. Ct. 2054 ( 1982 ), including exemption.

2.  The requester respectfully request the information soughted for the above information, and named individuals, as I authorize, and request this Department, and/or Agency to open, and access those files for the information, records, and/or data requested herein.

3.  It is further requested that the Department, and/or Agency in response to all the information requested specifically inform Alberto Concepcion, if, and to what State, and/or Federal body, and/or whom, and/or what " PERSON(S) " previously described, and/or other unknown " PERSON(S) " has this information been release, and/or disclosed to which the requester

Ex: A - 6

2

request to know their names, employment address, their purposes, and need for such information, and/or material, and the specific reference of statute, or regulation governing such release, and/or disclosure. **See,** 5 U.S.C. § 552(a)(b)(1), through (4); and P.L.C. v. U.S., 138 F.3d 1075 ( 1998 ).

4.  This Department, and/or Agency is advised that the requested information as the Complaints, and etc., in total are no longer accorded exempt status, unless specific exemptions noted, and only with reference to specific citation, or authority. **See,** Nemetz v. Department of Justice, 446 F. Supp. 102 ( 1987 ); Akins v. Federal Election Comm, 101 F.3d 731 ( 1996); Gummal v. Gore, 180 F.3d 282 ( 1999 ); and Solar Sources Inc. v. U.S., 142 F.3d 1033 ( 1998 ).

5.  I agree to pay all reasonable costs, or fees applicable to this request above, and/or beyond the specific allotment, or costs of fees applicable at no charge pursuant to the Uniform Practice Code, the OMB Uniform FOIA fee schedule, and guideline section 6(b), FED REG. 10017, in compliance with section 9701, or if an considered indigent, I ask that this Department, and/or Agency waive all charges pursuant to title 5 U.S.C. § 552(a)(i)(3), ET SEQ.

6.  Pursuant to title 5 U.S.C. Section (a)(6)(A)(1), it is noted that this Department, and/or Agency has ten ( 10 ) working days following receipt of this request to provide me with the information, and/or material soughted. Should any delay occur, it is respectfully requested that this Department, and/or Agency inform me of the delay as provided by statute, or I will be compel to pursue other remedies. **See,** Public Citizen v. F.T.C., 869 F.2d 1541 ( 1998 ); Blazy v. Tenet, 194 F.3d 90 ( 1990 ); and GMRI Inc. v. E.E.O.C., 149 F.3d 449 ( 1998 ).

<u>OATH</u>

I, Alberto Concepcion, declare under penalty of perjury under the laws



3

of the United States that the foregoing is true, and correct to the best of my knowledge.

Respectfully Submitted By:

DATED: December 28,2005

Alberto Concepcion,©
Secured Party

c.c.  file

THIS REQUEST HAS BEEN SENT TO THE FEDERAL BUREAU OF INVESTIGATION CERTIFIED MAIL # 7003-3110-0006-1289-9255

Ex: A-8

4

TO: OFFICE OF INFORMATION, &      : FROM: ALBERTO CONCEPCION,
    PRIVACY                        :       Fed. Reg. No. 22853-050
    U.S. DEPT. OF JUSTICE          :       F.C.I Allenwood [MED]
    1425 New York Ave. [SUITE 11050]:      P.O. Box 2000
    Washington, D.C. 20530-0001    :       White Deer, PA. 17887

─────────────────────────────────  :  ─────────────────────────────────

                                   :
REQUEST NO. #07-593                :
                                   :
SUBJECT: BOND(S) REQUEST PURSUANT  :      NOTICE OF APPEAL
         TO TITLE 5 U.S.C. § 2901; :
         D.C. CODE 11-7040; & ETC. :

─────────────────────────────────  :  ─────────────────────────────────


S.S.N. #136 68 6035
D.O.B. May 29,1968
P.O.B. NEWARK, NEW JERSEY
MAGISTRATE JUDGE: RONALD J. HEDGES, #99-6144-01
TRIAL JUDGE: ALFRED J. LECHNER JR., #2:99-CR-753(AJL), AND/OR
             99-753(AJL).
ARRESTING AGENCIES: NEWARK, NEW JERSEY F.B.I AGENCY; & THE STATE
             ESSEX COUNTY SHERIFF [B.O.N] DEPARTMENT
PROSECUTING OFFICIALS: U.S. ATTORNEYS OFFICE FROM NEWARK, NEW
             JERSEY; & THE STATE ESSEX COUNTY PROSECU-
             TORS OFFICE


     Identification request in accordance with 28 C.F.R. § 16.41(d).

     TO WHOM IT MAY CONCERN: The information requested herein [DISCLO-

SURE OF ALL BONDS] is made pursuant to the provisions of the F.O.I.A. 5

U.S.C. § 552(a), & (d)(1), for the "FULL DISCLOSURE, & RELEASE OF ALL RE-

CORDS DISCRIBED HEREIN"; & any data contained in the files of this Depart-

ment, & any other State, & Federal Dept., of Agencies, & Offices listed

above in regard to said requested information, & case.

     1. The records soughted specifically, but not limited to are as

follows: [A] SURETY BOND(S) PURSUANT TO 5 U.S.C. § 2901, & D.C. CODE 11-

7040; [B] BID BOND(S) INFORMATION, & CERTIFICATION; [C] PAYMENT BOND(S)

Ex: A-9

INFORMATION, & CERTIFICATION; [D] PERFORMANCE BOND(S) INFORMATION, &
CERTIFICATION; [E] THE MILLER ACT REINSURANCE PERFORMANCE BOND(S); [F]
COMMERCIAL BONDIND(S) INFORMATION, & CERTIFICATION; [G] CRIMINAL BOND-
ING(S) INFORMATION, & CERTIFICATION; & [H] ANY OTHER UNMENTIONED BOND(S),
AND/OR DOCUMENTS CONNECTED TO SAID REQUESTED INFORMATION.

2. Said requested information is including which Private, and/or
Government Body, and/or Persons i.e., corporation(s), companies, associ-
ations, firms, limited partnerships, societies, joint stock companies, in-
dividuals officers, and/or unincorporated associations who secured the
Bond(s), & who is holding the Bond(s); & any record, & data concerning
the Bond(s) not otherwise exempt by title 5 U.S.C. § 552(a)(6), (c), & (b)
(7). See, Public Citizen v. Dept of Justice, 105 L.Ed 2d 377 (1989);
Dept. of Justice v. Reporters Comm., 103 L.Ed 2d 774 (1989); & F.B.I v.
Abramson, 72 L.Ed 2d 376 (1982).

3. The requester request the information soughted in ¶ 1, herein
for the named individuals in the initial F.O.I.A. filing, as I authorize,
& request this Department, Agency, or Office to open, & access that file,
& all files for the information, records, & datas requested herein. See,
5 U.S.C. § 552(b)(3).

4. It is further requested that this Department, Agency, or Office
in response to all the information requested, specifically inform ALBERTO
CONCEPCION, if, & to what Private, and/or Government Body(s), and/or to
whom, and/or what individual(s) previously described in the initial re-
quested F.O.I.A. information has been disclosed, and/or release to, and/or
what material request(s) were made by said individual(s); of which I re-
spectfully request for their name(s), employment address(es), their pur-
pose(s), & need for such information, and/or material, as well as the
specific reference to authority statute(s), or regulation(s) governing

Ex: A - 10          2

such release, and/or disclosure. See, 5 U.S.C. § 552(a), & (b)(1)-(4); & Abraham, & Rose, P.L.C. v. United States, 138 F.3d 1075 (1998).

5. CONCEPCION, asserts that this Department, Agency, or Office is advise that the requested information herein, in total "are no longer accorded exempt status", unless under specific exemptions noted, & only with reference to specific citation, or authority. See, Cummock v. Gore, 180 L.Ed 2d 282 (1999); & Solar Sources Inc. v. United States, 142 F.3d 1033 (1998).

6. CONCEPCION, has agree to pay all reasonable costs, or fees applicable to this request; or if I am considered indigent, I ask that this Department, Agency, or Office waive all charges pursuant to 5 U.S.C. § 552(a)(4)(A)(i) et seq.

7. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), it is noted that this Department, Agency, or Office has twenty [20] working days following this Certified Mail #7006-2150-0004-7651-4323, Receipt for this specific request to provide me with the information, and/or material soughted in ¶ 1, herein. Should any delay occur, it is respectfully requested that this Department, Agency, or Office inform me of this delay as provided by statute; or I will be compel to pursue other unnecessary remedies. See, Blazy v. Tenet, 194 F.3d 90 (1999); & Gmri Inc. v. E.E.O.C., 149 F.3d 449 (1998).

Respectfully Requested, & Submitted By:

Alberto Concepcion

DATED: June 11, 2007

Alberto Concepcion, the Sovereign, Secured Party, & Creditor on behalf of STRAW-MAN, & DEBTOR ALBERTO CONCEPCION

Ex: A-11

c.c. file                          3

```
TO: OFFICE OF INFORMATION, &      :FROM: ALBERTO CONCEPCION,
    PRIVACY                       :      Fed. Reg. No. 22853-050
    U.S. DEPT. OF JUSTICE         :      F.C.I Allenwood [MED]
    1425 New York Ave. [SUITE 11050]:    P.O. Box 2000
    Washington, D.C. 20530-0001   :      White Deer, PA. 17887
                                  :
─────────────────────────────────    ─────────────────────────────────
                                  :
                                  :
                                  :
REQUEST NO. 05-2149               :
                                  :
SUBJECT: BOND(S) REQUEST PURSUANT :      NOTICE OF APPEAL
         TO TITLE 5 U.S.C. § 2901;:
         D.C. CODE 11-7040; & ETC.:
                                  :
─────────────────────────────────    ─────────────────────────────────
```

S.S.N. #136 68 6035

D.O.B. May 29,1968

P.O.B. NEWARK, NEW JERSEY

MAGISTRATE JUDGE: RONALD J. HEDGES, #99-6144-01

TRIAL JUDGE: ALFRED J. LECHNER JR., #2:99-CR-753(AJL), AND/OR
             99-753(AJL).

ARRESTING AGENCIES: NEWARK, NEW JERSEY F.B.I AGENCY; & THE STATE
                    ESSEX COUNTY SHERIFF [B.O.N] DEPARTMENT

PROSECUTING OFFICIALS: U.S. ATTORNEYS OFFICE FROM NEWARK, NEW
                       JERSEY; & THE STATE ESSEX COUNTY PROSECU-
                       TORS OFFICE

Identification request in accordance with 28 C.F.R. § 16.41(d).

**TO WHOM IT MAY CONCERN:** The information requested herein [DISCLO-SURE OF ALL BONDS] is made pursuant to the provisions of the F.O.I.A. 5 U.S.C. § 552(a), & (d)(1), for the **"FULL DISCLOSURE, & RELEASE OF ALL RE-CORDS DISCRIBED HEREIN"**; & any data contained in the files of this Department, & any other State, & Federal Dept., of Agencies, & Offices listed above in regard to said requested information, & case.

1. The records sought specifically, but not limited to are as follows: **[A]** SURETY BOND(S) PURSUANT TO 5 U.S.C. § 2901, & D.C. CODE 11-7040; **[B]** BID BOND(S) INFORMATION, & CERTIFICATION; **[C]** PAYMENT BOND(S)

Ex: A-12

INFORMATION, & CERTIFICATION; **[D]** PERFORMANCE BOND(S) INFORMATION, &
CERTIFICATION; **[E]** THE MILLER ACT REINSURANCE PERFORMANCE BOND(S); **[F]**
COMMERCIAL BONDIND(S) INFORMATION, & CERTIFICATION; **[G]** CRIMINAL BOND-
ING(S) INFORMATION, & CERTIFICATION; & **[H]** ANY OTHER UNMENTIONED BOND(S),
AND/OR DOCUMENTS CONNECTED TO SAID REQUESTED INFORMATION.

2. Said requested information is including which Private, and/or
Government Body, and/or Persons i.e., corporation(s), companies, associ-
ations, firms, limited partnerships, societies, joint stock companies, in-
dividuals officers, and/or unincorporated associations who secured the
Bond(s), & who is holding the Bond(s); & any record, & data concerning
the Bond(s) not otherwise exempt by title 5 U.S.C. § 552(a)(6), (c), & (b)
(7). See, <u>Public Citizen v. Dept of Justice</u>, 105 L.Ed 2d 377 (1989);
<u>Dept. of Justice v. Reporters Comm.</u>, 103 L.Ed 2d 774 (1989); & <u>F.B.I v.</u>
<u>Abramson</u>, 72 L.Ed 2d 376 (1982).

3. The requester request the information soughted in ¶ 1, herein
for the named individuals in the initial F.O.I.A. filing, as I authorize,
& request this Department, Agency, or Office to open, & access that file,
& all files for the information, records, & datas requested herein. See,
5 U.S.C. § 552(b)(3).

4. It is further requested that this Department, Agency, or Office
in response to all the information requested, specifically inform ALBERTO
CONCEPCION, if, & to what Private, and/or Government Body(s), and/or to
whom, and/or what individual(s) previously described in the initial re-
quested F.O.I.A. information has been disclosed, and/or release to, and/or
what material request(s) were made by said individual(s); of which I re-
spectfully request for their name(s), employment address(es), their pur-
pose(s), & need for such information, and/or material, as well as the
specific reference to authority statute(s), or regulation(s) governing

Ex: A-13                    2

such release, and/or disclosure. See, 5 U.S.C. § 552(a), & (b)(1)-(4);
& Abraham, & Rose, P.L.C. v. United States, 138 F.3d 1075 (1998).

5. CONCEPCION, asserts that this Department, Agency, or Office is
advise that the requested information herein, in total "are no longer
accorded exempt status", unless specific exemptions noted, & only with re-
ference to specific citation, or authority. See, Cummock v. Gore, 180 L.Ed
2d 282 (1999); & Solar Sources Inc. v. United States, 142 F.3d 1033
(1998).

6. CONCEPCION, has agree to pay all reasonable costs, or fees appli-
cable to this request; or if I am considered indigent, I ask that this
Department, Agency, or Office waive all charges pursuant to 5 U.S.C. § 552
(a)(4)(A)(i), et seq.

7. Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), it is noted that this
Department, Agency, or Office has twenty [20] working days following this
Certified Return Receipt Mail #7006-2150-0004-7651-4682, for this specific
request to provide me with the information, and/or material sought in ¶
1, herein. Should any delay occur, it is respectfully requested that this
Department, Agency, or Office inform me of this delay as provided by
statute; or I will be compel to pursue other unnecessary remedies. See,
Blazy v. Tenet, 194 F.3d 90 (1999); & Gmri Inc v. E.E.O.C., 149 F.3d 449
(1998).

Respectfully Requested, &
Submitted By:

DATED: June 25,2007

Alberto Concepcion

Ex: A-14

3

Office of the Law Revision Counsel
U.S. House of Representatives
Washington, D.C. 20515

March 1, 2000

# Ex: A-15

Dear Mr.

This is in response to your letter concerning Title 21 and the legal effect of that title not having been enacted into positive law. You ask two specific questions, the short answers to which are as follows:

1. You are correct that Title 21 has not been enacted into positive law.
2. Convictions under particular sections of Title 21 occur because it is the law of the land. Whether a title is positive or non-positive law relates to the ultimate evidentiary source for the text of a law, not to the legal effect of the provision.

Some background will help in clarifying the distinction between positive and non-positive law.

Official compilations of the laws of Congress are found in two sources: the United States Statutes at Large and the United States Code. The United States Statutes at Large, prepared by the Office of the Federal Register, provides a permanent collection of the laws of each session of Congress, chronologically arranged. They are legal evidence of the laws contained in them in any court. However, they are not easy to use because there is no attempt to arrange the laws according to their subject matter or to show the present status of an earlier law as it has been subsequently amended.

