**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALBERTO CONCEPCION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*,: | |
| | : |
| Defendants. | : |
| | : |

Civil Action No.  07-1766 (RMU)

Docket Nos.: 19, 25

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on the parties' cross-motions for summary judgment.[1]  For

the reasons discussed herein, the defendants' motion will be granted in part and denied in part.

**I.  BACKGROUND**

The plaintiff brings this civil action under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, against the United States Department of Justice ("DOJ") and two of its

components, the Federal Bureau of Investigation ("FBI") and the Executive Office for United

---

[1]     The court has reviewed the plaintiff's motion and finds it deficient in nearly all respects.
The plaintiff not only fails to submit a statement of material facts as to which he
contends there is no genuine issue, *see* LCvR 7(h), but also presents no substantive
argument as to why he should prevail in this FOIA action.  Moreover, the motion is
devoted in large part to the plaintiff's comments on or objections to procedural motions,
such as motions for extensions of time, on which the court has ruled in the defendants'
favor.  The plaintiff's objections are moot, and in no way are dispositive of his FOIA
claims.  Insofar as the plaintiff challenges the validity of the federal statutes under which
he was convicted and sentenced, the conviction itself, and the jurisdiction of the
sentencing court, these arguments are not relevant in this FOIA action.

States Attorneys ("EOUSA").  It appears that the plaintiff has submitted multiple requests for

essentially the same information.

### A.  FOIA Requests to the FBI

### 1.  Request No. 1030134

In September 2005, the plaintiff submitted to the Federal Bureau of Investigation's

Newark, New Jersey field office ("NKFO") a request for:

> certified copys [sic] of any, and all documents pertaining to
> ALBERTO CONCEPCION, ET AL., which some are as follows:
> statements, criminal complaints, arrest warrants, Lab Report(s), and
> etc., including any other unmentioned documents.

Compl. ¶ 11 & Ex. F-6 (Sept. 13, 2005 FOIA Req.) (capitalization in original).  NKFO staff

forwarded the request to the FBI Headquarters in Washington, DC ("FBIHQ"), and FBIHQ staff

assigned it a tracking number, Request No. 1030134-000.  *Id.* ¶ 12 & Ex. F-9 (Oct. 3, 2005 letter

from D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records

Management Division, FBI).

In December 2005, the plaintiff submitted a separate request to the FBIHQ, referencing

Request No. 1030134-000, for "a certified copy of the 'LAB REPORT'" associated with

Criminal Case Nos. 99-6144-01-01 and 99-753 (AJL).[2]  Compl. ¶ 13 & Ex. F-10 (Dec. 20, 2005

FOIA Req.).  In addition, the plaintiff submitted a second FOIA request to the NKFO seeking:

> A FULL DISCLOSURE, AND RELEASE OF ALL RECORDS,
> and/or data contained in the files of this Department, and/or Agency

---

[2]      Criminal case file No. 99-6144-01 "was the file number assigned [to] [p]laintiff's
criminal case while it was before a magistrate judge," and once it "reached the [d]istrict
[c]ourt level, criminal case file No. 99-6144-01 became subsumed within criminal case
file No. 99-753."  Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J., Revised
Stearns II Decl. ¶ 3.

> . . . under [the plaintiff's] name, and/or identifier to [his] name.  This
> request soughted [sic] herein is for COMPLAINTS OF
> MISCONDUCT, SANCTIONS, DISCIPLINARY ACTIONS,
> DISCHARGE FROM EMPLOYMENT FROM EITHER THE
> STATES, AND/OR FEDERAL GOVERNMENT AS EMPLOYEES,
> INTERNAL AFFAIRS RECORDS, and etc., pursuant to title 5
> U.S.C. § 552(a)(2)(A), and (B), records which are secured, and
> maintained by this Department, and/or Agency. . . and any, and all,
> records, and data concerning the Complaints filed by Victim's co-
> workers, associates, [etc.]

Defs.' Mot. for an Extension of Time to Respond to the Compl. [#15], Decl. of David M. Hardy

("Hardy I Decl.") ¶ 11 (capital letters in original).

The plaintiff's next request to the FBIHQ sought a "Lab Report, Search Warrant(s), & the

wire tap Authorized Application for Federal Criminal Case # [99]-6144-01-01, & 99-753(AJL)."

Compl., Ex. F-25 (June 13, 2006 FOIA Req.).  Through his sister Vilma Cruz, to whom the

plaintiff granted power of attorney, the plaintiff requested of the FBIHQ the following

information:

> Serial numbers, & dates [ONLY] on all the audio tapes for Federal
> Criminal Case #99-6614-01-06, & 99-753 (AJL); & a "Certified
> Copy of the Lab Report" for the above Federal Criminal Case.  If
> there is no Lab Report for the above criminal case, Please put it in
> writing, & forward a copy of that response to both [the plaintiff and
> Ms. Cruz].

Hardy I Decl. ¶ 15; Compl., Ex. F-44 (Oct. 13, 2006 FOIA Req.).

A search of NKFO electronic records yielded "two investigative files, 245D-NK-97240[,]

and another file that were responsive to plaintiff's [September 13, 2005] request."  Hardy I Decl.

¶ 37.  By letter dated August 11, 2006, FBIHQ staff notified the plaintiff that the records

responsive to Request No. 1030134-000 were "in an investigative file which [was] exempt from

disclosure pursuant to [FOIA Exemption 7(A)]."[3]  *Id.* ¶ 13; *see id.* ¶ 37.  The plaintiff

successfully appealed this decision to the Justice Department's Office of Information and Privacy

("OIP"), which remanded the matter to the FBIHQ for further processing.  *Id.* ¶¶ 17, 38.  The OIP

determined that Exemption 7(A) was no longer applicable, and notified the plaintiff by letter

dated June 20, 2007 that the FBIHQ would be sending responsive records under a new tracking

number, Request No. 1062945.  *Id.* ¶ 17.

## 2.  Request No. 1062945

"While FBIHQ was handling the original [FOIA] requests to NKFO and FBIHQ,

numerous requests from plaintiff were continually being received by NKFO and FBIHQ."  Hardy

I Decl. ¶ 40.  In October and November 2006, the plaintiff submitted three nearly identical FOIA

requests to the NKFO for the following information:

> The serial numbers, & dates [ONLY] on all the audio tapes for
> Federal Criminal Case #99-6614-01-06, & 99-753 (AJL); & a
> "CERTIFIED COPY OF THE LAB REPORT" for the above Federal
> Criminal Case.  If there is no Lab Report for the above criminal case,
> please put it in writing, & forward a copy of that response to [both the
> plaintiff and Ms. Cruz].

Compl., Ex. F-52 (Oct. 20, 2006 FOIA Req.); *see id.*, Ex. F-62 (Nov. 8, 2006 FOIA Req.), F-67

(Nov. 14, 2006 FOIA Req.); Hardy I Decl. ¶ 18.  In addition, the plaintiff submitted three more

requests for the same information to the FBIHQ.  Compl., Ex. F-48 (Oct. 13, 2006 FOIA Req.),

F-58 (Oct. 24, 2006 FOIA Req.), and F-78 (Mar. 14, 2007 FOIA Req.); Hardy I Decl. ¶ 19.

FBIHQ staff did not open files for the new requests "inasmuch as it was determined that they

---

[3]     Exemption 7(A) protects "records or information compiled for law enforcement
purposes, but only to the extent that the production of such law enforcement records or
information . . . could reasonably be expected to interfere with enforcement
proceedings."  5 U.S.C. § 552(b)(7)(A).

were duplicate requests."  Hardy I Decl. ¶ 40.