The United States Code, prepared by this Office, is a consolidation and compilation of the general and permanent laws of the United States arranged according to subject matter. It presents the permanent laws enacted by Congress in a concise and useable form by grouping them by their subject matter and by showing the present status of laws that have been amended on one or more occasions.

TRANDAHL
CLERK
A.C. MORRISON
PUTY CLERK

Office of the Clerk

U.S. House of Representatives

Washington, DC 20515-6601

June 28, 2000

Mr.

Ex:A-16

Dear Mr.

Thank you for your letter requesting information on Title 18.

In response to your inquiry, Congress was in session on June 1, 3, 4, 7-12 and 14-19, 1948, however, Title 18 was not voted on at this time. As you may know, Title 18 covers 845 pages in the U.S. Code and this wording was developed over many years. Signed copies of laws are archived at the National Archives and Records Administration and are not available to the public.

I hope that I have been of some assistance to you. For future reference, most federal depository libraries possess this type of information. For the depository library closest to you, please consult the Government Printing Office web site: www.gpo.gov/libraries.

With best wishes, I am

Sincerely,

Jeff Trandah

JT/rs



**G A O**
Accountability · Integrity · Reliability

United States General Accounting Office
Washington, DC  20548

November 22, 2000

Ex: A-17

Dear Mr.

This is in response to your recent letter asking "has Title 21 of the U. S. Codes been enacted into positive law".

Our Office does not provide legal research services to the general public.  We note, however, that Title 21 has not been enacted into "positive law", but is a codification of the statutes.

Sincerely yours,

*Kenneth R Schutt*

Kenneth R. Schutt
Supervisory Adjudicator



# National Archives and Records Administration

## code of federal regulations

TURN THIS PAGE OVER →

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40] Default is 40. Maximum is 200.

**Search Terms:** [                                    ]

SUBMIT    CLEAR

Ex: A-18

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ Title 21 Food and Drugs Revised April 1, 1998 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/26/98 |
| | ☐ 2 | | 100-169 | | 6/29/98 |
| | ☐ 3 | | 170-199 | | 6/26/98 |
| | ☐ 4 | | 200-299 | | 6/26/98 |
| | ☐ 5 | | 300-499 | | 7/7/98 |
| | ☐ 6 | | 500-599 | | 6/29/98 |
| | ☐ 7 | | 600-799 | | 6/26/98 |
| | ☑ 8 | | 800-1299 | | 6/29/98 |



# National Archives and Records Administration

## code of federal regulations

TURN THIS PAGE OVER →

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40     Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT   CLEAR   Ex: A-19

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 1999** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/25/99 |
| | ☐ 2 | | 100-169 | | 6/23/99 |
| | ☐ 3 | | 170-199 | | 5/31/99 |
| | ☐ 4 | | 200-299 | | 7/13/99 |
| | ☐ 5 | | 300-499 | | 7/1/99 |
| | ☐ 6 | | 500-599 | | 8/2/99 |
| | ☐ 7 | | 600-799 | | 6/21/99 |
| | ☑ 8 | | 800-1299 | | 8/2/99 |



# National Archives and Records Administration

# code of federal regulations

TURN THIS PAGE OVER ↓

## Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40]  Default is 40. Maximum is 200.

**Search Terms:** [＿＿＿＿＿＿＿＿＿＿＿＿]

[SUBMIT] [CLEAR]   Ex: A-20

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 2000** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/20/00 |
| | ☐ 2 | | 100-169 | | 5/19/00 |
| | ☐ 3 | | 170-199 | | 6/22/00 |
| | ☐ 4 | | 200-299 | | 6/23/00 |
| | ☐ 5 | | 300-499 | | 8/1/00 |
| | ☐ 6 | | 500-599 | | 6/22/00 |
| | ☐ 7 | | 600-799 | | 7/1/00 |
| | ☑ 8 | | 800-1299 | | 7/5/00 |



# National Archives and Records Administration

**code of federal regulations**

TURN THIS PAGE OVER ↓

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40    Default is 40. Maximum is 200.

**Search Terms:** [                              ]



SUBMIT    CLEAR    Ex: A-21

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** Revised April 1, 2001 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 5/21/01 |
| | ☐ 2 | | 100-169 | | 6/5/01 |
| | ☐ 3 | | 170-199 | | 6/2/01 |
| | ☐ 4 | | 200-299 | | 5/11/01 |
| | ☐ 5 | | 300-499 | | 5/25/01 |
| | ☐ 6 | | 500-599 | | 5/16/01 |
| | ☐ 7 | | 600-799 | | 7/23/01 |
| | ☑ 8 | | 800-1299 | | 6/06/01 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER →*

### Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40]  Default is 40. Maximum is 200.

**Search Terms:** [                    ]

SUBMIT   CLEAR   *Ex: A-22*

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 2002** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/18/02 |
| | ☐ 2 | | 100-169 | | 05/31/02 |
| | ☐ 3 | | 170-199 | | 5/30/02 |
| | ☐ 4 | | 200-299 | | 6/13/02 |
| | ☐ 5 | | 300-499 | | 5/30/02 |
| | ☐ 6 | | 500-599 | | 06/13/02 |
| | ☐ 7 | | 600-799 | | 5/30/02 |
| | ☑ 8 | | 800-1299 | | 6/17/02 |



# National Archives and Records Administration

# code of federal regulations

TURN THIS PAGE OVER →

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** 40  Default is 40. Maximum is 200.

**Search Terms:**

SUBMIT    CLEAR    Ex: A-23

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ Title 21 Food and Drugs Revised April 1, 2003 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 04/24/2003 |
| | ☐ 2 | | 100-169 | | 05/22/03 |
| | ☐ 3 | | 170-199 | | 05/07/2003 |
| | ☐ 4 | | 200-299 | | 05/6/03 |
| | ☐ 5 | | 300-499 | | 05/6/03 |
| | ☐ 6 | | 500-599 | | 5/15/03 |
| | ☐ 7 | | 600-799 | | 04/24/03 |
| | ☑ 8 | | 800-1299 | | 06/04/03 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER →*

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40]    Default is 40. Maximum is 200.

**Search Terms:** [                    ]

[SUBMIT] [CLEAR]    *Ex: A-24*

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 2004** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 7/12/04 |
| | ☐ 2 | | 100-169 | | 6/23/04 |
| | ☐ 3 | | 170-199 | | 6/4/04 |
| | ☐ 4 | | 200-299 | | 7/12/04 |
| | ☐ 5 | | 300-499 | | 6/7/04 |
| | ☐ 6 | | 500-599 | | 5/28/04 |
| | ☐ 7 | | 600-799 | | 7/12/04 |
| | ☑ 8 | | 800-1299 | | 6/16/04 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER ↓*

**Select and search or browse available CFR Titles or volumes:**

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40] Default is 40. Maximum is 200.

**Search Terms:** [                    ]

[SUBMIT] [CLEAR]    *Ex: A-25*

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 2005** | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 6/3/05 |
| | ☐ 2 | | 100-169 | | 6/20/05 |
| | ☐ 3 | | 170-199 | | 5/16/05 |
| | ☐ 4 | | 200-299 | | 5/11/05 |
| | ☐ 5 | | 300-499 | | 5/11/05 |
| | ☐ 6 | | 500-599 | | 5/20/05 |
| | ☐ 7 | | 600-799 | | 5/5/05 |
| | ☑ 8 | | 800-1299 | | 7/21/05 |



# National Archives and Records Administration

## code of federal regulations

*TURN THIS PAGE OVER* ↓

### Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** [40] Default is 40. Maximum is 200.

**Search Terms:** [_____]

[SUBMIT] [CLEAR]  Ex: A-26

| Title | Search | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|-------|--------|---------------|---------|--------------|-------------------|--------------|
| ☑ **Title 21 Food and Drugs** **Revised April 1, 2006** | | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 5/17/06 |
| | | ☐ 2 | | 100-169 | | 5/16/06 |
| | | ☐ 3 | | 170-199 | | 5/17/06 |
| | | ☐ 4 | | 200-299 | | 5/16/06 |
| | | ☐ 5 | | 300-499 | | 5/17/06 |
| | | ☐ 6 | | 500-599 | | 5/23/06 |
| | | ☐ 7 | | 600-799 | | 5/16/06 |
| | | ☑ 8 | | 800-1299 | | 6/7/06 |



# National Archives and Records Administration

# code of federal regulations

TURN THIS PAGE OVER ↓

## Select and search or browse available CFR Titles or volumes:

- All volumes for the selected Title(s) will be searched by default.
- Individual volumes can be searched by clicking the corresponding checkbox. To prevent duplicate search results, deselect the Title checkbox that the volume is in.

**Maximum Records Returned:** |40|   Default is 40. Maximum is 200.

**Search Terms:** |                    |

SUBMIT | CLEAR     Ex: A-27

| Search Title | Search Volume | Chapter | Browse Parts | Regulatory Entity | Online as of |
|---|---|---|---|---|---|
| ☑ **Title 21 Food and Drugs** Revised April 1, 2007 | ☐ 1 | I | 1-99 | Food and Drug Administration, Department of Health and Human Services | 5/23/07 |
| | ☐ 2 | | 100-169 | | 6/19/07 |
| | ☐ 3 | | 170-199 | | 05/15/07 |
| | ☐ 4 | | 200-299 | | 5/16/07 |
| | ☐ 5 | | 300-499 | | 5/30/07 |
| | ☐ 6 | | 500-599 | | 6/20/07 |
| | ☐ 7 | | 600-799 | | 5/15/07 Under developmen |
| | ☑ 8 | | 800-1299 | | 6/19/07 |

Title 21—Food and Drugs    2007

(This index contains parts 800 to 1299)

# CHAPTER I—FOOD AND DRUG ADMINISTRATION, DEPARTMENT OF HEALTH AND HUMAN SERVICES (CONTINUED)

Ex: A-28

| Part | |
| --- | --- |
| 800 | General |
| 801 | Labeling |
| 803 | Medical device reporting |
| 806 | Medical devices; reports of corrections and removals |
| 807 | Establishment registration and device listing for manufacturers and initial importers of devices |
| 808 | Exemptions from Federal preemption of State and local medical device requirements |
| 809 | In vitro diagnostic products for human use |
| 810 | Medical device recall authority |
| 812 | Investigational device exemptions |
| 813 | [Reserved] |
| 814 | Premarket approval of medical devices |
| 820 | Quality system regulation |
| 821 | Medical device tracking requirements |
| 822 | Postmarket surveillance |
| 860 | Medical device classification procedures |
| 861 | Procedures for performance standards development |
| 862 | Clinical chemistry and clinical toxicology devices |
| 864 | Hematology and pathology devices |
| 866 | Immunology and microbiology devices |
| 868 | Anesthesiology devices |
| 870 | Cardiovascular devices |
| 872 | Dental devices |
| 874 | Ear, nose, and throat devices |
| 876 | Gastroenterology-urology devices |
| 878 | General and plastic surgery devices |
| 880 | General hospital and personal use devices |
| 882 | Neurological devices |
| 884 | Obstetrical and gynecological devices |
| 886 | Ophthalmic devices |
| 888 | Orthopedic devices |
| 890 | Physical medicine devices |
| 892 | Radiology devices |
| 895 | Banned devices |
| 898 | Performance standard for electrode lead wires and patient cables |
| 900 | Mammography |



# National Archives and Records Administration

## Office of the Federal Register

December 18, 2000



Mr.

Title 21 of the <u>United States Code</u> (USC) has at no time been published, in part or in its entirety, in the <u>Federal Register</u>. The USC is maintained by the Law Revision Council, a Congressional entity. The content of the USC is comprised of permanent laws enacted and codified by Congress. To find the original laws that added or amended any of the codified material, consult the reference notes included in the volume relating to the parts or chapters you are interested in. These notes will assist you in finding the original law included in the <u>U.S. Statutes at Large</u>.

Both the USC and US Statutes at Large are available through a Federal Depository Library. If you do not have access to such a library, please consult your facility librarian to seek an interlibrary loan.

Due to personnel shortages, office policy precludes our staff from conducting lengthy research requests.

If our office can be of further assistance to you, please contact us again.

Sincerely,

Brian Swidal
Customer Service Unit
Office of the Federal Register

Ex: A-30

## HISTORY OF BILLS ENACTED INTO PUBLIC LAW (80TH CONG., 2D SESS.)—Continued

| Title | Bill No. | Date introduced | Committee hearings — House | Committee hearings — Senate | Date reported — House | Date reported — Senate | Report No. — House | Report No. — Senate | Page of Cong. Record of passage — House | Page of Cong. Record of passage — Senate | Date of passage — House | Date of passage — Senate | Date approved | Public law No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| To amend the Railroad Retirement Act of certain annuities, and the Railroad Unemployment Insurance Act with respect to taxes levied thereunder. | H. R. 6766 (S. 2782) | June 1 | IFC* | IFC* | June 9 | | 1574 | | 7936 | 7933 | June 8 | June 11 | June 23 | 744 |
| Amending District of Columbia Code, relative to admissibility of testimony. | H. R. 4071 | July 2, 1947 | DC | DC | July 8, 1947 | Apr. 30 | 807 | 1221 | 134 | 8239 | July 8, 1947 | Jan. 15 | June 24 | 745 |
| To increase the salary of Coordinator of Federal Agencies. | S. 3889 | June 18, 1947 | | | June 7 | | 808 | 1536 | 9609 | 7924 | June 11 | May 26 | June 24 | 746 |
| Permitting mining leases under United States mining laws within the game sanctuary of the Harney National Forest. | H. R. 2867 | Mar. 31, 1947 | PL | | June 11 | | 912 | 1597 | 9596 | 7944 | July 21, 1947 | June 11 | June 24 | 747 |
| To amend Veterans Regulation No. 1 (a), pts. I and II, to establish a presumption of service connection for chronic and tropical diseases. | S. 2308 | Apr. 15 | | Fin* | July 14, 1947 | June 11 | 1208 | 1279 | 8394 | 7924 | July 21, 1947 | June 12 | June 24 | 748 |
| To amend the Food and Drug Act, to authorize seizure of adulterated or misbranded products. | S. 1266 | May 12, 1947 | IFC* | IFC* | July 8, 1947 | Apr. 30 | 1574 | 1221 | 134 | 8239 | July 8, 1947 | Apr. 30 | June 24 | 749 |
| To permit entry of crude or broken limestone to be used in manufacture of fertilizer. | H. R. 5275 | Feb. 4 | WM | Fin | Feb. 23 | Apr. 15 | 807 | 1129 | 1610 | 8238 | Feb. 24 | June 15 | June 24 | 750 |
| Conferring jurisdiction over Fort Des Moines Veterans' Village upon the State of Iowa. | H. R. 6188 | Apr. 12 | PW* | PW | Apr. 23 | June 10 | 1415 | 1119 | 5199 | 7941 | May 3 | June 12 | June 24 | 751 |
| Relative to admission of Filipinos to the U.S. Naval Academy. | H. R. 6698 | May 25 | AS* | AS | June 8 | June 17 | 1385 | 1266 | 8490 | 8733 | June 15 | June 18 | June 24 | 752 |
| Navy appropriations for 1949. | H. R. 6771 | June 2 | App.* PW | App.* IIA | June 2 May 5 | June 14 May 10 | 2158 | 1621 1266 | 8214 7073 | 6390 8301 | June 14 June 15 | May 24 | June 24 | 753 |
| To ratify the contract for purchase of certain mineral land from the Choctaw and Chickasaw Indians. | S. J. Res. 203 (H. J. Res. 363) | Apr. 2 | App.* Fin | AS | June 2 | June 5 | 1115 1668 | | 8301 | 8239 | June 8 | June 1 | June 24 | 754 |
| Providing for a National Institute of Dental Research. | H. R. 6726 (S. 176) | May 27 | IFC* | LPW | May 27 | July 7, 1947 | 2158 | 436 | 7415 | 7934 | June 8 | June 1 | June 24 | 755 |
| To provide for the issuance of free passes on railroads to official watch inspectors. | H. R. 2192 | Feb. 20 | IFC | IFC | June 17 | June 8 | 2394 | 1538 | 8994 | 7924 | June 18 | June 12 | June 24 | 756 |
| To increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act. | H. R. 2237 (H. R. 6647) | Feb. 27 | EdL | LPW* | June 1 | June 17 | 2095 | 1315 | 7397 | 6302 | June 8 | June 12 | June 24 | 757 |
| To clarify the position of Air Force Secretary and to authorize Secretaries of Army, Navy, Air Force, and Secretary of Defense to establish certain positions in professional and scientific service. | S. 2505 | Apr. 15 | POCS | AS | June 11 | May 26 | 3306 | 1408 | 8494 | 6778 | June 18 | May 26 | June 24 | 758 |
| Selective Service Act of 1948. | S. 2655 (H. R. 6401) | May 12 | AS | AS* | May 7 | May 26 | 1861 | 1268 | 8828 | 7681 | June 18 | May 26 | June 24 | 759 |
| To authorize lease of certain space in Lafayette Building in the District of Columbia by FWA. | S. 2706 | May 19 | | PW | May 12 | May 12 | 134 | 1614 | 8947 | 8721 | June 18 | June 10 | June 24 | 760 |
| Relative to consolidation of the Lighthouse Service with the Coast Guard. | H. R. 239 | Jan. 3, 1947 | MMF | Fin | Apr. 23, 1947 | June 11 | 294 | 1594 | 5055 | 7942 | June 16 | June 12 | June 24 | 761 |
| Providing pensions for certain widows of Spanish-American War veterans. | H. R. 4962 | Jan. 14 | VA | IFC | June 11 | June 17 | 2316 | 1747 | 8495 | 8724 | June 16 | June 18 | June 24 | 762 |
| To authorize Marine Band attendance at 1948 national assembly of the Marine Corps League. | H. R. 5306 (S. 2064) | Jan. 30 | AS* | AS | June 2 | June 8 | 1150 | 1541 | 7414 | 7926 | June 8 | June 12 | June 24 | 763 |