Initially, because NKFO investigative file 245D-NK-97240 "was a multi-subject file, with multiple sub-files, only the documents in the plaintiff's sub-file were reviewed for processing," and the remaining documents and sub-files "were excluded as out of the scope of the [September 13, 2005 FOIA] request."  *Id.* ¶ 38.  After this lawsuit began, FBIHQ staff reviewed the entire NKFO investigative file for processing.  *Id.* ¶ 39.  In addition to the records it released on June 14, 2007, the FBI released more records to the plaintiff on February 25, 2008, March 24, 2008 and March 27, 2008.  Notice of Filing [#23], Second Decl. of David M. Hardy ("Hardy II Decl.") ¶¶ 8-11.

### 3.  Referrals

The FBI referred 20 pages of records to the DOJ, 608 pages of records to the Drug Enforcement Administration ("DEA"), and 3 pages of records to the Bureau of Customs and Border Protection ("CBP") for each component's direct response to plaintiff.  Hardy II Decl. ¶ 5. Because the documents referred to the DOJ originated from the EOUSA, DOJ staff referred those 20 pages of records to the EOUSA for processing.  *Id.*

### a.  DOJ/EOUSA

On May 9, 2008, the FBI received a referral from the EOUSA of 214 pages of material, most pages of which were duplicates of material the FBI already had processed.  *Id.* ¶ 7.  The FBI responded directly to plaintiff and advised him of its decision to release only one of these 214 pages.  *Id.*; Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mot. for Summ. J.") [#25], Third Decl. of David M. Hardy ("Hardy III Decl.") ¶ 7 & Ex. C (May 19, 2008 letter from D.M. Hardy).

5

### b.  DEA

The materials referred to the DEA were "multiple copies of the DEA Form 7 (April 1982) Report of Drug Property Collected, Purchased or Seized."  Notice of Filing [#24], Decl. of William C. Little, Jr. ("Little Decl.") ¶ 12.  The DEA returned these materials, which were lab reports, to the FBI on February 25, 2008.  Hardy III Decl. ¶ 6 & Ex. B (May 13, 2008 letter from K.L. Myrick, Chief, Operations Unit, FOIA/Records Management Section).  Of the 608 pages referred, "only 74 pages contained the plaintiff[']s name or other identifying information."  *Id.* ¶ 6.  The DEA recommended that "the names of DEA laboratory personnel . . . be withheld."  Little Decl. ¶ 15.  Because the DEA "could not determine whether the remaining 534 pages were responsive to the plaintiff, [it asked] that the FBI make the determination."  Hardy III Decl. ¶ 6.  From the lab reports, the FBI, in turn, redacted "only the names of the FBI Special Agents contained therein" under FOIA Exemptions 6 and 7(C), *id.* ¶ 8, and released the 74 redacted pages to plaintiff on June 16, 2008.  Defs.' Reply Brief in Supp. of Mot. for Summ. J. ("Defs.' Reply"), Fourth Decl. of David M. Hardy ("Hardy IV Decl.") ¶ 12 & Ex. A (June 18, 2008 letter from D.M. Hardy).

### c.  CBP

The three pages of records referred by the FBIHQ to the CBP were described as "two pages of [Treasury Enforcement Communications System ("TECS")] documents (Document Numbers 001 and 002)" and "an additional, related page from TECS (Document Number 003)."  Notice of Filing [#24], Decl. of Mark Hanson ("Hanson Decl.") ¶ 4 & Ex. A (*Vaughn* Index).  The CBP released these records in part after redacting information under Exemptions 2, 6 and 7(C).  *See id.* ¶¶ 9, 11, 14 &, Ex. A.

### B. *FOIA Requests to the EOUSA*[4]

### 1. Request No. 06-1738

On March 8, 2006, the plaintiff submitted a FOIA request to the EOUSA seeking the

following information:

> LAB REPORT, INDICTMENT, THE RULE 11, APPLICATION OF
> WHICH WAS SIGNED BY [PLAINTIFF] & THE RECORDED
> F.B.I. TAPES SERIES NUMBERS WITH THE DATES OF
> RECORDINGS, & IF POSSIBLE PLEASE PROVED [sic] [THE
> PLAINTIFF] WITH THE LOCATIONS OF SAID RECORDINGS.

Compl., Ex. F-22 (Mar. 8, 2006 FOIA Req.) (capitalization in original); *see* Defs.' Mot. for an

Extension of Time to Respond to the Compl. [#15], Decl. of Dione Jackson Stearns ("Stearns I

Decl.") ¶ 20.  Although the EOUSA received three subsequent requests from the plaintiff, *see*

Compl., Ex. F-25 (June 13, 2006 FOIA Req.), F-30 (July 31, 2006 FOIA Req.), and F-40 (Aug.

29, 2006 FOIA Req.), staff searched only for records responsive to the March 8, 2006 request;

the subsequent requests "would have enlarged the scope of the initial March 8, 2006 request."

Stearns I Decl. ¶ 24.  From "criminal case file 99-753 in the District of New Jersey," EOUSA

staff located and released in full the plaintiff's indictment and Rule 11 application.  *Id.* ¶ 25.

There were no lab reports or audio tapes in the file.  *Id.*  The plaintiff did not file an

administrative appeal.  *Id.* ¶ 26.

### 2. Request No. 07-49

On January 23, 2006, the plaintiff submitted another FOIA request to the EOUSA for the

following:

---

[4]   It does not appear that the EOUSA's responses to the plaintiff's requests for information
pertaining to Assistant United States Attorneys, *see* Stearns I Decl. ¶¶ 5-7, 12, 16 (Req.
Nos. 05-2149, 05-2150, and 06-3779), are challenged in this action.

> Lab report, certified as a true & correct copy of the original.  This
> request is for Federal Criminal case #99-6144-01 & 99-753 (AJL).

Compl., Ex. F-13 (Jan. 23, 2006 FOIA Req.); Stearns I Decl. ¶ 27.  In subsequent FOIA requests,

the plaintiff sought, in addition to the lab report, *see* Compl., Ex. F-44 (Oct. 13, 2006 FOIA

Req.) and F-75 (Dec. 28, 2005 FOIA Req.), the "Serial numbers, & dates [ONLY] on all of the

audio tapes for Federal Criminal Case #99-6144-01-06, & 99-753 (AJL)."  *Id.*, Ex. F-57 (Oct. 24,

2006 FOIA Req.) at 1; *see* Stearns I Decl. ¶ 28.  Because the subsequent requests expanded the

scope of the initial request, EOUSA staff searched only for the materials described in the January

23, 2006 request, that is, the lab report.  Stearns I Decl.  ¶ 30.  No responsive records were

located, and the OIP affirmed this decision on administrative appeal.  *Id.* ¶¶ 31-32.


## II.  DISCUSSION

### A.  *Summary Judgment Standard*

The court grants a motion for summary judgment when the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits or declarations, show

that there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating an

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Factual assertions in the moving party's affidavits may be accepted as true unless the opposing

party submits his own affidavits or declarations or documentary evidence to the contrary.  *Neal v.*

*Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the court grants summary judgment based on the information provided in

affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The defendants have withheld records in full or in part under FOIA Exemptions 2, 3, 5, 6, 7(C), 7(D), and 7(E), *see* Hardy II Decl. ¶ 12 & Ex. F; Rev. Stearns II Decl. & Ex. A; Rev. Stearns II Decl., Ex. D; Hanson Decl., Ex. A; Little Decl. ¶ 15, yet the plaintiff's opposition to the defendants' summary judgment motion raises no objection to the decisions to withhold information under any of the claimed exemptions. The court is mindful that the plaintiff is a *pro se* litigant whose pleadings and other submissions are construed liberally. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972). For this reason, the court relies on the plaintiff's one assertion, that none of the requested records are exempt from disclosure under any provisions of the FOIA, *see* Pl.'s Opp'n at 3, as a sign that the plaintiff does not concede the defendants' motion, notwithstanding his utter failure to address substantively any of the claimed exemptions. The court will address each of the claimed exemptions below.

### B. Defendants' Searches for Responsive Records

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (noting that FOIA requires an agency to conduct a search using methods reasonably expected to produce the requested information).  The agency bears the burden of showing that its search was calculated to uncover all relevant documents.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt*, 897 F.2d at 542.