Ex:A-31

| Subject | No. | Introduced | Com. | | Reported | | | | | | | | | No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Addition of certain surplus Federal lands to the Chickamauga and Chattanooga Military Park, Ga., and Tenn. | H. R. 5936 | Mar. 22 | PL | | IIA | May 5 | May 13 | 1948 | 1862 | 7944 | May 18 | | June 12 | June 24 | 764 |
| To amend the Standard Time Act relative to placing a certain portion of the State of Florida in the eastern time zone. | H. R. 6518 (S. 2547) | Apr. 22 | IIA | | IFC | May 12 | May 13 | 1600 | 1690 | 8239 | May 18 | | June 15 | | 765 |
| To extend for 1 year the terms of two additional national military appropriations for 1949. To provide annuities for certain surviving annuitants of State. retired prior to Apr. 1, 1948. | H. R. 6771, H. R. 6822, H. R. 2669 (S.), H. R. 6641 (S. 2740) | June 2, June 7 | FL | | App* FA | June 2, June 16 | June 17, June 15 | 2135, 2257 | 1765, 1685 | 6957, 8485, 8618, 8721 | June 2, June 16 | | June 17, June 18 | June 24, June 25 | 766, 767 |
| To provide annuities for certain surviving spouses of annuitants retired prior to Apr. 1, 1948. | H. R. 6641 (S. 2740) | May 20 | | | POCS | POCS | June 15 | 2309 | 1685 | 8494 | June 16 | | June 18 | June 25 | 768 |
| To authorize free entry of certain railroad equipment under certain conditions from France. | H. J. Res. 433 | June 18 | WM | | POCS | June 18 | June 15 | | | 9222 | 9098 | June 19 | | June 18 | June 25 | 769 |
| Conferring certain oil contracts negotiated by France. | H. J. Res. 433 | Dec. 6, 1947 | BC | | FR | May 28 | June 9 | 2077 | 1560 | 7390 | June 8 | | June 12 | June 25 | 770 |
| To codify Title 3 of the United States Code, entitled "The President." | H. R. 4659 (S. 1857) | Apr. 30 | Jud | | Jud* | Apr. 24, 1947, June 14 | June 9 | 1898 | 1623 | 6600 | May 18 | | June 18 | June 25 | 771 |
| To codify Title 18 of the United States Code, entitled "Crimes and Criminal Procedure," and Title 28, Judicial Code and Judiciary Code. | H. R. 6412, H. R. 3190 | Apr. 30, Apr. 25, 1947 | Jud | | Jud*, Jud | Apr. 24, 1947, June 14 | June 14 | 304, 308 | 1620, 1559 | 5048, 8392 | May 12, 1947, July 7, 1947 | | June 18 | June 25 | 772, 773 |
| To authorize admission of displaced persons. | S. 2242 (H. R. 6396), S. 2401, S. 2872, S. 2770, (H. R. 6751) | Mar. 29 | AS | | Jud* | May 4, June 2 | Mar. 2, June 8 | 1854, 950 | 1559, 1542 | 7880, 7925 | July 7, 1947, June 16 | | June 11, June 2 | June 25, June 25 | 774, 775 |
| To provide for military justice within the Air Force. | S. 2401 | Mar. 29 | AS | | AS | June 8 | June 8 | 2265 | 1542 | 8492 | June 16 | | June 12 | June 25 | 775 |
| Relative to the Organic Act of Puerto Rico. | H. R. 2872 | May 17 | PL | | IIA | May 27, June 7 | May 2, June 8 | 1418 | 1418 | 8484 | June 16 | | June 1, June 16 | June 25 | 776 |
| Fixing the rank of the assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements. | S. 2770 | May 28 | AS | | AS | June 7 | June 8 | 2256 | 1451 | 8496 | June 16 | | June 10 | June 25 | 777 |
| Increasing the sum to $30,000 for statue of Commodore John Barry for presentation to Eire. | H. J. Res. 397 | Jan. 15 | FA | | FR | | June 17 | 1972 | 1760 | 8754 | June 18 | | June 18 | June 25 | 778 |
| Relative to pay of jurors in the United States courts. | H. R. 945 (S. 19) | Jan. 14, 1947 | Jud | | Jud* | May 2 | June 7 | 2162 | 1510 | 7418 | June 8 | | June 12 | June 25 | 779 |
| Relative to probation system in United States courts. | H. R. 2766 | Mar. 25, 1947 | Jud | | Jud | May 11 | June 8 | 1921 | 1544 | 6007 | May 18 | | June 8 | June 25 | 780 |
| Authorizing certain expenditures from appropriations of the Public Health Service. | H. R. 4114 | July 8, 1947 | Jud | | LPW | May 11 | June 8 | 1927 | 1578 | 6008 | May 18 | | June 12 | June 25 | 781 |
| Army-civil functions appropriations for 1949. | S. 5524, H. R. 5886 | Feb. 24, Feb. 24 | App* Jud* | | IFC PW | May 19 | Apr. 6 | 1420, 1661 | 1772, 6012 | 6096, 6731 | Feb. 26, May 18 | | May 19, June 12 | June 25, June 25 | 783, 783 |
| To amend the Nationality Act of 1940 relative to petition for citizenship. | H. R. 6291 | Apr. 21 | POCS | | POCS | May 11 | June 15 | 1938 | 1687 | 7380 | June 8 | | June 18 | June 25 | 784 |
| Authorizing the Printing and binding of additional copies of certain Street Codes. | H. R. 6935, H. R. 1853 | Dec. 10, 1947 | Jud | | Jud* | June 15, May 17 | June 15, Mar. 31 | 2148, 1876 | 1769, 1043 | 9051, 9596 | May 18, May 18 | | June 19, Apr. 12 | June 25, June 25 | 785, 786 |
| To authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems. | S. 2186, S. 2391 | Feb. 20, Apr. 30 | MMF HA | | IFC HA | June 17, June 18 | May 27, May 14 | 2397, 2402 | 1415, 1459 | 8557, 8837 | May 18, June 16 | | June 1 | June 25, June 25 | 785, 785 |
| Authorizing permanent appointment in each of the Regular Army and Regular Air Force of one officer in the grade of general. | H. R. 3218 | Apr. 25, 1947 | HA | | HA | May 6, 1947 | June 19 | 382 | 1770 | 5229 | May 14, 1947 | | June 19 | June 26 | 789 |
| Second deficiency appropriations for 1948. | H. R. 6039 | Mar. 30 | AS | | AS | Apr. 14 | June 17 | 1734 | 1764 | 4644 | Apr. 20 | | June 18 | June 26 | 790 |
| | S. 6039 | | | | | | | | | 4755 | | | | June 25 | 791 |

*Passed hearings.

Ex: A-32

5048                         CONGRESSIONAL RECORD—HOUSE                         MAY 12

amount each year for the development of farm-to-market roads. The Commissioner of Public Roads, Mr. Thomas H. MacDonald, spoke in favor of the bill. General Fleming, Commissioner of Public Works, favored the bill. No one appeared in opposition to the bill. It was reported unanimously by the Public Works Committee. Three identical bills have been introduced in the other body by three different Senators. The President recommended the passage of such measure in his message to the Congress on January 3 of this year. This bill will not require a single dollar of appropriations from the Federal Treasury.

Mr. CASE of South Dakota. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. CASE of South Dakota. Does the extension apply to the farm-to-market roads as well as to the primary system?

Mr. CUNNINGHAM. It certainly does, as well as to the development of the highways in the urban areas.

Mr. CASE of South Dakota. The bill is very much in order for two reasons. One is that the time when the Japanese war expired, creating the resolution which the gentleman has referred to before, came along in the fall, which gave the States a short year the first year.

Mr. CUNNINGHAM. Yes. No States started building highways prior to October of 1945. They lost 4 months to start with. Then, there was a lack of material and shortage of labor and high prices, which caused the program to be held up. The whole program will be retarded and the States will lose some of this appropriation and there will be tremendous waste if this bill is not enacted. Possibly 12 months' grace period is not sufficient, but if it is not sufficient we can bring up another bill later.

Mr. CASE of South Dakota. If I remember correctly prior to this authorization the old Federal-aid authorization gave the States 2 years in which to act.

Mr. CUNNINGHAM. I think the gentleman is right.

Mr. H. CARL ANDERSEN. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. H. CARL ANDERSEN. I wish to state at this time that in my opinion this is very necessary legislation. As a previous member of the Committee on Roads, I would like to compliment the gentleman for bringing this bill up at this time.

Mr. CUNNINGHAM. I thank the gentleman.

Mr. DONDERO. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield to the chairman of the committee.

Mr. DONDERO. I think the gentleman has already covered the ground, but is it not a fact that because of the conditions enumerated by the gentleman, many of the States have been unable to comply with the provisions of this act, which makes this bill mandatory in order to protect the States?

Mr. CUNNINGHAM. That is absolutely true. In addition, there would be tremendous waste, because the highway program would be stopped, and highways partly completed would be left in status quo until the Congress took some additional action.

Mr. COLE of New York. Mr. Speaker, I withdraw my reservation of objection.

Mr. ANGELL. Mr. Speaker, reserving the right to object, as one of the members of this committee, I had an opportunity to study this bill very carefully. The people in my particular area in the Northwest are very, very much in sympathy with this bill. I think what the chairman has said and what the gentleman from Iowa [Mr. CUNNINGHAM] has said is absolutely true, that this bill is essential for our road-building program.

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill, as follows:

Be it enacted, etc., That paragraph (d) of section 4 of the Federal-Aid Highway Act of 1944, Public Law 521, Seventy-eighth Congress, approved December 20, 1944, is hereby amended by striking out the term "one year" where it appears in said paragraph and inserting in lieu thereof the term "two years."

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

TO CODIFY TITLE 18 OF THE UNITED STATES CODE, CRIMES AND CRIMINAL PROCEDURE

The Clerk called the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code entitled "Crimes and Criminal Procedure."

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill the second time.

Mr. WALTER. Mr. Speaker, I offer an amendment.

The Clerk read as follows:

Amendment offered by Mr. WALTER: On page 434, line 11, after the word "of", strike out "three" and insert "five."

Mr. WALTER. Mr. Speaker, the amendment you have just heard reported would have the effect, if adopted, of increasing the membership of the parole board from three to five.

At the last session of the Congress one of the subcommittees of the Committee on the Judiciary, in studying the legislation which we hoped might have the effect of cutting down the criminal rate in this country, found a perfectly appalling situation in the parole board. That board of three members actually interviews upward of 10,000 prisoners each year. That is, personal interviews. In addition to that, they have to review the cases acted on after personal interviews.

There are 21 criminal institutions in the United States that must be visited by this Board at regular intervals. So they have a perfectly impossible job with the result that men are paroled according to formula who should be compelled to serve their full sentence. I am not thinking about those men who are eligible for parole and in whose cases no action can be taken because the Board has not the time to reach their cases;

that is bad enough, but, significantly enough, over 50 percent of the criminals in the Federal institutions are repeaters. It seems to me that the least we can do is to make it possible or probable for a Board intelligently to pass on applications for parole in order to determine whether or not men should be released from their incarceration.

Mr. CARROLL. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. CARROLL. Would the gentleman's amendment change existing law?

Mr. WALTER. It does not change existing law at all.

Mr. COLE of New York. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. COLE of New York. If it does not change existing law, and this bill is designed to codify existing law, what is the necessity of offering the amendment?

Mr. WALTER. It changes existing law in that it changes the number of members on the Board. It does not, however, in any way affect the purpose of the law establishing the parole system; it merely changes the number of members of the Board. This is not different from what has been done by this committee in this very bill. The period of sentence has been changed in order to make different crimes fit the sentences that have been fixed by Congress from time to time. That is done throughout this entire title 28.

Mr. GRAHAM. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. GRAHAM. As I understand the gentleman's amendment it increases the number of members from three to five.

Mr. WALTER. That is right.

Mr. GRAHAM. But it does not increase the rate of compensation of the members.

Mr. WALTER. That is right, exactly.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. ROBSION. I may say this to the gentleman, this matter came up before our Judiciary Committee and former Senator George Wharton Pepper, who is tremendously interested in this subject, and others felt they had to have additional authorization to increase the number from three to five. Otherwise we are not amending the law. I think there i. no objection to it. We have a bill which can be called up to do this thing.

Mr. WALTER. The gentleman is correct, but we are this far. I do not think there is any doubt but that the Judiciary Committee would unanimously approve a separate bill, but we have gotten this far with this legislation and it certainly seems to me the situation is so critical that we ought to act as quickly as we possibly can. That is the reason I have offered this amendment at this time.

The SPEAKER. The time of the gentleman from Pennsylvania has expired.

Mr. ROBSION. Mr. Speaker, this bill differs from the five codification bills which have preceded it on this calendar in that it constitutes a revision, as well as a codification, of the Federal laws

Case 1:07-cv-01766-RMU    Document 29-2    Filed 06/30/2008    Page 33 of 62

Ex: A-33

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two law-publishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and, in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.

XCIII——319

This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that

they were purely a codification. But there are some changes in this bill (H. R. 3198), I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6.

So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

# Ex:A-34    142

| No. | Index Key and History of Bill |
| --- | --- |

## HOUSE BILLS—Continued

H. R. 3175.—Shasta National Park, Calif. Reported from Public Lands Jan. 24, 1947; Report No. 680. Union Calendar. Passed House July 21, 1947. Reported in Senate Feb. 25, 1948; Interior and Insular Affairs; Report No. 928. Passed Senate Mar. 8, 1948. Approved Mar. 19, 1948. Public Law No. 449.