## 1.  FBI

With the Central Records System ("CRS"), the FBI maintains "administrative, applicant, criminal, personnel, and other files" acquired and compiled in the course of conducting "its mandated law enforcement responsibilities."  Hardy I Decl. ¶ 26.  The "CRS is organized into a numerical sequence of files, called FBI 'classifications,' which are broken down according to subject matter," which may correspond to an individual, organization, activity, or foreign intelligence matter.  *Id.*  Certain records in the CRS are maintained at the FBI's Washington, D.C. headquarters; others are maintained at the pertinent field office.  *Id.*  In order to search the CRS, the FBI uses the Automated Case Support System ("ACS").  *Id.*

The ACS is "described as an internal computerized subsystem of the CRS."  *Id.* ¶ 27.

One cannot query the CRS for data, such as an individual's name or social security number, and to allow for such a query, "the required information is duplicated and moves to the ACS so that it can be searched." *Id.* Data is retrieved from the CRS through the ACS using alphabetically arranged General Indices. *Id.* ¶ 28. There are two categories of General Indices: "main" entries and "reference" entries. *Id.* The former "carr[y] the name corresponding with a subject of a file contained in the CRS," and the latter (also known as cross-references) "generally are only a mere mention or reference to an individual . . . or other subject matter[] contained in a document located in another 'main' file on a different subject matter." *Id.*

There are "three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id.* ¶ 30. They are Investigative Case Management ("ICM"), Electronic Case File ("ECF"), and Universal Index ("UNI"). *Id.* The ICM allows for the opening, assignment, and closing of investigative and administrative cases, and for the assignment and tracking of leads. *Id.* ¶ 30(a). When a case is opened, it is assigned a Universal Case File Number which is used by the FBI headquarters and all field offices conducting or assisting in an investigation. The first three digits correspond to the classification for the type of investigation; the two-letter abbreviation indicates the field office of origin, and the last digits denote the individual case file number for a particular investigation. *Id.* File number 245-NK-97240 indicates that this was an Organized Crime Drug Enforcement investigation originating in the Newark field office. *Id.*

The ECF is the "central electronic repository for the FBI's official text-based documents," *Id.* ¶ 30(b), and UNI provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 30(c). The investigative Special Agent assigned to work on the

investigation, the Supervisory Agent in the field office conducting the investigation, and the

Supervisory Agent at FBI headquarters determine whether to index names other than subjects,

suspects, and victims.  *Id.* ¶ 31.  Only information deemed "pertinent, relevant, or essential for

future retrieval" is indexed.  *Id.*  Otherwise, FBI files "would . . . be merely archival in nature."

*Id.*  Thus, the General Indices to the CRS files "are the means by which the FBI can determine

what retrievable information, if any, the FBI may have in its CRS files on a particular subject

matter or individual."  *Id.*

Electronic surveillance indices ("ELSUR"), which are a separate system of records from

the CRS, "are used to maintain information on a subject whose electronic and/or voice

communications have been intercepted as a result of a consensual electronic surveillance or a

court-ordered . . . electronic surveillance conducted by the FBI."  *Id.* ¶ 32.  These indices include

individuals who were targets of direct surveillance, participants in monitored conversations,

owners or leasers of the premises where the FBI conducted the electronic surveillance.  *Id.* ¶ 33.

Field offices include in their ELSUR indices the names of all persons whose voices have been

monitored, *id.* ¶ 35, as well as the names of persons mentioned during monitored conversations.

*Id.* ¶ 36.

One searches the CRS for records concerning a particular subject by the subject's name in

the General Indices.  *Id.* ¶¶ 29, 31.  In response to the plaintiff's September 13, 2005 FOIA

request to the NKFO, the FBI conducted "a search of the NKFO indices of the CRS," which

located two investigative files bearing number 245-NK-97249 and one other investigative file.[5]

---

[5]     The other investigative file "relates to an ongoing investigation" unrelated to the
criminal case to which the plaintiff refers in his FOIA requests.  Hardy II Decl. ¶ 4;
(continued...)

*Id.* ¶ 37; Hardy II Decl. ¶ 4.  When it was determined that there no longer was an active investigation pertaining to the plaintiff, on remand from OIP, FBIHQ staff reprocessed the file focusing only on the sub-file pertaining to plaintiff.  Hardy I Decl. ¶ 38.  "[T]his was a multi-subject file, with multiple sub-files, [and] only the documents in the plaintiff's sub-file were reviewed for processing;" the remaining documents and sub-files "were excluded as out of the scope of the [September 13, 2005 FOIA] request."  *Id.*  After the filing of the instant complaint, FBIHQ staff again reviewed "the entire NKFO 245 file . . . for processing."  *Id.* ¶ 39.  The FBI released additional documents to the plaintiff on February 25, 2008, March 24, 2008 and March 27, 2008.  Notice of Filing [#23], Hardy II Decl. ¶¶ 8-11.

Regarding the 608 pages of records referred to and returned by the DEA, 74 redacted pages were released to the plaintiff, and the remaining 534 pages of records were deemed not responsive to the plaintiff's request.  Hardy III Decl. ¶ 9.  "Nevertheless, to ensure that [the] plaintiff receive[d] all FBI records that [were] even potentially responsive to his [FOIA] requests (and [were] not subject to withholdings), the FBI [released] the remaining 534 pages of lab reports."  Hardy IV Decl. ¶ 15.  From the lab reports the FBI has redacted "only the names and other identifying information of the DEA lab personnel and the FBI Special Agents referenced therein" under Exemptions 6 and 7(C).  *Id.*

Searches of the ELSUR indices yielded no documents responsive to plaintiff's FOIA request.  Hardy I Decl. ¶ 41.

---

[5](...continued)
Hardy I Decl. ¶ 39.  The FBI asserts both that this file is not responsive to the plaintiff's FOIA request and that it is exempt from disclosure under Exemption 7(A).  Hardy II Decl. ¶ 4; Hardy I Decl. ¶ 39.

## 2. **EOUSA**

The Legal Information Office Network System ("LIONS") "is a computer database maintained by the [DOJ] that tracks all civil, criminal and appellate investigations and cases." Defs.' Mot. for Summ. J., Revised Version of Apr. 30, 2008 Decl. of Dione Jackson Stearns ("Rev. Stearns II Decl.") ¶ 3.  It is "the only source of information within the EOUSA's possession, custody or control that contains records concerning criminal cases brought against specific individuals."  *Id.*  One searches LIONS using, among other search terms, a party's name. *Id.*  Using the plaintiff's name as a search term, the declaration explains that two criminal case files were located: Nos. 99-6144-01 and 99-753.  *Id.*  "All records that appear in criminal case file No. 99-6144-01 also appear in criminal case file No. 99-753."  *Id.*

The FOIA requests submitted to the EOUSA after the initial March 8, 2006 request appeared to be duplicative of the initial request; however, some of the later requests mentioned specific documents related to the plaintiff's criminal case that were not mentioned in the initial request.  *Id.* ¶ 4.  "[I]n an effort to streamline this litigation, the EOUSA . . . conduct[ed] a new search of [the] criminal case file for all documents relating to [plaintiff] and the criminal case brought against him (regardless of whether the documents were specifically referenced in any of his prior FOIA/PA requests)," and disclosed "any previously undisclosed and releasable documents that it locate[d]."  *Id.*  Ultimately, the EOUSA located 3,862 pages of responsive records, released in full 2,418 pages of records, released in part 8 pages of records, and withheld in full 134 pages of records.  *Id.* ¶ 5 & n.2.  Among these records were 214 pages of material which originated from the FBI, and the EOUSA referred this material to the FBI for its review and direct response to plaintiff.  *Id.*; *see* Hardy III Decl. ¶ 7.  The remaining 225 pages of records

14

either "were duplicates [or] were entirely non-responsive."[6]  Rev. Stearns II Decl. ¶ 5.  They

"relate solely to a third party," and neither pertain to the plaintiff nor "relate[] to any of the

categories of documents that Plaintiff specifically identified in his [FOIA] requests."  Notice of

Clarification [#31], Fifth Decl. of Dione Jackson Stearns ("Stearns V Decl.") ¶ 5.