H. R. 3189.—Parry, Joe. Reported from Judiciary Apr. 1, 1948; Report No. 1638. Private Calendar. Passed House Apr. 0, 1948. Reported in Senate Apr. 30, 1948; Judiciary; Report No. 1203. Passed Private May 10, 1948. Approved May 17, 1948. Private Law No. 204.

H. R. 3190.—U. S. Code, Crimes and Criminal Procedure. Reported from Judiciary Apr. 24, 1947; Report No. 504. Union Calendar. Passed House May 12, 1947. Reported in Senate June 14, 1948; Judiciary; Report No. 1620. Passed Senate, amended, June 18, 1948. House agrees to Senate amendments June 18, 1948. Approved June 25, 1948. Public Law No. 772.

H. R. 3191.—Missing Persons Act, Philippines. Reported from Armed Services June 3, 1947; Report No. 500. Union Calendar. Rules suspended and passed House June 16, 1947. Reported in Senate July 16, 1947; Armed Services; Report No. 570. Passed Senate July 23, 1947. Approved July 26, 1947. Public Law No. 241.

H. R. 3194.—Reclamation Project of 1939, amend. Reported from Public Lands Apr. 29, 1948; Report No. 1833. Union Calendar. Passed House June 8, 1948.

H. R. 3197.—Mancos project, repayment period. Reported from Public Lands May 20, 1947; Report No. 402. Union Calendar. Passed House June 10, 1947. Reported in Senate June 10, 1947; Public Lands; Report No. 255. Passed Senate June 18, 1947. Approved June 25, 1947. Public Law No. 109.

H. R. 3203 (S. 1017; H. Con. Res. 53).—Housing, rent control. Reported from Banking and Currency Apr. 29, 1947; Report No. 317. Minority views by H. Union Calendar. Passed House May 1, 1947. In Senate read twice and placed on calendar May 2, 1947. Passed Senate, amended, June 2, 1947. Senate asks for a conference June 2, 1947. House agrees to a conference June 4, 1947. House agrees to conference report June 17, 1947. Senate agrees to conference report June 19, 1947. Approved June 30, 1947. Public Law No. 129.

H. R. 3214.—U. S. Code, Judicial Code and Judiciary. Reported from Judiciary Apr. 25, 1947; Report No. 308. Union Calendar. Rules suspended. Passed House July 7, 1947. Reported in Senate June 9, 1948; Judiciary; Report No. 1559. Passed Senate, amended, June 15, 1948. House agrees to Senate amendments June 10, 1948. Approved June 25, 1948. Public Law No. 773.

H. R. 3215.—Army-Navy Medical Services Corps Act of 1947. Reported from Armed Services May 14, 1947; Report No. 387. Union Calendar. Passed House June 2, 1947. Reported in Senate July 9, 1947; Armed Services; Report No. 464. Passed Senate, amended, July 23, 1947. House agrees to Senate amendments July 25, 1947. Approved Aug. 4, 1947. Public Law No. 337.

## HOUSE BILLS—Continued

H. R. 3218.—Bureau of Reclamation. Reported from Public Lands July 10, 1947; Report No. 860. Union Calendar. Passed House Jan. 19, 1948. Reported in Senate June 4, 1948; Interior and Insular Affairs; Report No. 1493. Passed Senate, amended, June 10, 1948. House agrees to Senate amendments June 18, 1948. Approved June 26, 1948. Public Law No. 790.

H. R. 3219.—Federal Works Agency, special policemen. Reported from Public Works June 12, 1947; Report No. 582. Union Calendar. Passed House July 7, 1947. Reported in Senate Apr. 30, 1948; Public Works; Report No. 1176. Passed Senate, amended, May 10, 1948. House agrees to Senate amendments May 18, 1948. Approved June 1, 1948. Public Law No. 566.

H. R. 3224.—Durante, Frank, and wife. Reported from Judiciary Dec. 17, 1947; Report No. 1215. Private Calendar. Passed House Jan. 20, 1948. Reported in Senate Apr. 30, 1948; Judiciary; Report No. 1186. Passed Senate May 10, 1948. Approved May 19, 1948. Private Law No. 300.

H. R. 3227 (S. 1174) (H. Res. 486).—Organized Reserve Corps. Reported from Armed Services July 17, 1947; Report No. 971. Union Calendar. Laid on table Mar. 9, 1948. S. 1174 passed in lieu.

H. R. 3229.—Hawaii and Alaska Cargo Manifest Laws. Reported from Ways and Means Mar. 2, 1948; Report No. 1478. Union Calendar. Passed House Mar. 15, 1948. Reported in Senate Mar. 26, 1948; Finance; Report No. 1029. Passed Senate Mar. 29, 1948. Approved Apr. 7, 1948. Public Law No. 476.

H. R. 3235.—District of Columbia, condemnation proceedings. Reported from District of Columbia May 20, 1947; Report No. 403. Union Calendar. Passed House May 29, 1947. Reported in Senate June 26, 1947; District of Columbia; Report No. 375. Passed Senate July 3, 1947. Approved July 11, 1947. Public Law No. 177.

H. R. 3239.—United States Employees' Compensation Act, amend. Reported from Education and Labor Apr. 15, 1948; Report No. 1750. Union Calendar. Union 833

H. R. 3243 (S. 1674).—Toporow, Roman. Reported from Judiciary July 17, 1947; Report No. 084. Private Calendar. Passed House July 22, 1947. Passed Senate July 23, 1947. Approved July 26, 1947. Private Law No. 90.

H. R. 3244.—Clark, Nellie M. Reported from Judiciary Mar. 2, 1948; Report No. 1464. Private Calendar. Passed House Mar. 16, 1948.

H. R. 3245 (H. Res. 201).—Appropriations, Second Deficiency, 1947. Reported from Appropriations Apr. 29, 1947; Report No. 323. Union Calendar. Passed House May 2, 1947. Appropriations; Report No. 175. Reported in Senate May 15, 1947; Appropriations; Report No. 175. Passed Senate, amend, May 16, 1947. House agrees asks for a conference May 16, 1947. House agrees to a conference May 20, 1947. House recedes conference report May 22, 1947. House recedes and concurs in Senate amendment Nos. 7 and 13, and concurs in Senate amendment Nos. 7 and 13, each with an amendment, May 22, 1947. Senate agrees to conference report May 22, 1947. Senate agrees to House amendments to Senate amendments Nos. 7 and 13, May 22, 1947. Approved May 26, 1947. Public Law No. 76.

| No. |
| --- |

H. R. 324
Reporte
June 30
Passed
July 14
Report
Approv

H. R. 3
from Ar
Union
Reporte
Report
Approv

H. R. 32
lands,
1947; 1
House
1947;
Senate
Public

H. R. 3
Judicia
Calend
in Sena
Passed
agrees
proved

H. R. 32
from 3
Private
Report
No. 16
July 2,

H. R. 32
Judicia
Calend
in Sen
Passed
1948.

H. R. 3
Report
No. 6
1947.

H. R.
Judicia
Calend
in Sen
Passed
1948.

H. R. 3
Repor
port
June
1947.
House
agrees
agrees
June

H. R. 3
porte
No. 3
1947.
4, 19

Ex: A-35

# EIGHTIETH CONGRESS

FIRST SESSION {CONVENED JANUARY 3, 1947
{ADJOURNED DECEMBER 19, 1947

SECOND SESSION {CONVENED JANUARY 6, 1948
{ADJOURNED DECEMBER 31, 1948

# CALENDARS
## OF THE UNITED STATES
## HOUSE OF REPRESENTATIVES
—AND—
# HISTORY OF LEGISLATION

ALL PENDING LEGISLATION FAILING FINAL
ENACTMENT PRIOR TO DECEMBER 31, 1948,
DIES WITH THE EIGHTIETH CONGRESS



# FINAL EDITION

PREPARED UNDER THE DIRECTION OF JOHN ANDREWS, CLERK OF THE HOUSE OF REPRESENTATIVES
CURTIS A. CHRISTIANSON, TALLY CLERK, WILLIAM H. HICKSON, ASSISTANT TALLY CLERK

*Calendars shall be printed daily—* ⎤     *Index to the Calendars will be printed on Monday of each week the House is in session,*
*Rule XIII, clause 5*                ⎦          *otherwise first day of session thereafter*

70238

Ex: A-36



**80TH CONGRESS**
**1ST SESSION**

# S. CON. RES. 33

---

## IN THE SENATE OF THE UNITED STATES

JULY 26 (legislative day, JULY 16), 1947

Mr. TAFT submitted the following concurrent resolution; which was considered and agreed to

---

# CONCURRENT RESOLUTION

1   *Resolved by the Senate (the House of Representatives*
2   *concurring)*, That when the two Houses adjourn on Sunday,
3   July 27, 1947, they shall stand adjourned until 12 o'clock
4   meridian on Friday, January 2, 1948, or until 12 o'clock
5   meridian on the third day after their respective Members
6   are notified to reassemble in accordance with section 2 of
7   this concurrent resolution, whichever event first occurs.
8   SEC. 2. The President pro tempore of the Senate, the
9   Speaker of the House of Representatives, the majority leader
10  of the Senate and the majority leader of the House of Repre-
11  sentatives, all acting jointly, shall notify the Members of the
12  Senate and the House, respectively, to reassemble whenever
13  in their opinion the public interest shall warrant it.

★

| | | | |
|---|---|---|---|
| | 128. Oct. 19, 1973-Oct. 23, 1973 | 4 | 0 |
| | 129. Nov. 22, 1973-Nov. 26, 1973 | 4 | 0 |
| 93/2 | 130. Feb. 9, 1974-Feb. 13, 1974 | 4 | 0 |
| | 131. Mar. 14, 1974-Mar. 19, 1974 | 5 | 0 |
| | 132. Apr. 12, 1974-Apr. 22, 1974 | 10 | 0 |
| | 133. May 24, 1974-May 28, 1974 | 4 | 0 |
| | | | -- |
| | | | 38 |

1. Source: 1974 Congressional Directory 392; Presidential Vetoes, Record of Bills Vetoed and Action Taken Thereon by the Senate and House of Representatives, 1789-1968 (Compiled by Senate Library, 1969); Calendar, 93rd Cong. (June 24, 1974).

2. The date of the beginning of each adjournment is the first day on which neither House was in session; the date of the end of each adjournment is the day on which one or both Houses resumed the session.

3. There was additional adjournments in this session, from July 27, 1868, to September 21, to October 16, and to November 10. No business was transacted subsequent to July 27, 1868, and the session adjourned sine die on November 10. In effect, the adjournment on July 27 was a sine die adjournment. President Andrew Johnson pocket vetoed two bills presented to him after the adjournment of July 27, 1868.

4. The Senate and the House of Representatives adjourned on July 27, 1947 under a "conditional final adjournment" resolution, S.Con.Res. 33; 93 Cong.Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a sine die adjournment, not an intrasession adjournment. On November 17, 1947, Congress convened pursuant to proclamation of President Truman, and adjourned sine die on December 19, 1947. The President pocket vetoed 19 bills presented to him after the adjournment of July 27, 1947.

5. The Senate and the House of Representatives adjourned on June 20, 1948, under a "conditional final adjournment" resolution, H.Con.Res. 218; 94 Cong.Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until December 31, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a sine die adjournment, not an intrasession adjournment. On July 26, 1948, Congress convened pursuant to a proclamation of President Truman. The President pocket vetoed 14 bills presented to him after the adjournment of June 20, 1948.

6. The House adjourned sine die on August 20, 1954. Thereafter President Eisenhower pocket vetoed twenty-five bills. Although the Senate remained in session until December 2, 1954, these were not intrasession pocket vetoes since the House had already finally adjourned.

[7] In summary, we hold that the Christmas recess of 1970 did not prevent the return of S. 3418-a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex: A-37

# Ex: A-38

Kennedy v. Sampson, 511 F.2d 430 (C.A.D.C. 19..)

1. Source: 1974 Congressional Directory 392; Presidential Vetoes, Record of.

Bills Vetoed and Action Taken Thereon by the Senate and House of

Representatives, 1789-1968 (Compiled by Senate Library, 1969); Calendar, 93rd

Cong. (June 24, 1974).1/5

2. The date of the beginning of each adjournment is the first day on which

neither House was in session; the date of the end of each adjournment is the

day on which one or both Houses resumed the session.1/5

3. There was additional adjournments in this session, from July 27, 1868, to

September 21, to October 16, and to November 10. No business was transacted

subsequeent to July 27, 1868, and the session adjourned sine die on November 10.

In effect, the adjournment on July 27 was a sine die adjournment.

Presidennt Andrew Johnson pocket vetoed two bills presented to him after the

adjournment of July 27, 1868.1/5

4. The Senate and the House of Representatives adjourned on July 27, 1947

under a "conditional final adjournment" resolution, S.Con.Res. 33; 93

Cong.Rec. 10400. Pursuant to the resolution, the two Houses were to stand in

adjournment until January 2, 1948, unless recalled into session earlier by

specified Senate and House leaders. In effect, the adjournment was a sine die

adjournment, not an intrasession adjournment. On November 17, 1947, Congress

convened pursuant to proclamation of President Truman, and adjourned sine die

on December 19, 1947. The President pocket vetoed 19 bills presented to him

after the adjournment of July 27, 1947.1/5

5. The Senate and the House of Representatives adjourned on June 20, 1948,

under a "conditional final adjournment" resolution, H.Con.Res. 218; 94

Cong.Rec. 9158. Pursuant to the resolution, the two Houses were to stand in

adjournment until December 31, 1948, unless recalled into session earlier by

specifieed Senate and House leaders. In effect, the adjournment was a sine die

adjournment, not an intrasession adjournment. On July 26, 1948, Congress

convened pursuant to a proclamation of President Truman. The President pocket

vetoed 14 bills presented to him after the adjournment of June 20, 1948.1/5

6. The House adjourned sine die on August 20, 1954. Thereafter President

Eisenhowwer pocket vetoed twenty-five bills. Although the Senate remained in

session until December 2, 1954, these were not intrasession pocket vetoes

since the House had already finally adjourned.1/5

### BUREAU OF MINES

The legislative clerk read the nomination of James Boyd, of Colorado, to be Director of the Bureau of Mines.

Mr. TAFT. Mr. President, I ask that the nomination be passed over.

The PRESIDING OFFICER. Without objection, the nomination will be passed over.

Mr. REVERCOMB. Mr. President, I join in the request that the nomination of James Boyd to be Director of the Bureau of Mines be passed over. I do that not for any personal reason whatsoever, but solely on the ground of doubt as to whether this nominee is fitted for the position and whether he has had the training and experience to fill the position.

The position of Director of Mines is becoming an increasingly important one. More and more he is a director of safety in the mines of this country.

At this session we passed a law with respect to continuing mine inspection in the Bureau of Mines. That law did not contain all that I wanted it to contain, but it indicates that there is a continued interest by the Federal Bureau of Mines in mine inspection. There are approximately 820,000 miners in the Nation, and of that number approximately 400,000 are engaged in coal mining. The preservation of safety has become one of the foremost duties of the Bureau of Mines. I find that Mr. Boyd is absolutely devoid of any experience in the coal-mining industry.

I want to read two questions which he very frankly and fairly answered when he was before the committee. This question was asked by the Senator from Montana [Mr. MURRAY]:

Senator MURRAY. Mr. Boyd, what study have you given to the coal-mining industry?

Mr. BOYD. Senator, I have never worked in the coal-mining industry directly. I have, as a member of the faculty of the Colorado School of Mines, been instrumental in training men who have gone into the coal-mining industry. I have been on inspection trips myself to various coal mines in the West. As I have said, we had direction of coal operations in Europe, and I know something of the operations there. I have never myself been engaged in the coal-mining industry.

And then this question was asked by the Senator from Montana:

Senator MURRAY. You admit that you are not familiar with the conditions in the coal mines in this country, especially here in the eastern section of the country.