      In his opposition, the plaintiff contends that the records he has received are not responsive

to his FOIA requests, either because they were not the records he requested or were not related to

the plaintiff or his criminal case.  Pl.'s Opp'n ¶¶ 6, 16.[7]  He argues that the defendants "are

continuing to withhold relevant requested, & soughted [sic] records, documents, files, data, &

etc. [sic], & are continuing to commit acts of falsification of public records."  *Id.* ¶ 17; *see id.* ¶

64.  Further, he appears to argue that the defendants' failure to produce copies of the lab reports

he requested renders his criminal conviction invalid.  *See id.* ¶ 64.

      If an agency does not locate records responsive to a FOIA request, it still may prevail on

summary judgment if it establishes "that it located no records responsive to plaintiff's request

after a reasonable search using 'methods reasonably expected to produce the information

requested.'"  *Davidson v. Envtl. Prot. Agency*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000) (quoting

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see Steinberg*, 23 F.3d at 551

(noting that the agency's search for responsive records depends not on "whether there might exist

---

[6]      The criminal case file also included a copy of the plaintiff's presentence investigation report, which was not released by the EOUSA.  Rev. Stearns II Decl. ¶ 5.  Pursuant to BOP Program Statement 1351.05, the plaintiff may review the report at the institution where he is incarcerated.  *See id.*

[7]      The abbreviation "Pl.'s Opp'n" refers to the Plaintiff's Second Opposition Motion/Affidavit/Declaration/Memorandum of Law/Brief of Facts of Genuine Issues of Law in Response to Counsels of Record Misleading/Perjured Inter Alia Motion for Summary Judgment [#29].

any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").  On this record, the court concludes that the methods by which FBI and EOUSA staff searched for responsive records were reasonable under the circumstances.  The plaintiff's speculation as to the existence of additional records, absent support for his allegations of agency bad faith, does not render the searches inadequate.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Health and Human Servs.*, 27 F. Supp. 2d 240, 244 (D.D.C. 1998) (concluding that "plaintiff's speculation as to the trustworthiness of the Clinton administration and [agency's] failure to release documents that plaintiff apparently expected to be released is insufficient as a matter of law to defeat defendant's motion for summary judgment as to the adequacy of the FOIA search").

The plaintiff may have received records that he did not request.  After having received a steady stream of repetitive FOIA requests from the plaintiff and in light of this civil action, both the FBI and the EOUSA purposely released as many non-exempt records as possible, even those records previously deemed non-responsive.  Specifically, the FBI released not only the 74 pages of lab reports deemed responsive by the DEA, but also the remaining 534 pages of lab reports of questionable relevance.  *See* Hardy II Decl. ¶¶ 8-11; Hardy III Decl. ¶ 15.  Similarly, the EOUSA released not only records deemed responsive to his original FOIA request, but also any other information that did not fall within a recognized FOIA exemption.  *See* Rev. Stearns II Decl. ¶¶ 4-5.  These components, then, voluntarily provided the plaintiff with records that they were not required to disclose under the FOIA.

### C.  Exemptions

#### 1.  Exemption 2

16

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The phrase "personnel rules and practices" is interpreted to include not only "minor employment matters" but also "other rules and practices governing agency personnel."  *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc).  The "information need not actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that matter 'related' to rules and practices is also exempt."  *Schwaner v. U.S. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

Exemption 2 applies if the information that is sought meets two criteria.  First, such information must be "used for predominantly internal purposes."  *Crooker*, 670 F.2d at 1074; *see Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985).  Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest."  *Schwaner*, 898 F.2d at 794 (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption."  *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented."  *Id*. at 1208.  If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material.  *See Founding Church of Scientology of Wash., D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).

### a.  "Low 2" Exempt Information

**FBI**[8]

The FBI withholds as "low 2" exempt material internal telephone numbers of a Special

Agent and a support employee.  Hardy II Decl. ¶ 20.  Such telephone numbers are merely tools

used by FBI personnel in performing their duties, and, accordingly, "are related solely to the

FBI's internal practices" the disclosure of which "would not serve any public interest."  *Id.* ¶ 21.

Moreover, release of these numbers "would impede the FBI's effectiveness by subjecting the FBI

employees . . . to the possibility of harassment," *id.*, an occurrence which "could disrupt official

business (including impeding their ability to conduct and conclude law enforcement

investigations in a timely manner)."  *Id.* ¶ 20.

In addition, the FBI withholds source symbol numbers and informant file numbers under

Exemption 2.  Hardy II Decl. ¶¶ 25-26; *see id.*, Ex. F (*Vaughn* Index) at 5, 18,  65, 162, 192-93.

Source symbol numbers are used to conceal a source's identity "by inserting this number in

written documents" in lieu of the source's true name.  *Id.* ¶ 25.  The number includes a two or

three-letter abbreviation of the FBI field office out of which the source is operating (such as NK

for the Newark field office) and is assigned "to confidential informants who report information to

the FBI on a regular basis pursuant to an 'express' grant of confidentiality."  *Id.*  "Once this

number is assigned, it will always be synonymous with the individual" source.  *Id.*  According to

the FBI, release of a source symbol number sheds no light on the FBI's performance of its duties,

and, therefore, release serves no public interest.  *Id.*

Similarly, an informant file number "is an administrative tool used internally within the

---

[8]     Where the FBI relies on Exemption 2 in conjunction with Exemption 7(E), *see* Hardy II
Decl. ¶¶ 22-23, 70-71, the court considers the decisions to withhold such information in
its discussion of Exemption 7(E).

FBI to facilitate the flow and retrieval of information supplied to it by a source." Hardy II Decl. ¶ 26. The file itself "is a repository for background data on the source, and also contains information provided by him/her concerning other individuals and/or targets of FBI interest on [whom] he/she reported information." *Id.* The informant file number includes a three-number classification assigned according to the nature of information the source provides, as well as a sequentially-assigned number unique to that informant. *Id.* Once assigned, the informant file number is "synonymous with that informant." *Id.* Release of an informant file number, the declaration explains, "does not shed light upon the FBI's performance of its statutory dues; therefore, there exists no public interest in the release of these numbers." *Id.*

## EOUSA

The EOUSA withholds as "low 2" exempt material "internal telephone numbers of two Assistant United States Attorneys . . . and one . . . paralegal." Rev. Stearns III Decl. ¶ 11; *see* Rev. Stearns II Decl., Ex. A (*Vaughn* Index, Doc. Nos. 2-3); Rev. Stearns III Decl., Ex. D (*Vaughn* Index, Doc. Nos. 1-2). The declaration explains that these telephone numbers are for internal use, and their release to the public "could subject the AUSAs and paralegal to harassing communications and, in so doing, disrupt official business." Rev. Stearns III Decl. ¶ 11.

## CBP

The CBP withholds as "low 2" exempt information "administrative markings relating to internal agency file control systems, the identity of particular types of computer system reports, and the key stroke and function codes of internal agency computerized property management systems." Notice of Filing [#24], Hanson Decl. ¶ 8 & Ex. A (Doc. Nos. 001-003). These markings are used "to assist in the management and control of its mission" and for accessing the

agency's files and computer systems. *Id.* Access to these records is restricted from the public, and, the declaration asserts, release of these markings is of little or no interest to the public. *Id.* Furthermore, "knowledge of internal agency computer system report types and associated computer function codes could facilitate improper access to sensitive [Customs and Border Patrol] records and interfere with [the agency's] ability to maintain records." *Id.*

"Low 2" exempt materials include such items as "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979), and other "trivial administrative data such as . . . data processing notations[] and other administrative markings." *Coleman v. FBI*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted). The declarations establish that the telephone numbers, source symbol numbers, informant file numbers and administrative markings withheld are for internal agency use and are of no genuine interest to the public. The court concludes that this information properly is withheld under Exemption 2.