Mr. BOYD. Senator, I admit that I have never been employed in coal mines. I have studied the situation for many years, and I know the basic problems in the coal-mining industry.

Mr. President, in view of the fact that more than half of the miners in this country are engaged in the mining of coal, and in view of the fact that the safety of those miners has become the primary duty and interest of the Federal Bureau of Mines, I feel that it is entirely fair to raise the question of the training and competency of Mr. Boyd to fill this position; and I join in the request that the nomination go over.

The PRESIDING OFFICER. The nomination will be passed over.

The clerk will state the next nomination on the calendar.

### NATIONAL LABOR RELATIONS BOARD

The legislative clerk proceeded to read the nominations of two members and the general counsel of the National Labor Relations Board.

Mr. TAFT. Mr. President, I ask that the Labor Relations Board nominations go over.

The PRESIDING OFFICER. Without objection, it is so ordered.

### UNITED STATES PUBLIC HEALTH SERVICE

The legislative clerk proceeded to read sundry nominations in the United States Public Health Service.

Mr. TAFT. Mr. President, I ask that the nominations in the Public Health Service be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

### THE ARMY

The legislative clerk proceeded to read sundry nominations in the Army.

Mr. TAFT. Mr. President, I ask that the nominations in the Army be confirmed on bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

Mr. TAFT. The Senator from South Dakota [Mr. GURNEY] has additional nominations.

Mr. GURNEY. Mr. President, I submit the nominations of 120 captains, 307 first lieutenants, 123 lieutenant colonels, and also certain nominations in the Navy, and ask that they be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

### POSTMASTERS

The legislative clerk proceeded to read sundry nominations of postmasters.

Mr. TAFT. Mr. President, I ask that the postmaster nominations be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the postmaster nominations are confirmed en bloc.

Mr. TAFT. I ask that the President be notified of the confirmations in all of these instances.

The PRESIDING OFFICER. Without objection, the President will be notified forthwith.

### CONDITIONAL ADJOURNMENT JANUARY 2, 1948

Mr. TAFT. Mr. President, in accordance with the terms of Senate Concurrent Resolution 33, adopted earlier today, I move that the Senate do now adjourn.

The motion was agreed to; and (at 3 o'clock and 50 minutes a. m., Sunday, July 27, 1947) the Senate adjourned, the adjournment being, under the provision of Senate Concurrent Resolution 33, to January 2, 1948, at 12 o'clock meridian.

### NOMINATIONS

Executive nominations received by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, of New York, to be Secretary of Defense.

COLLECTOR OF INTERNAL REVENUE

John T. Jarecki, of Chicago, Ill., to be collector of internal revenue for the first district of Illinois, in place of Nigel D. Campbell, resigned.

### CONFIRMATIONS

Executive nominations confirmed by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, to be Secretary of Defense.

DEPARTMENT OF JUSTICE

Philip B. Perlman, to be Solicitor General of the United States.

DIPLOMATIC AND FOREIGN SERVICE

TO BE ENVOY EXTRAORDINARY AND MINISTER PLENIPOTENTIARY OF THE UNITED STATES OF AMERICA TO RUMANIA

Rudolf E. Schoenfeld

TO BE FOREIGN SERVICE OFFICERS OF CLASS 6, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

| | |
|---|---|
| John A. Bovey, Jr. | James R. Ruchti |
| Ernest E. Ramsaur, Jr. | Ralph S. Saul |
| Miss Louise Schaffner | Robert M. Winfree |
| Richard W. Sterling | Robert W. Zimmermann |

TO BE FOREIGN SERVICE OFFICERS OF CLASS 2, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Charles F. Baldwin
John Lammey Stewart
Ben H. Thibodeaux

TO BE FOREIGN SERVICE OFFICERS OF CLASS 3, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

| | |
|---|---|
| Ralph B. Curren | Oscar E. Heskin |
| Jerome T. Gaspard | Philip W. Ireland |

TO BE FOREIGN SERVICE OFFICERS OF CLASS 4, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

| | |
|---|---|
| Turner C. Cameron, Jr. | Eric Kocher |
| Harry Conover | William Henry Lawrence |
| Robert C. Creel | Frank G. Siscoe |
| Ridgway B. Knight | |

TO BE A FOREIGN SERVICE OFFICER OF CLASS 5, A VICE CONSUL OF CAREER, AND SECRETARY IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

James R. Gustin.

TO BE FOREIGN SERVICE OFFICERS OF CLASS 6, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

| | |
|---|---|
| Robert A. Aylward | Francis N. Magliozzi |
| Howard L. Boorman | Parke D. Massey, Jr. |
| William D. Brewer | Everett K. Melby |
| Edward West Burgess | Alfred E. Moen |
| Stephen A. Comiskey | Curtis W. Prendergast |
| William B. Dunn | Herbert F. Propps |
| Seymour M. Finger | Lowell G. Richardson |
| Walter P. Houk | Jordan T. Rogers |
| Vernon V. Hul ce | Howard René Stephenson |
| Joseph E. Jacques | |
| Robert L. James | Kenneth P. T. Sullivan |
| Edward J. Krache, Jr. | Edward J. Trost |
| Edward T. Long | Wayland B. Waters |

of those which duplicate or conflict with each other or with activities carried on by the Government of Puerto Rico. He shall report through the Secretary of the Interior to the President and to Congress concerning the administration of all Federal civilian functions and activities in Puerto Rico, specifying the recommendations made by him to the Federal agencies and the results of such recommendations. He shall advise the Secretary of the Interior, who shall advise the Bureau of the Budget and the Congress with respect to all appropriation estimates submitted by any civilian department or agency of the Federal Government to be expended in or for the benefit of Puerto Rico. He shall confer with the Governor of Puerto Rico with respect to the correlation of activities of Federal and insular agencies and all plans and programs and other matters of mutual interest.

"'(3) The President of the United States may, from time to time, after hearing, promulgate Executive orders expressly excepting Puerto Rico from the application of any Federal law, not expressly declared by Congress to be applicable to Puerto Rico, which as contemplated by section 9 of this act is inapplicable by reason of local conditions. The Coordinator of Federal Agencies may, from time to time, make recommendations to the President for such purpose. Any such recommendation shall show the concurrence or dissent of the Governor of Puerto Rico.

"'(4) The Coordinator of Federal Agencies, in the name of the President of the United States, shall have authority to request from the Governor of Puerto Rico, and the Governor shall furnish to him all such reports pertaining to the affairs, conditions, and government of Puerto Rico as the Coordinator of Federal Agencies shall from time to time request for transmission to the President through the Secretary of the Interior.

"'(5) The President of the United States shall prescribe such rules and regulations as may be necessary to carry out the provisions of this section.'

"Sec. 7. Section 2 of said Organic Act (48 U. S. C., sec. 737) is amended by adding at the end thereof the following new paragraph:

"'The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph I of section 2 of article IV of the Constitution of the United States.'"

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Senate amendments were concurred in.

A motion to reconsider was laid on the table.

RECESS

The SPEAKER. The Chair declares the House in recess at this time subject to the call of the Chair.

Accordingly (at 12 o'clock and 10 minutes a. m.), the House stood in recess, subject to the call of the Chair.

AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 12 o'clock and 31 minutes a. m.

FURTHER MESSAGE FROM SENATE

A further message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate agrees to the amendment

of the House to a concurrent resolution of the Senate of the following title:

S. Con. Res. 33. Concurrent resolution providing for the adjournment of the two Houses of Congress until January 2, 1948.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

The SPEAKER announced his signature to enrolled bills and joint resolutions of the Senate of the following titles:

S. 609. An act conferring jurisdiction upon the United States District Court for the Western District of Arkansas to hear, determine, and render judgment upon any claims arising out of the deaths of Norman Ray Pedron and Carl Franklin Morris;

S. 758. An act to promote the national security by providing for a Secretary of Defense; for a National Military Establishment; for a Department of the Army, a Department of the Navy, and a Department of the Air Force; and for the coordination of the activities of the National Military Establishment with other departments of the Government concerned with the national security;

S. 794. An act to authorize the sale of a small tract of land on the Cherokee Indian Reservation, N. C.;

S. 893. An act for the payment of claims of one Fidelity Trust Co., of Baltimore, Md., and others, covered by findings of fact made by the United States Court of Claims, dated June 3, 1944, and contained in Senate Document No. 229, Seventy-eighth Congress, second session;

S. 907. An act to provide for the orderly transaction of the public business in the event of the death, resignation, or separation from office of principal disbursing officers of the Treasury Department;

S. 1070. An act to provide for the cancellation of the capital stock of the Federal Deposit Insurance Corporation and the refund of moneys received for such stock, and for other purposes;

S. 1181. An act for the relief of Robert F. Parks;

S. 1350. An act to authorize relief of accountable officers of the Government, and for other purposes;

S. 1361. An act to amend the United States Housing Act of 1937 so as to permit loans, capital grants, or annual contributions for low-rent housing and slum-clearance projects where construction costs exceed present cost limitations upon condition that local housing agencies pay the difference between cost limitations and the actual construction costs;

S. 1463. An act to amend section 12 of the Immigration Act of 1917;

S. 1460. An act authorizing the conveyance to the State of Delaware of a portion of Pea Patch Island;

S. 1494. An act to amend section 14 of the Veterans' Preference Act of June 27, 1944;

S. 1505. An act authorizing the Secretary of Agriculture to convey certain lands in Boise, Idaho, to the Boise Chamber of Commerce;

S. 1582. An act relating to the sale of Paxon Field, Duval County, Fla.;

S. 1590. An act to amend the District of Columbia rent-control law so as to provide that schools and universities may recover possession of housing accommodations in certain cases;

S. 1633. An act to authorize the attendance of the Marine Band at the National Convention of the American Legion to be held in New York, N. Y., August 28 to 31, 1947, and the National Convention of the Veterans of Foreign Wars of the United States to be held in Cleveland, Ohio, September 4 to 9, 1947;

S. 1661. An act to provide additional inducements to physicians, surgeons, and den-

tists to make a career of the United States military, naval, and public-health services, and for other purposes;

S. J. Res. 112. Joint resolution to establish a commission to formulate plans for the erection, in Grant Park, Chicago, Ill., of a Marine Corps memorial.

S. J. Res. 130. Joint resolution relating to safety in bituminous-coal and lignite mines of the United States;

S. J. Res. 138. Joint resolution to provide for return of Italian property in the United States, and for other purposes; and

S. J. Res. 148. Joint resolution to authorize the temporary continuation of regulation of consumer credit.

ADJOURNMENT

Mr. HALLECK. Mr. Speaker, I move that the House do now adjourn.

The motion was agreed to; accordingly (at 12 o'clock and 32 minutes a. m.), pursuant to Senate Concurrent Resolution 33, the House adjourned until Friday, January 2, 1948, at 12 o'clock noon.

EXECUTIVE COMMUNICATIONS, ETC.

Under clause 2 of rule XXIV, executive communications were taken from the Speaker's table and referred as follows:

993. A letter from the Attorney General, transmitting request for withdrawal of the case of Juan Hernandez Ayala from those 139 cases involving suspension of deportation referred to in letter of June 15, 1947; to the Committee on the Judiciary.

994. A letter from the Clerk, House of Representatives, transmitting the motion to dismiss of the contestee in the contested election case of Lawrence Michael against Howard W. Smith for a seat in the House of Representatives from the Eighth Congressional District of the State of Virginia (H. Doc. No. 418); to the Committee on House Administration and ordered to be printed.

995. A letter from the Executive Secretary, Air Coordinating Committee, transmitting a draft of a proposed bill to encourage the development of a safe United States flag international air transportation system properly adapted to the present and future needs of foreign commerce of the United States, of the postal service, and of the national defense, and to meet certain of the obligations incumbent upon the United States by virtue of its membership in the International Civil Aviation Organization, by providing for the transfer, establishment, operation, administration, and maintenance of airport and airway property located outside the continental United States, for the training of foreign nationals in aviation activities, and for other purposes; to the Committee on Interstate and Foreign Commerce.

996. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for the performance of certain functions and activities of the Department of Commerce, and for other purposes; to the Committee on Interstate and Foreign Commerce.

997. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for certain functions and activities of the Weather Bureau, and for other purposes; to the Committee on Interstate and Foreign Commerce.

998. A letter from the Secretary of the Interior, transmitting interim report on the status of investigations of potential water resource developments in the Colorado River Basin in Arizona, California, Colorado, Nevada, New Mexico, Utah, and Wyoming (H. Doc. No. 419); to the Committee on Public Lands and ordered to be printed, with illustrations.

Congressional Record Volume 94 Part 7
June 15,1948 - June 19,1948
Case 1:07-cv-01766-RMU    Document 33-2    Filed 06/30/2008    Page 41 of 62

3 Pages



OF AMERICA

# Congressional Record

### PROCEEDINGS AND DEBATES OF THE 80th CONGRESS
### SECOND SESSION

## VOLUME 94—PART 7

JUNE 15, 1948, TO JUNE 19, 1948
(PAGES 8229 TO 9352)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

Ex: A-41



# Congressional Record

**United States of America**   PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

## SENATE

### TUESDAY, JUNE 15, 1948

The Senate met at 11 o'clock a. m.

Rev. Bernard Braskamp, D. D., pastor of the Gunton Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

Almighty God, who are the guiding wisdom in the life of men and nations, we pray that Thy servants may be blessed with clear minds and courageous hearts as they take counsel together for the building of a better world. Grant unto them insight and inspiration as they frame policies and enact laws which shall lift our own beloved country into nobler and happier ways of living.

Help us to put forth a more heroic effort in behalf of a social order in which there shall be a finer spirit of brotherhood and all the members of the human family shall seek one another's welfare.

Hear us in Christ's name. Amen.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Chaffee, one of its reading clerks, announced that the House had passed the following bill and joint resolution of the Senate, each with an amendment in which it requested the concurrence of the Senate:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes; and

S. J. Res. 117. Joint resolution providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States.

The message also announced that the House had agreed to the concurrent resolution (S. Con. Res. 56) welcoming the Inter-American Bar Association to the United States for its conference in Detroit, Mich., in May 1949.

The message further announced that the House had passed the following bills, in which it requested the concurrence of the Senate:

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 6247. An act to provide for the air security and defense of the United States, to establish the composition of the Air Force, and for other purposes; and

H. R. 6411. An act to provide for the issuance of national safety against traffic and other accident hazards.

### ENROLLED BILL AND JOINT RESOLUTION SIGNED

The message also announced that the Speaker had affixed his signature to the following enrolled bill and joint resolution, and they were signed by the President pro tempore:

S. 2642. An act to amend the District of Columbia Motor Vehicle Parking Facility Act of 1942, approved February 16, 1942; and

S. J. Res. 64. Joint resolution to provide for the restoration and preservation of the Francis Scott Key Mansion, to establish the Francis Scott Key National Memorial, and for other purposes.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that the Journal of the proceedings of yesterday be approved without reading.

Mr. RUSSELL. Mr. President, I desire to expedite in every possible way the business of the Senate, but I have examined the RECORD this morning, and there is considerable confusion as to the exact parliamentary status, as to what shall transpire this morning in the morning hour. I dislike to invoke the consequences of the application of rule VIII, but unless there can be arranged an appropriate unanimous-consent agreement which will carry out the seeming understanding of the Senate as to the order of business, I shall feel constrained to object to dispensing with the reading of the Journal. I should dislike very much to take that step.

Mr. WHERRY. If the Senator will yield, as I understand the parliamentary situation, the unfinished business is the so-called long-range agricultural bill. It was definitely made the unfinished business yesterday afternoon by unanimous consent, no objection being registered. So certainly the status of that bill has been cleared up. The intention this morning is to have a call of the calendar from the beginning. The reason why I did not ask unanimous consent for a call of the calendar was the fact that there are some Senators on both sides of the aisle who have bills they would like to ask to have considered and voted on, and following the adjournment taken last night the calendar would be called automatically just as the morning hour. We may just as well be frank about it; that is why an adjournment was taken last night.