### "High 2" Exempt Information

As "high 2" exempt material, the EOUSA withholds "internal, undisclosed, and pre-decisional investigative forms that were prepared by an AUSA and that address, *inter alia*, the specific manner in which the government was to conduct its investigation of the individuals involved in the drug conspiracy with [the plaintiff] (*i.e.*, the step-by-step investigative techniques that would be utilized by law enforcement personnel in investigating the drug conspiracy." Rev. Stearns III Decl. ¶ 12 & Ex. D (Doc. No. 2). The declaration explains that release of these forms, "which disclose precisely how the government planned to investigate those thought to be

involved in the drug conspiracy with [the plaintiff,] could allow individuals involved in future drug conspiracies to tailor their behavior and avoid apprehension." *Id.* The declaration, then, establishes that release of these investigation forms may risk circumvention of the law. The court concludes that these forms properly are withheld under Exemption 2.

## 2. **Exemption 3**

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute either . . . [requires withholding] in such a manner as to leave no discretion on the issue, or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3); *see also Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

### a. **Federal Grand Jury Materials**

The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." FED. R. CRIM. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998). Rule 6(e) is a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981). In this Circuit, the grand jury exception is limited to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such . . . as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of P.R.*, 823 F.2d at 582.

The FBI withholds "the names of individuals who testified before the [grand jury],

personal information of third parties merely mentioned, and property items seized during the

investigation" of plaintiff's drug trafficking activities.  Hardy II Decl. ¶ 28 & Ex. F at 19-20, 77.

The declaration explains that the information withheld is "only that information which explicitly

discloses matters occurring before a  [grand jury]."  *Id.*   Its disclosure "could reveal the inner

workings of the [grand jury] that considered [plaintiff's] case," *id.*, and the court concurs that this

information is protected under Exemption 3.

### b.  Confidential Conflict of Interest Certification Forms

The EOUSA withholds in full two documents described as Confidential Conflict of

Interest Certifications.  Rev. Stearns II Decl. ¶ 6.  Pursuant to the Ethics in Government Act of

1978, *see* 5 U.S.C. App. 4 § 107(a)(1), an Assistant United States Attorney must "complete [a]

conflict of interest certification[] for each case to which [he] is assigned."  *Id.*, Ex. A (Doc. Nos.

5, 16).  "Any information required to be provided by an individual . . . shall be confidential and

shall not be disclosed to the public."  5 U.S.C. App. 4 § 107(a)(2).  "Section 107(a) leaves no

discretion on this issue with the agencies," and "[t]hese reports and the information which they

contain are, accordingly, exempt from being released to the public, under [5 U.S.C. §

552(b)(3)(A) and (B)]."  5 C.F.R. § 2634.901(d).

The court concludes that the EOUSA properly withheld the two Conflict of Interest

Certification reports under Exemption 3.  *Glascoe v. U.S. Dep't of Justice*, No. 04-0486, 2005

WL 1139269, at *2 (D.D.C. May 15, 2005) (concluding that DOJ properly withheld a Conflict of

Interest Certification report under Exemption 3).  The Ethics in Government Act requires that

these reports remain confidential and leaves the EOUSA no discretion on the issue.

### 3.  Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

Attorney work product is among the types of material that is not available in discovery. *See, e.g.*, *Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 27 (1983). The attorney work-product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495 (1947). Records are properly withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation." FED. R. CIV. P. 26(b)(3). The privilege also "covers factual materials prepared in anticipation of litigation." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997)). Attorney work product can be protected under the deliberative process privilege. *Heggestad*, 182 F. Supp. 2d at 7.

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts*, 117 F.3d at 616 (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the

23

documents at issue in the course of that process." *Heggestad*, 182 F. Supp. 2d at 7 (quoting

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).  A document

is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters."

*Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  The deliberative process privilege is

thought to "prevent injury to the quality of agency decisions."  *Sears, Roebuck & Co.*, 421 U.S. at

151.  Such protection encourages frank discussion of policy matters, prevents premature

disclosure of proposed policies, and avoids public confusion that may result from disclosure of

rationales that were not ultimately grounds for agency action.  *See, e.g.*, *Russell v. Dep't of the

Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

### a.  FBI

The FBI withholds in full a draft "Affidavit in support of an application to seize vehicles"

under Exemption 5.  Hardy II Decl. ¶ 31 & Ex. F at 183-91.  The Affidavit "had not yet been

approved or signed as a final version of the document," *id.* ¶ 31, and therefore, the declaration

claims, the document was predecisional.  It is not clear that the draft is deliberative, however, and

the FBI does not establish that this draft Affidavit properly is withheld under Exemption 5.

### B.  EOUSA[9]

---

[9]    The EOUSA withholds under the deliberative process privilege "internal and pre-decisional investigative forms that were prepared by an AUSA in anticipation of litigation against Plaintiff and his co-conspirators . . . [addressing], inter alia, proposed investigatory techniques, litigation alternatives and strategies, and the AUSA's personal evaluation of facts relevant to the criminal case."  Rev. Stearns III Decl. ¶ 15 & Ex. D (Doc. No. 2).  The forms "do not reflect final agency action," and their disclosure "could jeopardize the candid and comprehensive communications that are essential for efficient and effective agency decision-making."  *Id.*  The documents are withheld in full because "the attorney work product and deliberative process information . . . is so interwoven as to make all the information . . . protected."  *Id.* ¶ 16.  Notwithstanding these assertions, the *Vaughn* Index does not indicate that the EOUSA relies on Exemption 5 to withhold

(continued...)

The EOUSA withholds under Exemption 5 as attorney work product "a letter prepared by an AUSA . . . to his client [discussing] litigation filed by [the plaintiff] against the client and litigation that the AUSA was contemplating filing against [the plaintiff] to enjoin him from harassing the client in the future."  Rev. Stearns III Decl. ¶ 15 & Ex. D (Doc. No. 1).  The letter "detailed the AUSA's litigation strategy and assessment of the facts of the case."  *Id.* ¶ 15.  Also withheld are an internal e-mail message "prepared during the course of the prosecution of Plaintiff and his co-conspirators" discussing case law, Rev. Stearns III Decl., Ex. A (Doc. No. 6), the AUSA's handwritten notes, draft correspondence, a draft guilty plea, a memorandum of the prosecutor's strategy, and other litigation materials created in preparation for or during the prosecution of the drug conspiracy case against Plaintiff and his co-conspirators.  *Id.*, Ex. A (Doc. Nos. 10-14, 17-23, 26).  The declaration establishes that these materials were gathered or prepared by an attorney in anticipation of litigation and, therefore, the EOUSA properly withholds this information under Exemption 5.

### 4.  **Exemption 6**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted).

---

[9](...continued)
information on these investigation initiation forms.  *See id.*, Ex. D (Doc. No.).  This discrepancy in the EOUSA's submission is not fatal because the court concludes that these forms properly are withheld under Exemption 5 as attorney work product.

The threshold is "fairly minimal," such that "[a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (1982) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. at 602) (internal quotation marks omitted).   In this way, the "FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored."   *Id.*; *see N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1004-05 (D.C. Cir. 1990) (en banc) (concluding that Exemption 6 protected disclosure of a tape of voice communications aboard the Challenger space shuttle because "it applies to particular individuals").