Mr. TAFT. I understand the Senator from Georgia has the floor. Will he yield?

Mr. RUSSELL. I have the floor, and

Mr. TAFT. Is the Senator's objection based on the fact that this is not Monday, and would the Senator be satisfied with a unanimous-consent agreement that the calendar be called as if this were Monday?

Mr. RUSSELL. If the calendar may be called for the consideration of measures to which there is no objection, with the understanding that no motion may be made to proceed to the consideration of a bill to which there is objection, I shall not insist upon the reading of the Journal.

Mr. TAFT. What is the Senator's objection to such a motion? After all, the consideration of a measure taken up on motion would come to an end at 1 o'clock. Certainly I think the Senator would have no difficulty with an agreement that the unfinished business would not be displaced during that time, if that is what the Senator is concerned about.

Mr. RUSSELL. There may be some doubt, from a reading of the RECORD of yesterday, as to what is the unfinished business. I am perfectly aware of the fact that the Chair ruled last evening that the unfinished business, or at least the business that would be before the Senate, would be the long-range agricultural bill. The Senator from Georgia was present last evening when the Senate proceeded to the consideration of the Government corporations appropriation bill, and that bill was brought before the Senate by motion. The Chair ruled last evening—not the present occupant of the chair, but the presiding officer at the time—that inasmuch as he heard no "no" votes, he considered that as being a unanimous-consent agreement. But, Mr. President, there is a great deal of difference, in parliamentary effect, between a unanimous vote of the Senate and a unanimous-consent agreement.

This matter might be submitted to the Members of the Senate on an appeal, in the present situation. I prefer to have the business of the Senate, during this period, conducted by unanimous consent. I think it will expedite the business of the Senate to a very great extent if we proceed as we have recently done, under unanimous-consent orders.

The PRESIDENT pro tempore. The situation at the moment is that the Senator from Nebraska has asked unanimous consent for approval of the Journal. The Senator from Georgia has objected, and requests the reading of the Journal.

Mr. RUSSELL. I have reserved the right to object.

Mr. HATCH. Mr. President, will the Senator from Georgia yield?

Mr. RUSSELL. I yield.

Mr. HATCH. I have just come into the Chamber, and I heard the Senator

Ex: A-43

9122

Mr. SPRINGER. Mr. Speaker, I ask unanimous consent to return to Calendar No. 1039, the bill (H. R. 2123) for the relief of Raleigh E. Damond, the first read the title of the bill as read this time, and passed, and a motion to reconsider was laid on the table.

There was no objection.

Mr. SPRINGER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

## FREE HIGHWAY BRIDGE ACROSS SUSQUEHANNA RIVER IN LUZERNE COUNTY, COMMONWEALTH OF PENNSYLVANIA

Mr. McCORMACK. Mr. Speaker, I ask unanimous consent for the present consideration of the bill (H. R. 5537) granting the consent of Congress to the Commonwealth of Pennsylvania and the State of Pennsylvania to construct, maintain, and operate a free highway bridge across the Susquehanna River at a point between the boroughs of West Pittston and Exeter, in Plymouth, in Plymouth Township, and Borough, in the county of Luzerne, and in the Commonwealth of Pennsylvania.

The SPEAKER. Is there objection to the request of the gentleman from Pennsylvania?

There was no objection.

The Clerk read the title of the bill.

## CRIMES AND CRIMINAL PROCEDURE

Mr. KEOGH. Mr. Speaker, I ask unanimous consent for the immediate consideration of the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

The Clerk read the title of the bill.

The SPEAKER. Is there objection to the request of the gentleman from New York?

[The remaining text of this page is too faded and degraded to transcribe reliably.]

PRESIDENT'S EXECUTIVE AGENCIES REORGANIZATION, 1947

Mr. WHITTEN. Mr. Speaker, I ask unanimous consent that the bill.

Case 1:07-cv-01766-RMU Document 29-2 Filed 06/30/2008 Page 44 of 62

Ex: A-44

8722 CONGRESSIONAL RECORD—SENATE JUNE 18

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Page 415, line 10, after "Zone," insert "District of Columbia."

Page 415, after line 17, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 418, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert: "Title 1 of the United States Code."

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert "18."

Page 457, line 3, strike out "20" and insert "19."

Page 457, strike out lines 8 to 15, inclusive, and insert:

"Sec. 20. This act shall take effect September 1, 1948."

Page 457, line 16, strike out "22" and insert "21."

Page 463, about middle of page, strike out:

| | | | | | | |
|---|---|---|---|---|---|---|
| "July 3 | 1281 | 4, 8 | [illegible] | 16 | | 765, 767" |

Page 457, below middle of page, strike out:

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 25 | 631 | 4 | 49 | [illegible] | 16 | 765 |
| Do. | 635 | 1, 2 | 49 | [illegible] | 32 | 215" |

And insert:

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 25 | 635 | 1, 2 | 49 | [illegible] | 32 | 215" |

Page 470, after

| | | | | | |
|---|---|---|---|---|---|
| "June 6 | 175 | 1, 2, 3 | [illegible] | 18 | 241, 241a, 213" |

insert:

| | | | | | |
|---|---|---|---|---|---|
| "July 31 | 305 | 9 | 59 | 61 [illegible] 31 | 604h" |

Page 471, at the end of the schedule of repeals on this page, insert:

| "1947— | | | | | | |
|---|---|---|---|---|---|---|
| Apr. 10. | [illegible] | ------ | 61 | [illegible] | 18 | 411 |
| May 15. | [illegible] | ------ | 61 | [illegible] | 18 | [illegible] |
| June 21. | 111 | ------ | 61 | [illegible] | 18 | 244 |
| June 23. | 120 | 304 | 61 | [illegible] | 2 | 241" |

The amendments were ordered to be engrossed and the bill to be read a third time.

The bill was read the third time and passed.

Mr. WILEY. Mr. President, I move that the Senate insist upon its amendments, request a conference with the House thereon, and that the Chair appoint the conferees on the part of the Senate.

The motion was agreed to.

The PRESIDENT pro tempore. The Chair will presently name the conferees.

Mr. WILEY subsequently said: Mr. President, I have been credibly informed that the House will accept our amendments. In view of that information, I ask that the action taken to rescind on my motion to appoint conferees in respect to the bill (H. R. 3190) be rescinded.

The PRESIDENT pro tempore. Without objection, it is so ordered.

AMENDMENT OF TRADING WITH THE ENEMY ACT

The bill (S. 2764) to amend the Trading With the Enemy Act was announced as next in order.

The PRESIDENT pro tempore. Is there objection to the present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

Mr. COOPER. Mr. President, I offer an amendment.

Mr. PEPPER. I should like an explanation of the bill.

The PRESIDENT pro tempore. The Senator from Kentucky offers an amendment which the clerk will state.

The CHIEF CLERK. On page 3, line 14, after the word "buy", it is proposed to strike out "July 31, 1949", and insert "April 30, 1949."

The PRESIDENT pro tempore. The question is on agreeing to the amendment submitted by the Senator from Kentucky.

Mr. PEPPER. Mr. President, I request an explanation of the bill.

Mr. COOPER. Mr. President, the bill proposes to amend section 32 of the Trading With the Enemy Act. That section, among other things, authorizes the Alien Property Custodian to return property to an alien if he deems that the alien was a persecutee. It has developed that some of these persons to whom property would be returned are dead, and there are no known heirs. In such case I assume the property would escheat to this country.

The bill provides that the President may designate approved organizations under certain limitations and conditions, and that such organizations may receive the property of a deceased persecutee alien and use it for the benefit of the group to which the persecutee belonged. I think it is a very humane measure. It was introduced by the Senator from Ohio [Mr. TAFT].

The PRESIDENT pro tempore. The question is on agreeing to the amendment offered by the Senator from Kentucky.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed, as follows:

*Be it enacted, etc.*, That section 32 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended by adding at the end thereof the following subsection:

"(h) The President may designate one or more organizations as successors in interest to deceased persons, who, if alive, would be eligible to receive returns under the provisos of subdivision (C) or (D) of subsection (a) (2) hereof. An organization so designated shall be deemed a successor in interest by operation of law for the purposes of subsection (a) (1) hereof. Return may be made to an organization so designated (a) prior to July 31, 1949, or 2 years from the vesting of the property or interest in question, whichever is later, if the President or such officer or agency as he may designate determines from all relevant facts of which he is then advised that it is probable that the former owner is dead and is survived by no person eligible under section 32 to claim as successor in interest by inheritance, devise, or bequest; and (b) after such later date, if no claim for the return of the property or interest is pending.

"No return may be made to an organization so designated unless it files a claim on or before January 1, 1951, and unless it gives assurances satisfactory to the President that (i) it will use the property or interest returned to it for the rehabilitation and resettlement of persons who suffered substantial deprivation of liberty or failed to enjoy the full rights of citizenship within the meaning of subdivisions (C) and (D) of subsection (a) (2) hereof, by reason of their membership in the political, racial, or religious group of which the former owner was a member; (ii) it will transfer, at any time within 2 years from the time that return is made, such property or interest or the equivalent value thereof to any person designated as entitled thereto pursuant to this act by the President or such officer or agency; and (iii) it will make such reports and permit such examination of its books as the President or such officer or agency may from time to time require.

"The filing of a claim by an organization so designated shall not bar the payment of debt claims under section 34 of this act."

Sec. 2. The first sentence of section 33 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended to read as follows:

"Sec. 33. No return may be made pursuant to section 9 or 32 unless notice of claim has been filed, (a) in the case of any property or interest acquired by the United States prior to December 18, 1941, by August 9, 1948, or (b) in the case of any property or interest acquired by the United States on or after December 18, 1941, by April 30, 1949, or 2 years from the vesting of the property or interest in respect of which the claim is made, whichever is later: *Provided*, That return may be made to successor organizations designated pursuant to section 32 (h) hereof if notice of claim is filed by January 1, 1952."

PHILADELPHIA NATIONAL HISTORICAL PARK

The bill (S. 2030) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, was announced as next in order.

The PRESIDENT pro tempore. This bill is identical with Calendar No. 1764, House bill 6033.

Mr. BUTLER. Mr. President, I ask that the House bill be substituted for Senate bill S. 2080, and that the Senate proceed to the consideration of the House bill.

The PRESIDENT pro tempore. Is there objection to the substitution of the House bill for the Senate bill and its present consideration?

There being no objection, the bill (H. R. 6053) to provide for the establishment of the Independence National Historical Park, and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

The PRESIDENT pro tempore. Without objection, Senate bill 2080 is indefinitely postponed.

CODIFICATION OF TITLE 3 OF THE UNITED STATES CODE

The bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," was considered, ordered to a third reading, read the third time, and passed.

TRANSFER OF CERTAIN ARMY EQUIPMENT TO NEW MEXICO MILITARY INSTITUTE

The Senate proceeded to consider the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, which had been reported from the Committee on Armed Services, with amendments, on page 1, line 4, after the word "authorized", to insert "upon the request of the institution"; in line 7, after the word "institution", to insert "to Cornell University, Ithaca, N. Y., to Norwich University, Norwich, Vt., and to Virginia Military Institute, Lexington, Va."; on page 2, line 1, before the word

Ex. A-45

BROOKS] may be excused as a conferee on the bill, S. 2655.

The SPEAKER. Is there objection to the request of the gentleman from New York?

There was no objection.

The SPEAKER. The Chair appoints the gentleman from North Carolina [Mr. DURHAM] to fill the vacancy.

The Clerk will notify the Senate of the action of the House.

## PROVIDING FOR WATER POLLUTION CONTROL ACTIVITIES

Mr. DONDERO. Mr. Speaker, I call up the conference report on the bill (S. 418) to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes, and ask unanimous consent that the statement of the managers on the part of the House be read in lieu of the report.

The Clerk read the title of the bill.

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Clerk read the statement.

The conference report and statement are as follows:

### CONFERENCE REPORT

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) "An Act to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes", having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House, and agree to the same with amendments, as follows:

Page 2, line 12, of the amendment of the House, strike out the words "hereinafter declared to be a public nuisance".

Page 2, lines 13 and 14, of the amendment of the House, strike out the words "such interstate water and tributaries thereof", and insert the following words "surface and underground waters".

Page 9, line 11, of the amendment of the House, strike out the figure "$200,000" and insert the figure "$250,000".

Page 11, line 25, of the amendment of the House, strike out the figure "$20,000,000" and insert the figure "$22,500,000".

Page 12, line 25 of the amendment of the House, after the words "study of" insert the word "water", and strike out the word "of" after the word "pollution".

Page 13, line 1, of the amendment of the House, strike out the words "interstate waters".

Page 13, line 2, of the amendment of the House, before the word "pollution" insert the word "water", and after the word "pollution" strike out the words "of interstate waters".

Page 14, line 17 through line 23, of the amendment of the House, strike out all after the words "SEC. 9. (a)" and insert the following: "Five officers may be appointed to grades in the Regular Corps of the Public Health Service above that of senior assistant, but not to a grade above that of director, to assist in carrying out the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b)."

And the House agree to the same.

GEO. A. DONDERO,
J. HARRY MCGREGOR,
PAUL CUNNINGHAM,
JAMES C. AUCHINCLOSS,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

GEO. W. MALONE,
CHAPMAN REVERCOMB,
JOHN L. MCCLELLAN,
*Managers on the Part of the Senate.*

### STATEMENT

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) submit the following statement in explanation of the effect of the action agreed upon and recommended in the accompanying conference report as to each of such amendments, namely:

The first two amendments apply to Sec. 2 (a), lines 4, 5, and 6, on page 18 of the bill. The language substituted more clearly defines the authority of the Surgeon General with respect to the preparation and adoption of comprehensive programs for eliminating or reducing the pollution of surface and underground waters.

The amendment to Sec. 6 (line 3, page 25), increases by $50,000 the maximum individual loan which may be made under the Act.

The amendment to Sec. 7 (line 16, page 27), increases by $2,500,000 the maximum authorized to be appropriated to the Federal Security Agency for each of the five fiscal years during the period beginning July 1, 1948, and ending June 30, 1953, for the purpose of making loans under Section 5 of the Act.

The purpose of the amendments to Sec. 8 (b) (lines 16, 17, and 18, page 28), is to expand the service of the Public Health Service station authorized to be erected at Cincinnati, Ohio, in connection with research and study of water pollution and the training of personnel in work related to control of water pollution.

The amendment with reference to Sec. 9 (a), (lines 10 to 16, page 30), substitutes a new Sec. 9 (a), which is required for the purpose set forth in the following letter:

FEDERAL SECURITY AGENCY,
*Washington, Zone 25, May 14, 1948.*

DEAR MR. CHAIRMAN: This is in reference to S. 418, which your Committee reported out, with amendments, on April 28, 1948.

Section 9 (a) of S. 418 as reported authorizes additional appointments to be made at higher grades in the Regular Corps of the Public Health Service pursuant to section 208 (b) of the Public Health Service Act to assist the Service in carrying out its new or expanded activities under S. 418. Since our letter of January 19, 1948, to you on this bill, however, the Congress has enacted Public Law 425, which amends the provisions of the Public Health Service Act in several respects, primarily in the matter of appointment and promotion of commissioned officers of the Public Health Service. As a result of Public Law 425, the authority to make additional appointments at higher grades in the Regular Corps of the Public Health Service, formerly contained in section 208 (b) of the Public Health Service Act, is now contained in section 207 (b) of that Act, in a somewhat revised form. In order, therefore, to accomplish the purposes for which section 9 (a) of S. 418 was intended, the following is suggested in lieu of such section 9 (a):

(a) Five officers may be appointed to grades in the Regular Corps of the Service above that of senior assistant, but not to a grade above that of director, to assist in carrying out the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b).