### a.  EOUSA

With respect to eight documents, the EOUSA appears to have withheld information under Exemption 6 alone.[10]  *See* Rev. Stearns II Decl., Ex. A (Doc. Nos. 1, 7-9, 24-25); Rev. Stearns III Decl., Ex. D (Doc. No. 1).  In one instance, the EOUSA withholds a third party's initials.  *See* Rev. Stearns II Decl., Ex. A (Doc. No. 1).  In another instance, the EOUSA withholds the name of and other identifying information about a third party to whom an Assistant United States Attorney sent a letter pertaining to litigation brought by the plaintiff.  *See* Rev. Stearns III Decl., Ex. D (Doc. No. 1).[11]  In all other instances, the agency withholds the name of an alleged co-

---

[10]    Where the FBI, the EOUSA and the DEA rely on Exemption 6 in conjunction with Exemption 7(C), *see* Hardy II Decl. ¶¶ 14 (Summ. of Justification Categories), 34, 36, 39-47; Rev. Stearns II Decl., Ex. A (Doc. Nos. 2, 18-20, 22-23); Little Decl. ¶ 15 n.2, the court considers the decisions to withhold such information in its discussion of Exemption 7(C).

[11]    Although the EOUSA purports to withhold under Exemption 7(C) the "identity of and personal information about the third party individual to whom Document 1 was sent," Rev. Stearns III Decl. ¶ 18, it is not clear that the letter was compiled for a law

(continued...)

conspirator in the drug conspiracy for which the plaintiff was prosecuted.  *See* Rev. Stearns II

Decl., Ex. A (Doc. Nos. 7-9, 24-25).

### b.  CBP

Under Exemption 6, the CBP "has withheld the personal identifying information of its

personnel."  Hanson Decl. ¶ 10.  Specifically, the CPB has redacted from one document the

Social Security numbers of federal employees on the ground that their "release would be

considered a clearly unwarranted invasion of privacy."  *Id.*, Ex. A (Doc. No. 003).

It is clear that third parties' initials, names, or Social Security numbers apply to particular

individuals, and, thus, this information meets the threshold requirement for Exemption 6

protection.  5 U.S.C. § 552(b)(6); *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. at 602.  The

parties do not identify a public interest in the disclosure of this information, and the court

concludes that these initials, names, and Social Security numbers properly are withheld under

Exemption 6.[12]

### 5.  <u>Exemption 7</u>

### a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law

---

[11](...continued)
enforcement purpose within the scope of Exemption 7.  According to the *Vaughn* index, the letter pertains to litigation brought by the plaintiff and is not a product of the criminal proceedings against him.  *See id.*, Ex. A (Doc. No. 1).  This matter is of no consequence, however, because the Court has concluded that this same information properly is withheld under Exemption 6.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

[12]   Because the court concludes that these Social Security numbers properly are withheld under Exemption 6, it need not determine whether they also are protected under Exemption 7(C).  *See Simon*, 980 F.2d at 785.

enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*,  673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

### i.  FBI

The FBI's "investigatory records at issue in this matter are part of the FBI's Central Records System and concern a criminal investigation of plaintiff . . . for narcotics charges in violation of 21 U.S.C. § 841(a)(1)."  Hardy II Decl. ¶ 17.  Specifically, the records "relate to a criminal investigation of plaintiff's involvement in illegal trafficking of narcotics in the Broadway Townhouses located in Newark, New Jersey," a law enforcement matter over which the FBI has jurisdiction.  *Id.* ¶ 46.  Among these records are "74 pages of lab reports . . . created by the FBI and sent to the DEA in connection with the FBI's investigation of Plaintiff for engaging in illegal drug distribution activities."[13]  Hardy III Decl. ¶ 10.

---

[13]     The materials forwarded by the FBI to the DEA are copies of the DEA Form 7, a six-copy carbon form entitled "Report of Drug Property Collected, Purchased or Seized."  Little Decl. ¶ 12.  The DEA-7 has 38 numbered blocks on the front and instructions printed on the back.  *Id.*  The form is used "by other Federal, state and local law

(continued...)

Based on information contained in NKFO investigative file 245D-NK-97240, "on December 17, 1999, plaintiff, along with several co-defendants, was charged with possession with intent to distribute heroin, conspiracy to distribute narcotics, and other drug offenses. Hardy I Decl. ¶ 5. The plaintiff pled guilty to conspiracy to distribute narcotics and was sentenced to a term of 325 months' incarceration on July 7, 2000. *Id.*

### ii. EOUSA

The EOUSA records at issue in this matter are maintained in the Criminal Case File System (JUSTICE/USA-007), Rev. Stearns II Decl. ¶ 7, and were "created or compiled by an [Assistant United States Attorney] in the context of prosecuting Plaintiff and/or his co-conspirators for violations of drug distribution and other laws." *Id.* ¶ 8.

Given the nature of the plaintiff's factual allegations in the Complaint, the content of his FOIA requests, and the descriptions of the records located pursuant to the FBI's and the EOUSA's searches, it is clear that the relevant records were compiled for law enforcement purposes. The FBI and the EOUSA make a threshold showing that the records responsive to the

---

[13](...continued)

enforcement agencies when substances are forwarded to a DEA forensic laboratory for testing," *id.* ¶14, and, except for Block 3 (G-DEP identifiers), "those other law enforcement agencies are required to complete Blocks 1 through 17." *Id.* Blocks 1 through 17 include such items as the place where and the means by which the drugs were obtained (e.g., purchase, seizure, free sample), the file number and title, the date prepared, the type and approximate quantity of drugs, and "a narrative that may include the names of law enforcement officers and third parties, and other information regarding the seizure." *Id.* ¶ 12 & Ex. C (sample DEA-7 form). DEA laboratory personnel complete Blocks 18 through 38. *Id.* ¶ 15. "Blocks 16 and 17 contain the names of DEA special agents and Blocks 19, 22, 33 and 36 contain the names and/or signatures of law enforcement personnel or DEA laboratory employees," and "Block 24 is used to describe the results of the laboratory analysis including a description and quantity of the alleged drugs that were tested." *Id.* ¶ 13.

plaintiff's FOIA requests fall within the scope of Exemption 7.

### b. Exemption 7(C)[14]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

### i. Law Enforcement and Support Personnel and Other Government Employees

### FBI

The FBI withholds the names of, Social Security numbers of, and telephone numbers of FBI Special Agents "who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the files responsive to plaintiff's requests."  Hardy II Decl. ¶ 50; *see id.* ¶ 51.  The declaration explains that these agents "conduct official inquiries into violations of various criminal statutes and national security cases," and in the course of their

---

[14]        The court addresses in its discussion of Exemption 7(D) those instances where the FBI relies on Exemption 7(C) in conjunction with Exemption 7(D) to withhold the same information.

work they "come into contact with all strata of society" as they, for example, make arrests or otherwise disturb the lives of others.  *Id.*  If their identities were disclosed, they may be subjected to "unnecessary, unofficial questioning regarding this and/or other investigations, whether or not they are currently employed by the FBI."  *Id.*  In addition, "publicity associated with the release of [a Special Agent's] identity in connection with a particular law enforcement investigation could rekindle animosity toward that [Special Agent]" on the part of persons targeted or otherwise affected by law enforcement action involving the agent.  *Id.*  Special Agents, then, "maintain substantial privacy interests in not having their identities disclosed" in order to "protect [them], as individuals, from unnecessary, unofficial questioning" regarding this or other investigations.  *Id.*

Similarly, the FBI withholds the names of and identifying information about FBI support personnel.  *Id.* ¶ 51.  These employees "were assigned to handle tasks relating to the official investigation into the activities of plaintiff and others and are identified by name in the files responsive to plaintiff's request."  *Id*.  Because these employees "were, and possibly are, in positions to access information regarding official law enforcement investigations," they "could become targets of harassing inquiries for unauthorized access to investigations if their identities were released."  *Id.*  For these reasons, these employees "maintain substantial privacy interests in not having their identities disclosed."  *Id.*

The FBI applies this same rationale to support its decision to withhold "the names and titles of law enforcement employees of the Newark Police Department, Port Authority Police and Essex County Sheriff's Office . . . [who] aided the FBI in the law enforcement investigations of plaintiff," *id.* ¶ 55, as well as "the names and telephone numbers of a Department of Veterans

31

Affairs employee and a United States Marshals Service employee," *id.* ¶ 58.  Release of their

identities "could subject them as individuals to unnecessary, unwarranted harassment," and could

make them "prime target[s] for reprisal." *Id.* ¶¶ 55, 58.