The short time available for necessary action on the amendment suggested by this letter has not permitted us to obtain advice from the Bureau of the Budget as to the relationship of this amendment to the program of the President.

Sincerely yours,

J. DONALD KINGSLEY,
*Acting Administrator.*

Hon. GEORGE A. DONDERO,
*Chairman, Committee on Public Works,*
*House of Representatives,*
*Washington 25, D. C.*

GEO. A. DONDERO,
J. HARRY MCGREGOR,
JAMES C. AUCHINCLOSS,
PAUL CUNNINGHAM,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

The conference report was agreed to.

A motion to reconsider was laid on the table.

## UNITED STATES CODE, TITLE 18

Mr. REED of Illinois. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," with Senate amendments thereto, and concur in the Senate amendments.

The Clerk read the title of the bill.

The Clerk read the Senate amendments, as follows:

Page 5, following:

"13. Laws of States adopted for areas within Federal jurisdiction."

Insert:

"14. Applicability to Canal Zone."

Page 5, line 4, after "States" insert ", except the Canal Zone."

Page 8, after line 15, insert:

"§ 14. Applicability to Canal Zone."

"In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 499, 502, 500, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1581, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2190, 2231, 2234, 2236, 2274, 2275, 2277, 2384, 2385, 2386, 2388, 2390, 2421, 2422, 2423, 2424, 3050, 3106, 3109."

Page 91, strike out

"610. Contributions by national banks or corporations."

And insert:

"610. Contributions or expenditures by national banks, corporations, or labor organizations."

Page 104, strike out lines 4 to 21, inclusive, and insert:

"§ 610. Contributions by national banks, corporations, or labor organizations

"It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political con-

Case 1:07-cv-01766-RMU    Document 29-2    Filed 06/30/2008    Page 93 of 109

of the Federal Communications Commission.

The PRESIDING OFFICER. Is there objection?

Mr. YOUNG. I object.

Mr. WHERRY. Then, Mr. President, I move that the nomination of Frieda B. Hennock, of New York, be confirmed.

The PRESIDING OFFICER. The question is on agreeing to the motion of the Senator from Nebraska.

Mr. BALL. Mr. President, what kind of procedure is this? We are not in executive session.

Mr. WHERRY. I asked for unanimous consent.

Mr. BALL. I did not hear any motion.

Mr. WHERRY. I understand that. I asked for unanimous consent.

The PRESIDING OFFICER. The Senator asked unanimous consent, and unanimous consent was granted.

Mr. BALL. I am sorry.

The PRESIDING OFFICER. The Chair did not understand that that is what it was for.

Mr. WHERRY. If there is any doubt about it—

The PRESIDING OFFICER. Consent was granted.

Mr. WHERRY. Very well.

Mr. BALL. Are we in executive session, then?

The PRESIDING OFFICER. We are.

Mr. WHERRY. We are, for the consideration of the nomination of Miss Frieda B. Hennock.

Mr. BALL. May we proceed in the regular order, then, and have the nomination stated, so that we will know what we are doing? I do not like to have the Senate doing things by unanimous consent. I am not going to hold up the Senate—

Mr. WHERRY. That is the very thing that is done after the Executive Calendar is taken up, and I ask that the nomination be stated.

The PRESIDING OFFICER. The clerk will state the nomination.

The LEGISLATIVE CLERK. Nomination passed over. Frieda B. Hennock, of New York, to be a member of the Federal Communications Commission.

The PRESIDING OFFICER. The question is, Will the Senate advise and consent to the nomination?

Mr. BALL. Mr. President, I do not intend to make a lengthy speech about this nomination. I am opposed to it, and I want the RECORD to show that. So far as I can discover, the only investigation, the only hearing, regarding this nomination, was a brief executive session of the subcommittee of the Committee on Interstate and Foreign Commerce. For several weeks the reports were that the nomination would never get out of committee. Then all of a sudden it was reported, with, I may say, somewhat suspicious haste. It is for a 7-year term on the Federal Communications Commission. In my opinion that is a tremendously important Commission. I think it is up to the Senate to satisfy itself—and frankly I am not satisfied; I do not know about the wisdom of the nomination one way or the other—that appointments to this Commission will carry serious weight and bear heavily upon the commercial interests of the Nation.

I myself have observed some rather disturbing things about the Federal Communications Commission. I have heard more disturbing reports since this nomination was reported. I have heard a report, on what I consider reliable authority—and obviously in the past few days I have not had any opportunity to investigate it, I do not know whether it is true or not—which indicates that certain interests, groups, who are greatly interested in this nomination, have a direct pipe line to the Federal Communications Commission, which we certainly would not want to have occur. What the score is I do not know. So far as I can determine, Miss Hennock is a lawyer from New York, and I might point out that the late President Roosevelt never appointed a member of the Federal Communications Commission from New York City, for the simple reason that New York City is the center of the radio industry, and he wanted to avoid any possibility of the industry itself having too much influence on the Commission. So far as I can discover, she has had no experience in radio matters, and from what I can learn of her background, frankly I do not think she is qualified for the job, and I want to be on record opposed to her confirmation.

Mr. BREWSTER. Mr. President, I think the Senator from Minnesota has been very fair in his statement. As chairman of the subcommittee which investigated this nomination for the Senate Committee on Interstate and Foreign Commerce, which reported it by a vote of 8 to 0, with another member voting "present," I think the Senate should know what we have learned as to the circumstances.

Miss Hennock has been a member of the New York bar for 20 or 25 years. I hesitate to estimate the age of a lady, but I should say she is between 40 and 50 years old, so she is reasonably mature. She has had quite a brilliant record at the bar. She is a member now, which is the somewhat unusual for a woman, of the third largest law firm in New York City, one of the most highly respected and distinguished, one composed almost exclusively of Republicans. She has had no experience in radio, as the Senator from Minnesota has said, which, it seemed to many of us, was perhaps most fortunate, because one who had been active in radio work, representing radio clients, would by that very fact come in under somewhat of a cloud. The committee took into consideration her breadth of experience and training and recognized abilities.

I may say that one of her most earnest sponsors was John W. Davis, of New York, who certainly is a leader of the New York bar, and who vouched most earnestly for her capacity and character. And from many other quarters there have come most earnest testimonials as to the character and competency of this woman.

Obviously only the future can tell how well she can fulfill these responsibilities. I can say that we in our committee, with Senators serving on the committee from Minnesota, has experienced concerning the functioning of the Federal Communications Commission. We think it needs new blood, and it was the consensus of those of us who became familiar with this matter, through contact with many who were acquainted with her and through various representations, that she would be well qualified to fit into this position, and we believed her confirmation was warranted and wise.

The PRESIDING OFFICER. The question is, will the Senate advise and consent to this nomination?

The nomination was confirmed.

## POSTMASTERS

### EXECUTIVE REPORT OF A COMMITTEE

The following favorable report of a committee was submitted:

By Mr. LANGER, from the Committee on Post Office and Civil Service:

The nomination of Jack Bostwick to be postmaster at Bastrop, in the State of Louisiana.

On motion by Mr. LANGER, and by unanimous consent, it was

Ordered, That the said nomination be considered with those postmasters appearing on today's calendar.

Mr. BARKLEY. Does the Senator intend that the nominations of postmasters shall be considered?

Mr. WHERRY. Yes.

The PRESIDING OFFICER. The clerk will state the nominations of postmasters on the calendar.

The legislative clerk proceeded to read the nominations of postmasters on the calendar.

The PRESIDING OFFICER. Without objection, the nominations of postmasters will be confirmed en bloc.

Without objection the President will be notified of all nominations this day confirmed on the Executive Calendar.

Mr. WHERRY. Mr. President, are there any measures any Senator desires to bring up at this time, or is there any other matter that is desired to be considered?

Mr. O'MAHONEY. Mr. President, may I ask the majority leader whether there is any intention to proceed with Calendar No. 1253, Senate Joint Resolution 76?

Mr. WHERRY. That is the equal-rights amendment?

Mr. O'MAHONEY. Yes.

Mr. WHERRY. I believe the Senator who was particularly interested in the legislation stated that it would not be taken up at this time. I would not undertake to take it up.

Mr. O'MAHONEY. Very well.

## CONDITIONAL ADJOURNMENT TO DECEMBER 31, 1948

Mr. WHERRY. I move that the Senate do now adjourn.

The motion was agreed to; and (at 7 o'clock and 14 minutes a. m., Sunday, June 20, 1948) the Senate adjourned, the adjournment being under the provision of House Concurrent Resolution 218, to Friday, December 31, 1948, at 12 o'clock meridian.

Ex A-46

Ex: A-47

80TH CONGRESS
1ST SESSION
# H. R. 3190

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C. §——", as follows:

CS

Ex: A-48

471

**I. Code**

**Section**

121
503, 503,
note, 604
361
647
97a
641a
633
590a
344
420d, 420i,
420h
101
847
87
672, 673,
674
237a
469
*119
590a
224
590a
1150d
12, 12a, 12b
17b
518a
141, 241a,
243
403
518a
17 note
42b
420-1
52 note,
101 note,
151 note

Title 18 of

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1946—July 10 | 547 | | 60 | 524, 525 | 18 | 641 |
| July 24 | 604 | | 60 | 656 | 18 | 409–411 |
| Aug. 2 | 735 | | 60 | 789 | 18 | 408a |
| Aug. 14 | 984 | *3 | 60 | 1064 | 7 | 1026 |

* Only the provisions amending section 17 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 535.

Passed the House of Representatives May 12, 1947.

Attest:

*John Andrews*

Clerk

Ex: A-49

HOUSE CALENDAR
1st Session

# H. R. 3190

## AN ACT

To revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

JUN 17 1948

(CALENDAR DAY, JUN 18 1948)

House agreed to Senate amendments.

In the Senate of the United States,

JUN 18    LEX OUT JUN 15 48

Resolved, That this bill pass with amendments.

Attest:

*Carl A. Loeffler*
Secretary

C7

# STATUS OF MAJOR BILLS—SECOND SESSION

| No. of bill | Title | Reported 1948 | Passed House 1948 | Reported in Senate 1948 | Passed Senate 1948 | Sent to conference 1948 | Conference report agreed to in— House 1948 | Senate 1948 | Date approved 1948 | Law No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | **LEGISLATIVE BILLS** | | | | | | | | | |
| H.R. 4790 | Taxation, individual income. (Report No. 1274.) | Jan. 27 | Feb. 2 | Mar. 16 | Mar. 22 | *(House agrees to Senate amendments Mar. 24, 1948)* | | | Over veto } Apr. 2 | 471 |
| S. 2202 | Foreign aid, recovery (Marshall plan). (Report No. 1274.) | Mar. 20 | Mar. 31 | Feb. 26 | Mar. 13 | Mar. 18 | Apr. 2 | Apr. 2 | Apr. 3 | 472 |
| S. 2182 | Housing and Rent Act of 1948. (Report No. 1560.) | Mar. 13 | Mar. 16 | Feb. 18 | Feb. 18 | Mar. 25 | Mar. 25 | Mar. 25 | Mar. 30 | 464 |
| S. 2655 | Selective Service Act of 1948 (Report 1881.) | Mar. 7 | Mar. 18 | May 12 | June 10 | June 19 | June 19 | June 19 | June 24 | 759 |
| H.R. 6556 | Reciprocal trade agreements, extend.. | May 24 | May 26 | June 8 | June 14 | June 19 | June 19 | June 19 | June 26 | 792 |
| | **APPROPRIATION BILLS** | | | | | | | | | |
| H.R. 5214 | Independent offices, 1949. (Report No. 1283.) | Jan. 30 | Feb. 4 | Mar. 12 | Mar. 15 | Apr. 8 | Apr. 8 | Apr. 8 | Apr. 20 | 491 |
| H.R. 6524 | Civil functions, 1949. (Report No. 1420.) | Feb. 24 | Feb. 26 | Apr. 22 | May 19 | May 20 | June 12 | June 14 | June 25 | 782 |
| H.R. 6525 | Urgent deficiency, 1948. (Report No. 1421.) | Feb. 24 | Feb. 26 | Feb. 26 | Feb. 27 | Mar. 1 | Mar. 1 | Mar. 1 | Mar. 3 | 430 |
| H.R. 5607 | State, Justice, and Commerce, 1949. (Report No. 1433.) | Feb. 27 | Mar. 8 | Apr. 22 | May 20 | May 20 | June 8 | June 9 | June 14 | 597 |
| H.R. 5728 | Labor and Federal Security, 1949. (Report No. 1519.) | Mar. 8 | Mar. 11 | Apr. 24 | May 26 | May 28 | June 14 | June 10 | June 14 | 639 |
| H.R. 5770 | Treasury-Post Office, 1949. (Report No. 1532.) | Mar. 9 | Apr. 8 | May 12 | May 28 | June 1 | June 9 | June 10 | June 19 | 640 |
| H.R. 5883 | Agriculture, 1949. (Report No. 1571.) | Mar. 13 | Mar. 18 | May 12 | May 25 | May 28 | June 15 | June 14 | June 19 | 712 |
| H.J. Res. 355 | Foreign aid, Indians, tax returns. (Report No. 1586.) | Mar. 22 | Mar. 22 | Mar. 25 | Mar. 29 | | | | Mar. 31 | 470 |
| H.R. 6055 | First Deficiency, 1948. (Report No. 1618.) | Mar. 30 | Apr. 1 | Apr. 22 | Apr. 26 | Apr. 27 | Apr. 29 | Apr. 30 Disagrees May 6 | May 10 | 519 |
| H.R. 6226 | Supplemental National Defense, 1948. (Rept. No. 1729.) | Apr. 14 | Apr. 15 | Apr. 30 | June 3 | May 5 | May 9 | May 11 | May 21 Became Law | 547 |
| H.R. 6355 | Federal Security Agency supp., 1949. (Report No. 1821.) | Apr. 27 | Apr. 29 | June 2 | June 3 | June 3 | June 9 | June 9 | June 16 | 646 |
| H.R. 6430 | District of Columbia, 1949. (H. Rept. No. 1851.) | May 4 | May 5 | June 2 | June 3 | June 3 | June 8 | June 3 | June 24 | 766 |
| H.R. 6500 | Government corporations. (Report No. 1880.) | May 7 | May 11 | June 12 | June 16 | June 16 | June 16 | June 16 | June 30 | 753 |
| H.R. 6705 | Legislative, 1949. (H. Rept. 1900.) | May 11 | May 13 | June 12 | June 15 | June 15 | June 15 | June 15 | June 30 | 641 |
| H.R. 6705 | Interior, 1949. (Report No. 2038.) | May 26 | May 27 | June 14 | June 14 | *(House agrees to Senate amendments June 15, 1948)* | | June 18 | June 29 | 841 |
| H.R. 6758 | Treasury and Post Office supp., 1949. (Rept. No. 2089.) | June 1 | June 1 | June 12 | June 12 | | June 14 | June 14 | June 19 | 727 |
| H.R. 6771 | National Military, 1949. (Report No. 2135.) | June 2 | June 2 | June 17 | June 17 | June 17 | June 17 | June 19 | June 24 | 766 |
| H.R. 6772 | Navy, 1949. (Report No. 2136.) | June 2 | June 2 | June 15 | June 18 | June 18 | June 18 | June 18 | June 28 | 753 |
| H.R. 6801 | Foreign aid, 1949. (Report No. 2173.) | June 3 | June 4 | June 14 | June 19 | June 19 | June 19 | June 19 | June 28 | 793 |
| H.R. 6829 | Independent offices supp. (Report No. 2345.) | June 9 | June 9 | June 17 | June 17 | *(House agrees to Senate amendments June 14, 1948)* | | June 19 | June 25 | 862 |
| H.R. 6935 | Second Deficiency, 1948. (Report No. 2348.) | June 15 | June 16 | June 18 | June 19 | June 19 | June 19 | June 19 | June 25 | 785 |