### EOUSA

The EOUSA withholds "the name of a third party federal employee who was involved in

the investigation of plaintiff and his co-conspirators" so as to protect this individual "against

harassment and annoyance in the conduct of official duties and in private life."  Rev. Stearns II

Decl., Ex. A (Doc. No. 18).

### DEA

From the lab reports referred by the FBI to the DEA, the DEA redacts only "the names of

DEA laboratory personnel in Blocks 23-24, 34, and 37."  Little Decl. ¶ 15.   In addition, on three

of these 74 pages, the DEA also redacts "the name of a laboratory staff member . . . in Block 38."

*Id.*  The FBI also has redacted from the names of FBI Special Agents who were involved in the

criminal investigation of the plaintiff and referenced in the 74 pages of lab reports referred to and

returned by the DEA.  Hardy III Decl. ¶ 10.  Further, with respect to the remaining 534 pages of

lab reports, the FBI redacted "only the names and other identifying information of the DEA lab

personnel and the FBI Special Agents referenced therein."  Hardy IV Decl. ¶ 15.

Redaction of the names of federal law enforcement officers, support personnel and other

employees under similar circumstances routinely is upheld.  *See, e.g.*, *Halpern v. FBI*, 181 F.3d

279, 296-98 (2d Cir. 1999) (concluding that the names of and identifying and personal

information about non-FBI government employees and non-federal law enforcement officers is

protected under Exemption 7(C) because release of the information could subject them to

embarrassment or harassment in the conduct of their official duties and personal lives); *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1987) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives). The court concludes that the FBI, the EOUSA and the DEA properly withheld the names of and identifying information about special agents, local law enforcement officials, FBI and other government employees under Exemption 7(C). 5 U.S.C. § 552(b)(7)(C); *Beck*, 997 F.2d at 1491.

### ii. Third Parties

### Third Parties of Investigative Interest

The FBI withholds under Exemption 7(C) information in the records responsive to plaintiff's request about "third parties of investigative interest to the FBI or other law enforcement agencies . . . due to their association with the plaintiff or with other subjects of this investigation." Hardy II Decl. ¶ 52; *see id.* ¶ 53. In addition to their names, the FBI withholds their "addresses, dates of birth, social security numbers, aliases, telephone numbers, FBI arrest numbers, license plate numbers, police department numbers, fingerprint classifications, and personal characteristics." *Id.* ¶ 52. Disclosure of the identities of these third parties "as subjects of FBI interest resulting from its investigation of illegal narcotics trafficking could subject these individuals to harassment and embarrassment and could further result in undue public attention." *Id.*

Similarly, the EOUSA withholds "the names and other identifying information . . . [about] potential third party criminal defendants" mentioned in the Investigation Initiation Forms prepared by an Assistant United States Attorney for use in connection with an Organized Crime

Drug Enforcement Task Force.  Rev. Stearns III Decl., Ex. D (Doc. No. 2).  In order to "protect

those individuals from harassment, embarrassment and stigmatization," and absent any indication

that these individuals "have waived their rights to privacy," the EOUSA asserts that "release of

[their] names would violate their privacy rights."  *Id.*

### Third Parties Merely Mentioned in Law Enforcement Records

The FBI withholds "the names and identifying information of third parties merely

mentioned in the law enforcement investigatory records responsive to plaintiff's request."  Hardy

II Decl. ¶ 54; *see id.* ¶ 55.  These individuals "interacted with plaintiff or other individuals

associated with plaintiff and [were] mentioned in these [investigatory] files."  *Id.* ¶ 54.

Identifying information about these individuals includes their "addresses, license plate numbers

and registration information, dates of birth, aliases, [and] career and job titles."  *Id.*  These

individuals "were not of investigative interest to the FBI," and the "release of this type of

information about private individuals without [their written consent] would disclose their

connection with the FBI's investigation of plaintiff and others," and, in turn, "could subject these

individuals to harassment or criticism and focus derogatory inferences and suspicion on them."

*Id.*

The EOUSA, too, withholds the names of third parties who appear in their records,

including individuals who appear to be co-conspirators in the drug conspiracy for which plaintiff

was prosecuted.  *See* Rev. Stearns II Decl., Ex. A (Doc. Nos. 7-8, 24-25).  In addition, the

EOUSA withholds the name of a third party who provided information to the government in the

course of the criminal investigation of plaintiff and his co-conspirators.  *Id.*, Ex. A (Doc. Nos. 20,

22-23).

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Servs., Inc.*, 926 F.2d at 1205-06; *see also Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (holding that, in light of the stigma potentially associated with law enforcement investigations, Exemption 7(C) affords broad privacy rights to suspects, witnesses and investigators). The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." *Davis*, 968 F.2d at 1282. The plaintiff demonstrates no such public interest with respect to the third parties described above, including those of investigative interest or those merely mentioned in responsive records.

The FBI's and the EOUSA's  decisions to withhold the names of and identifying information about third parties of investigative interest and about individuals who merely are mentioned in these law enforcement records are fully supported by the case law. *See, e.g.*, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (holding that Exemption 7(C) protects "the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants," and their names are "generally exempt from disclosure"); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that the agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S.

1134 (2002); *SafeCard Servs., Inc.*, 926 F.2d at 1206 (holding that "names and address of private

individuals appearing in files within the ambit of Exemption 7(C) . . . [are] exempt from

disclosure").

### c.  Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law

enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential
> source . . . [who] furnished information on a confidential basis, and,
> in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation. . .,
> information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no assumption that a source is confidential for purposes of

Exemption 7(D) whenever a source provides information to a law enforcement agency in the

course of a criminal investigation.  *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181

(1993).  Rather, a source's confidentiality must be determined on a case-by-case basis.  *Id.* at

179-80.  "A source is confidential within the meaning of [Exemption] 7(D) if the source

provided information under an express assurance of confidentiality or in circumstances from

which such an assurance could reasonably be inferred."  *Williams v. FBI*, 69 F.3d 1155, 1159

(D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

### Implied Grant of Confidentiality

The FBI "sought the assistance of numerous individuals in obtaining information to aid

its investigation" of plaintiff.  Hardy II Decl. ¶ 61.  "The FBI has learned through experience that

individuals who provide information about subjects under investigation must be free to do so

without fear of reprisal should their identities or the information they provided be disclosed

outside their confidential relationship with the FBI," and "must be secure in the knowledge that their assistance and their identities will be held in confidence."  *Id.* ¶ 62.  "[W]hen the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources." *Id.* ¶ 61.  Such sources include confidential informants and cooperating witnesses.

A confidential informant is an individual "who provides useful and credible information to the FBI regarding felonious criminal activities and from whom the FBI expects or intends to obtain additional useful and credible information regarding such activities in the future."  Hardy II Decl. ¶ 57.  A cooperating witness is "any individual who meets the definition of a [c]onfidential [i]nformant . . ., but who has agreed to testify in a proceeding as a defendant or potential witness." *Id.* ¶ 56.  It is the FBI's policy to provide confidential sources and cooperating witnesses the same degree of protection. *Id.* ¶¶ 56-57.

Under Exemption 7(C), the FBI withholds the name of and identifying information about a cooperating witness on the ground that release of this information is an unwarranted invasion of this individual's privacy. *Id.* ¶ 56.  Under Exemption 7(D), the FBI withholds "the name of, identifying information for, and information provided by a [c]ooperating [w]itness . . . to the FBI and other law enforcement agencies" concerning "the criminal activities of plaintiff and other subjects who were of investigative interest to the FBI and other law enforcement agencies." *Id.* ¶ 63.  The witness provided "detailed information that is singular in nature concerning the criminal activities of plaintiff, his associates, and/or other subjects of this investigation," such that disclosure of the information provided "could enable others to discern [the witness'] identity." *Id.*  The plaintiff and others "were arrested and convicted on information provided by this

individual." *Id.* Because drug trafficking is inherently violent, *see id.*, disclosure of the witness'

identity "could subject [the witness] to violent reprisals" if "plaintiff or his associates become

aware of [his or her] cooperation with the FBI. *Id.* For these reasons, the FBI argues that the

witness provided information under an implied grant of confidentiality. *Id.* ¶ 64.