Ex. A-50

324



AMERICA

# ongressional Record

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS

SECOND SESSION

## VOLUME 94—PART 8

JULY 26, 1948, TO DECEMBER 31, 1948

(PAGES 9353 TO 10316)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

Ex: A-51

# Congressional Record

United States of America

**PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION**

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities. We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:

G. C. MARSHALL,
Secretary of State.

### CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Ferguson | Magnuson | Tobey |
| George | Martin | Umstead |
| Green | Maybank | Vandenberg |
| Gurney | Millikin | Watkins |
| Hatch | Moore | Wherry |
| Hawkes | Murray | Wiley |
| Hayden | Myers | Williams |
| | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. McCARRAN], the Senator from Tennessee [Mr. McKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 695. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

9753

Ex A-53

U.S. Department of Justice
Drug Enforcement Administration

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) | | |
|---|---|---|
| [X] Purchase | [ ] Seizure | [ ] Free Sample |
| [ ] Lab. Seizure | [ ] Money Flashed | [ ] Compliance Sample (Non-Criminal) |
| [ ] Other (Specify) | | |

| 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID. |
|---|---|---|
| 166E-NK-97240 | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE BROADWAY TOWNHOUSES; |
|---|---|---|
| NEWARK, NEW JERSEY | 05/26/1999 | ALBERTO CONCEPCION-HEAD BANGER CREW; |

| 6a. REFERRING AGENCY (Name) | | ET AL; ITAR_VC |
|---|---|---|
| FBI-NEWARK DIVISION | | |

| 6b. REFERRAL | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|
| [X] Case No.* OR [ ] Seizure No.* No. 166E-NK-97240 | 09/28/1999 | |

| 9. Exhibit No. | 10. FDIN (8 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 111 | | HEROIN | 23 Bags of HEROIN with BRAND STAMP: POISON Double sealed in plastic | 11.6g | 39.5g | $215.00 |
| 112 | | HEROIN | 50 Bags of HEROIN with BRAND STAMP: HEAD BANGER Double sealed in Plastic wrapped in a paper napkin | 30.8g | 58.7g | $425.00 |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?** [X] NO (Included above)  [ ] YES (If Yes, enter exhibit no. and describe original container fully)

**REMARKS:**

HEROIN FIELD TESTED WITH POSITIVE RESULTS

b6
b7C

Ex: A-53

| 17. SUB | 18. APP |
|---|---|

| 19. No. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. TITLE |
|---|---|---|
| 2 | R 819 304 396    9/30/99 | |

| 22. SEAL [ ] Broken [X] Unbroken | 23. | 24. | E-J |
|---|---|---|---|

**ANALYSIS/COMPARISON REPORT** 131136/137 13158274

**25. ANALYSIS SUMMARY AND REMARKS**

Exhibit 111 contains heroin hydrochloride, procaine (salt form undetermined), and theophylline gross wt 42.5g  net wt 0.87g  *1 empty glassine envelope removed for special programs
gross wt 61.8g
Exhibit 112a consisting of 10 white glassines contains heroin hydrochloride net wt 0.47g

Exhibit 112b consisting of 40 pink glassines contains heroin hydrochloride net wt 1.9 g
* 2 empty glassines and 1 empty sleeve removed for special programs

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | 29. Strength | 30. Measure | 31. Unit | 32. TOTAL NET | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| 111 | 131136 | heroin hydrochloride | 44 | % | | 0.38g | 0.72g |
| 112a | 131137 | heroin hydrochloride | 71 | % | | 0.33g | 0.38g |
| 112b | 131137 | heroin hydrochloride | 71 | % | | 1.3g | 1.7g |

| 34. ANALYST (Signa | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| | FORENSIC CHEMIST | 11/23/99 |

| 37. APPROVED | 38. TITLE | 39. LAB. LOCATION |
|---|---|---|
| | LABORATORY DIRECTOR | NEW YORK |

DEA Form - 7 (Apr. 1990)    Previous edition dated 10/87 is OBSOLETE.    1 - Prosecution

controlled purchases of narcotics occurred.    (PSR ¶¶ 21-44).

Specifically, either a cooperating witness or an undercover agent

bought the following amounts of heroin from either Concepcion or

one of the co-conspirators to whom Concepcion supplied heroin:

| Date | Distributor | Number of Bags Of Heroin | Net Grams Of Heroin |
|---|---|---|---|
| 9/28/98 | Canales | 20 | .90 |
| 10/14/98 | Canales | 10 | .40 |
| 10/16/98 | Canales | 50 | 2.0 |
| 10/29/98 | Retamar | 50 | 1.7 |
| 10/29/98 | Roman[2] | 50 | 2.3 |
| 11/20/99 | Roman | 50 | 3.2 |
| 11/24/98 | Santiago | 50 | 2.3 |
| 12/17/98 | Concepcion | 3 | 1.61 |
| 12/20/98 | Concepcion | 490 | 20.0 |
| 12/31/98 | Concepcion | 203 | 54.11 |
| 1/6/99 | Concepcion | 400 | 13.1 |
| 1/21/99 | Canales | 4 | .81 |
| 1/25/99 | Concepcion | 500 | .40 |
| 2/1/99 | Canales | 48 | 1.8 |
| 2/12/99 | Concepcion | 404 | 24.0 |
| 3/1/99 | Canales & Negron | 30 | 1.7 |

---

[2]Although Roman distributed the heroin, it was Concepcion
who received the money for the heroin from the CW in three
payments.

Ex: A-54    4

| 5/4/99 | Retamar | 50 | 3.0 |
| 5/26/99 | Canales | 50 | 2.37 |
| 5/26/99 | Retamar | 23 | .87 |
| 6/4/99 | Retamar | 50 | 2.1 |
| 8/25/99 | Canales | 50 | 2.3 |
| 9/15/99 | Retamar | 50 | 3.0 |

========

Total:       143.97 gm

(PSR ¶¶ 21-44).  As this chart indicates, Concepcion himself made all of the sales involving quantities of heroin over 4 grams, and he personally sold 113.22 grams of heroin to either an undercover agent or cooperating witness.[3]   Further, he was responsible for either selling, or supplying to be sold, to undercover agents or cooperating witnesses, heroin totaling 143.97 grams.[4]

---

[3]Concepcion personally sold 1.61 + 20.0 + 54.11 + 13.1 + .40 +24.0 = 113.22 grams of heroin.

[4]The above chart only details the heroin transactions involving cooperating witnesses or undercover agents.  Concepcion and his co-conspirators also were involved in other transactions where heroin was distributed to other third parties.  In order to estimate the total amount of heroin attributable to Concepcion, the Probation Department took the evidence that Concepcion had supplied Roman, Canales and Retamar with 5 to 10 bricks of heroin each, once or twice a week (for an average of about 10 bricks/week each to Roman, Canales, and Retamar), the fact that each brick contained an estimated 3 net grams of heroin, and the facts that Roman was involved in the conspiracy for 7 months; while Canales and Retamar were involved in the conspiracy for 19 months, to conclude that the total amount of heroin that Concepcion supplied to Roman, Canales, and Retamar which was then distributed, was at least 5.4 kilograms of heroin.  (PSR ¶ 54).

Ex: A-55       5

01/04/00                              FD-192                              ICMIPR01
10:01:17                                                                  Page  1

Title and Character of Case:

HEAD BANGER CREW

Date Property Acquired:    Source from which Property Acquired:

   05/26/1999

Anticipated Disposition  Acquired By:              Case Agent:

Description of Property:                           Date Entered
   1B 124                                                              b6
                                                                      b7C
   ITEM #1 (1) PAPER FOLDED NAPKIN WITH (1) BRICK (50 BAGS) OF
   HEROIN, BRAND STAMPED "HEADBANGER"; (40 PINK BAGS AND
   10 WHITE BAGS)   DOUBLE SEALED IN PLASTIC
   WEIGHT @ 58.7G
   *2 EMPTY GLASSINES AND 1 EMPTY SLEEVE REMOVED BY DEA LAB FOR
   SPECIAL PROGRAMS*

   Barcode: E1674111    Location: ECR      DV        S13        06/07/1999

   Drug Weight:   58.70 GRAMS        Est Dollar Value:      .00
   Sealed By:                        Witnessed By:

                                     166E-NK-97240-1B124

   Case Number:   166E-NK-97240
   Owning Office:  NEWARK

            Ex: A-56

File Copy

05/26/99                                                          ICMIPR01
08:05:26                        FD-192                            Page  1

Title and Character of Case:

⌒ꓘ BANGER CREW

Date Property Acquired:    Source from which Property Acquired:
                          ALBERTO CONCEPCION
      12/21/1998

Anticipated Disposition: Acquired By:          Case Agent:

Description of Property:                              Date Entered
   1B 52

   ITEM #1 (1) BROWN PAPER BAG W/ (9) BRICKS AND (4) BUNDLES OF
   HEROIN, BRAND STAMPED "GOTTA HAVE IT"
   (390) PINK BAGS OF HEROIN                                      b6
   (100) WHITE BAGS OF HEROIN                                     b7C
   WEIGHT @ 287.2 GRAMS
   *ONE CLEAR PLASTIC BAG WITH "KNOCK OUT" LOGO AND ONE WHITE
   FOLDED ENVELOPE ("DECK") WITH "GOTTA HAVE IT" LOGO REMOVED
   FOR SPECIAL PROGRAM BY DEA LAB*

   Barcode: E1673447    Location: ECR     DV     S40     03/05/1999

⌒ug Weight:  287.20            Est Dollar Value:        00
 aled By:                      Witnessed By:

SEE SAC MEMO REGARDING THE
DELAY IN THE SUBMISSION OF
EVIDENCE *See attorney late EC
Dates 2/25/99. NNB*

                                         245D
                        245D      NNoE-NK-99240-1852
   Case Number:   186E-NK-97240
   Owning Office:  NEWARK

C   Ex:A-57

Paurpage copy

05/26/99                                                                    ICMIPR01
09:05:12                            FD-192                                   Page  1

Title and Character of Case:

HEAD BANGER CREW

---

Date Property Acquired:    Source from which Property Acquired:
                           ALBERTO CONCEPCION
       01/04/1999

---

Anticipated Disposition: Acquired By:                    Case Agent:

---

Description of Property:                                  Date Entered
   1B 58

   ITEM #1 (1) BROWN PAPER BAG EITH (4) BRICKS (200 BAGS) OF
   HEROIN                                                                b6
   (190 BAGS = 19 BUNDLES; BRAND STAMPED "GOTTA HAVE IT")                b7C
   (10 BAGS = 1 BUNDLES; BRAND STAMPED "RED DEMON")
   WEIGHT @ 140.3 GRAMS

   Barcode: E1673453    Location: ECR          DV              03/05/1999

   Drug Weight:  140.30                Est Dollar Value:       .00
   Sealed By:                          Witnessed By:

Ex: A-58

---

     Case Number:    166E-NK-97240
     Owning Office:  NEWARK

file copy                    166E-NK-97240  1B58

05/26/99                                                                ICMIPR01
08:05:33                          FD-192                                Page   1

Title and Character of Case:

HEAD BANGER CREW
    -

Date Property Acquired:    Source from which Property Acquired:
                           ALBERTO CONCEPCION
    01/07/1999

Anticipated Disposition:  Acquired By:              Case Agent:

Description of Property:                            Date Entered
    1B 59

    ITEM #1 (8) BRICKS (400 BAGS) OF HEROIN WITH BRAND STAMP
    "GOTTA HAVE IT"; DOUBLE SEALED PLASTIC "KNOCK OUT"
    WEIGHT @ 232.1 GRAMS                                        b6
    *ONE CLEAR PLASTIC BAG WITH "KNOCK OUT" STAMP AND ONE FOLDED   b7C
     PINK ENVELOPE ("DECK") WITH "GOTTA HAVE IT" STAMP REMOVED
    BY DEA LAB FOR SPECIAL PROGRAM*

    Barcode: E1673454    Location: ECR       DV       S40        03/05/1999

    Drug Weight:  232.10          Est Dollar Value:        .00
    Sealed By:                    Witnessed By:

                        SEE SAC MEMO REGARDING THE
                        DELAY IN THE SUBMISSION OF
                        EVIDENCE See Late EC dates
                            2/25/99, 1008

Ex: A-59

                                   166E-NK-97240-1B59

        Case Number:   166E-NK-97240
        Owning Office:   NEWARK



File Copy

03/11/99                                                                    ICMIPR01
15:03:34                          FD-192                                    Page  1

Title and Character of Case:

 HEAD BANGER CREW
 -

Date Property Acquired:   Source from which Property Acquired:
                          ALBERTO CONCEPCION
     01/25/1999

Anticipated Disposition: Acquired By:              Case Agent:              b6
                                                                            b7C

Description of Property:                           Date Entered
   1B 72

     ITEM #1 PACKAGE MATERIAL (FOR 1B71) * NO DRUG RESIDUE*
     (2) BRWON PAPER BAGS
     (1) HOSTESS DONUT BOX

     Barcode: E1673467    Location: ECR                    03/05/1999

SEE SAC MEMO REGARDING THE
DELAY IN THE SUBMISSION OF
EVIDENCE  *See note EC*
dated 2/25/99 MB-

Ex: A-60

     Case Number:  166E-NK-97240
     Owning Office:  NEWARK

File Copy                    166E-NK-97240 1B72

03/11/99
15:03:20                                    FD-192                              ICMIPR01
                                                                                Page  1

Title and Character of Case:

HEAD BANGER CREW
-

Date Property Acquired:    Source from which Property Acquired:
                           ALBERTO CONCEPCION
     02/12/1999

Anticipated Disposition: Acquired By:              Case Agent:

Description of Property:                                    Date Entered
   1B 83

   ITEM #1 (4) BAGS OF HEROIN IN YELLOW BAGS                            b6
   BRAND STAMP "GOTTA HAVE IT"                                          b7C
   WEIGHT @ 30 GRAMS

   Barcode: E1673478    Location: ECR        DV            03/08/1999

   Drug Weight:   30.00              Est Dollar Value:       .00
   Sealed By:                        Witnessed By:

Ex: A-61

**SEE SAC MEMO REGARDING THE
DELAY IN THE SUBMISSION OF
EVIDENCE** See late EC's
dated 2/25/99 NB

     Case Number:   166E-NK-97240
     Owning Office:  NEWARK

File Copy                    166E-NK-97240  1B83

07/08/99
12:07:57

FD-192

ICMIPR0I
Page  1

Title and Character of Case:

HEAD BANGER CREW
-

Date Property Acquired:    Source from which Property Acquired:
                           ALBERTO CONCEPCION
    02/13/1999

Anticipated Disposition: Acquired By:                    Case Agent:

Description of Property:                                  Date Entered
    1B 84

    ITEM #1 (8) BRICKS (400 BAGS) OF HEROIN IN YELLOW BAGS WITH
    BRAND STAMP "GOTTA HAVE IT"; DOUBLE SEALED IN CLEAR PLASTIC
    BAGS                                                         b6
    WEIGHT @ 241.2 GRAMS                                         b7C
    *ONE (1) PLASTIC SLEEVE WITH YELLOW BAG STAMPED
    "GOTTA HAVE IT!" REMOVED BY DEA LAB FOR SPECIAL PROGRAM*

    Barcode: E1673479    Location: ECR      DV      S11      03/09/1999

    Drug Weight:  241.20            Est Dollar Value:        .00
    Sealed By:                      Witnessed By:

SEE SAC MEMO REGARDING THE
DELAY IN THE SUBMISSION OF
EVIDENCE  *he Late EC Dates
    2/25/99 .MB

Ex: A-62

166E-NK-97240-1B84

        Case Number:  166E-NK-97240
        Owning Office:  NEWARK

                                    1CHS/R

File Copy