Under Exemption 7(C), the FBI withholds the name of and identifying information about

a confidential source, as "[a]ny information that could possibly identify [the source], including

dates and places where he/she has been, is protected from disclosure since release could cause an

unwarranted invasion of privacy." *Id.* ¶ 57. Under Exemption 7(D), the FBI withholds "the

name of, identifying information for, and information provided by a confidential source to the

FBI during the course of the FBI's investigation of plaintiff." *Id.* ¶ 66. The confidential source

has "knowledge of the activities that gave rise to the FBI's investigation," and disclosure of the

information he or she provided "could [be] use[d] . . . to determine [his or her] identity." *Id.* As

with the cooperating witness, the confidential source could be subject to "violent reprisals" if

plaintiff or his associates learn of his or her cooperation with the FBI. *Id.*

As is the case with any third parties who are mentioned in law enforcement records,

confidential sources and cooperating witnesses have personal privacy interests which cannot be

overcome absent a significant public interest in the disclosure of their identities. With respect to

their status as informants, the declaration establishes that the confidential source and cooperating

witness provided information to the FBI under an implied grant of confidentiality.

Courts have held that the violence and risk of retaliation attendant to drug trafficking

warrant an implied grant of confidentiality to a source. *See Mays v. Drug Enforcement Admin.*,

234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding identity of a source who supplied

information about a conspiracy to distribute crack and powder cocaine); *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 123 (D.D.C. 2008) (withholding the names of and information provided by sources under an implied assurance of confidentiality given the plaintiff's "reported criminal history of kidnapping and the subsequent torture, murder and dismemberment of bodies"); *Shores v. FBI*, 2002 WL 230756, at *4 (D.D.C. Feb. 2, 2002) (withholding the identities of and identifying information about three cooperating witnesses with knowledge of a murder of which plaintiff was convicted).  In these circumstances, particularly given the drug trafficking activity in which plaintiff and his co-conspirators engaged, it is reasonable to conclude that the cooperating witness and confidential source provided information to the FBI with an expectation that their identities would not be disclosed.  The court concludes that this information properly is withheld under Exemption 7(D).

### Express Grant of Confidentiality

Under Exemptions 2 and 7(D), the FBI withholds a source symbol number.  Hardy II Decl. ¶¶ 25, 67.  Source symbol numbers are "assigned to confidential sources who have been developed, instructed, closely monitored, and in many cases paid for their services," and these sources "report to the FBI under an express grant of confidentiality."  *Id.* ¶ 67.  Administratively, the source symbol numbers "conceal an individual's identity" by replacing the number for the individual's true name.  *Id.* ¶ 25.  Only "those FBI employees who have a legitimate need" to know the source's identity have access to such information.  *Id.* ¶ 67.  Disclosure of source symbol numbers "at various times and in various documents" could enable persons knowledgeable of the FBI's investigation to "ultimately identify these sources since it would reveal the connections of confidential informants to the information provided by them."  *Id.* ¶ 68.

These sources and their families "could be subjected to embarrassment, humiliation, and physical/mental harm" if their identities were disclosed. *Id.* In addition, such disclosures "would have a chilling effect on the activities and cooperation of other FBI confidential sources." *Id.*

The court concludes that the source symbol number properly is withheld under Exemptions 2 and 7(D).

### d.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Courts have held that information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations. *See, e.g.*, *Morley v. CIA*, 453 F. Supp. 2d 137, 156 (D.D.C. 2006) (withholding information pertaining to security clearances and background investigations on the ground that "disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future"); *Piper v. U.S. Dep't. of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (withholding polygraph test information on the ground that disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique," and anticipate or thwart FBI's strategy); *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques when disclosure would impair effectiveness and, within context of documents, "could alert subjects in

drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

Under both Exemptions 2 and 7(E), the FBI withholds "FBI Form FD-515, . . . an investigative accomplishments report."  Hardy II Decl. ¶ 22.  An investigative Special Agent submits the FD-515 "at various stages in the investigation to report statistical results such as indictments, arrests and convictions, or the recovery of stolen property."  *Id.*  In addition, the form lists "27 publicly known investigative techniques and/or assistance of which some were used by the investigative personnel during the investigation of plaintiff."  *Id.* ¶ 70.  "Opposite each investigative technique and assistance is a rating column which records a numerical rating from 1 to 4 . . . on each technique/assistance used."  *Id.*  The ratings "relate[] solely to the FBI's internal practices."  *Id.* ¶ 22.  The FBI redacts the entire rating column.  *Id.*  ¶ 70.  If the rating column were released, plaintiff and other subjects of investigation "could change their activities and modus operandi in order to avoid detection and/or surveillance in the future," and this information is withheld "to prevent future circumvention of the law by criminals."  *Id.*

Also under Exemptions 2 and 7(E) the FBI withholds "certain techniques and procedures [used] in conducting criminal investigations and undercover operations."  *Id.* ¶ 23.  This information includes "instructions to cooperating witnesses, the amount of money used to purchase evidence, and specific investigatory techniques," and "relates solely to the FBI's internal practices."  *Id.*  The declaration explains that release of these techniques and procedures serves no public interest yet "would impede the FBI's effectiveness by providing plaintiff and other potential lawbreakers with information they could use to circumvent the techniques at issue."  *Id.*  Specifically, disclosure of information pertaining to "how it conducts undercover operations and . . . specific techniques during the undercover operation . . . could jeopardize any

41

future criminal investigations and undercover operations conducted by the FBI." *Id.* ¶ 71.

Having reviewed the FBI's declaration and its *Vaughn* Index, and absent any challenge from the plaintiff, the court concludes that the FBI properly withholds both the investigative accomplishments report's rating column and information that would reveal techniques and procedures for conducting investigations and undercover operations under Exemption 2 and 7(E). *See, e.g.*, *Peay v. Dep't of Justice*, 2007 WL 788871, at *6 (D.D.C. Mar. 14, 2007) (concluding that the FBI properly redacted the "entire rating column [of form FD-515] in order to protect . . . the specific techniques that were and were not used by the FBI during its investigation of plaintiff and others"); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (concluding that the FBI FD-515 form properly is withheld under Exemption 7(E) because "disclosure of this information would help plaintiff or potential criminals predict future investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques").

### D. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999).  The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The court concludes that, with the exception of the draft Affidavit withheld by the FBI

under Exemption 5, only the exempt records or portions of records have been withheld, and that

all reasonably segregable material has been released to the plaintiff.  The court has reviewed the

defendants' declarations and the *Vaughn* indices submitted in support of their motion, and finds

that they adequately specify "in detail which portions of the document[s] are disclosable and

which are allegedly exempt."  *Vaughn*, 484 F.2d at 827.


### III.   CONCLUSION

The court concludes that the FBI and the EOUSA conducted reasonable and adequate

searches for records responsive to the plaintiff's multiple FOIA requests, that these components

properly have withheld records or portions of records under Exemptions 2, 3, 6, 7(C), 7(D), and

7(E), and that the EOUSA properly has withheld information under Exemption 5.  In these

respects, the defendants' summary judgment motion will be granted.  Because the FBI has not

established that its decision to withhold an Affidavit under Exemption 5 is proper, the motion

will be denied in part without prejudice.  The FBI may file a renewed motion for summary

judgment based on additional undisputed facts or by asserting additional legal arguments.  An

Order accompanies this Memorandum Opinion.


RICARDO M. URBINA
United States District Judge

DATE:  March 27, 2009